**Exhibit 2**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| WARDMAN HOTEL OWNER, L.L.C.,[1] | ) | Case No. 21-10023 (JTD) |
|  | ) |  |
| Debtor. | ) | **Docket Ref. No. 5** |
|  | ) |  |

**INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN
POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND
PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS,
(III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED
PARTY, (IV) MODIFYING AUTOMATIC STAY, (V) SCHEDULING A
FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

Upon the Motion, dated January 11, 2021 (the "**Motion**")[2] of Wardman Hotel Owner,

L.L.C., the debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11

case (the "**Chapter 11 Case**"), for entry of an order (this "**Interim Order**") pursuant to Sections

105, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of title 11 of the United

States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2002-1, 4001-2 and 9013-1(m) of

the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for

the District of Delaware (the "**Local Rules**"), among other things:

(i)      Authorizing the Debtor (in such capacity, the "**Borrower**") to obtain secured

postpetition financing on a superpriority basis and to borrow from time to time, up to $8.0

million (the "**DIP Loan**") from Pacific Life Insurance Company ("**Pacific Life**" and in its

---

[1]      The last four digits of the taxpayer identification number for the Debtor are -9717.  The mailing address for the Debtor is 5035 Riverview Road, NW, Atlanta, Georgia 30327.

[2]      Capitalized terms used but not defined herein shall have the same meaning ascribed to them in the Motion or the DIP Loan Agreement, as applicable.

capacity as the lender under the DIP Loan, the "**DIP Lender**") pursuant to the terms and conditions of that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement, dated January 11, 2021 (the "**DIP Loan Agreement**") and, together with any exhibits thereto and other agreements, ancillary documents and agreements, and any mortgages contemplated thereby (the "**DIP Loan Documents**"), between Borrower and DIP Lender;

(ii)    Authorizing the Debtor to enter into the DIP Loan Documents and to perform such other acts as may be necessary or appropriate in connection with the same;

(iii)    Authorizing the Debtor to borrow up to $3.0 million under the DIP Loan Agreement (the "**Interim Amount**") upon entry of this Interim Order to avoid immediate and irreparable harm;

(iv)    Authorizing the Debtor to use the proceeds of the DIP Loan as permitted under the DIP Loan Agreement and in accordance with the Budget (as defined herein), including any Permitted Variances (as defined herein), and as otherwise permitted by this Interim Order or the DIP Loan Agreement;

(v)    Subject to the entry of a final order approving the Motion (the "**Final Order**") with respect to the DIP Lender's ability to be repaid on a superpriority basis out of the proceeds of chapter 5 causes of action ("**Avoidance Action Proceeds**"), granting all obligations under the DIP Loan Agreement and under, or secured by, the DIP Loan Documents (collectively, the "**DIP Obligations**") the status of allowed superpriority expense claims in the Chapter 11 Case;

(vi)    Granting the DIP Lender automatically perfected DIP Liens (as defined herein) on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral," as defined herein and in section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein, a senior lien under Section 364(c)

2

and 364(d) of the Bankruptcy Code against all assets of the Debtor other than the Prepetition

Secured Party Collateral and the Debtor's estate's chapter 5 causes of action (the "**Avoidance**

**Actions**") and Avoidance Action Proceeds;[3]

(vii)    Authorizing and directing the Debtor to pay DIP Lender the expenses and other

amounts payable under the DIP Loan Documents as such become due, including, without

limitation, the reasonable fees and disbursements of the DIP Lender's attorneys, advisers,

accountants, and other consultants, and the reasonable legal expenses of the DIP Lender, all to

the extent provided in and in accordance with the terms of the DIP Loan Agreement and DIP

Loan Documents;

(viii)    Affording the DIP Lender the protections of sections 364(c)(1), 364(c)(2),

364(c)(3), 364(d), and 364(e) of the Bankruptcy Code;

(ix)    Authorizing the DIP Lender to (a) terminate the commitment of the DIP Lender to

make the DIP Loan on the terms set forth in the DIP Loan Agreement and this Interim Order,

including upon the occurrence and during the continuance of an "Event of Default" under the

DIP Loan Agreement, (b) terminate the Debtor's consensual sale, use, or lease of Cash

Collateral, and (c) declare the DIP Loan then outstanding to be due and payable, each upon the

occurrence and continuation of an Event of Default (as defined in the DIP Loan Agreement) on

the terms specified herein and in the DIP Loan Agreement;

---

[3]    For the avoidance of doubt, with respect to the Prepetition Secured Party Collateral, the
DIP Liens shall constitute second-in-priority security interests and liens junior only to the
Prepetition Secured Party Liens encumbering such Prepetition Secured Party Collateral and the
Permitted Encumbrances (as defined in the DIP Loan Agreement).

(x)    Authorizing the Debtor to use the proceeds of the DIP Loan and Cash Collateral in accordance with the Budget, including any Permitted Variances, or as otherwise permitted by this Interim Order or the DIP Loan Agreement;

(xi)    Granting adequate protection to Pacific Life (in its capacity as prepetition secured party (the "**Prepetition Secured Party**") solely to the extent of any diminution in value of its interests in the Debtor's estate's interests in the Prepetition Secured Party Collateral as of the Petition Date to the maximum extent provided by the Bankruptcy Code ("**Diminution in Value**");

(xii)    Subject to entry of the Final Order, authorizing the waiver of the Debtor's right to assert (a) any claims to surcharge against the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code, (b) any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral;

(xiii)    Modifying the automatic stay imposed by Section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Agreement and this Interim Order;

(xiv)    Confirming the DIP Lender's good faith in furnishing the DIP Loan and the attendant applicability of the protections afforded by Bankruptcy Code Section 364(e);

(xv)    Waiving any applicable stay, including under Bankruptcy Rule 6004 and any applicable Local Rules, and providing for immediate effectiveness of this Interim Order; and

(xvi)    Scheduling a final hearing (the "**Final Hearing**") within forty-five (45) days of the Petition Date to consider the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing.

The Court having considered the Motion, the exhibits attached thereto, the First Day Declaration, and the evidence submitted and arguments made at the interim hearing held on January 13, 2021 (the "**Interim Hearing**"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d) and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISH AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

**IT IS HEREBY FOUND** that:

A.    **Petition Date.**  On January 11, 2021 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court.

B.    **Debtor in Possession.**   The Debtor has continued in the management and operation of its business and properties as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.    **Jurisdiction and Venue.**  This Court has jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.   Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

---

[4]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

LEGAL02/40307876v11

D.    **Committee Formation.** As of the date hereof, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not yet appointed an official committee of unsecured creditors in the Chapter 11 Case (a "**Committee**") pursuant to section 1102 of the Bankruptcy Code.

E.    **Notice**. Notice of the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules

F.    **Interim Hearing.** Based on the record presented to the Court by the Debtor at the Interim Hearing, the interim relief requested in the Motion is in the best interests of the Debtor's estate, its creditors and other parties in interest and is necessary to avoid immediate and irreparable harm to the Debtor pending the Final Hearing and otherwise is fair and reasonable and is essential for the preservation of the Debtor's business and the Debtor's entry into the DIP Loan Agreement and the other DIP Loan Documents is a sound and prudent exercise of the Debtor's business judgment.

G.    **Debtor's Stipulations.** Subject to the rights of parties in interest reserved at paragraph A.27 hereof, Debtor admits, stipulates, acknowledges, and agrees as follows (paragraphs G(i) through G(vii) below are referred to herein, collectively, as the "**Debtor's Stipulations**"):

(i)    *Prepetition Relationship with Prepetition Secured Party and DIP Lender.* Pacific Life, the proposed DIP Lender and the Prepetition Secured Party, is an affiliate of the Debtor;[5]

---

[5]    Pacific Life owns 100% of the interests of PL Wardman Member LLC, which is the Debtor's sole member. Notwithstanding Pacific Life's indirect ownership interest in the Debtor, per the terms of the Debtor's LLC Operating Agreement, the management and operation of the Debtor is vested exclusively in the Debtor's Independent Manager, James Decker.

LEGAL02/40307876v11

(ii)  *Prepetition Loan.* The Debtor obtained a loan from the Prepetition Secured Party in the principal sum of One Hundred Twenty-Two Million Five Hundred Thousand and 00/100 Dollars ($122,500,000.00) (the "**Prepetition Loan**") pursuant to the terms of that certain Term Loan Agreement dated January 19, 2018 (the "**Prepetition Loan Agreement**" and, together with any other agreements and documents executed or delivered in connection therewith, each as amended, restated, supplemented, waived, or otherwise modified from time to time, the "**Prepetition Loan Documents**") to facilitate Debtor's purchase of the Hotel and related real and personal property;[6]

(iii)  *Prepetition Loan Obligations.* As of the Petition Date, the Debtor was indebted to the Prepetition Secured Party, without defense, counterclaim, or offset of any kind, in respect of the Prepetition Loan in an aggregate principal amount, not less than $130,537,383[7] (collectively, together with accrued and unpaid interest, fees, expenses, and disbursements (including, without limitation, any accrued and unpaid attorneys' fees, accountants' fees, appraisers' fees, and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtor's obligations pursuant to the Prepetition Loan Documents, in each case, as of the Petition Date, plus all interest, fees, costs, and other charges thereunder, the "**Prepetition Loan Obligations**");

---

[6]   The Prepetition Loan was obtained in connection with a recapitalization through which a previously issued loan from the Prepetition Secured Party (the "**Old Loan**") was satisfied through (i) a new loan from the Prepetition Secured Party (the Prepetition Loan), (ii) new equity from the original owners of the Hotel, and (iii) a conversion of a portion of the Old Loan (totaling $40 million) into equity in the Debtor, a newly-formed joint venture.

[7]   As of December 21, 2020.

(iv)    *Prepetition Secured Party Liens and Prepetition Secured Party Collateral.*
Prior to the Petition Date, the Debtor granted to the Prepetition Secured Party, and the
Prepetition Secured Party perfected, a first-priority security interest in and continuing lien (the
"**Prepetition Secured Party Liens**") on "Collateral" and "Secured Property" (the "**Prepetition
Secured Party Collateral**") as the term "Collateral" is defined in the Prepetition Loan
Agreement and that certain Security Agreement dated January 19, 2018 between Debtor and the
Prepetition Secured Party and as the term "Secured Property" is defined in that certain Deed of
Trust, Financing Statement and Security Agreement (with Assignment of Rents and Fixture
Filing) dated January 19, 2018 between Debtor, the Prepetition Secured Party and the Trustee (as
defined therein);

(v)    *Validity of Prepetition Secured Party Liens, Claims and Obligations.*
After consultation with its attorneys, but subject to the provisions of paragraphs G(vii) and A.27
herein, the Debtor acknowledges and agrees that as of the Petition Date: (a) the Prepetition
Secured Party Liens were valid, binding, enforceable, non-avoidable and, to the extent required
by the Prepetition Loan Documents, properly perfected and were granted to, or for the benefit of,
the Prepetition Secured Party for fair consideration and reasonably equivalent value; (b) the
Prepetition Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of
the Debtor, enforceable in accordance with the terms of the Prepetition Loan Documents (other
than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); (c)
no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any
of the Prepetition Secured Party Liens or the Prepetition Loan Obligations, exist, and no portion
of the Prepetition Secured Party Liens or the Prepetition Loan Obligations, is subject to any
challenge or defense, including, without limitation, avoidance, disgorgement, recharacterization,

8

or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Debtor and its estate have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement against the Prepetition Secured Party or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees, arising out of, based upon, or related to the Prepetition Loan Documents; (e) the Prepetition Secured Party Liens had priority over any and all other liens on the Prepetition Secured Party Collateral; (f) the Debtor has waived, discharged and released any right it may have to challenge any of the Prepetition Loan Obligations and the Prepetition Secured Party Liens, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses in action against the Prepetition Secured Party or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees;

(vi)   *Releases.*   Subject to the provisions of paragraphs G(vii) and A.27 herein, the Debtor hereby stipulates and agrees that it forever, unconditionally and irrevocably releases, discharges, and acquits each of the DIP Lender and, subject to entry of the Final Order, the Prepetition Secured Party, in each case solely in their capacities as such, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, and agents, past, present, and future, and their respective heirs, predecessors, successors, and assigns, each solely in their capacities as such (collectively, the **"Releasees"**), of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or

9

otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the DIP Loan Agreement, the DIP Loan Documents, the Prepetition Loan Agreement, the Prepetition Loan Documents, and/or the transactions contemplated hereunder or thereunder, including, without limitation, (x) any so-called "lender liability" or equitable subordination or recharacterization claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection, or avoidability of the liens or claims of the Prepetition Secured Party or the DIP Lender. Subject to the provisions of paragraphs G(vii) and A.27 herein and subject to entry of the Final Order as to the Prepetition Secured Party, the Debtor further waives and releases any defense, right of counterclaim, right of set-off, or deduction to the payment of the Prepetition Loan Agreement, the Prepetition Loan Obligations or the DIP Obligations that the Debtor may now have or may claim to have against the Releasees arising out of, connected with, or relating to any and all acts, omissions, or events occurring prior to the Court's entry of this Interim Order. Notwithstanding anything to the contrary herein or the DIP Loan Documents, nothing herein or in the DIP Loan Documents shall constitute a release or indemnity by the Debtor of any shareholders, directors, employees, attorneys, and agents of the Debtor itself acting in such capacities, whether past, present, and future, and their respective heirs, predecessors, successors, and assigns; and

(vii)    *Debtor Reserved Rights.* The Debtor makes no stipulation with respect to the perfection of liens asserted by or on behalf of the Prepetition Secured Party with respect to the

deposit account maintained at Wells Fargo Bank, N.A., account number ending -8748 (the "**Wells Fargo Account**") as of the Petition Date.[8]

H.   **Findings Regarding Postpetition Financing and Use of Cash Collateral.**

(i)   *Request for Postpetition Financing and Use of Cash Collateral.*   The Debtor seeks authority to (a) obtain the DIP Loan and incur the DIP Obligations on the terms described herein and in the DIP Loan Documents and (b) use Cash Collateral  on the terms described herein and in accordance with the Budget, including any Permitted Variances, or as otherwise permitted by this Interim Order or the DIP Loan Agreement, in each case, to administer its Chapter 11 Case and fund its operations.  At the Final Hearing, the Debtor will seek final approval of the DIP Loan and use of Cash Collateral pursuant to the Final Order.

(ii)   *No Priming of Prepetition Secured Party Liens.*   The DIP Liens (as defined herein) are junior to the Prepetition Secured Party Liens on the Prepetition Secured Party Collateral.

(iii)   *Senior DIP Liens.*   Subject to entry of the Final Order as provided for herein and the Permitted Encumbrances, the senior lien granted to the DIP Lender under sections 364(c) and 364(d) of the Bankruptcy Code, as contemplated by the DIP Loan Documents and as provided herein against all assets of the Debtor other than the Prepetition Secured Party Collateral, will enable the Debtor to obtain the DIP Loan and to continue to maintain and preserve its assets during the pendency of the Chapter 11 Case, to the benefit of its estate and creditors without the need of providing adequate protection.

---

[8]   As a result of the Debtor's recent opening of the Wells Fargo Account, the Prepetition Secured Party Lien is not perfected in the amounts on deposit in the Wells Fargo Account.

(iv)    *Need for Postpetition Financing and Use of Cash Collateral.* The Debtor has demonstrated an immediate need to use Cash Collateral on an interim basis and to obtain credit in an amount equal to the Interim Amount pursuant to the DIP Loan in order to, among other things, preserve the value of the Debtor's assets and enhance the Debtor's prospects of realizing its chapter 11 objectives, administer the Chapter 11 Case, and preserve the value of its estate. The Debtor does not have sufficient available sources of working capital and financing to maintain its assets until the Final Order is entered without the authorization to use Cash Collateral and to borrow the Interim Amount, the absence of either of which would immediately and irreparably harm the Debtor, its estate, creditors and equity holders, and the possibility for maximizing the value of its assets.

(v)    *Use of Proceeds of DIP Loan.* The Debtor will use funds advanced by the DIP Lender in accordance with a Budget for the purposes set forth in the DIP Loan Documents.

(vi)    *No Credit Available On Other Terms.* The DIP Loan is the best source of debtor-in-possession financing reasonably available to the Debtor. The Debtor has been unable, in the ordinary course of business or otherwise, to obtain (1) unsecured credit allowable pursuant to Bankruptcy Code section 503(b)(1) as an administrative expense, in an amount necessary for the maintenance and preservation of its assets and administration of the Chapter 11 Case, or (2) secured indebtedness pursuant to Bankruptcy Code section 364(c) on more advantageous terms than those offered by the DIP Lender pursuant to the terms of this Order. Financing on a postpetition basis on better terms is not available without granting the DIP Lender (1) perfected security interests in and liens on (each as provided herein) the DIP Collateral, with the priorities set forth herein; (2) superpriority claims; and (3) the other protections set forth in this Interim Order. Further, the Prepetition Secured Party has not consented to the priming of the Prepetition

12

Secured Party Liens. The DIP Lender shall have no obligation to make loans or advances under the DIP Loan except to the extent required under the DIP Loan Credit Agreement and no obligation to waive any conditions required thereunder.

> (vii)    *Use of Cash Collateral and Proceeds of the DIP Loan.* As a condition and in accordance with the Budget,[9] including any Permitted Variances, or as otherwise permitted by this Order or the DIP Loan Agreement, the Debtor shall be permitted to use Cash Collateral and proceeds of the DIP Loan for general corporate purposes, including (a) ongoing working capital needs of the Debtor; (b) permitted payment of costs of administration of the Chapter 11 Case, including restructuring charges arising on account of the Chapter 11 Case, including statutory fees of the U.S. Trustee and allowed professional fees and expenses of the Debtor's professionals and professionals retained by a Committee (if any), subject to the Investigation Budget Amount (as defined below); (c) payment of such prepetition expenses as permitted by an order of this Court pursuant to orders in form and substance reasonably satisfactory to the DIP Lender; (d) payment of interest, premiums, fees, expenses, and other amounts (including, without limitation, legal and other professionals' fees and expenses of the DIP Lender) owed under the DIP Loan Documents, including those incurred in connection with the preparation, negotiation, documentation, and Court approval of the DIP Loan; (e) payment of obligations arising from or related to the Carve-Out (as defined below), and making disbursements therefrom, including by funding the Professional Fee Escrow (as defined below); provided that, for the avoidance of doubt, and notwithstanding anything herein or in the DIP Loan Documents (including the DIP Loan Agreement) to the contrary, in no instance shall the Debtor's use of DIP Collateral (including Cash Collateral) be used, directly or indirectly, to (i)

---

[9]      A copy of the initial Budget is attached hereto as **Schedule 1**.

finance or make any distribution to the equity holders of the Debtor on account of such holders' equity interests or (ii) pay any fees or expenses incurred in connection with the initiation or prosecution or any claims, causes of action or other litigation against the DIP Lender or the Prepetition Secured Party or in connection with invalidating, disallowing, recharacterizing, setting aside, avoiding, subordinating, in whole or in part, or taking or attempting to take any other action to render unenforceable the liens, claims or interests of DIP Lender or Prepetition Secured Party; provided, that the prohibition set forth in clause (ii) shall not apply to any action of the Debtor to determine the value of the Prepetition Secured Party Collateral as of the Petition Date.  Nothing herein shall in any way prejudice or prevent the DIP Lender or Prepetition Secured Party from objecting to any request, motion or application in the Chapter 11 Case, including applications for compensation for services rendered or reimbursement of expenses.

(viii)  *Application of Proceeds of DIP Collateral.* As a condition to entry into the DIP Loan Agreement, the extension of credit under the DIP Loan, and authorization to use Cash Collateral, the Debtor, the DIP Lender and the Prepetition Secured Party have agreed that as of and commencing on the date of the Interim Hearing, the Debtor shall apply the proceeds of the DIP Collateral in accordance with this Interim Order.

I.    **Adequate Protection.**  The Prepetition Secured Party is entitled to receive adequate protection solely to the extent of any Diminution in Value of its interests in the Debtor's estate's interests in the Prepetition Secured Party Collateral as of the Petition Date. Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection, subject in all respects to the Carve-Out, the Prepetition Secured Party will receive, solely to the extent of any Diminution of Value of its interest in the Prepetition Secured Party Collateral, Adequate

LEGAL02/40307876v11

Protection Liens (as defined below) and Section 507(b) Adequate Protection Claims (as defined below).

J.     **Sections 506(c) and 552(b).**  In light of (i) the DIP Lender's agreement that its liens and superpriority claims shall be subject to the Carve-Out; (ii) the Prepetition Secured Party's agreement that its liens and claims, including any adequate protection liens and claims, shall be subject to the Carve-Out; and (iii) the DIP Lender's and the Prepetition Secured Party's agreement to the payment (in accordance with the Budget (subject to Permitted Variances (as defined below)) and subject to the terms and conditions of this Interim Order and the DIP Loan Documents) of certain expenses of administration of the Chapter 11 Case, (a) subject to entry of the Final Order, the Prepetition Secured Party is entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code; (b) the DIP Lender and, subject to entry of the Final Order with respect to the Prepetition Secured Party, the Prepetition Secured Party are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code; and (c) the DIP Lender and, subject to entry of the Final Order with respect to the Prepetition Secured Party, the Prepetition Secured Party are each entitled to a waiver of the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral and the Prepetition Collateral, respectively.

K.     **Good Faith of the DIP Lender and the Prepetition Secured Party.**  Based upon the pleadings and proceedings of record in the Chapter 11 Case, (a) the extensions of credit under the DIP Loan are fair and reasonable, are appropriate for secured financing to debtors in possession, are the best available to the Debtor under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with the Debtor's fiduciary duties, and are supported by reasonably equivalent value and fair consideration; (b) the terms and conditions of

15

the DIP Loan and the use of Cash Collateral have been negotiated in good faith and at arm's length among the Debtor, the DIP Lender, and the Prepetition Secured Party, with the assistance and counsel of their respective advisors; (c) the use of Cash Collateral, including, without limitation, pursuant to this Interim Order, has been allowed in "good faith" within the meaning of section 364(e) of the Bankruptcy Code; (d) any credit to be extended, loans to be made, and other financial accommodations to be extended to the Debtor by the DIP Lender including, without limitation, pursuant to this Interim Order, have been allowed, advanced, extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code by the DIP Lender and the Prepetition Secured Party in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code; and (e) the DIP Loan, the DIP Liens, the DIP Superpriority Claims (as defined below), the Adequate Protection Liens, and the Section 507(b) Adequate Protection Claims (as defined below) shall be entitled to the maximum protection available under section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

L.    **Immediate Entry.**  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) and Local Rule 4001-2(b).   The Motion and this Interim Order comply with Local Rule 4001-2.

Based upon the foregoing findings and conclusions, and upon the record made before this Court by the Debtor at the Interim Hearing and otherwise, and after due consideration and good and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED** that:

1.    DIP Loan Approved on Interim Basis.  The Motion is granted on an interim basis, as set forth herein.  The DIP Loan, in an amount equal to the Interim Amount, is hereby

LEGAL02/40307876v11

authorized and approved to the extent set forth herein, and the use of Cash Collateral on an interim basis is authorized, in each case subject to the terms and conditions set forth in the DIP Loan Documents and this Interim Order.  All objections to the interim relief sought in the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits, provided that objections to final relief sought in the Motion are preserved as stated on the record and as set forth in this Order.  To the extent any provision in this Interim Order conflicts with any provisions of the DIP Loan Documents, the provisions of this Interim Order shall control and govern to the extent of such conflict.  This Interim Order shall become effective immediately upon its entry.

2.     <u>Authorization of the DIP Loan</u>.  The DIP Loan is hereby approved to the extent set forth herein.  The Debtor is expressly authorized and empowered to execute and deliver, to the DIP Lender, the DIP Loan Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents and to deliver all instruments, certificates, agreements, and documents that may be required or necessary for the performance by the Debtor under the DIP Loan and the creation and perfection of the DIP Liens.  The Debtor is hereby authorized to pay, in accordance with this Interim Order, the expenses described in the DIP Loan Documents, as such amounts become due and payable, without need to obtain further Court approval, whether or not such fees arose before or after the Petition Date, and to take any other actions that may be necessary or appropriate, all to the extent provided in this Interim Order or the DIP Loan Documents.  Upon execution and delivery, the DIP Loan Documents and the DIP Obligations shall represent valid and binding obligations of the Debtor, enforceable against the Debtor and its estate in accordance with their terms.

17

3.    <u>Authorization to Borrow</u>. To prevent immediate and irreparable harm to the Debtor's estate, from the entry of this Interim Order through and including the earliest to occur of (i) entry of the Final Order or (ii) the DIP Termination Date (as defined below), subject to the terms, conditions, and limitations of the DIP Loan Documents, the Debtor is hereby authorized to request loans under the DIP Loan an amount equal to the aggregate outstanding principal Interim Amount of $3,000,000, subject to further borrowing requests as may be authorized at the Final Hearing and in a Final Order. The DIP Lender shall have no obligation to make loans or advances under the DIP Loan until the conditions precedent to the closing and the making of such extensions under the DIP Loan Documents have been satisfied in full or waived.

4.    <u>Use of Proceeds of DIP Loan</u>. From and after the Petition Date, the Debtor shall use proceeds of borrowings under the DIP Loan as permitted by this Interim Order, the DIP Loan Documents, or any Budget (including any variances therefrom permitted by the DIP Loan Agreement (the "**Permitted Variances**")).

5.    <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, and in accordance with the Budget (subject to Permitted Variances), the Debtor is authorized to use Cash Collateral until the DIP Termination Date; provided, however, that during the Remedies Notice Period (as defined below), the Debtor may use Cash Collateral (x) in accordance with any Budget then in effect and to otherwise satisfy obligations benefitting from the Carve-Out and (y) as otherwise agreed by the DIP Lender. For the avoidance of doubt, nothing in this Interim Order shall authorize the disposition by the Debtor of any assets of its estate outside the ordinary course of business (which shall be subject to further orders of this Court), or in any manner not permitted under the DIP Loan

18

Agreement or Prepetition Loan Agreement, except as permitted in this Interim Order and the DIP Loan Documents.

6.  **DIP Loan Documents**.  The DIP Loan Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if the amendment, modification, or supplement, is (a) non-material and (b) in accordance with the DIP Loan Documents.  In the case of a material amendment, modification, or supplement to the DIP Loan Documents, the Debtor shall (i) provide notice (which may be provided through electronic mail or facsimile) to counsel to any Committee (if appointed), the U.S. Trustee, the DIP Lender, and the Prepetition Secured Party; (ii) provide notice to the Court; and (iii) obtain approval of the Court.  In the case of a non-material amendment, modification, or supplement to the DIP Loan Documents, the Debtor shall file a copy thereof with the Court.

7.  **DIP Obligations**.  The DIP Loan Documents and this Interim Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which shall be enforceable against the Debtor, the Debtor's estate and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Chapter 11 Case or in any case under chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Case**").  No obligation, payment, transfer, or grant of a security or other interest to the DIP Lender under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, set-off, recoupment, or counterclaim.  Upon entry of this Interim Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may

19

now or from time to time be owing by the Debtor to the DIP Lender, in each case, under the DIP Loan Documents or this Interim Order or secured by the DIP Liens), including, without limitation, all principal, accrued and unpaid interest, costs, expenses, and other amounts owing under the DIP Loan Documents. The DIP Obligations shall be due and payable, and the use of Cash Collateral shall automatically cease, in each case, without notice or demand on the DIP Termination Date, except as otherwise provided herein and subject to the Carve-Out (as defined below) in all respects.

8. <u>DIP Liens</u>. Subject and subordinate in all respects to the Carve-Out and the Permitted Encumbrances, and effective immediately upon entry of this Interim Order, nunc pro tunc to the Petition Date, pursuant to sections 361, 362, 364(c)(2), and 364(c)(3) of the Bankruptcy Code, and without the necessity of the execution by the Debtor (or recordation or other filing or notice) of security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules or other similar documents, or the possession or control by the DIP Lender of any DIP Collateral, the DIP Lender is hereby granted, in order to secure the DIP Obligations, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens (collectively, the "**DIP Liens**") on all real and personal property, whether now existing or hereafter arising and wherever located, tangible or intangible, of the Debtor (the "**DIP Collateral**"), including, without limitation (a) all cash, cash equivalents, deposit accounts, securities accounts, reserves, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property, hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents,

LEGAL02/40307876v11

license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, fee interests in real property owned by the Debtor, books and records related to the foregoing, and accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, including any deposit account, reserve account or escrow account into which the proceeds of the DIP Loan are deposited and subject to the entry of the Final Order; and (b) all owned real property interests and all proceeds of leased real property (but not the leases themselves); *provided, however,* that the DIP Collateral shall not include the Avoidance Actions or the Avoidance Action Proceeds.

9.    DIP Lien Priority. Subject in all respects to the Carve-Out and the Permitted Encumbrances, the DIP Liens shall have the following priority:

(a)    pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Liens shall encumber on a first priority basis all DIP Collateral that was unencumbered by duly perfected and recorded liens as of the Petition Date or by liens that are perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code;

(b)    pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Liens shall encumber all DIP Collateral on a junior basis solely to the extent such DIP Collateral is subject to the Prepetition Secured Party Liens;

(c)    pursuant to section 364(d) of the Bankruptcy Code, the DIP Liens shall encumber on a first priority basis all DIP Collateral that is subject to purportedly perfected liens that are unrecorded as of the Petition Date;

(d)    other than as set forth herein (including with respect to the Carve-Out) or in the DIP Loan Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien heretofore or hereinafter granted in the Chapter 11 Case or any Successor Case and shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Case or any Successor Case, upon the conversion of the Chapter 11 case to any Successor Case, and/or upon the dismissal of the Chapter 11 Case or Successor Case. The DIP Liens shall not be subject to any of sections 510, 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens. For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP Loan Documents, pending entry of the Final Order, the DIP Liens shall not prime or encumber on a senior basis any DIP Collateral that is the subject of valid, perfected, and enforceable liens as of the Petition Date or liens that are perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code.

10.    DIP Superpriority Claims. Subject and subordinate to the Carve-Out in all respects, upon entry of this Interim Order, the DIP Lender, is hereby granted, to the maximum extent provided by sections 364(c)(1) and 507(b) of the Bankruptcy Code, allowed superpriority administrative expense claims in the Chapter 11 Case and any Successor Case (collectively, the "**DIP Superpriority Claims**") for all DIP Obligations (a) with priority over any and all administrative expense claims and unsecured claims against the Debtor or its estate in the Chapter 11 Case or Successor Case, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c),

546(d), 726, 1113, or 1114 of the Bankruptcy Code or any other provision of the Bankruptcy Code, including the Section 507(b) Adequate Protection Claims and (b) which shall at all times be senior to the rights of the Debtor and its estate, and any successor trustee or other estate representative, to the extent permitted by law; provided, that the DIP Superpriority Claims shall only have recourse to Avoidance Action Proceeds upon entry of the Final Order

11.    <u>Adequate Protection for the Prepetition Secured Party</u>.  The Prepetition Secured Party is entitled, pursuant to sections 361, 362, 363(c)(2), 363(e), 503, and 507 of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Secured Party Collateral as of the Petition Date to the extent of any Diminution in Value of its interests in the Prepetition Secured Party Collateral (the "**Adequate Protection Obligations**").  As adequate protection, subject to the provisions of paragraphs G(vii) and 27 herein and subject to entry of the Final Order, the Prepetition Secured Party is hereby granted the following:

(a)    *Adequate Protection Liens.*  As security for the payment of the Adequate Protection Obligations, the Prepetition Secured Party is hereby granted (effective and perfected upon the date of this Interim Order *nunc pro tunc* to the Petition Date and without the necessity of the execution by the Debtor of security agreements, pledge agreements, mortgages, financing statements, or other agreements) a valid, binding, enforceable, unavoidable and fully perfected replacement lien on all of the DIP Collateral (the "**Adequate Protection Liens**"), subject and subordinate only to (i) the Carve-Out (as defined below), (ii) the DIP Lien, and (iii) any valid, binding, enforceable, unavoidable, recorded, and duly perfected liens that are senior to the DIP Liens.  Other than as set forth herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Case or any Successor Case.  The Adequate Protection Liens shall be valid and enforceable

23

against any trustee or other estate representative appointed in the Chapter 11 Case or any Successor Case, upon the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Chapter 11 Case or any Successor Case.

(b)    *Section 507(b) Adequate Protection Claims.*    The Adequate Protection Obligations shall constitute priority claims as provided in section 507(b) of the Bankruptcy Code (the **"Section 507(b) Adequate Protection Claims"),** with priority in payment to the fullest extent provided by section 507(b) of the Bankruptcy Code, subject and subordinate to (i) the Carve-Out (as defined below), (ii) the DIP Lien, and (iii) the DIP Superpriority Claims granted in respect of the DIP Obligations; provided that the Section 507(b) Adequate Protection Claims shall only have recourse to Avoidance Action Proceeds upon entry of the Final Order. Except to the extent expressly set forth in this Interim Order, the Prepetition Secured Party shall not receive or retain any payments, property, or other amounts in respect of the Section 507(b) Adequate Protection Claims unless and until the Carve-Out (as defined below) is funded. Notwithstanding their status as Section 507(b) Adequate Protection Claims, the Adequate Protection Obligations may be satisfied in any manner set forth in any plan confirmed in the Chapter 11 Case if the Prepetition Secured Party consents to such treatment, which shall include the class of the Prepetition Secured Party voting to accept such plan.

12.    Budget. The Debtor shall use the proceeds of all borrowings under the DIP Loan and Cash Collateral in accordance with the Budget (including any Permitted Variances) or as otherwise permitted by the DIP Loan Documents and this Interim Order; provided that, for the avoidance of doubt, the Debtor's authorization to use proceeds of the DIP Loan, DIP Collateral, and Cash Collateral to satisfy obligations benefitting from the Carve-Out shall in no way be

LEGAL02/40307876v11

subject to the Budget except as set forth by the Carve-Out. The six-month Budget annexed hereto as **Schedule 1** shall constitute the initial Budget. The Debtor may, as necessary, provide to the DIP Lender and the Prepetition Secured Party, including each of their counsel and advisors, an updated Budget reflecting the Debtor's anticipated cash receipts and disbursements (a "**Proposed Budget**"), which Proposed Budget shall modify and supersede any prior Budget upon the approval of the DIP Lender in its reasonable discretion (such approval not to be unreasonably withheld). Until the DIP Lender approves the Proposed Budget in its reasonable discretion (such approval not to be unreasonably withheld), the then-current Budget shall remain the Budget, and the DIP Lender shall have no obligation to fund such Proposed Budget. Each Budget delivered to the DIP Lender and the Prepetition Secured Party, including each of their counsel and advisors shall be accompanied by such supporting documentation as reasonably requested by the Prepetition Secured Party and the DIP Lender, and each Budget shall be prepared in good faith based upon assumptions the Debtor believes to be reasonable. A copy of the Budget shall be delivered to the legal and financial advisors of the Committee (if appointed) and the U.S. Trustee following such Budget's approval. In addition, as provided for in the DIP Loan Agreement, the Debtor and its advisors shall host update calls and provide the DIP Lender and Prepetition Secured Party with reasonable status reports relative to the Chapter 11 Case and related developments.

13.    <u>Modification of the Automatic Stay</u>. The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to (a) permit the Debtor to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims, and Section 507(b) Adequate Protection Claims; (b) permit the Debtor to perform such acts as the DIP Lender and

25

the Prepetition Secured Party each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtor to incur all liabilities and obligations to the DIP Lender and Prepetition Secured Party under the DIP Loan Documents, the DIP Loan , and this Interim Order, as applicable; and (d) authorize the Debtor to pay, and the DIP Lender to retain and apply, payments made in accordance with the terms of this Interim Order.

14.    Perfection of DIP Liens and Adequate Protection Liens.  This Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens or the Adequate Protection Liens or to entitle the DIP Lender and the Prepetition Secured Party to the priorities granted herein.  Notwithstanding the foregoing, each of the DIP Lender and the Prepetition Secured Party is authorized to file or record, as it in its sole discretion deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect its respective liens in accordance with applicable non-bankruptcy law, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens.  The Debtor is authorized to execute and deliver, promptly upon demand to the DIP Lender and the Prepetition Secured Party, all such financing statements, mortgages, notices, and

26

other documents as the DIP Lender or the Prepetition Secured Party, as applicable, may reasonably request. Each of the DIP Lender and the Prepetition Secured Party, in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument, and all applicable officials are hereby authorized to accept a photocopy of this Interim Order for filing or recordation for such purpose. To the extent the Prepetition Secured Party is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other Prepetition Loan Documents or is listed as loss payee or additional insured under any of the Debtor's insurance policies, the DIP Lender shall also be deemed to be the secured party or the loss payee or additional insured, as applicable, under such documents. The Prepetition Secured Party shall serve as agent for the DIP Lender for purposes of perfecting the DIP Liens on all DIP Collateral that is of a type such that, without giving effect to the Bankruptcy Code and this Interim Order, perfection of a lien thereon may be accomplished only by possession or control by a secured party; provided, that such service shall not impose any obligations on the Prepetition Secured Party other than those set forth in the Prepetition Loan Documents.

15.    Credit Bidding.    Subject to entry of the Final Order, the DIP Lender and Prepetition Secured Party may, in accordance with the terms of the DIP Loan Agreement or Prepetition Loan Agreement, as applicable, credit bid up to the full amount of the outstanding DIP Obligations or the Prepetition Loan Obligations, as applicable, in each case including any accrued and unpaid interest, expenses, fees, and other obligations for their respective priority

27

collateral (each such bid, a "**Credit Bid**") pursuant to section 363(k) of the Bankruptcy Code in any sale process authorized by the Court pursuant to section 363, 725, or 1123 of the Bankruptcy Code; *provided, however*, that the foregoing rights to Credit Bid may be limited by the Court as to the Prepetition Secured Party, as necessary if there is a Challenge (as defined herein) pending.

16.    Proceeds of Subsequent Financing. Subject to the Carve-Out in all respects, if the Debtor, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in the Chapter 11 Case or any Successor Case shall obtain credit or incur debt in breach of the DIP Loan Documents at any time prior to the repayment in full of all DIP Obligations without the consent of the DIP Lender, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to the Debtor and the Debtor's estate, then all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender to be applied in accordance with this Interim Order and the DIP Loan Documents until the DIP Loan are repaid in full in cash.

17.    Maintenance of DIP Collateral. Until the indefeasible payment in full of all DIP Obligations, all Prepetition Loan Obligations, and the termination of the DIP Lenders' obligation to extend credit under the DIP Loan, the Debtor shall (a) maintain and insure the DIP Collateral as required under the DIP Loan Documents or the Prepetition Loan Documents, as applicable; (b) maintain the cash management system in effect as of the Petition Date, as modified by any order entered by the Court, which shall be in form and substance reasonably satisfactory to the Prepetition Secured Party and DIP Lender; and (c)(i) use commercially reasonable efforts to maintain accurate records of all transfers within the cash management system so that all postpetition transfers and transactions shall be adequately and promptly

28

documented in, and readily ascertainable from, its books and records, to the same extent maintained by the Debtor before the Petition Date, and (ii) provide reasonable access to such records to the DIP Lender and Prepetition Secured Party and their legal advisors. Other than as expressly required pursuant to the DIP Loan Agreement, the Cash Management Order or this Interim Order, no modifications to the Debtor's cash management system existing as of the Petition Date may be made without the prior approval of the DIP Lender and Prepetition Secured Party (such approval not to be unreasonably withheld).

18.    DIP Termination Date.  On the DIP Termination Date, but subject in all respects to the Carve-Out, (a) the DIP Lender is authorized to cause all DIP Obligations to become immediately due and payable and to reduce, restrict or terminate all commitments to extend credit under the DIP Loan; (b) all authority to use Cash Collateral shall cease, provided, however, that during the Remedies Notice Period (as defined below), the Debtor may use Cash Collateral in accordance with any Budget then in effect and otherwise to satisfy obligations benefitting from the Carve-Out; and (c) the Prepetition Secured Party and the DIP Lender are authorized to otherwise exercise rights and remedies under the DIP Loan Documents in accordance with this Interim Order.

19.    Events of Default.    The occurrence of any of the following events, unless waived by the DIP Lender in writing and in accordance with the terms of the DIP Loan Agreement, shall constitute an event of default (collectively, the "**Events of Default**") under this Interim Order and the DIP Loan Agreement: (a) the failure of the Debtor to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order, and in each case such failure has not been cured within five (5) days of the occurrence thereof, or (b) the occurrence of an "Event of Default" as defined in the DIP Credit Agreement.

20.    <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order of the Court, but subject to the terms of this Interim Order, the DIP Lender may declare (a) all outstanding DIP Obligations to be immediately due and payable; (b) the termination of any further commitment to extend credit to the Debtor to the extent any such commitment remains under the DIP Loan; and/or (c) the termination of the DIP Loan and the DIP Loan Documents as to any future liability or obligation of the DIP Lender, without affecting any of the DIP Liens or the DIP Obligations (any such declaration shall be referred to as a **"DIP Termination Declaration"** and the date on which a Termination Declaration is delivered shall be referred to as the **"DIP Termination Date"**).  A DIP Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtor, counsel to a Committee (if appointed), counsel to the Prepetition Secured Party, and the U.S. Trustee.  During the period between delivery of a DIP Termination Declaration and the date that is five (5) business days after the DIP Termination Date (such five (5) business day period, the **"Remedies Notice Period"**), the Debtor shall be entitled to continue to use Cash Collateral in accordance with the Budget and to fund the Carve-Out, and to seek an emergency hearing from the Court to avoid the termination of the automatic stay and, upon and after delivery of the DIP Termination Notice, the DIP Lender is deemed to have consented to such emergency hearing.  Unless the Court orders otherwise, the automatic stay shall automatically be terminated immediately upon earlier to occur of (x) the passage of the Maturity Date or (y) the end of the Remedies Notice Period without further notice or order as to the DIP Lender to permit the DIP Lender to exercise its rights and remedies in accordance with the DIP Loan Documents and this Interim Order,

30

subject in all respects to the Carve-Out.  For the avoidance of doubt, and notwithstanding anything herein to the contrary, the Debtor's rights to seek the use of Cash Collateral on a non-consensual basis upon the occurrence of the DIP Termination Date are fully reserved.

21.    <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and to the maximum extent provided by section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter reversed or modified by a subsequent order of this Court or any other court of competent jurisdiction, the DIP Lender and Prepetition Secured Party are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such reversal or modification shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim, or priority created hereby, unless the incurring of such debt, or the granting of such priority or lien, is stayed pending appeal by court order at the time such obligations were incurred or the liens, claims or priorities were created.  Any liens or claims granted to the DIP Secured Party or the Prepetition Secured Party hereunder arising prior to the effective date of any such reversal or modification of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein, provided that the Interim Order was not stayed by court order at the time the obligations were incurred or the liens, claims or priorities were created.

22.    <u>Payment of Fees and Expenses</u>.  The Debtor is authorized and directed to pay all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the DIP Lender in connection with the DIP Loan, as provided in the DIP Loan Documents, and the transactions contemplated thereby, including attorneys' fees.  For the avoidance of doubt and

notwithstanding anything to the contrary herein or in the DIP Loan Documents, the DIP Obligations shall not include any amounts to reimburse any fees or expenses of the DIP Lender incurred in connection with, or arising from, any litigation concerning, arising from, or related to the Debtor's relationship with Marriott.  Professionals of the DIP Lender shall not be required to comply with the U.S. Trustee fee guidelines or be subject to allowance by the Court; however, any time that such professionals seek payment of fees and expenses from the Debtor, each professional shall provide summary copies of its fee and expense statements or invoices (which shall contain reasonably sufficient detail but shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work-product doctrine) to the U.S. Trustee and counsel to the Committee (if appointed), contemporaneously with the delivery of such fee and expense statements to the Debtor.  Notwithstanding the foregoing, nothing herein shall prevent the U.S. Trustee from requesting additional detail regarding the fees and expenses incurred by the professionals of the DIP Lender and any disputes relating thereto shall be decided by the Court.  After delivery of a fee and expense statement or invoice, the Debtor, the U.S. Trustee, and the Committee (if appointed) shall have ten (10) business days to raise an objection thereto.  If an objection is timely raised, such objection shall be subject to resolution by the Court (absent prior consensual resolution thereof).  Pending such resolution, the undisputed portion of any such fee and expense statement or invoice shall be paid promptly by the Debtor.  No attorney or advisor to the DIP Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.  Such fees and

expenses shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

23.    Professional Fee Account.

(a)    Contemporaneously with the initial funding of the DIP Loan, the Debtor shall (i) transfer cash proceeds from the DIP Loan in an amount equal to the total monthly fees and expenses incurred by persons or firms retained by the Debtor pursuant to sections 327, 328, or 363 of the Bankruptcy Code (such persons or firms, the **"Debtor Professionals"**) and any persons or firms retained by any Committee (the **"Committee Professionals"** and, together with the Debtor Professionals, the **"Professional Persons"** and, such fees and expenses of the Professional Persons, the **"Professional Fees"**) for the first monthly period set forth in the Budget excluding any success or transaction fees and (ii) thereafter on a monthly basis until the receipt of a Carve-Out Trigger Notice (as defined below) transfer cash proceeds from the DIP Loan or cash on hand in an amount equal to the total budgeted monthly Professional Fees set forth in the Budget excluding any success or transaction fees in connection with the DIP Loan, in each case into a trust account of the Debtor's restructuring counsel which is not subject to the control of the DIP Lender or the Prepetition Secured Party (the **"Professional Fees Account"**).

(b)    The Debtor shall cause funds held in the Professional Fees Account to be used to pay Professional Fees as they become allowed and payable pursuant to any interim or final orders of the Court or otherwise; provided that when all allowed Professional Fees have been paid in full (regardless of when such Professional Fees are allowed by the Court), any funds remaining in the Professional Fees Account shall revert to the Prepetition Secured Party to reduce the Prepetition Loan Obligations and, if no such amounts remain outstanding, to the DIP Lender in order to satisfy the DIP Obligations.

33

(c)    Notwithstanding anything herein to the contrary, (i) funds transferred to the Professional Fees Account shall be held in trust exclusively for the Professional Persons, including with respect to obligations arising out of the Carve-Out (as defined below) and (ii) although funds transferred to the Professional Fees Account shall be subject to the liens and claims granted to the DIP Lender and Prepetition Secured Party herein, such liens and claims shall be subordinate to the rights and interests of the Professional Persons.

24.    <u>Carve-Out</u>.

(a)    As used in this Interim Order, the term "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate (without regard to the notice set forth in clause (iv) below); (ii) fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iv) below); (iii) to the extent allowed at any time, whether by interim or final compensation order, all Professional Fees of Professional Persons (collectively, the "**Allowed Professional Fees**") actually incurred by each Professional Person in accordance with the applicable line item in the Budget (on an aggregate basis for each such Professional Person as of such date) before delivery by the DIP Lender of a Carve-Out Trigger Notice (as defined below), plus transaction fees earned by or payable to a Professional Person (including any broker); (iv) Allowed Professional Fees incurred after the first business day following delivery by the DIP Lender of the Carve-Out Trigger Notice in an aggregate amount not to exceed $200,000 with respect to Professional Persons (the amount set forth in this clause (iv) being the "**Post-Carve-Out Trigger Notice Cap**"); and (v) all fees and expenses of Debtor's Independent Manager and his counsel.

(b)    For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender or the Prepetition Secured Party to the Debtor, its restructuring counsel (Pachulski Stang Ziehl & Jones LLP), the U.S. Trustee, and lead counsel to the Committee (if any), which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the obligations under the DIP Loan or the occurrence of the Maturity Date (as defined in the DIP Loan Agreement)), stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(c)    On the day the Carve-Out Trigger Notice is received by the Debtor, such notice shall constitute demand to the Debtor to utilize all cash on hand   to transfer to the Professional Fee Account cash in an amount equal to all obligations benefiting from the Carve-Out.

(d)    For the avoidance of doubt, to the extent that Professional Fees and expenses of the Professional Persons have been incurred by the Debtor in accordance with the Budget before delivery by the DIP Lender or the Prepetition Secured Party of a Carve-Out Trigger Notice but have not yet been allowed by the Court on the date that the DIP Lender or the Prepetition Secured Party delivers a Carve-Out Trigger Notice, such Professional Fees and expenses of the Professional Persons shall constitute Allowed Professional Fees benefiting from the Carve-Out upon their allowance by the Court, whether by interim or final compensation order and whether allowed before or after delivery of the Carve-Out Trigger Notice, and the Debtor shall fund the Professional Fees Account in the amount of such Professional Fees and expenses.

35

(e)    Following delivery of a Carve-Out Trigger Notice, the DIP Lender shall deposit into the Professional Fees Account any cash swept or foreclosed upon by the DIP Lender (including cash received as a result of the sale or other disposition of any assets) on or after delivery of a Carve-Out Trigger Notice until the Professional Fees Account has been fully funded in an amount equal to all obligations benefiting from the Carve-Out, regardless of whether such obligations have been allowed by the Court (pursuant to an interim order, final order, or otherwise) as of such date.  Notwithstanding anything to the contrary herein or in the DIP Loan Documents, following delivery of a Carve-Out Trigger Notice, the DIP Lender shall not sweep or foreclose on cash (including cash received by DIP Lender as a result of the sale or other disposition of any assets) of the Debtor until the Professional Fees Account has been fully funded in an amount equal to all obligations benefiting from the Carve-Out, regardless of whether such obligations have been allowed by the Court (pursuant to an interim order, final order, or otherwise) as of such date. Further, notwithstanding anything to the contrary herein, (i) disbursements by the Debtor from the Professional Fees Account shall not constitute a DIP Loan, (ii) the failure of the Professional Fees Account to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out, and (iii) in no way shall the Carve-Out or the Professional Fees Account be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtor or that may be allowed by the Court at any time (whether by interim order, final order, or otherwise).

(f)    For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP Loan Documents, the Carve-Out shall be senior to the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Section 507(b) Adequate Protection Claims, the Prepetition Secured Party Liens, the Prepetition Loan Obligations, and any and all

other liens and claims granted in favor of the DIP Loan or in favor of the Prepetition Secured Party.

25.    <u>No Direct Responsibility for Fees or Disbursements</u>.  Subject only to any of the DIP Lender's or Prepetition Secured Party's obligations with respect to the Carve-Out and the Professional Fees Account, neither of the DIP Lender or the Prepetition Secured Party shall be (i) responsible for the direct payment or reimbursement of any fees or disbursements of any Professional Persons incurred in connection with the Chapter 11 Case or any Successor Case, or (ii) obligated in any way to compensate, or to reimburse expenses of, any Professional Persons or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

26.    <u>Limitations on Use of DIP Proceeds, Cash Collateral, and Carve-Out</u>.  No proceeds of the DIP Loan, the DIP Collateral, or the Prepetition Secured Party Collateral, in each case, including Cash Collateral, and no portion of the Carve-Out or Professional Fees Account may be used in connection with (a) objecting to, contesting, preventing, hindering, or delaying any of the DIP Lender's rights, remedies, claims, defenses, or realization upon any of the DIP Collateral or enforcement of any of its respective rights thereto; (b) objecting to, contesting, preventing, hindering, or delaying any of the Prepetition Secured Party's  rights, remedies, claims, defenses, or realization upon any of the Prepetition Secured Party Collateral or enforcement of any of its respective rights thereto; any purpose that is prohibited under this Interim Order, the Final Order (when entered), the DIP Loan Documents, the Prepetition Loan Documents, or the Bankruptcy Code; (d) prosecuting or financing in any way any adversary action, suit, arbitration, proceeding, application, motion, or other litigation of any type adverse to the interests of any or all of the DIP Lender, the Prepetition Secured Party, any of their

LEGAL02/40307876v11

respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees, or their respective rights and remedies under DIP Loan Documents, the Interim Order, the Final Order (when entered), or the Prepetition Loan Documents, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, section 724(a) of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or applicable state law equivalents; (e) the payment of fees, expenses, interest, or principal under the Prepetition Loan Documents (in each case, other than payments on account of the Adequate Protection Obligations); (f) except as permitted by the Budget (including Permitted Variances), making any payment in settlement of any claim, action, or proceeding in excess of $100,000 in the aggregate without the prior written consent of the DIP Lender and the Prepetition Secured Party; (g) incurring Indebtedness (as defined in the DIP Loan Agreement), without the consent of the DIP Lender and the Prepetition Secured Party; (h) seeking to amend or modify any of the rights granted to the DIP Lender or the Prepetition Secured Party under this Interim Order, the DIP Loan Documents, or the Prepetition Loan Documents; (i) seeking to subordinate, recharacterize, disallow, or avoid the DIP Obligations or the Prepetition Loan Obligations; (j) seeking to prevent the DIP Lender or the Prepetition Secured Party from credit bidding in connection with any proposed plan of reorganization or liquidation or any proposed transaction pursuant to section 363 of the Bankruptcy Code; (k) using Cash Collateral while the DIP Obligations and/or any of the DIP Secured Party's commitments under the DIP Loan Documents remain outstanding following an Event of Default under the DIP Loan Documents, without the consent of the DIP Lender or pursuant to an order of the Court; (l) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the DIP Lender or the Prepetition Secured Party; (m) prosecuting an objection to, contest in any manner, or raise any defenses to, the validity, extent,

LEGAL02/40307876v11

amount, perfection, priority, or enforceability of, or seek equitable relief from, any of the DIP

Obligations, the DIP Liens, the Prepetition Loan Obligations, the Prepetition Liens, or any other

rights or interests of the DIP Lender or the Prepetition Secured Party; or (n) subject to entry of

the Final Order, satisfying fees or expenses incurred by a Committee (if appointed) in excess of

$10,000 in the aggregate (the **"Investigation Budget Amount"**) in investigating (but not

prosecuting or challenging) the validity, enforceability, perfection, priority, or extent of the

Prepetition Secured Party Liens or any other basis to assert a Challenge (as defined below) (the

**"Investigation"**) before the Challenge Deadline (as defined below); provided further that the

foregoing shall not be deemed to limit the priority of the Carve-Out.

     27.    <u>Effect of Debtor's Stipulation on Third Parties.</u>

     (a)   *Generally.*  The Debtor's Stipulations set forth in paragraph G of this

Order shall be binding on the Debtor or any other estate representative appointed in the Chapter

11 Case or any Successor Case.  The Stipulations shall also be binding on all creditors, any

trustee, and other parties in interest and all of their respective successors and assigns, including,

without limitation, a Committee (if appointed), unless, and solely to the extent that, a party in

interest with standing and requisite authority (i) has timely commenced an appropriate

proceeding or contested matter required under the Bankruptcy Code and Bankruptcy Rules,

including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each

case subject to the limitations set forth in this paragraph 27) challenging any of the Stipulations

(each such proceeding or contested matter, a **"Challenge"**) by no later than (a) for a Committee

(if appointed), sixty (60) days from its formation or (b) for all other parties in interest (excluding

the Debtor), seventy-five (75) days following the entry of the Interim Order (the **"Challenge**

**Deadline"**), as such deadline may be extended in writing from time to time in the sole discretion

of Prepetition Secured Party. Notwithstanding the foregoing, if a chapter 7 or chapter 11 trustee is appointed in this case prior to the Challenge Deadline, such trustee shall have until the later of the Challenge Deadline or ten (10) business days after his or her appointment to assert a Challenge, which deadline may be further extended in writing from time to time in the sole discretion of Prepetition Secured Party.

(b)    *Binding Effect.* To the extent no Challenge is timely and properly commenced by the Challenge Deadline, the Stipulations shall, pursuant to this Interim Order, become irrevocably binding on any person, entity, or party in interest in the Chapter 11 Case, as well as their successors and assigns, and in any Successor Case for all purposes and shall not be subject to further challenge or objection. Notwithstanding anything to the contrary herein, if any Challenge is properly and timely commenced by a party in interest, the Stipulations shall nonetheless remain binding on all other parties in interest.

28.    <u>No Third-Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

29.    <u>Section 506(c) Claims</u>. Subject to entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration that have been or may be incurred in the Chapter 11 Case at any time shall be charged against the DIP Lender or the Prepetition Secured Party, the DIP Collateral, or the Prepetition Secured Party Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Lender or the Prepetition Secured Party, as applicable, and no such consent shall be implied from any action, inaction, or acquiescence by any party.

40

30.    <u>No Marshaling/Applications of Proceeds</u>.  Subject to entry of the Final Order, neither the DIP Lender nor the Prepetition Secured Party shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Secured Party Collateral.

31.    <u>Section 552(b)</u>.  Subject to entry of the Final Order, the Prepetition Secured Party shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception thereunder shall not apply to the Prepetition Secured Party.

32.    <u>Limits on Lender Liability</u>.  Nothing in this Interim Order, any of the DIP Loan Documents, or any other documents related thereto, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or, subject to entry of the Final Order, the Prepetition Secured Party of any liability for any claims arising from any activities by the Debtor in the operation, management or preservation of its business or in connection with the administration of the Chapter 11 Case or any Successor Case.  The DIP Lender and, subject to entry of the Final Order, the Prepetition Secured Party shall not be deemed in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.,* as amended, or any similar federal or state statute).  Nothing in this Interim Order or the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or, subject to entry of the Final Order, the Prepetition Secured Party of any liability for any claims arising from the prepetition or postpetition activities of the Debtor.

41

33.    <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, subject to the Prepetition Loan Documents: (a) the DIP Lender's and Prepetition Secured Party's rights to seek any other or supplemental relief; (b) any of the rights of the DIP Lender and/or the Prepetition Secured Party under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay imposed by section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11 Case or Successor Case, conversion of the Chapter 11 Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender or Prepetition Secured Party.  Nothing contained herein shall be deemed to be a finding by this Court or an acknowledgement by the Prepetition Secured Party that the adequate protection granted herein does in fact adequately protect the Prepetition Secured Party against any post-petition diminution in value of the Prepetition Secured Party Collateral.

34.    <u>Binding Effect of Interim Order</u>. Immediately upon entry on the docket of this Court, the terms and provisions of this Interim Order shall become binding upon the Debtor, the DIP Lender, the Prepetition Secured Party, all other creditors of the Debtor, any Committee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Case, any Successor Case, or upon dismissal of any Chapter 11 Case or Successor Case.

35.    <u>No Modification of Interim Order</u>.    Until and unless the DIP Repayment occurs (such payment being without prejudice to any terms or provisions contained in the DIP Loan

42

which survive such discharge by its terms) and all commitments to extend credit under the DIP

Loan have been terminated and the repayment in full of the Prepetition Loan Obligations occurs

(such payment being without prejudice to any terms or provisions contained in the Prepetition

Loan Documents which survive such discharge by their terms), it shall be an Event of Default if

the Debtor files a pleading with the Bankruptcy Court seeking (i) to modify, stay, vacate, or

amend this Interim Order without the prior written consent of the DIP Lender and Prepetition

Secured Party, (ii) a priority claim for any administrative expense or unsecured claim against

the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including,

without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or

507(b) of the Bankruptcy Code) in the Chapter 11 Case or any Successor Case, equal or

superior to DIP Superpriority Claims, other than the Carve-Out without the prior written

consent of the DIP Lender or Prepetition Secured Party; (iii) a priority claim for any

administrative expense or unsecured claim against the Debtor (now existing or hereafter arising

of any kind or nature whatsoever, including, without limitation any administrative expense of

the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the Chapter

11 Case or any Successor Case, equal or superior to the 507(b) Adequate Protection Claims,

other than the Carve-Out and the DIP Superpriority Claims without the prior written consent of

the Prepetition Secured Party and the DIP Lender; (iv) any order allowing use of Cash

Collateral other than this Interim Order and the Final Order without the prior written consent of

the Prepetition Secured Party and DIP Lender; (v) any lien on any of the DIP Collateral with

priority equal or superior to the DIP Liens or the Adequate Protection Lien (other than the DIP

Lien) without the prior written consent of the DUP Lender and Prepetition Secured Party; (vi)

any lien on any of the Prepetition Secured Party Collateral with priority equal to or superior to

the Adequate Protection Lien (other than the DIP Liens and the Carve-Out) without the prior

written consent of the Prepetition Secured Party, and in each case, no such consent shall be

implied by any action or inaction of the DIP Lender or the Prepetition Secured Party.

36.   Interim Order Controls. In the event of any inconsistency between the terms and

conditions of the DIP Loan Documents and this Interim Order, the provisions of this Interim

Order shall control.

37.   Discharge. Subject to entry of the Final Order, the DIP Obligations and, except as

otherwise provided by Paragraph 11(b) hereof, Debtor's obligations with respect to the

adequate protection provided herein shall not be discharged by the entry of an order confirming

any plan of reorganization or liquidation of the Chapter 11 Case, notwithstanding the provisions

of section 1141(d) of the Bankruptcy Code, unless a DIP Repayment occurs on or before the

effective date of such plan of reorganization or liquidation, or the DIP Lender and Prepetition

Secured Party, as applicable, have otherwise agreed in writing.  It shall be an Event of Default

if the Debtor shall file any plan of reorganization or liquidation that is not conditioned upon the

occurrence of a DIP Repayment and the payment of the Debtor's obligations with respect to the

adequate protection in full in cash within a commercially reasonable period of time (and in no

event later than the effective date of such plan of reorganization or sale) (a **"Prohibited Plan or

Sale"**), without the written consent of each of the DIP Lender and the Prepetition Secured

Party, as applicable.

38.   Survival.  The provisions of this Interim Order and any actions taken pursuant

hereto shall survive entry of any order which may be entered: (a) confirming any plan of

reorganization in the Chapter 11 Case; (b) converting the Chapter 11 Case to a case under

chapter 7 of the Bankruptcy Code; (c) dismissing the Chapter 11 Case or any Successor Case;

44

or (d) pursuant to which this Court abstains from hearing the Chapter 11 Case or any Successor

Case. The terms and provisions of this Interim Order shall continue in the Chapter 11 Case, in

any Successor Case, or following dismissal of the Chapter 11 Case or any Successor Case

notwithstanding the entry of any orders described in clauses (a)-(d) above, and all claims, liens,

security interests, and other protections granted to the DIP Lender or the Prepetition Secured

Party pursuant to this Interim Order and/or the DIP Loan Documents shall maintain their

validity and priority as provided by this Interim Order until: (i) in respect of the DIP Loan, all

the DIP Obligations have been indefeasibly paid in full in cash (other than contingent

indemnification obligations for which no claim has been asserted) and (ii) in respect of the

Prepetition Loan Agreement, all of the Prepetition Loan Obligations have been indefeasibly

paid in full in cash (other than contingent indemnification obligations for which no claim has

been asserted).

     39.   <u>Payments Held in Trust</u>. Except as expressly permitted in this Interim Order or

the DIP Loan Agreement, and subject to the Carve-Out, in the event that any person or entity

receives any payment on account of a security interest in DIP Collateral, receives any DIP

Collateral or any proceeds of DIP Collateral, or receives any other payment with respect thereto

from any other source prior to all DIP Obligations in accordance with the DIP Loan Agreement,

the DIP Lender reserves its rights to assert that such person or entity shall be deemed to have

received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit

of the DIP Lender and shall immediately turn over such proceeds to the Debtor, or as otherwise

instructed by this Court, subject to the terms of the DIP Loan Agreement and this Interim

Order.

40.    <u>Proofs of Claim</u>.  Any order entered by the Court establishing a bar date for any claims (including without limitation administrative claims) in the Chapter 11 Case or any Successor Case shall not apply to the DIP Lender or the Prepetition Secured Party.  The DIP Lender and the Prepetition Secured Party shall not be required to file proofs of claim or requests for approval of administrative expenses authorized by this Interim Order in the Chapter 11 Case or any Successor Case, and the provisions of this Interim Order, and, upon the entry thereof, the Final Order, relating to the amount of the DIP Obligations and the Prepetition Loan Obligations shall constitute a timely filed proof of claim and/or administrative expense request.

41.    <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

42.    <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order and final approval of the DIP Loan is scheduled for **February 9, 2021, at 10:00 a.m. (ET)** before the Honorable John T. Dorsey, United States Bankruptcy Judge at the United States Bankruptcy Court for the District of Delaware.  Within two (2) business days hereof, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the **"Final Hearing Notice"**), together with copies of this Interim Order and the Motion, on the appropriate notice parties.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on **February 2, 2021, at 4:00 p.m. (EST)**, which objections shall be served so as to be received on or before such date by: (i) proposed counsel to the Debtor, Pachulski, Stang, Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801 (attn: Laura Davis Jones (ljones@pszjlaw.com)); (ii) counsel to the DIP Lender, (x) Alston & Bird LLP (attn: David Wender (david.wender@alston.com),

46

Grant Stein (grant.stein@alston.com)) and (y) Klehr Harrison Harvey Branzburg LLP (attn: Dominic E. Pacitti (dpacitti@klehr.com)); (iii) counsel to the Committee (if appointed); and (iv) the U.S. Trustee.

43.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce the terms of, and any and all matters arising from or related to, the DIP Loan and/or this Interim Order.

_John T. Dorsey_
JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE

**Dated: January 14th, 2021**
**Wilmington, Delaware**

LEGAL02/40307876v11

## **Schedule 1**

Budget

**Wardman Hotel Owner, L.L.C.**
**DIP Budget**

*Actual / Forecast -->*
*Starting Date -->*
*Ending Date -->*

| | Petition Bdgt 1/14/2021 1/23/2021 | Post Bdgt 1/24/2021 1/30/2021 | Post Bdgt 2/1/2021 2/14/2021 | Post Bdgt 2/15/2021 2/28/2021 | Post Bdgt 3/1/2021 3/14/2021 | Post Bdgt 3/15/2021 3/31/2021 | Post Bdgt 4/1/2021 4/14/2021 | Post Bdgt 4/15/2021 4/30/2021 | Post Bdgt 5/1/2021 5/15/2021 | Post Bdgt 5/16/2021 5/31/2021 | Post Bdgt 6/1/2021 6/14/2021 | Post Bdgt 6/16/2021 6/30/2021 | Post Bdgt 7/1/2021 7/15/2021 | Bdgt 7/1/2021 7/15/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Receipts** | | | | | | | | | | | | | | |
| Hotel Operating Revenue | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Receipts** | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Custodial Mgmt Fee - Engineering Services | (160,000) | | (37,500) | | (135,000) | | (135,000) | | (132,500) | | (130,000) | | | (730,000) |
| Custodial Mgmt Fee - Security & Acct. | (110,000) | | (40,000) | | (110,000) | | (110,000) | | (110,000) | | (110,000) | | | (590,000) |
| Utility | (65,000) | (65,000) | (65,000) | (65,000) | (65,000) | (65,000) | (65,000) | (65,000) | (65,000) | (65,000) | (65,000) | | | (84,000) |
| Locksmith | (25,000) | | | | | | | | | | | | | (25,000) |
| IT Consultant | (40,000) | | (40,000) | | (20,000) | | (40,000) | | | | | | | (20,000) |
| Persona Property & FF&E Consultant | | | | | (40,000) | | (40,000) | | | | | | | (80,000) |
| FF&E Consolidation & Moving Expense | | | | | (20,000) | | | | | | | | | (20,000) |
| Fire Alarm Maintenance | (5,150) | | (5,150) | | (5,150) | | (5,150) | | (5,150) | | (5,150) | | | (36,054) |
| Phone line | (3,090) | | (3,090) | | (3,090) | | (3,090) | | (3,090) | | (3,090) | | | (18,540) |
| Internet Provider | (3,000) | | (3,000) | | (3,000) | | (3,000) | | (3,000) | | (3,000) | | | (18,000) |
| Pest Control | (1,500) | | (1,500) | | (1,500) | | (1,500) | | (1,500) | | (1,500) | | | (9,000) |
| Landscaping and Snow Removal | (18,000) | | (3,000) | | (18,000) | | (18,000) | | (18,000) | | (18,000) | | | (12,100) |
| Elevator | (3,700) | | (1,500) | | (3,700) | | (3,700) | | (3,700) | | (3,700) | | | (108,000) |
| Water Treatment | (3,515) | | (3,700) | | (3,515) | | (3,515) | | (3,515) | | (3,515) | | | (22,200) |
| Trash Service | | | (3,515) | | | | | | | | (54,279) | | | (21,090) |
| Outside Audit Consultant | | | (20,000) | | | | | | | | | | | (65,000) |
| Personal Property Tax | (236,994) | | | | | | | | | | 93,497 | | | (54,279) |
| Real Estate Tax | (195,440) | | | | (1,416,000) | | | | | | 72,720 | | | (1,416,000) |
| Property Fire Insurance | | | | | | | | | | | | | | (675,000) |
| General Liability Premium | | (15,000) | (15,000) | (15,000) | (15,000) | | (15,000) | (15,000) | (15,000) | (15,000) | | | | (190,000) |
| Travel Expenses | (15,000) | | | | | | | | | | | | | (15,000) |
| Independent Manager (J Decker) | (71,667) | | (71,667) | | (71,667) | | (71,667) | | (71,667) | | (71,667) | | | (430,000) |
| Manager Counsel - Chapman | (25,000) | | (25,000) | | (15,000) | | (15,000) | | (15,000) | | (25,000) | | | (120,000) |
| Ordinary Course Legal - Broker/Kasteller | (10,556) | | (41,667) | | (10,556) | | (10,556) | | (10,556) | | (10,556) | | | (62,433) |
| Utility Deposit | (100,000) | | | | | | | | | | | | | (62,433) |
| Contingency | | | (15,000) | | (15,000) | | (10,000) | | | | (5,000) | | | (125,000) |
| **Total Operating Disbursements** | (1,080,612) | (100,000) | (365,077) | (100,000) | (522,177) | (1,496,000) | (496,677) | (80,000) | (454,177) | (80,000) | (510,956) | (150,000) | | (5,390,060) |
| **Net Operating Cash Flow** | (1,080,612) | (100,000) | (365,077) | (100,000) | (522,177) | (1,496,000) | (496,677) | (80,000) | (454,177) | (80,000) | (510,956) | (150,000) | | (5,390,060) |
| **Restructuring** | | | | | | | | | | | | | | |
| Debtor Bankruptcy Counsel - [KS] | | (350,000) | | (250,000) | (150,000) | (150,000) | | (150,000) | | (150,000) | | | | (1,200,000) |
| Debtor Litigation Counsel - Pryor Cashman | | (100,000) | | (200,000) | (300,000) | | (75,000) | | | | | | | (675,000) |
| Real Estate Broker Expenses | (15,000) | (15,000) | (20,000) | | | | | | | | | | | (50,000) |
| Real Estate Broker Consultant Reports | | (30,000) | (30,000) | | | | | | | | | | | (250,000) |
| Creditor Committee (Counsel and FA) | (41,667) | | (41,667) | | (41,667) | | (41,667) | | (41,667) | | (41,667) | | | (75,000) |
| Lender Counsel - Alston & Bird | (73,000) | | | | | | | | | | | | | (250,000) |
| Lender Counsel - Kirton & Harrison | (50,000) | | | | | | | | | | | | | (75,000) |
| Claims Agent | (30,000) | | (30,000) | | (30,000) | | (30,000) | | (30,000) | | (30,000) | | | (180,000) |
| US Trustee Fee | | | | | (43,500) | | | | | | (35,685) | | | (79,185) |
| **Total Restructuring** | (211,667) | (495,000) | (121,667) | (450,000) | (115,167) | (450,000) | (71,667) | (225,000) | (71,667) | (230,000) | (107,352) | (150,000) | | (2,619,185) |
| **Net Cash Flow** | (1,292,278) | (595,000) | (486,744) | (550,000) | (637,344) | (1,946,000) | (568,344) | (305,000) | (525,844) | (230,000) | (618,308) | (243,783) | | (7,999,245) |
| | | | | | | | | | | | | | | |
| Ending Cash (non-escrow) | 63,694 | 71,416 | 76,416 | 79,072 | 78,728 | 82,728 | 84,384 | 88,540 | 89,384 | 91,540 | 83,232 | 63,694 | | 63,694 |
| Beginning Cash (non-escrow) | (1,292,278) | (395,000) | (487,344) | (550,000) | (637,344) | (1,946,000) | (568,344) | (305,000) | (525,844) | (230,000) | (618,308) | (243,783) | | (7,999,245) |
| Ending Cash (non-escrow) | 1,300,000 | 600,000 | 490,000 | 637,000 | 1,950,000 | | 570,000 | 310,000 | 525,000 | 233,000 | 610,000 | 224,245 | | 7,999,245 |
| **Ending Cash (non-escrow)** | 71,416 | 76,416 | 79,072 | 79,072 | 78,728 | 82,728 | 84,384 | 89,384 | 88,540 | 91,540 | 83,232 | 63,694 | | 63,694 |
| **Ending Cash + Escrowed Cash** | 71,416 | 76,416 | 79,072 | 79,072 | 78,728 | 82,728 | 84,384 | 89,384 | 88,540 | 91,540 | 83,232 | 63,694 | | 63,694 |
| **DIP Facility Summary** | | | | | | | | | | | | | | |
| Beginning DIP Balance | 1,300,000 | 1,300,000 | 1,900,000 | 2,390,000 | 2,940,000 | 3,577,000 | 5,527,000 | 6,097,000 | 6,407,000 | 6,932,000 | 7,165,000 | 7,775,000 | | |
| + Advances | 1,300,000 | 600,000 | 490,000 | 550,000 | 637,000 | 1,950,000 | 570,000 | 310,000 | 525,000 | 233,000 | 610,000 | 224,245 | | 7,999,245 |
| **Ending DIP Balance** | 1,300,000 | 1,900,000 | 2,390,000 | 2,940,000 | 3,577,000 | 5,527,000 | 6,097,000 | 6,407,000 | 6,932,000 | 7,165,000 | 7,775,000 | 7,999,245 | | 7,999,245 |

Certain of the budgeted amounts shown relating to maintenance of the Debtor's property will be made through the Debtor's custodial manager, rather than by the Debtor directly.

The line item for Real Estate Tax has not yet been approved by the DIP Lender. All rights of the Debtor and the DIP Lender are reserved with respect to the payment of Real Estate Tax.