## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WARDMAN HOTEL OWNER, L.L.C. | Case No. 21-10023 (JTD) |
| Debtor.[1] | **Hearing Date: February 9, 2021 at 10:00 a.m. (ET)**<br>**Objection Deadline: February 2, 2021 at 4:00 p.m. (ET)** |

## MARRIOTT HOTEL SERVICES, INC.'S MOTION TO TRANSFER VENUE TO THE BANKRUPTCY COURT FOR THE DISTRICT OF COLUMBIA

Marriott Hotel Services, Inc. ("Marriott"), by and through its undersigned counsel submits this motion (the "Motion") for entry of an order, pursuant to 28 U.S.C. § 1412 and Rule 1014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to transfer venue to the United States Bankruptcy Court for the District of Columbia. In support of this Motion, Marriott respectfully represents as follows.

### Preliminary Statement

1.      Based on the factual circumstances presented, this Court should exercise its discretion and transfer the action to the District of Columbia.

2.      This is a single-asset bankruptcy, where the asset is a storied Washington D.C. hotel that has operated for over 100 years, hosted multiple United States presidents, and is listed on the National Register of Historic Places. Debtor has no assets in Delaware, no employees in Delaware, and no business operations in Delaware. None of the Debtor's creditors (of which only four have been identified) are located in Delaware either. Debtor's only connection to Delaware is as its

---

[1] The last four digits of the taxpayer identification number for the Debtor are 9717. The mailing address for the Debtor is 5035 Riverview Road, NW, Atlanta, Georgia 30327.

place of incorporation.  This case thus stands in stark contrast to the many complex Chapter 11 bankruptcies filed in this court by Delaware-incorporated companies that involve hundreds or thousands of creditors and assets scattered across the country.

3.     Transfer of venue to the District of Columbia will not prejudice any parties in interest. The Debtor's principal place of business is in the District of Columbia.  Moreover, to the extent this case proceeds at all,[2] transfer is in the best interests of Debtor's creditors.  In fact, of the four creditors listed by the Debtor, two are located in the District of Columbia and two are located in the Maryland suburbs adjacent to the District of Columbia.  Proceeding in the District of Columbia will enhance judicial economy because that location optimally suits the persons best situated to value Debtor's principal asset, the persons with an interest in being heard regarding the terms of any Chapter 11 plan, and the parties who must protect their interests in the event of Debtor's liquidation.

4.     Accordingly, and for the reasons set forth below, the Court should grant the Motion and transfer this proceeding to the United States Bankruptcy Court for the District of Columbia.

## Jurisdiction

5.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

6.     The legal bases for the relief requested in this Motion are 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a).

---

[2] Marriott respectfully reserves its right to seek dismissal of this Chapter 11 petition on all available grounds, including (but not only) because the petition serves no bankruptcy purpose and instead appears intended to support the pre-petition lender's effort to sidestep contractual obligations owed to Marriott under a separate subordination, non-disturbance and attornment agreement ("SNDA").

**Factual Background**

7.       Debtor filed for Chapter 11 relief in this Court on January 11, 2021 (the "Petition").

However, the Petition serves no valid purpose under the bankruptcy code. Rather, it appears

intended to enrich the Debtor's pre-prepetition lender and sole owner—Pacific Life Insurance

Company ("PacLife")—at the expense of Marriott, while advancing PacLife's effort to elide

contractual obligations owed to Marriott under a separate agreement.

8.       Debtor's principal place of business is the hotel located at 2660 Woodley Rd NW,

Washington, DC 20008, known as the Washington Marriott Wardman Park Hotel (the "Hotel").

Petition at 1; ECF No. 2, ¶ 2 (Decker Decl.).

9.       Debtor's mailing address is in Atlanta, Georgia. ECF No. 2, at 1 n. 1 (Decker Decl.).

10.      Debtor's manager admits that Debtor's assets consist "primarily of the Hotel."  ECF

No. 2, ¶ 63 (Decker Decl.).  Debtor has disclosed no assets located in Delaware.

11.      All or virtually all income from the Debtor's business operations are derived from

revenue generated by the Hotel.  ECF No. 2, ¶ 52 (Decker Decl.).  The Debtor's pre-petition rights

and obligations with respect to the Hotel were set out in a Hotel Management Agreement that is

governed by D.C. law.

12.      Debtor listed four creditors who have claims and are not insiders.  None is located

in Delaware.  Two are located in the District of Columbia:  UNITE HERE INT'L UNION and the

District of Columbia's Office of Tax and Revenue.  Two are located in the Maryland suburbs

adjacent to the District of Columbia:  Marriott and Wardman Tower, L.L.C.

13.      All of the Hotel's employees are located in or near the District of Columbia.

14.      The taxing authority to which Debtor owes and pays taxes is located in the District

of Columbia.

15.     The only basis for venue in the Delaware Bankruptcy Court is Debtor's place of incorporation.

## **Relief Requested**

16.     Pursuant to the 28 U.S.C. § 1412 and Bankruptcy Rule 1014, Marriott requests that this Court enter an order transferring venue for the Debtor's bankruptcy proceedings to the D.C. Court "in the interest of justice or for the convenience of the parties."

## **Argument**

17.     Every facet of this bankruptcy is centered in the Washington D.C. area.  Debtor's principal place of business and all of its unsecured creditors are located in and around the District of Columbia.  Debtor's principal, if not only, asset is a large improved parcel of real estate in the District of Columbia that has until recently operated as a 1,100 room hotel and employed hundreds of individuals in and around the District of Columbia.  The dispute that led to this proceeding is between Debtor and Marriott (based a few miles outside of the District of Columbia) and involves a hotel management agreement governed by the laws of the District of Columbia.  This is a textbook case for transfer of venue to the District of Columbia.

**I.     Venue is Proper in the District of Columbia.**

18.     The District of Columbia is a proper venue for these Chapter 11 proceedings. Venue is governed by 28 U.S.C. § 1408.  Section 1408 provides that venue is proper in a district:

> in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district;

28 U.S.C. § 1408(1).  Here, the Debtor's hotel business and primary asset—the Hotel—is located

in the District of Columbia and has been operating in that district for decades.

## II.    This Court Should Transfer Venue of These Chapter 11 Proceedings to the District of Columbia in the Interest of Justice and for the Convenience of the Parties.

19.    This action should be transferred from Delaware to the District of Columbia.  Under

28 U.S.C. § 1412, the court may transfer a bankruptcy case "in the interest of justice or for the

convenience of the parties."  *See In re LaGuardia Assoc., L.P.*, 316 B.R. 832, 837 (Bankr. E.D.

Pa. 2004); *see also* Fed. R. Bankr. P. 1014(a).  The decision to transfer venue lies within the

discretion of the bankruptcy court.  *In re Rehoboth Hosp., LP*, No. 11-12798 KG, 2011 WL

5024267, at *3-4 (Bankr. D. Del. Oct. 19, 2011).  Although there is a presumption in favor of

maintaining the debtor's choice of venue, that presumption is not dispositive and must be weighed

against other relevant factors.  And, relevant here, "the weight afforded to the debtor's choice of

forum is diminished when the choice of forum is not directly related to the operative, underlying

facts of the case."  *Id*. at *3.

20.    The Third Circuit has set out the following twelve factors for bankruptcy courts to

consider in determining whether to transfer venue:

> (1) plaintiff's choice of forum, (2) defendant's forum preference, (3) whether the claim arose elsewhere, (4) the location of books and records and/or the possibility of viewing premises if applicable, (5) the convenience of the parties as indicated by their relative physical and financial condition, (6) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (7) the enforceability of the judgment, (8) practical considerations that would make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets, (10) the public policies of the fora, (11) the familiarity of the judge with the applicable state law, and (12) the local interest in deciding local controversies at home.

*In re Hechinger Inv. Co. of Delaware, Inc.*, 296 B.R. 323, 325–26 (Bank. D. Del. 2003) (citing

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995)); *see also In re Centennial*

*Coal, Inc.*, 282 B.R. 140, 144 (Bankr. D. Del. 2002) (analyzing these factors); *In re Rehoboth Hosp., LP*, 2011 WL 5024267, at *3 (analyzing similar factors).[3]  These factors strongly favor transfer to the District of Columbia.

A.    **In Single-Asset Real Estate Cases, Delaware Courts Regularly Transfer Venue to the Location of the Debtor's Asset.**

21.    Debtor's principal asset is the Hotel in the District of Columbia.  ECF No. 1 at 1. In fact, the Hotel is the *only* asset of significance described in the declaration Debtor submitted in support of its Chapter 11 Petition and First Day Relief.  ECF No. 2, ¶¶ 3-8, 10-27, 30-53 (Decker Decl.).  "In the context of what is essentially a single asset case, the location of the lone improved real estate asset is of particular concern to the Court, especially in the event of a potential liquidation."  *In re Rehoboth Hosp., LP*, 2011 WL 5024267, at *5.  Under such circumstances, "the case is 'better administered by a court in the district in which it is located.'"  *Id*.

22.    Indeed, in substantially similar cases, where the primary asset was one or more hotels, Delaware courts have repeatedly ordered transfer to the jurisdictions where the hotels were located.  In *Matter of Ocean Properties of Delaware, Inc.*, the court transferred the bankruptcy of two Delaware corporations to Florida because all assets were located at debtors' hotels in Miami Beach.  95 B.R. 304, 305 (Bankr. D. Del. 1988) (noting the "the proximity of the [Florida] court to interested parties as well as the location of assets, the economics of administering the estate and the relative economic harm to debtor and other interested parties").  In *In re Rehoboth Hosp., LP*, the court transferred a bankruptcy to Texas where the principle asset was a hotel in Texas.  2011 WL 5024267, at *3-4 (finding that the "true day to day operational and managerial decisions for the Hotel are conducted by the on-site Hotel manager, in Texas").  *See also In re Qualteq, Inc.*,

---

[3] The convenience of debtor's counsel or other professionals is *not* a relevant consideration.  *In re Trico Steel Co., LLC*, 261 B.R. 915, 917 (Bankr. N.D. Ohio 2001).

2012 WL 527669, at *3 (Bankr. D. Del. Feb. 16, 2012) (transferring action to Illinois where "82% of the Debtors' assets (including real and personal property)" were located and where "approximately 91% of the debtors' employees work," while "[n]one of the Debtors' employees work in Delaware"). As one court has noted, "[i]n *virtually every single asset improved real estate* partnership case which we have seen, the court has transferred bankruptcy jurisdiction to the jurisdiction where the assets are located." *In re Midland Assoc's*, 121 B.R. 459, 461 (Bankr. E.D. Pa. 1990) (collecting cases).

**B.    The Debtor's Choice of Forum Is Entitled to Little Weight In this Case.**

23.    The Debtor's choice of Delaware for its bankruptcy filing is entitled to little weight under the circumstances. Debtor appears to have filed its petition in Delaware because it is its state of incorporation. A debtor's place of formation, however, is of little significance in the venue analysis. *In re La Guardia Assoc's, L.P.*, 316 B.R. at 836. Debtor's mailing address is not located in Delaware. *See* ECF No. 1 at 1. Nor are Debtor's corporate owners or equity security holders, all of whom are located in California. ECF No. 1 at 8-9. Nor are any of Debtor's creditors. *See* ECF No. 1 at 5. Even Debtor's Ordinary Course Professionals are from outside Delaware. ECF No. 47-4.

24.    Instead, the operative facts in this matter are centered in the District of Columbia. Debtor's principal place of business *and* principal asset, the Hotel, are both located in the District of Columbia. ECF No. 1 at 1. Debtor's creditors are all located in the District of Columbia or its immediate suburbs. ECF No. 1 at 5. Marriott's operation of the Hotel is in the District of Columbia, and Debtor's contract with Marriott for management of the Hotel is governed by the laws of the District of Columbia. "[T]he weight afforded to the debtor's choice of forum is diminished when the choice of forum is not directly related to the operative, underlying facts of

the case." *In re Rehoboth Hosp., LP*, 2011 WL 5024267, at *3; *see also In re Buffets Holdings, Inc.*, 397 B.R. 725, 728 (Bankr. D. Del. 2008), 397 B.R. at 728 ("While recognizing the significant weight given to a plaintiff's choice of forum in any venue transfer decision, the Court finds that weight is diminished where, as here, the Plaintiff's choice of forum for its bankruptcy case has no direct relation to the operative, underlying facts of the adversary proceeding.").

### C.    All Other Factors Strongly Favor Transfer to the District of Columbia or Are Neutral

25.    Nearly all of the twelve relevant factors support transferring this action in "the interest of justice or for the convenience of the parties."  28 U.S.C. § 1412; *Jumara*, 55 F.3d at 879–80.  Factors that support a transfer in this case include:

(2) creditor's forum preference,
(3) whether the claim arose elsewhere,
(4) the location of books and records and/or the possibility of viewing premises if applicable,
(5) the convenience of the parties as indicated by their relative physical and financial condition,
(6) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora,
(8) practical considerations that would make the trial easy, expeditious, or inexpensive,
(9) the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets,
(10) the public policies of the fora,
(11) the familiarity of the judge with the applicable state law, and
(12) the local interest in deciding local controversies at home.

*In re Hechinger Inv. Co. of Delaware, Inc.*, 296 B.R. at 325–26 (citing *Jumara*, 55 F.3d at 879–900).  These factors are addressed below.  Factor seven, the enforceability of judgment, is neutral.

### *Factor 2: Marriott Strongly Prefers a Washington D.C. Forum.*

26.    Debtor identified only one creditor with disputed claims in its Petition: Marriott. ECF No. 1 at 1.  Marriott prefers the case proceed in the District of Columbia, because the Hotel

8

is located there, because that location suits the persons best situated to value the Hotel, and because Marriott's attempt to protect its interest in the event of a liquidation will be informed by contractual obligations governed in substance by D.C. law.  Debtor did not identify any of the other three creditors identified in the Petition as having a disputed claim.  Even so, these creditors are all located in the District of Columbia or in its immediate suburbs.  Thus, this factor weighs in favor of transfer.

### Factor 3: Marriott's Claims and the Bankruptcy Itself Arose in the District of Columbia.

27.     Neither the facts and circumstances leading to Debtor's Chapter 11 petition and the claims asserted in Debtor's first day filings, nor Marriott's claims against Debtor arose in Delaware.  Debtor's purported inability to continue to maintain and fund the Hotel was the reason Debtor filed this bankruptcy petition and was "compelled to seek relief" in bankruptcy.  *See* ECF No. 2, ¶ 52 (Decker Decl.).  Marriott's claims against Debtor arising from Debtor's breach of its hotel management contract with Marriott also clearly arose in the District of Columbia, where the Hotel is located, the contract was breached, and where the Debtor's manager purportedly terminated the contract.  Thus, this factor weights in favor of transfer.  *See Matter of Ocean Properties of Delaware, Inc.*, 95 B.R. at 306 (transferring venue of entire bankruptcy case to Florida where "[t]he majority of creditors holding undisputed claims are in Florida" and "[t]he disputed claims will undoubtedly result in litigation"); *In re Buffets Holdings, Inc.*, 397 B.R. at 728 (transferring adversary proceeding where "the events relevant to the Plaintiff's claim arose entirely in Michigan.  The Defendants note that the Lease was written, signed, performed, and allegedly defaulted in Michigan.").

### *Factors 4-8: The District of Columbia is the Most Convenient Forum.*

28.     The District of Columbia is by far the most convenient forum for this Chapter 11 proceeding.  *First*, the District of Columbia is where the assets and records are located.  The Hotel, its employees, and its books and records all are located in the District of Columbia.  Debtor's creditors are located in the District of Columbia and its suburbs, including Marriott's principle place of business in Bethesda, Maryland.  *Cf. In re Rehoboth Hosp., LP*, 2011 WL 5024267, at *4 (observing that "Debtor's books and records would also be located" at its principal place of business).  If it becomes necessary to view the Hotel premises in the course of this action, or obtain records from the Hotel or creditors, it is much more convenient for a Washington D.C. court to do so.

29.     *Second*, the District of Columbia is closer to the parties.  As Debtor's first day papers made clear, this bankruptcy is primarily motivated by Debtor's desire to reject its Hotel Management Agreement with Marriott.  ECF No. 2, ¶¶ 3-8 (Decker Decl.).  Marriott is located in Bethesda, Maryland, about 13 miles from the Washington D.C. bankruptcy court.  ECF No. 1 at 5.  Two of Debtor's other creditors, the District of Columbia Office of Tax and Revenue and the Union are both located in the District of Columbia.  ECF No. 1 at 5.  The final creditor, Wardman Tower, L.L.C., is located just across the District of Columbia border in Chevy Chase, Maryland, fewer than seven miles from the Washington D.C. bankruptcy court.  ECF No. 1 at 5.

30.     The District of Columbia is also convenient for Debtor.  By Debtor's own admission, its principal place of business and primary asset, the Hotel, are both located in the District of Columbia.  ECF No. 1 at 5.  Marriott and Debtor have ongoing litigation over the hotel management agreement pending in the Montgomery County Circuit Court in Maryland.  That court is located a mere 16 miles from the Washington D.C. bankruptcy court.  Debtor did not complain

about the choice of forum in that matter; indeed, Debtor filed counterclaims against Marriott in that court. *See Marriott Hotel Services, Inc. v. Wardman Hotel Owner LL, et al.*, No. 483406V, Dkt. 75 (Md. Cir. Ct.) (filed Dec. 16, 2020). Finally, Debtor's equity shareholders and corporate owners are all located in Newport Beach, California. ECF No. 1 at 8-9. Delaware and the District of Columbia are equally inconvenient to that constituency, as the distance from Newport Beach to either court is roughly equivalent.

31.    *Third*, the District of Columbia is more convenient for potential witnesses. Because the Hotel and Marriott are located in or near the District of Columbia, relevant employees are all in the Washington D.C. area. These employees would be potential witnesses in Marriott's claims against Debtor, and any claims by Debtor against Marriott. Moreover, if any members of the Union—which is listed as a creditor—or any of the Hotel's other vendors are needed as witnesses, they too are located in the Washington D.C. area. Because most of the potential witnesses are located in the Washington D.C. area, the expenses are lower for them to appear in person in the District of Columbia rather than in Delaware. *See In re Centennial Coal, Inc.*, 282 B.R. at 148 ("In light of the proximity of the parties to, and the ease of accessibility to the witnesses and documents in Kentucky, I find that it would be significantly burdensome and expensive for Defendants to litigate in Delaware.").[4]

32.    The Washington D.C. court would also have more effective subpoena power. The Washington D.C. court could subpoena any potential Washington D.C. area witnesses. Fed. R. Civ. P. 45(C)(1)(A) & (B) (100-mile rule); Fed. R. Bankr. P. 9016 (applying Fed. R. Civ. P. 45). These same witnesses, however, may *not* be located within 100 miles of the Delaware bankruptcy

---

[4] Witnesses who reside outside of the Washington D.C. area—such as those affiliated with Debtor's equity shareholders and corporate owners located in Newport Beach, California—would incur roughly equivalent expenses to appear in person in the District of Columbia or Delaware.

court.  By contrast, Marriott is not aware of any local witnesses who would be subject to subpoena by a court in Delaware but not a court in the District of Columbia.

33.     For all of these reasons, the convenience factors weigh strongly in favor of transfer. *See In re Centennial Coal, Inc.*, 282 B.R. at 146 (transferring a contract dispute when "not only did each of the events giving rise to the claims and defenses in this action take place in Kentucky, but also, the outcome of this proceeding will likely turn on evidence that will be more easily obtained and/or produced in Kentucky."); *In re Buffets Holdings, Inc.*, 397 B.R. at 728 ("In light of the parties' proximity to the witnesses and documents in Michigan, the Court finds that it would be significantly more burdensome and expensive for the Plaintiff (as well as the Defendants) to litigate in Delaware.").

### *Factor 9: Washington D.C. Bankruptcy Courts Are Significantly Less Congested.*

34.     "The relative administrative difficulty in the two fora resulting from congestion of the courts' dockets" factor counsels in favor of transfer.  In the 12-month period from September 30, 2019 to September 30, 2020, there were 3116 new bankruptcy cases filed in the District of Delaware, and 5,804 pending cases.  United States Courts, Caseload Statistics Data Tables, *U.S. Bankruptcy Courts—Bankruptcy Cases Commenced, Terminated and Pending During the 12-Month Periods Ending September 30, 2019 and 2020*, Table F (Sept. 30, 2020), https://www.uscourts.gov/sites/default/files/data_tables/jb_f_0930.2020.pdf.  But in the District of Columbia, there were only 618 new bankruptcy cases filed and only 638 pending bankruptcy cases.  *Id.*  In fact, Delaware was the only jurisdiction in the nation to have a year-over-year increase in bankruptcy cases, both filed and pending, from the 2018-2019 period to the 2019-2020 period.  *Id.*  In the District of Columbia, new cases decreased by 25.7% and pending cases

decreased by 20.2%, year-over-year in the same period. *Id.* Because Washington D.C. bankruptcy courts are substantially less congested than Delaware courts, this factor weighs in favor of transfer.

### *Factors 10-12: Public Policy, Familiarity with State Law, and Local Interests Favor Transfer to the District of Columbia.*

35.    Not only is the District of Columbia a more convenient venue, transfer to the District of Columbia would also further the interests of justice. At its core, this bankruptcy is a local Washington D.C. controversy. Debtor's purported inability to continue to maintain and fund the Hotel was the reason Debtor filed this bankruptcy petition. *See* ECF No. 2, ¶ 52 (Decker Decl.). The disputes between Marriott and Debtor revolve around Marriott's right to manage the Hotel pursuant to a management contract that is governed by the laws of the District of Columbia.

36.    The District of Columbia has a clear interest in having Washington D.C. courts—which have a greater familiarity with Washington D.C. law[5]—decide such a local controversy. *See In re Centennial Coal, Inc.*, 282 B.R. at 148 ("A federal judge sitting in Kentucky is more likely to be familiar with the applicable state law issues than this Court and has a greater interest in deciding issues which may affect Kentucky residents and/or the development of Kentucky common law."); *In re Buffets Holdings, Inc.*, 397 B.R. at 730 (transferring a contract dispute because "a Michigan court indeed has a strong interest in resolution of the matter due to the

---

[5] The Washington D.C. courts' familiarity with Washington D.C. contract law also "would make the trial easy, expeditious, or inexpensive." *In re Buffets Holdings, Inc.*, 397 B.R. at 729. As a result, the "practical considerations that would make the trial easy, expeditious, or inexpensive" factor weighs in favor of transfer. *See id.* ("The Court concludes that any knowledge it has of the Debtors' bankruptcy case would be of little assistance in deciding this adversary proceeding involving a breach of contract under Michigan state law. . . . Therefore, practical considerations will be better served by transferring venue of the proceeding." (citation omitted)); *see also In re Rehoboth Hosp., LP*, 2011 WL 5024267, at *4 (transferring case where "resolution of the issues will require interpretation and application of Texas real property law which the Texas Bankruptcy Court is uniquely positioned to determine").

potential impact upon Michigan residents and businesses, as well as the development of Michigan law").

37.    Indeed, decisions by this court have recognized, the local interest is at its zenith in cases like this one: "the future of the Hotel is of primary importance to the community in which it resides." *In re Rehoboth Hosp., LP*, 2011 WL 5024267, at *4.  As Debtor's witness, James D. Decker, explained, "[t]he Hotel has a long and storied history," and "is listed on the National Register of Historic Places."  ECF No. 2, ¶¶ 4, 11 (Decker Decl.).  Mr. Decker extolled the Hotel's "prominent location," *id.* ¶ 38, and "prime location in our nation's capital," *id.* ¶ 4, as well as the fact that "the Hotel has been home to former presidents Herbert Hoover, Dwight Eisenhower and Lyndon Johnson, former U.S. Senators Barry Goldwater and Bob Dole, plus many other politicians and dignitaries," *id.* ¶ 4.  The last time the Debtor "filed a plan to redevelop the entire property and close the Hotel permanently," was in 2016.  ECF No. 31, ¶ 7 (Bowen Decl.).  That plan sparked community outrage.  *Id.*; *see* Michael Neibauer, *Woodley Park Neighbors Respond to JBG's Wardman Park Plan. Hint: They're Not Happy,* WASHINGTON BUS. J. (June 24, 2016), https://www.bizjournals.com/washington/breaking_ground/2016/06/woodley-park-neighbors-respond-to-jbgs-wardman.html.  The District of Columbia's strong interest in the litigation that could decide the fate of this historic location within its borders is undeniable.

### *Factor 7: Judgment Enforceability.*

38.    The remaining factor, "the enforceability of the judgment" neither favors nor disfavors transfer to the District of Columbia, as there is "no reason to believe that a judgment rendered in either jurisdiction would not be given full faith and credit."  *In re Buffets Holdings, Inc.*, 397 B.R. at 729 (citing *Jumara,* 55 F.3d at 882; *Hechinger,* 296 B.R. at 326).

**WHEREFORE**, for the reasons discussed above, the Court should exercise its discretion and grant this motion to transfer venue to the Bankruptcy Court for the District of Columbia and such other and further relief as is just and necessary.

Dated: January 25, 2021
      Wilmington, Delaware      **MORRIS, NICHOLS, ARSHT, & TUNNELL LLP**

By:   */s/ Curtis S. Miller*
       Curtis S. Miller (No. 4583)
       1201 North Market Street, 16th Floor
       P.O. Box 1347
       Wilmington, DE 19899-1347
       Telephone: (302) 351-9412
       Email: cmiller@mnat.com

       -and-

       **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
       Ori Katz (admitted *pro hac vice*)
       Four Embarcadero Center, 17th Floor
       San Francisco, CA 94111-4109
       Phone: (415) 434-9100
       Facsimile: (415) 434-3947
       Email: okatz@sheppardmullin.com

       -and-

       **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
       Michael T. Driscoll (admitted *pro hac vice*)
       30 Rockefeller Plaza
       New York, NY 10112
       Telephone: (212) 653-8700
       Facsimile: (212) 653-8701
       Email: mdriscoll@sheppardmullin.com

       -and-

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Jennifer L. Nassiri (admitted *pro hac vice*)
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
Telephone: (213) 620-1780
Facsimile: (213) 620-1398
Email:  jnassiri@sheppardmullin.com

-and-

**JENNER & BLOCK LLP**
Lindsay Harrison (admitted *pro hac vice*)
Alex S. Trepp
1099 New York Avenue, N.W.
Suite 900, Washington, DC 20001-4412
Phone: (202) 639-6000
Facsimile: (202) 639-6066
Email: lharrison@jenner.com
Email: atrepp@jenner.com

-and-

**JENNER & BLOCK LLP**
Paul Rietema
353 N. Clark Street
Chicago, IL 60654-3456
Phone: (312) 840-7208
Facsimile: (312) 840-7308
Email: prietema@jenner.com

*Attorneys for Marriott Hotel Services, Inc.*