## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
---------------------------------------------------  x
                                                     :
In re:                                               :          Chapter 11
                                                     :
WARDMAN HOTEL OWNER, L.L.C.,       :          Case No. 21-10023 (JTD)
                                                     :
Debtor.¹                                             :          Hearing Date: Feb. 9, 2021 at 10:00 a.m. (ET)
                                                     :          Objection Deadline: Feb. 2, 2021 at 4:00 p.m. (ET)
                                                     :
---------------------------------------------------  x
```

## MARRIOTT HOTEL SERVICES, INC.'S MOTION FOR THE AUTHORITY TO EXERCISE RIGHTS OF RECOUPMENT OR, IN THE ALTERNATIVE, RELIEF FROM THE AUTOMATIC STAY TO EXERCISE RIGHTS TO SETOFF

Marriott Hotel Services, Inc. ("Marriott"), by and through its undersigned counsel, submits this motion (the "Motion") for entry of an order, substantially in the form annexed hereto as Exhibit A, pursuant to sections 105(a), 362(d), and 553(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the authority to exercise rights of recoupment, or, in the alternative, relief from the automatic stay to exercise rights of setoff.  In support of this Motion, Marriott submits the Declaration of Julie Bowen (the "Bowen Declaration"), which is filed contemporaneously herewith.  In further support of this Motion, Marriott respectfully represents as follows:

## PRELIMINARY STATEMENT

1.       Prior to the Debtor's bankruptcy filing, the Maryland Circuit Court determined that Marriott had expended more than $5.5 million of its own funds to finance the operations of the Wardman Park Hotel (the "Hotel").  These funds were and remain obligations of the Debtor, which the Debtor refused to pay despite its clear obligation to do so under the HMA (as defined herein)

---

¹ The last four digits of the taxpayer identification number for the Debtor are 9717. The mailing address for the Debtor is 5035 Riverview Road, NW, Atlanta, Georgia 30327.

and an order from the Maryland Circuit Court.  Further, the Debtor's purported termination of the HMA and public announcement that it was permanently closing the Hotel necessitated the termination of the vast majority of the Hotel employees.  As a result of these terminations, Marriott severance costs are estimated to be $11 million, which the Debtor is contractually obligated pursuant to the terms of the HMA.

2.      Marriott requests that this Court exercise its discretion by granting Marriott the authority to recoup or setoff its severance costs paid to the Hotel's employees out of the $4.7 million Marriott is holding in the FF&E Reserve (as defined herein).  As set forth in greater detail in the Motion, Marriott meets all of the requirements of both recoupment and setoff under applicable bankruptcy law.  Denying Marriott this relief would further increase the already significant harm and prejudice to Marriott resulting from the Debtor's purported termination of the HMA and public announcement that it intended to permanently close the Hotel without paying Marriott for severance costs of employees being terminated as a result of such closure.

3.      In addition to the severance costs described above, Marriott has not been paid an estimated $5.4 million of the funds it advanced to cover operating expenses of the Hotel for which the Debtor is responsible pursuant to Section 4.03(C) of the HMA.  Marriott should be reimbursed for amounts expended to operate, maintain and secure the Hotel, all of which have benefited the Debtor's estate.  Thus, recoupment or setoff against the FF&E Reserve is appropriate.  While the amounts on deposit in the FF&E Reserve held by Marriott will not satisfy the amounts that Marriott advanced for the benefit of the Debtor, recoupment or setoff will reduce Marriott's damages resulting from the Debtor's actions.

4.      For these reasons, Marriott respectfully requests that the Court grant Marriott the authority to exercise a recoupment or setoff against the FF&E Reserve.[2]

## JURISDICTION

5.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

6.      The legal bases for the relief requested herein are sections 105(a), 362(d)(1), and 553(a) of the Bankruptcy Code and Bankruptcy Rule 4001.

## BACKGROUND

**A.      Marriott's Management of the Property and the Hotel Management Agreement**

7.      The HMA provides for Marriott to manage the Hotel for an initial term running to December 28, 2029, with automatic renewals for three additional ten-year terms unless Marriott elects not to renew.  HMA §§ 1.01, 2.01, which is annexed hereto as Exhibit B.  Under the HMA, Marriott has discretion and control over the management of the Hotel, including its employees, finances, and sales and marketing.  Marriott receives a fee in exchange for its performance, which is set as a percentage of revenue.  HMA §§ 1.02, 3.01.

8.      The HMA states that Marriott "shall not be obligated to incur any liability or obligation with respect to the Hotel" and "shall not be required to make any advance or payment with respect to the Hotel" from its own funds.  HMA § 4.03(B). "Debts and liabilities" incurred by Marriott from operating and managing the Hotel "will be paid by Owner," if the Hotel's gross revenues do not cover them.  HMA § 4.03(C).  The obligations of the Debtor under HMA § 4.03(C) expressly survive termination.  *Id.*

---

[2] Pursuant to applicable bankruptcy law, relief from the automatic stay is not required to exercise a recoupment.  Out of an abundance of caution, Marriott requests the Court enter an order authorizing Marriott to execute the recoupment on the FF&E Reserve.

9.      Likewise, when the Hotel's revenues are not sufficient to cover its costs, the Debtor is obligated to contribute "Working Capital," HMA § 4.05, which is defined as funds "used in the day-to-day operation of the business of the Hotel."

10.     The HMA can be terminated only in response to an "Event of Default," and only after thirty days-notice or seventy-five days if the defaulting party is the manager.  HMA § 9.02.

11.     Pursuant to the HMA, Marriott maintains a Furniture, Fixtures, and Equipment account ("FF&E Reserve") earmarked for needed capital improvements. HMA § 5.02.

**B.      The Debtor Breached Its Obligations Under the Hotel Management Agreement and Caused Harm to Marriott**

12.     Due to the COVID-19 pandemic, the Hotel was temporarily closed at the Debtor's request on March 27, 2020.  Although the Hotel was temporarily closed, Marriott required funds to pay for a considerable number of significant, but essential, expenses, the most substantial of which were salary and benefits for the Hotel's employees.  Even with the Hotel temporarily closed, some employees were needed at the Hotel.  Such essential employees included building security, engineering personnel, accounting personnel, and sales and marketing employees.  *See* Bowen Decl. ¶ 4.

13.     Other employees—in fact, the vast majority of the Hotel's workforce—were furloughed, but remained entitled to certain benefits under their collective bargaining agreement or Marriott's severance plan.  Plus, terminating rather than furloughing those employees would have triggered expensive severance obligations and significantly delayed the Hotel's ability to reopen.  *Id.* ¶ 5.

14.     Marriott also needed working capital to pay Hotel vendors.  Some funds were needed to pay vendor bills that accrued before the Hotel closed. Other funds were required to pay vendors for services that remained crucial during closure, such as the costs for utilities, chemicals

to treat the Hotel's water systems, services to maintain and repair the Hotel's elevators, and other costs related to repairs, security, and the maintenance of the systems used to operate the Hotel and to prepare for its reopening. *Id.* ¶ 6.

15.     As the Maryland Circuit Court found, it was the Debtor's obligation to advance Working Capital at Marriott's request.  However, when Marriott requested that the Debtor due so, the Debtor "repeatedly . . . failed to comply with this promise."  *See* December 3, 2020 Maryland Circuit Court Order, at 16 (the "12/3/20 Opinion"), annexed hereto as <u>Exhibit C</u>.

16.     The Debtor's decision to starve the Hotel of capital and increasingly incur unpaid bills has caused and continues to cause Marriott significant harm.  Among other things, rather than letting employees go without pay, by November 2020, Marriott had advanced more than $5.5 million of its own money to cover costs that are the sole obligation of the Debtor, including in large part employee-related costs. *See* 12/3/20 Opinion at 16-19.  This money was advanced solely to cover the Debtor's costs and to benefit the Debtor's Hotel. *See* Bowen Decl. ¶ 7.

**C.      Marriott Sued the Debtor and Pacific Life as Lender in Maryland**

17.     On September 8, 2020, Marriott filed suit against the Debtor and Pacific Life Insurance Company ("Pacific Life"), Marriott's senior secured lender in the Circuit Court for Montgomery County in Maryland.  The suit asserted that the Debtor's refusal to fund Working Capital breached the HMA.  Marriott also brought claims for breach of contract and tortious interference with contract against Pacific Life as lender, based on its encouragement of the Debtor to breach its duty to fund Marriott's Working Capital requests and based on the conflict of interest shared by Pacific Life in acting as both lender and owner. *See id.* ¶ 8.

18.     Marriott alleged that that Pacific Life, as lender, was attempting to force Marriott to walk away from the HMA because Pacific Life did not want to honor its obligations under its

own Subordination, Non-Disturbance and Attornment Agreement ("SNDA") with Marriott. If Pacific Life could get Marriott to walk away from the HMA, Pacific Life would no longer need to honor its SNDA, which obligated it not to disturb Marriott's rights under the HMA and to ensure that if the Hotel were sold, that a subsequent owner would honor those rights as well. *See id.* ¶ 9.

19.     Marriott sought a preliminary injunction seeking specific performance of the Debtor's obligation to provide working capital at levels determined by Marriott to be reasonably necessary. On December 3, 2020, following a two-day evidentiary hearing where witnesses and other evidence were presented, Judge Rubin granted Marriott's motion for preliminary injunction and required the Debtor to specifically perform its obligation to fund Working Capital under the HMA. *See* 12/3/20 Opinion at 2, 20.

20.     In granting Marriott's motion, Judge Rubin found that the HMA unambiguously gave Marriott discretion to request Working Capital that Marriott deemed reasonably necessary for the operation of the Hotel. *See id*. at 17-18. He determined that the Debtor's breach of its obligations was causing Marriott irreparable harm in the form of damage to its relationships with employees, vendors and guests. *See id*. at 18. After observing that both parties to the HMA were sophisticated entities, he ruled that the public interest supported enforcement of the contract as written and granted Marriott's motion. *See id.* at 20.

21.     The Debtor sought emergency stays both from the trial and appellate courts. Both denied the Debtor's requests. In denying the stay, Judge Rubin found:

> Debtor contractually agreed to fund working capital calls. The court's preliminary injunction simply requires Debtor to fulfill its express promise. Other than that the Debtor would prefer simply to breach the contract and litigate, no cogent reason has been advanced as to why a sophisticated party should not be held to its bargain. The record is clear that Debtor can finance its obligations when it chooses to do so. In this case, the court finds, it simply prefers not to do so.

*See* December 22, 2020 Maryland Circuit Court Order, at 2-3, annexed hereto as <u>Exhibit D</u>.

22.    Judge Rubin also found that Marriott—and not the Debtor—would suffer irreparable harm if the stay were granted. As Judge Rubin explained:

> Debtor's refusal to fund working capital calls has forced Marriott to issue WARN notices to hotel employees and to pay more than $5.5 million in hotel operating expenses out-of-pocket.  Guests query Marriott, not Debtor, about deposits and contracts for future events. Vendors are going unpaid, causing them unnecessary hardship.  As the court found when it issued the preliminary injunction, Marriott is suffering substantial reputational harm, among employees, customers, and vendors, because of Debtor's contractual breach.

*Id*. at 3.  Specific performance, Judge Rubin explained, was necessary because "[t]here is no question in the court's mind that an award of money damages in this case, which the preliminary injunction is not, would be manifestly under-compensatory given the reputational harm the court finds to exist." *Id*.

**D.    The Debtor Attempts to Terminate and Seizes Control of the Hotel**

23.    On January 11, 2021, at approximately 1:47 p.m., immediately before the chapter 11 bankruptcy petition was filed, the Debtor served a termination notice on Marriott and almost simultaneously appeared at the property with armed security guards to attempt a hostile takeover of the Hotel.  The Debtor's termination notice purported to terminate the HMA based on a Notice of Default that the Debtor served more than six months ago, on June 11, 2020, and purported to do so immediately.  *See* Bowen Decl. ¶ 10.

24.    The HMA does not allow the Debtor to terminate the HMA immediately.  It requires, at minimum, seventy-five days before termination can be effective.  *See* HMA §§ 9.02. The HMA also may not be terminated by a party that is itself in default. Termination rights are expressly limited to non-defaulting parties, which the Debtor was not. As the Maryland Circuit

Court found, the Debtor was in breach of its obligation to fund Working Capital, for which Marriott had served the Debtor with a Notice of Default.  *Id.*. ¶ 11.

**E.      The Debtor's Bankruptcy Filing and the Motion to Reject the HMA**

25.      On January 11, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

26.      On the Petition Date, the Debtor filed a motion to reject the HMA (the "Rejection Motion").  ECF No. 6.  The Rejection Motion seeks entry of an order rejecting the HMA effective as of the Petition Date.[3]

27.      As of the Petition Date, the balance of funds in the FF&E Reserve was $4.7 million. *Declaration of James D. Decker in Support of the Debtor's Chapter 11 Petition and First Day Relief*, ECF No. 2, at ¶ 49.

28.      As of January 23, 2021, Marriott is owed an estimated $5.4 million for amounts advanced by Marriott for Hotel costs plus estimated severance costs of $11 million for the terminated Hotel employees (the "Marriott Claim").   These amounts do not include unpaid management fees from the Petition Date through the expiration of the HMA on December 28. *See* Bowen Decl. ¶ 12.

<u>**RELIEF REQUESTED**</u>

29.      By this Motion, Marriott respectfully requests that this Court enter an order, substantially in the form annexed hereto as <u>Exhibit A</u>, granting Marriott the authority to exercise rights of recoupment, or, in the alternative, relief from the automatic stay to exercise rights of setoff, against the FF&E Reserve.

---

[3] Marriott disputes the Debtor's characterization that the HMA was validly or effectively terminated. Marriott expressly reserves all of its rights and remedies with respect to the HMA, the SNDA, and any ancillary document.

**BASIS FOR RELIEF**

I.     **Marriott Is Entitled to Recoup Its Claim Against Any Claim That the Debtor Has to the FF&E Reserve**

30.     Recoupment is defined as the "setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim."  *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1079 (3d Cir. 1992) (internal quotation omitted)).  A creditor's exercise of the right of recoupment does not require relief from the automatic stay.  *Id.* at 1079 ("[R]ecoupment is an equitable exception to the automatic stay.").  Out of an abundance of caution, however, Marriott requests that this Court enter an order authorizing, to the extent required, Marriott to recoup the Marriott Claim against the FF&E Reserve.

31.     "Recoupment is an equitable remedy that permits the offset of mutual debts arising from the same transaction or occurrence."  *In re WL Homes LLC*, 563 B.R. 512, 516 (Bankr. D. Del. 2017).  When the claims and obligations of the parties arise under a single contract, the "same transaction" requirement for recoupment is generally satisfied.  *In re B&L Oil Co.*, 782 F.2d 155, 157 (10th Cir. 1986).  As recoupment is an equitable remedy, it does not require a contractual authorization in the contract at issue.  *See, e.g., Univ. Med. Ctr.*, 973 F.2d at 1080 (noting that "an express contractual right is not necessary to effect a recoupment."); *In re Commc'n Dynamics, Inc.*, 382 B.R. 219, 224 (Bankr. D. Del. 2008) (stating that setoff and recoupment are not dependent on the parties' contracts; rather, they are equitable remedies available independent of any contractual remedy.).

32.     A creditor may exercise recoupment irrespective of whether either its debts to or its claims against the debtor arise pre-petition or post-petition.  *See, e.g., In re Flagstaff Realty Assocs.*, 60 F.3d 1031, 1035 (3d Cir. 1995) (holding that "post-petition funds owing to the [debtor]

may be recouped against pre-petition claims owed by the [debtor]" and thus creditor of rejected lease had "a valid recoupment claim"); *WL Homes*, 563 B.R. at 518 (stating that creditor "carried its burden in asserting . . . recoupment with regards to amounts [of both prepetition and post-petition expenses owed by the debtor] . . . against the [pre-petition amounts] owed to the Trustee"); *In re HQ Glob. Holdings, Inc.*, 290 B.R. 78, 83 (Bankr. D. Del. 2003) ("The doctrine of recoupment does apply and mandates that [creditor] may recoup [pre-petition claim] against the [post-petition] rent due [to debtor]".).

33.     Here, Marriott has satisfied the requirements of recoupment.  First, Marriott and the Debtor have mutual claims arising from the HMA.  As noted above, Marriott has suffered extensive damages giving rise to the Marriott Claim, which include the estimated $5.4 million advanced by Marriott for operating expenses of the Hotel, plus $11 million of estimated severance costs payable to the Hotel's employees.  On the other hand, according to the Debtor's *Motion for Entry of Order Authorizing the Debtor to (A) Continue Operating Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Granting Related Relief* (the "Cash Management Motion"), the Debtor claims a right to the funds in the FF&E Reserve from Marriott.  *See* Cash Management Motion, ECF No. 3, at ¶ 7.[4]

34.     Second,  the "same transaction or occurrence" requirement is met because both the Marriott Claim and the Debtor's claim to the funds in the FF&E Reserve arise from a single contract — the HMA.  Although no contractual authorization is required to allow recoupment, the

---

[4] Although outside of the scope of this Motion, Marriott notes that any liens on the FF&E Reserve are subject to Marriott's recoupment rights.  *Commc'n Dynamics*, 382 B.R. at 219  ("[A] secured party's security interest is subject to setoff defense or claim in recoupment arising from the transaction that gave rise to the relevant contract."  (quoting Collier on Bankruptcy § 553.12[1] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2007)); *see also Flagstaff Realty Assocs*, 60 F.3d at 1035 ("A claim subject to recoupment avoids the usual bankruptcy channels and thus, in essence, is given priority over other creditors' claims").

- 10 -

HMA does not prohibit Marriott's rights of recoupment or setoff.  Further, although not required

by applicable bankruptcy law, the right of recoupment is recognized under the laws of the District

of Columbia, which is the governing law of the HMA.  *Lofchie v. Washington Square Ltd.*

*Partnership*, 580 A.2d 665, 667 (D.C. 1990) ("Recoupment is in the nature of a defense arising

out of some feature of the transaction upon which the plaintiff's action is grounded.") (internal

citation omitted).

35.    It would be inequitable and highly prejudicial to Marriott if it was not granted the

right to recoup its Marriott Claim against the FF&E Reserve.  Due to the continuous failures by

the Debtor to comply with its funding obligations under the HMA, Marriott has not been paid the

estimated $5.4 million that it advanced to operate and maintain the Hotel and pay the Hotel's

employees and vendors.  Marriott will now need to pay an additional $11 million of estimated

severance costs to the Hotel's employees. These damages arise directly from the Debtor's

continued refusal to meet its obligations under the HMA and its closure of the Hotel.  Specifically,

the Debtor refused to pay for the costs necessary to manage and maintain the Hotel despite multiple

requests by Marriott.  In addition, the Debtor failed in its obligations to reimburse Marriott for

those costs that Marriott advanced, as the Debtor was required to do so under Section 4.03(C) of

the HMA.  Although the balance of funds in the FF&E Reserve will not satisfy the full amounts

Marriott advanced or will advance for the benefit of the Debtor, recoupment would reduce the vast

losses that the Debtor intends for Marriott to suffer in this case.

36.    Finally, Marriott's efforts and costs advanced benefited the Hotel that the Debtor

seeks to sell in this case.  Marriott should be compensated for its efforts, which benefitted the

Hotel, and by extension the estate.  Had Marriott not paid Hotel employees from March through

December 2020, there would have been no one to secure the Hotel, maintain its plumbing and

electrical and other systems, negotiate with vendors, and provide financial updates to the Debtor. The equitable doctrine of recoupment was created for exactly this type of circumstance where a creditor has been treated unfairly by a debtor.

37.    Accordingly, Marriott is entitled to recoup the amounts that it is owed for the services it rendered under the HMA against the Debtor's claims to the FF&E Reserve.

## II.    Alternatively, Marriott Should Be Granted Relief From the Automatic Stay to Allow It to Setoff Its Claim Against Any Amounts Claimed by the Debtor to the Funds in the FF&E Reserve

38.    Pursuant to section 362(d)(1) of the Bankruptcy Code, "[o]n request of a party in interest and after notice and hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, and modifying, or conditioning such stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(1).

39.    In order to establish cause for relief from stay under section 362(d)(1), a creditor seeking to complete a setoff has the burden to first establish that it is entitled to setoff under applicable non-bankruptcy law. *WL Homes*, 471 B.R. at 352. Here, the HMA is governed by the laws of the District of Columbia, where a common law right of setoff exists. *See Tri-State Envelope of Maryland, Inc. v. Americans With Hart, Inc.*, 688 F. Supp. 769, 772 (D.D.C. 1988); *see also Johnson v. Fairfax Village Condominium IV Unit Owners Ass'n*, 641 A.2d 495, 508 (D.C. 1994) ("A set-off is an equitable defense which can reduce or defeat the opposing party's claim."); *see also Local 31, Nat. Ass'n of Broadcast Emp. and Technicians (AFL-CIO) v. Timberlake*, 409 A.2d 629, 633 (D.C. 1979) ("A set-off is a counter demand which defendant holds against plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action") (internal quotation and citation omitted).

40.    Next, the creditor must establish that "the conditions § 553 places on setoffs are satisfied."   Section 553(a) provides, in relevant part, as follows:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 553(a).

41.    The elements necessary to exercise a right of setoff under section 553(a) of the Bankruptcy Code are as follows: (a) a debt exists from the creditor to the debtor that arose before the commencement of the bankruptcy case; (b) the creditor has a claim against the debtor that arose before the commencement of the bankruptcy case; and (c) the debt and the claim are mutual obligations.  *Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 262-63 (3d Cir. 2000).  Setoff may be exercised with respect to pre-petition debts and claims pursuant to section 553(a) of the Bankruptcy Code, and with respect to post-petition debts and claims pursuant to the Bankruptcy Court's general equitable powers.  *See, e.g., In re Quantum Foods, LLC*, 554 B.R. 729, 732-734 (Bankr. D. Del. 2016) (While "[t]here is no provision in the Bankruptcy Code that deals expressly with postpetition setoff . . . many courts have held that setoff applies to mutual, post-petition obligations.").

42.    Here, Marriott satisfies each of the elements necessary to exercise the right of setoff for mutual post-petition claims.  First, as noted above, according to the Cash Management Motion, the Debtor now claims entitlement to the funds in the FF&E account, which are held by Marriott. *See* Cash Management Motion, ECF No. 3, at ¶ 7; *see also Quantum Foods*, 554 B.R. at 734 (finding that setoff may apply to mutual post-petition obligations).

43.    Second, Marriott has a claim against the Debtor that arises post-petition.  Pursuant to the HMA, upon replacing Marriott as manager, the Debtor was obligated to hire a sufficient number of employees at the Hotel to avoid a "closing" that would trigger severance obligations. HMA § 11.11(I).  When the Debtor removed Marriott prior to the bankruptcy filing and closed the Hotel, the Debtor breached this provision of the HMA, and as a result, Marriott needed to sever the Hotel's employees and incur an estimated $11 million severance obligation.  Pursuant to Section 4.03(C) of the HMA, "Debts and liabilities" incurred by Marriott as a result of its operation and management of the Hotel, whether asserted before or after termination of the HMA, are obligations of the Debtor.  As Marriott incurred the severance costs after the filing of the bankruptcy petition, its claim for payment from the Debtor arises post-petition.

44.    Third, the mutuality requirement under section 553(a) of the Bankruptcy Code requires that the claims sought to be setoff be between the same parties.  *See In re SemCrude, L.P., et al.,* 399 B.R. 388, 393 (Bankr. D. Del. 2009).  Debts are considered mutual only when they are due to and from the same persons in the same capacity.  *See id.*  Here, Marriott's claim is against the Debtor, and the Debtor's claim is against Marriott.  Thus, the mutuality requirement is met.

45.    Even if the Debtor asserts that its entitlement to the FF&E Reserve arose pre-petition, Marriott, nonetheless meets the requirements of setoff.  As noted herein, Marriott has not been paid an estimated $5.4 million in costs advanced for the benefit of the Hotel.  In addition, the Debtor has sought the authority to reject the HMA pursuant to the Rejection Motion.  To the extent that the Court grants the rejection of the HMA, Marriott will have rejection damages in the tens of millions of dollars.  Under section 502(g) of the Bankruptcy Code, rejection damages arise prior to the Petition Date.  Thus, Marriott will also have mutual debts with the Debtor that arose pre-petition.

46.    Therefore, Marriott holds a valid and enforceable right of setoff with respect to the pre-petition HMA, and Marriott is entitled to relief from the automatic stay to allow Marriott to exercise its setoff rights with respect to the FF&E Reserve.

### WAIVER OF THE 14-DAY STAY UNDER BANKRUPTCY RULE 4001(a)(3)

47.    Marriott requests that this Court waive the 14-day stay provided under Bankruptcy Rule 4001(a)(3) so that Marriott may immediately effectuate the recoupment or setoff its Marriott Claim against the FF&E Reserve.

### RESERVATION OF RIGHTS

48.    Marriott reserves the right to amend, modify, or supplement this Motion in all respects, including, but not limited to, liquidating any unliquidated amounts, asserting a claim or claims for additional amounts due and/or claims based on alternative theories or liabilities, and asserting any claims for damages arising from any acts or omissions by any of the Debtor.  Nothing herein constitutes a waiver of Marriott's rights or remedies.

**WHEREFORE**, for the reasons discussed above Marriott respectfully requests that the Court grant the relief requested herein and such other and further relief as is just and necessary.

Dated: January 26, 2021
      Wilmington, Delaware      **MORRIS, NICHOLS, ARSHT, & TUNNELL LLP**

      By:    */s/ Curtis S. Miller*
            Curtis S. Miller (No. 4583)
            1201 North Market Street, 16th Floor
            P.O. Box 1347
            Wilmington, DE 19899-1347
            Telephone: (302) 351-9412
            Email: cmiller@mnat.com

            -and-

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Ori Katz (admitted *pro hac vice*)
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Phone: (415) 434-9100
Facsimile: (415) 434-3947
Email: okatz@sheppardmullin.com

-and-

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Michael T. Driscoll (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701
Email: mdriscoll@sheppardmullin.com

-and-

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Jennifer L. Nassiri (admitted *pro hac vice*)
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
Telephone: (213) 620-1780
Facsimile: (213) 620-1398
Email:  jnassiri@sheppardmullin.com

-and-

**JENNER & BLOCK LLP**
Lindsay Harrison (admitted *pro hac vice*)
Alex S. Trepp
1099 New York Avenue, N.W.
Suite 900, Washington, DC 20001-4412
Phone: (202) 639-6000
Facsimile: (202) 639-6066
Email: lharrison@jenner.com
Email: atrepp@jenner.com

-and-

**JENNER & BLOCK LLP**
Paul Rietema
353 N. Clark Street
Chicago, IL 60654-3456
Phone: (312) 840-7208
Facsimile: (312) 840-7308
Email: prietema@jenner.com

*Attorneys for Marriott Hotel Services, Inc.*