IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| WARDMAN HOTEL OWNER, L.L.C.,[1] ) | Case No. 21-10023 (JTD) |
| ) | |
| Debtor. ) | Hearing Date: February 9, 2021 at 10:00 a.m. (ET) |
| ) | **Re: D.I. 62** |

### PACIFIC LIFE INSURANCE COMPANY'S OPPOSITION TO MARRIOTT HOTEL SERVICE, INC.'S MOTION FOR THE AUTHORITY TO EXERCISE RIGHTS OF RECOUPMENT OR, IN THE ALTERNATIVE <u>RELIEF FROM THE AUTOMATIC STAY TO EXERCISE RIGHTS TO SET OFF</u>

Pacific Life Insurance Company ("**Pacific Life**") in its capacity as senior secured prepetition and post-petition lender[2] to Wardman Hotel Owner, L.L.C. (the "**Debtor**"), files this Opposition to Marriott Hotel Services, Inc's ("**Marriott**") January 26, 2021, *Motion for the Authority to Exercise Rights of Recoupment, or, in the Alternative, Relief from the Automatic Stay to Exercise Rights to Setoff* [Docket No. 62] (the "**Marriott Section 362 Motion**"), and respectfully state as follows:[3]

### SUMMARY OF THE ARGUMENT

Through the Marriott Section 362 Motion, Marriott is seeking authority to use purported (and disputed) setoff and recoupment rights to immediately and unilaterally apply Debtor's property (held in the FF&E Reserve (defined below)) against amounts that Marriott claims are outstanding.[4] The Marriott Section 362 Motion should be denied because Marriott has failed to establish that (i) either recoupment or setoff are permitted or (ii) otherwise applicable state law would allow Marriot to

---

[1] The last four digits of the Debtor's U.S. tax identification number are 9717. The Debtor's mailing address is 5035 Riverview Road, NW, Atlanta, GA 30327.

[2] As of February 2, 2021, Pacific Life is owed not less than $133 million.

[3] Terms not otherwise defined herein shall have the meaning given to them in the Marriott Section 362 Motion.

[4] Tellingly, Marriott is not seeking authority to preserve or otherwise assert its setoff rights. Instead, pursuant to the proposed order attached to the Marriott Section 362 Motion, Marriott is seeking authority to immediately and unilaterally use funds in the FF&E Reserve to reduce its claim.

immediately and unilaterally use the Debtor's property to reduce the amount that the Debtor may owe Marriott on account of Marriott's contingent, unliquidated and disputed prepetition claim. Because the Marriott Section 362 Motion fails to address Marriott's rights under the HMA and otherwise relies on boilerplate caselaw that does not establish a right to effectuate a reduction of amounts owing to Marriott prior to a final determination of the merits of its claims or rights under the HMA, the Marriott Section 362 Motion fails.

## RELEVANT FACTUAL BACKGROUND[5]

### A. Dispute With Marriott

1. On September 8, 2020, Marriott filed its complaint (the "**State Court Complaint**") in the Circuit Court for Montgomery County Maryland (the "**State Court Action**") against the Debtor and Pacific Life.

2. In the State Court Action, and relevant to the Marriott Section 362 Motion and this Opposition, Marriott *asserts* that it has claims against the Debtor arising out of that certain Hotel Management Agreement (the "**HMA**")[6] between Marriott and the Debtor.[7]

3. On November 16, 2020, the Debtor filed its answer to the State Court Complaint, asserting complete defenses.

4. Thereafter, on December 16, 2020, the Debtor filed its Counterclaim against Marriott wherein it further asserted complete defenses to the claims asserted by Marriott and raised its right to

---

[5] The factual background regarding the Debtor, including its historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the Declaration of James D. Decker in Support of Debtor's Chapter 11 Petition and First Day Motions, D.I. 2 (the "**First Day Declaration**").

[6] The HMA is attached to the Marriott Section 362 Motion as Exhibit B.

[7] Although the State Court Complaint includes claims against Pacific Life arising out of or related to Pacific Life's Prepetition Loan (as defined in the Debtor's Motion for Authority to Obtain Postpetition Financing, D.I. 5) and that certain Subordination, Non-Disturbance and Attornment Agreement dated as of January 19, 2018, because these claims are not relevant to whether Marriott has a right to setoff or recoupment, they are not addressed herein.

an affirmative recovery from Marriott on account of Marriott's breaches of the HMA.

5. At its core, the State Court Action involves *disputed* claims by Marriott against the Debtor and Pacific Life arising from and related to assets of the bankruptcy estate, including the operation of the Hotel.

**B. The HMA**

6. The Debtor and Marriott were parties to a hotel management agreement—the HMA—which provided for Marriott's management of the Hotel.

7. Pursuant to the HMA, *the Debtor* maintains a Furniture, Fixtures, and Equipment account (the "**FF&E Reserve**"). HMA § 5.02.

8. Funds in the FF&E Reserve are property of the Debtor and, thus, constitute property of the Debtor's estate. *See* HMA at § 5.04 ("all amounts kept in the FF&E Reserve, shall, except as otherwise provided in this Agreement, be the property of [Debtor].").

9. The FF&E Reserve is a special account specifically earmarked for needed capital improvements of the Hotel. HMA § 5.02(A). In particular, funds in the FF&E Reserve shall be used for the discrete purposes of covering the cost of (1) replacements, renewals and additions to the FF&E at the Hotel; and (2) Special Capital Expenditures, which are defined and limited to: "exterior and interior repainting; resurfacing building walls, floors and roofs; resurfacing parking areas; replacing folding walls; and miscellaneous similar expenditures." *See* HMA at *49.[8]

10. Although monies in the FF&E Reserve may be used for non-FF&E-related purposes, those uses are expressly limited. For example, though Marriott **may** have the right to use certain funds in the FF&E Reserve to reduce amounts that Marriott has incurred or is projected to incur, Marriott's

---

[8] The fact that the Debtor has closed the Hotel does not lessen the potential need to use funds in the FF&E Reserve for "exterior and interior repainting; resurfacing building walls, floors and roofs; resurfacing parking areas; replacing folding walls; and miscellaneous similar expenditures." In fact, these uses might preserve and increase the value that the Debtor may obtain through its sale process.

right exists only **after the HMA is terminated**.[9]

11.     Although the Debtor has asserted that it terminated the HMA prepetition, Marriott has disputed the effect of the Debtor's prepetition actions. *Compare* First Day Declaration ¶ 27 *with See* Marriott Section 362 Motion at p. 8, *FN3. Because Marriott has argued that the HMA was not terminated, it should be estopped from now claiming that it is entitled to exercise post-termination rights.

## OBJECTION

### A. Marriott is Not Entitled to Recoupment

---

[9]     In relevant part, the HMA provides Marriott with the following rights, **upon termination**:

> 6.02. J. **Upon Termination**, a reserve in an amount determined by Manager based on loss projections, shall be established from Gross Revenues to cover the amount of any Insurance Retention and all other costs and expenses that will eventually have to be paid by either Owner or Manager with respect to pending or contingent claims, including those that arise after Termination for causes arising during the Term. If Gross Revenues are insufficient to meet the requirements of such reserve, Owner shall deliver to Manager, within ten (10) days after receipt of Manager's written request thereof, the sums necessary to establish such reserve; and if Owner fails to timely deliver such sums to Manager, Manager shall have the right (without affecting Manager's other remedies under this Agreement) **to withdraw the amount of such expenses from the Operating Accounts, the FF&E Reserve**, the Working Capital funds or any other funds of Owner held by or under the control of Manager.

*See* HMA at § 6.02 (J).

\*\*\*

> 11.11 H. **If this Agreement is terminated for any reason, other than a Termination by reason of a Default of Manager hereunder, an escrow fund shall be established** from Gross Revenues to reimburse Manager for all costs and expenses incurred by Manager in terminating its employees at the Hotel, such as severance pay, unemployment compensation, employment relocation, and other employee liability costs arising out of the termination of employment of Manager's employees at the Hotel. If Gross Revenues are insufficient to meet the requirements of such escrow fund, then Owner shall deliver to Manager, within ten (10) days after receipt of Manager's written request therefor, the sums necessary to establish such escrow fund; and if Owner fails to timely deliver such sums to Manager, Manager shall have the right (without affecting Manager's other remedies under this Agreement) **to withdraw the amount of such expenses from the FF&E Reserve**, the Working Capital funds or any other funds of Owner held by or under the control of Manager.

*See* HMA at § 11.11(H).

12. Marriott's request for recoupment disregards the fundamental principles of equitable distribution and lacks merit. The recoupment doctrine is a limited one that should be very narrowly construed. *Westinghouse Credit Corp. v. D'Urso*, 278 F. 3d 138, 147 (2d. Cir. 2002). "Recoupment is in the nature of a defense, the purpose of which is to do justice viewing one transaction as a whole." *Id.* (quoting *Malinowski v. N.Y. State Dep't of Labor (In re Malinowski),* 156 F.3d 131, 133 (2d Cir. 1998). The party claiming that it has a valid right of recoupment "has the burden of proving the applicability of the doctrine of recoupment by a preponderance of the evidence." *In re Delicruz,* 300 B.R.669, 680 (Bankr. E.D. Mich. 2003). Along with the burden of proof, the party claiming it has a valid right of recoupment must show that it has overcome the two limitations of the recoupment doctrine: (1) the claims must arise from the same transaction and (2) there must be some type of overpayment whether accidentally made or contractually made. *See In re Delta Air Lines, Inc.,* 359 B.R. 454, 465 (Bankr. S.D.N.Y. 2006); *see also In re Health Mgmt. Ltd. P'ship*, 336 B.R. 392, 395-396 (Bankr. C.D. Ill. 2005).

**1. Marriott's claims for reimbursement do not arise out of the same transaction as the Estate's entitlement to the FF&E Reserve**

13. "The fact that the same two parties are involved and that a similar subject matter gave rise to both claims . . . does not mean that the two arose from the 'same transaction'" for purposes of the doctrine of recoupment. *See Wells Fargo Bank, N.A. v. Am. Home Mortg. Holdings, Inc. (In re Am. Home Mortg. Holdings, Inc.),* 401 B.R. 653, 655-656 (D. Del. 2009) citing *University Med. Ctr.,* 973 F.2d at 1081 (3d Cir. 1992)(rejecting the "open-ended" definition of same transaction that is used in discerning compulsory counterclaims under Fed. R. Civ. P. 13(a) in favor of a narrowly construed definition of the term for equitable recoupment in bankruptcy) *rev'd on other grounds*. For claims to arise from the "same transaction" for the purposes of recoupment, the Third Circuit requires that "both debts must arise out of a ***single integrated transaction*** so that it would be inequitable for the

debtor to enjoy the benefits of that transaction without also meeting its obligations." *Univ. Med. Ctr.,* 973 F.2d at 1081 (emphasis added).

14. To support Marriott's claim that its claims against the Debtor and the Debtor's claim to funds in the FF&E Reserve arise out of a single integrated transaction, Marriott exclusively and conclusively asserts "the 'same transaction or occurrence' requirement is met because both the Marriott Claim and the Debtor's claim to the funds in the FF&E Reserve arise from a single contract — the HMA." *See* Marriott Section 362 Motion ¶ 34. But, the fact that the Debtor and Marriott's relationship is governed by a single contract, the HMA, does not establish that Marriott's desire to invade the FF&E Reserve arises out of the same integrated transaction as its demand for working capital. *Univ. Med. Ctr.,* 973 F.2d at 1081*; In re HQ Global Holdings, Inc.,* 290 B.R. 78, 81 (Bankr. D. Del. 2003).

15. Indeed, many courts have rejected the argument that because the obligations arise from the same contract they necessarily arise from the same transaction. *See, e.g., In re Malinowski,* 156 F.3d 131, 135 (2d Cir. 1998) ("[w]here the contract itself contemplates the business to be transacted as discrete and independent units, even claims predicated on a single contract will be ineligible for recoupment."); <u>Conoco, Inc. v. Styler</u> *(In re Peterson Distributing, Inc.),* 82 F.3d 956, 960 (10th Cir. 1996) (Court rejects "same contract equals same transaction" as overly simplistic." Court holds that recoupment is only available where the obligations "are so closely intertwined that allowing the debtor to escape its obligations would be inequitable."); *University Medical Ctr. v. Sullivan,* 973 F.2d at 1081-82 ("same transaction" requirement for recoupment must be narrowly construed); *Gonzales v. Food Mktg. Grp. (In re Furr's Supermarkets, Inc.),* 320 B.R. 1, 6-7 (Bankr. D.N.M. 2004) ("It is not enough merely that the claims at issue arise out of the same contract; something more must be shown."); *St. Francis Physicians Network, Inc. v. Rush Prudential HMO, Inc. (In re St. Francis Physicians Network, Inc.),* 213 B.R. 710, 719-720 (Bankr. N.D. Ill. 1997) (The requirements for recoupment "cannot be satisfied merely by showing that the two claims arose under

the same contract. . . ."); *Thompson v. Bd. of Tr. of the Fairfax Cnty Police Officers Ret. Sys. (In re Thompson),* 182 B.R. 140, 148 (Bankr. E.D. Va. 1995) ("One contract alone, however, is not sufficient to establish a single transaction, since separate transactions may occur within the confines of the contract.").

16. Neither does the fact that expenses and payments are commonly billed and reconciled convert distinct transactions into a single integrated transaction for purposes of recoupment. *See e.g. Lee v. Schweiker, 739 F.2d 870 (3d Cir. 1984)* (holding that the Social Security Administration could not recoup overpayments made to a beneficiary in bankruptcy).

17. Here, the contractual requirement that Marriott deposit a percentage of Debtor's Gross Revenues into the FF&E Reserve,[10] and the contractual limitation that those fund be available in a separate account to satisfy necessary FF&E expenses, is uniquely distinct from Marriott's claim in the State Court Litigation that the Debtor breached the HMA for refusing to fund Marriott's separate working capital demands.[11] The nature of Marriott's claims for breach of contract indicates the tenuous nature of its recoupment claim for working capital expenses. In particular, Marriott is attempting to claim that there is a logical relationship between a separate and distinct fund and its contingent right to use monies in the FF&E Reserve—following a termination and a final determination of amounts owing under the HMA—to Marriott's claim for payment of working capital expenses.

18. Under *University Med. Ctr.,* a mere logical relationship is not enough. A state law claim for breach of contract is not a part of the same integrated transaction as the estate's entitlement to the Debtor's property pursuant to the federal Bankruptcy Code. Instead, Marriott is attempting to

---

[10] HMA § 5.02.
[11] While the Debtor, Marriott and Pacific Life agreed prepetition that certain amounts in the FF&E Reserve could be used to fund working capital needs, the process through which those separate funds could be used to fund non-FF&E-related expenses (i.e., each party had to consent in writing), shows the separate and distinct nature of the claims.

assert a separate affirmative claim for money damages based on a state law claim under the guise of recoupment. Granting the Marriott Section 362 Motion would unjustly allow a general unsecured claim to receive priority and, for that reason, the recoupment doctrine must be narrowly construed in this case.

19. Moreover, Marriott has not shown a logical relationship between the separate and distinct fund or its contingent right to use monies in the FF&E Reserve to Marriott's claim for payment of working capital expenses. Pursuant to section 5.02(A) of the HMA, the FF&E Reserve is specifically earmarked for needed capital improvements of the Hotel. HMA § 5.02(A). In particular, the FF&E Reserve funds shall be used for the discrete purposes of covering the cost of (1) replacements, renewals and additions to the FF&E at the Hotel; and (2) Special Capital Expenditures, which are defined and limited to: "exterior and interior repainting; resurfacing building walls, floors and roofs; resurfacing parking areas; replacing folding walls; and miscellaneous similar expenditures." *See* HMA at *49. Marriott's purported claim relating to advances to pay working capital have no relevance to the discrete purposes of the FF&E reserves, notably, to fund capital improvements to the Hotel. The fact that the Debtor has now closed the Hotel permanently does not lessen the potential need to use funds in the FF&E Reserve for "exterior and interior repainting; resurfacing building walls, floors and roofs; resurfacing parking areas; replacing folding walls; and miscellaneous similar expenditures."

20. Because Marriot has failed to show that its unliquidated and disputed claim for relief against the Debtor in the State Court Litigation for refusing to fund Marriott's working capital and its claims asserted in the Marriott Section 362 Motion for damages relating to the termination of the HMA arises out of a single integrated transaction, the Marriott Section 362 Motion should be denied.

**2. Marriott has failed to establish that an Overpayment Exists**

21. Recoupment permits a creditor to recover prepetition overpayments by deducting funds from postpetition payments due the debtor, arising from a single transaction at issue. *See In re*

*Metropolitan Hosp.*, 131 B.R. 283, 289 (Bankr. E.D. Pa. 1991). Here, no overpayment exists as the Debtor's rights to the FF&E Reserve are senior to Marriott's contingent claim. In fact, Marriott contractually agreed to subordinate its rights to the Debtor into and with respect to the FF&E Reserve under the HMA:

> All repairs, alterations, improvements, renewals or replacements made pursuant to this Article V, **and all amounts kept in the FF&E Reserve, shall, except as otherwise provided in this Agreement, be the property of [Debtor]**.

*See* HMA at § 5.04.

22. Similarly, because Marriott disputes that the Debtor terminated the HMA prepetition (*See* Marriott Section 362 Motion at p 8, *FN3), it cannot now seek to benefit from the HMA's termination provisions by asserting that it has a right to funds in the FF&E Reserve. *See* HMA §§ 6.02(J), 11.11(H).

23. Thus, even if Marriott could establish that its claims arise out of the same transaction and occurrence, because Marriott has no present right to the monies in the FF&E Reserve, the Marriott Section 362 Motion should be denied.

### B. Marriott's Request for Relief from Stay Should be Denied Because Marriott Has Not Established Cause

24. Marriott has not established "cause" to lift the automatic stay as required by section 362(d)(1) of the Bankruptcy Code. To establish cause, a creditor must "first establish its right to setoff by finding an independent right of setoff under non-bankruptcy law. It then must show that the conditions § 553 places on setoff are satisfied." *See In re WL Homes LLC*, 471 B.R. 349, 352 (Bankr. D. Del. 2012). Marriott has not met these requirements, and as such, the Marriott Section 362 Motion should be denied.

    a. <u>Marriott has not established its right to unilaterally apply funds held in the FF&E Reserve</u>

25. The requisite elements of a section 553 setoff include that: (1) the creditor holds a claim against the debtor that arose before the commencement of the case; (2) the creditor owes a debt

to the debtor that also arose before the commencement of the case; (3) the claim and debt are mutual, and (4) the claim and debt are each valid and enforceable. *See, e.g., In re Stienes*, 285 B.R. 360, 362 (Bankr. D.N.J. 2002) citing *In re Whitaker*, 173 B.R. 359 (Bankr. S.D.Ohio, 1994). As set forth more fully below, the section 553 setoff elements have not been met.

26.     First, Marriott fails to establish that it has the unliteral right to use funds in the FF&E Reserve to immediately reduce the amount that it claims are owing to it under the HMA (which claims are both disputed and subject to counterclaims). Instead, Marriott relies on one case wherein the court held that *a bank* had a common law right to setoff amounts held in a deposit account and two cases confirming that setoff is an equitable *defense* that can be used to reduce or defeat an opposing party's claims.  *See* Marriott Section 362 Motion ¶ 39.  These cases are inapposite because none of them establish the unilateral right of a non-bank creditor, who holds a disputed claim, to unilaterally effectuate a setoff, let alone setoff funds designated for a special purpose. *See In re WL Homes LLC*, 471 B.R. at 352 ("the Court finds that Zurich's say-so is simply not enough to establish—as is Zurich's burden—that California law would permit this type of contingent claim to serve as the basis for setoff."); *Rhodes v. Bowling Green White Stone Co. of Ky.*, 43 App. D.C. 298, 302 (D.C. Cir. 1915) ("The law is so well settled that a garnishee cannot claim a set-off for unliquidated and contingent claims, even against a defendant, that the defense of the garnishee in his case totally fails."); c*f. Bank of America, N.A. v. Lehman Bros. Holdings, Inc. (In re Lehman Bros. Holdings, Inc.),* 439 B.R. 811, 824 (Bankr. S.D.N.Y. 2010) (finding that cash collateral pledged for the specified purpose of funding overdraft exposure was not subject to setoff against other unrelated obligations owed by the Debtor to the bank); *see also In re Nielson*, 90 B.R. 172, 174 (Bankr. W.D.N.C. 1988) (analogizing special deposit accounts in non-banking context and denying relief from stay to permit setoff of funds appropriated for special purpose by government agency).

27.     As discussed below, Marriott's claims against the Debtor are fully disputed. In fact, the validity and enforceability of Marriott's claim against the Debtor is in question as no final

judgment has been issued in the State Court Action and it is subject to the Debtor's Counterclaims. Thus, because Marriott has failed to introduce any statutory or common law basis that establishes its right to unilaterally effectuate a setoff in respect of contingent and unliquidated claims, Marriott fails to meet its burden and the Marriott Section 362 Motion should be denied.

28. Marriott similarly fails to meet the first element required by section 553 of the Bankruptcy Code, that the claim arose before the commencement of the case, because Marriott asserts in the Marriott Section 362 Motion that its claim against the Debtor arose post-petition. *See* Marriott Section 362 Motion at ¶ 43.[12] As to the mutuality requirement, for mutuality to exist, each party must own his claim in his own right severally, with the right to collect a debt in his own name against the debtor in his own right and severally. *See In re Garden Ridge Corp.*, 338 B.R. 627, 633-634 (Bankr. D.E. 2006). Because section 553 requires that a creditor's claim arise prior to commencement of the case, Marriott's request for setoff must be denied.

### C. The Marriott Section 362 Motion Should be Denied Because Marriott's Claim is Disputed

29. To support its attempt to unilaterally and immediately take monies held in the FF&E Reserve to recoup or setoff its alleged severance costs paid to the Hotel's employees out of the $4.7 million from the Debtor's FF&E Reserve, Marriott relies exclusively on the December 3, 2020 preliminary injunction Order it obtained in the State Court Action and "findings" made by the Court in connection therewith. Marriott's reliance is misplaced

30. It is well settled that findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834 (1981). Here, Marriott's claims arising from the State Court Action are preliminary in nature and subject to a *bona fide* dispute as the Debtor filed counterclaims against Marriott in the

---

[12] Though Pacific Life believes that Marriott's claim that Marriott has a post-petition claim—which arises out of a pre-petition contract that was terminated—is specious, Marriott should be judicially estopped from arguing to the contrary.

State Court Action on December 16, 2020. Because there has been no final determination, any claim for recoupment and setoff are premature at this stage.

31.    Even when a lawsuit has been filed, claims that are not finally adjudicated are contingent. *See Felton v. Noor Staffing Group, LLC (In re Corporate Res. Servs. Inc.)*, 564 B.R. 196, 201 (Bankr. S.D.N.Y. 2017) citing *Cytec Indus., Inc. v. Allnex (Luxembourg) & Cy S.C.A.*, 2015 U.S. Dist. LEXIS 82273, 2015 WL 3762592, at *13 (S.D.N.Y. May 15, 2015) ("Courts have declined to permit offsets directed toward damages in a pending litigation."); *see, e.g., In re WL Homes LLC, 471* B.R. at 352 ("Ordinarily, when a liability is contingent, and not fixed, it is unavailable as a setoff without the consent of the plaintiff. ... A claim urged as a setoff ... must be mature at the time when the judgment debtor seeks the setoff. Thus, a judgment debtor's right to receive payments from a judgment creditor on a note that is not yet due at the time when the setoff is sought does not constitute a proper subject for equitable setoff."); *Hack v. Stang*, 2015 U.S. Dist. LEXIS 116341, 2015 WL 5139128, at *5 (S.D.N.Y. Sept. 1, 2015) (finding that creditor's pending litigation "in New Jersey is, at best, a potential unliquidated liability that, as a matter of law, may not be used as a setoff") (internal citation omitted); *Correspondent Servs. Corp. v. J.V.W. Inv. Ltd.*, 524 F. Supp. 2d 412, 424 (S.D.N.Y. 2007) (holding that a defendant "has no right to 'set-off' its pending disputed and unliquidated claim against [a plaintiff's] present entitlement to damages owed"). Similarly, debts that are incurred but cannot be calculated until after the petition date are also contingent. *See, e.g., Willett v. Lincolnshire Mgmt, Inc.,* 302 A.D.2d 271, 271, 756 N.Y.S.2d 9 (1st Dep't 2003) (affirming dismissal of setoff affirmative defense where obligation was currently being disputed).

32.    Importantly, the automatic stay prohibits, among other things, the commencement or continuation of a judicial action or proceeding against the debtor to recover a pre-petition claim against the debtor. 11 U.S.C.S. § 362(a)(1). It also prohibits an action or proceeding to enforce a pre-

petition judgment against the debtor or against property of the debtor. *Gunther v. Glabb (In re Glabb)*, 261 B.R. 170, 174. (Bankr. W.D. Pa. 2001).

33.     The preliminary injunction Order requiring the Debtor to pay working capital in amounts requested by Marriott is properly classified as a "liability on a claim." *See* 11 U.S.C.S. § 101(12); *see also In re Stone Res., Inc.*, 458 B.R. 823, 834 (E.D. Pa. 2011) citing *Kennedy v. Medicap Pharms., Inc.*, 267 F.3d 493, 497 (6th Cir. 2001) ("[t]he right to equitable relief constitutes a claim [subject to the automatic stay]. . . if it is an alternative to a right to payment or if compliance with the equitable order will itself require the payment of money."); *United States v. TWA (In re TWA)*, 18 F.3d 208, 214 (3d Cir. 1994) (finding that where an injunction caused disbursement of money, the order was best understood as a money judgment); *Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992) (holding that declaratory judgment requiring party to pay a specific sum of money is properly characterized as a money judgment).

34.     As a result, all pre-petition claims by Marriott alleging entitlement to funds within the FF&E Reserve are stayed pursuant to section 362(a)(1) of the Bankruptcy Code.  Because the Marriott Section 362 Motion seeks to effectuate a final resolution of the Marriott State Court Action—by obtaining authority to unilaterally use the FF&E Reserve to reduce its alleged damages before a final resolution of such claims, defenses, and counterclaims—it should be denied.

WHEREFORE, for the reasons set forth herein, Pacific Life respectfully requests that the Court deny the Marriott Section 362 Motion.

Dated: February 3, 2021
Wilmington, Delaware

                    **KLEHR HARRISON HARVEY BRANZBURG LLP**

                    */s/ Domenic E. Pacitti*
                    Domenic E. Pacitti (DE Bar No. 3989)
                    919 North Market Street, Suite 1000
                    Wilmington, Delaware 19801
                    Email: dpacitti @klehr.com

                    -and-

                    **ALSTON & BIRD LLP**
                    David A. Wender (admitted *pro hac vice*)
                    Grant T. Stein (admitted *pro hac vice*)
                    1201 West Peachtree Street
                    Atlanta, Georgia, 30309
                    Email:  david.wender@alstonbird.com
                              grant.stein@alstonbird.com

                    *Counsel to Pacific Life Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 3rd day of February 2021, a copy of the foregoing was emailed to:

Curtis S. Miller
Morris, Nichols, Arsht, & Tunnell LLP
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Email: cmiller@mnat.com

Ori Katz
Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Email: okatz@sheppardmullin.com

Michael T. Driscoll
Sheppard, Mullin, Richter & Hampton LLP
30 Rockefeller Plaza
Email: mdriscoll@sheppardmullin.com

Jennifer L. Nassiri
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
Email: jnassiri@sheppardmullin.com

Lindsay Harrison
Alex S. Trepp
Jenner & Block LLP
1099 New York Avenue, N.W.
Suite 900, Washington, DC 20001-4412
Email: lharrison@jenner.com
Email: atrepp@jenner.com

Paul Rietema
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Email: prietema@jenner.com

Laura Davis Jones
Timothy P. Cairns
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Email: ljones@pszjlaw.com
Email: tcairns@pszjlaw.com

Maxim B. Litvak
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Email: mlitvak@pszjlaw.com

*/s/ Domenic E. Pacitti*
Domenic E. Pacitti (DE Bar No. 3989)