**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| WARDMAN HOTEL OWNER, L.L.C.,[1] | ) | Case No. 21-10023 (JTD) |
|  | ) |  |
| Debtor. | ) | **Related to Docket No. 62** |
|  | ) |  |

**OBJECTION OF THE DEBTOR TO MARRIOTT HOTEL**
**SERVICES, INC.'S MOTION FOR THE AUTHORITY TO EXERCISE RIGHTS OF**
**RECOUPMENT OR, IN THE ALTERNATIVE RELIEF FROM THE AUTOMATIC**
**STAY TO EXERCISE RIGHTS TO SETOFF**

The above-captioned debtor and debtor in possession (the "Debtor") hereby

objects to the motion for the authority to exercise rights of recoupment or, in the alternative relief

from the automatic stay to exercise rights to setoff [Docket No. 62] (the "Recoupment Motion"),

filed by Marriott Hotel Services, Inc. ("Marriott").  In support of this objection, the Debtor

respectfully states as follows:

**Preliminary Statement**

1.      The Recoupment Motion is another attempt on the part of Marriott to

advance its singular interests in this case through litigation.

2.      Marriott continues to hold certain funds *of the estate* in a Furniture,

Fixtures and Equipment reserve account ("FF&E Reserve") established pursuant to Section 5.02

of the Hotel Management Agreement (as attached as Exhibit B to the Recoupment Motion, the

"HMA").  The Debtor terminated the HMA prior to the Petition Date and, pursuant to Section

11.11 of the HMA, demanded that Marriott return all funds in the FF&E Reserve to the Debtor.

---

[1]  The last four digits of the Debtor's U.S. tax identification number are 9717.  The Debtor's mailing address is 5035 Riverview Road, NW, Atlanta, GA 30327.

Rather than returning those funds, Marriott now seeks to recoup or setoff amounts in the FF&E Reserve to reimburse or prepay itself for alleged claims under the HMA that are wholly unrelated to the purpose of the FF&E Reserve.  Marriot is not entitled to such relief.

3.      *First*, Marriott proposes to use recoupment and setoff not to resolve competing claims between the Debtor and Marriott, but to pay its alleged claims against the Debtor using the Debtor's own funds held in trust.  The FF&E Reserve was established pursuant to the HMA prior to the Petition Date, but became property of the estate upon commencement of this case.  The Debtor need not assert a "claim" to the funds in the FF&E Reserve, even though this property was held by Marriott on the Petition Date.  Regardless of any alleged provision of the HMA, Marriott may not use its alleged defenses provided by recoupment and setoff to assert control of the Debtor's property.

4.      *Second*, even assuming recoupment or setoff were appropriate here, Marriott's claims for recoupment or setoff are premature because Marriott has not established a liquidated claim against the Debtor.  While Marriott asserts that there are amounts owed under the HMA, Debtor disputes that such amounts are owed and, in fact, has significant claims against Marriott itself based on Marriott's multiple material breaches of the HMA.  Thus, it is the Debtor that may be able to assert its own setoff rights to Marriott's unsecured claims in this case.

5.      *Third*, recoupment, a doctrine which courts are required to construe narrowly, is not appropriate under the circumstances here.  It is not enough that Marriott's claims and the FF&E Reserve funds both arise from a single contract for purposes of a recoupment. Rather, the party seeking recoupment must demonstrate that the claims subject to recoupment arise from a single, integrated transaction.  For the reasons set forth below, Marriott does not

2

meet that burden.

6.        Considering the numerous claims and allegations that Marriott has asserted in both this case and the litigation pending in Maryland state court, and the myriad disputes between Debtor and Marriott that may yet be raised in this chapter 11 case, any determination relating to Marriott's claims is premature.  Marriott should not receive piecemeal relief that would prejudice the Debtor's rights with respect to Marriott and that would prejudice other creditors and parties in interest.  Marriott's request for preferential treatment of its claims in this case–whether by setoff, recoupment, or other method of expedited liquidation–must be denied.

## Background

### A.        The Debtor's Bankruptcy Filing

7.        On January 11, 2021 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtor, including its current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of James D. Decker in Support of the Debtor's Chapter 11 Petition and First Day Relief* [Docket No.2], which is incorporated herein by reference.

8.        The Debtor continues in the possession of its property and to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.        No trustee, examiner, or committee has been appointed in the Debtor's chapter 11 case.

**B.**    **The Debtor's Disputes with Marriott**

10.    As noted above, Marriott was party to the HMA with the Debtor.  The Debtor terminated the HMA prior to the Petition Date and, out of abundance of caution, has moved to reject the HMA in this Chapter 11 case.  The Debtor expects Marriott to assert substantial claims for rejection damages.  The Debtor has substantial countervailing claims against Marriott for breach of contract.

11.    On September 8, 2020, Marriott sued the Debtor and Pacific Life (as lender) in the Circuit Court for Montgomery County, Maryland (the "Maryland Court") for breach of contract and tortious interference (the "Maryland Litigation").  Marriott's complaint alleged that the Debtor's failure to make certain working capital obligations breached the HMA, and further alleged that Pacific Life's failure to fund the same obligations breached a Subordination, Non-Disturbance and Attornment Agreement ("SDNA") between Pacific Life and Marriott.

12.    The Debtor asserted numerous counterclaims against Marriott in the Maryland Litigation based on Marriott's multiple failures as the operator of the Hotel under the HMA alleging, among other things.

- In the last 10 years of Marriott's stewardship of the Hotel, net operating income has dropped 80% (from $24.77 million in 2010 to $5.02 million in 2018);
- Marriott has been funneling premium group bookings to its other more recently opened Marriott-managed and owned properties in the D.C. area, while using the Hotel as a dumping group for far less profitable budget-oriented groups.
- Marriott has also let costs at the Hotel spiral out of control.  The Hotel's expenses significantly exceed those of its competitors, including inflated labor costs well in excess of the agreed collective bargaining agreement ("CBA") levels.

4

- At the outset of the COVID-19 pandemic, Marriott exacerbated their failures by baselessly demanding that Debtor fund tens of millions of dollars in working capital – and initially refusing to temporarily close the hotel, in disregard for both the health and safety of the employees and guests as well as the financial stability of the Hotel.

- While revenue continued to decline, Marriott failed to reasonably enact cost controls to account for the change in the nature of the business being booked at the Hotel.  The Hotel's operational costs, most notably the labor and food and beverage expenses, are completely out of line with the revenue generated by the Hotel.

- Marriott has also failed to reasonably and prudently monitor compliance with the CBAs.  For example, Marriott has permitted employees to gain benefits well in excess of the agreed CBA benefit levels, including some employees attaining accrued vacation time of more than a year (far in excess of the maximum accrual allotment provided for under the Union's own bargained-for package).

13.    These failures caused significant, reasonably avoidable costs to the Debtor and have cost the Debtor millions of dollars in damages.  The Debtor served Marriott with a notice of default (the "Notice of Default") with respect to the HMA on or about June 11, 2020.  As set forth in the Notice of Default, Marriott breached the HMA by, among other things, making repeated improper and exaggerated demands for working capital payments without evidence or support.  Marriott failed to cure these defaults and, just prior to filing this Chapter 11 case, the Debtor terminated the HMA.

**Legal Basis for Objection to Recoupment Motion**

**A.    Funds Held By Marriott in FF&E Reserve Are Estate Property**

14.    Marriott is not entitled to recoupment or setoff with respect to Debtor's funds in the FF&E Reserve because those funds are effectively held by Marriott in trust for Debtor in Marriott's capacity as the former Manager of the Hotel under the HMA.  HMA Section 5.02.  The HMA provides strict limitations for the use and release of funds in the FF&E Reserve

5

that cannot be varied except by consent of the Debtor.  *Id.*  Pursuant to the HMA, the funds held

in the FF&E Reserve are the property of the Debtor.  HMA Section 5.04.

15.     Rights of setoff and recoupment depend on the existence of competing

debts and claims between the parties.  In this case, the "debt" Marriott seeks to setoff or recoup is

not a "debt" owed by Marriott to Debtor but merely the return of Debtor's funds held by Marriott

for a specific purpose as provided by the HMA.  *See, e.g., Libby v. Hopkins*, 104 U.S. 303, 26 L.

Ed. 769 (1881) (funds held in trust for a particular purpose may not be set off against creditor's

claims); *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 896 F.2d 54, 57-58 (3d Cir. 1990)

(finding no mutuality for purposes of setoff where funds held by creditor belonged to Debtor); *In

re Bob Richards Chrysler-Plymouth Corp.*, 473 F.2d 262, 265 (9th Cir.), *cert. denied*, 412 U.S.

919, 37 L. Ed. 2d 145, 93 S. Ct. 2735 (1973) (funds belonging to the Debtor cannot be used by

creditor for set off).

16.     As stated by the Third Circuit in *Bevill*, "[t]he logic of the rule is that the

trust res is not owing to the bankrupt's estate, but rather is owned by it."  *Bevill* 896 F.2d at 57.

17.     In this case, Marriott cannot convert the debtor's funds that Marriott holds

in the FF&E Reserve by claiming that such funds represent a "debt" owed by Debtor to Marriott

and then exercising a right of recoupment or setoff against such funds.  Because Marriott seeks

to use the FF&E Reserve for this improper purpose, the Recoupment Motion should be denied.

**B.     The Assertion of Rights of Recoupment and Setoff Are Inappropriate and
        Premature**

18.     The Bankruptcy Code is not an independent source of law that authorizes

setoff or recoupment; it recognizes and preserves rights that exist under non-bankruptcy law.

Therefore, a creditor seeking to setoff or recoup a debt must establish a claim and a right to do so under state or federal law. *See In re Dillard Ford, Inc.*, 940 F.2d 1507, 1512 (11th Cir. 1991); *In re Public Serv. Co.*, 884 F.2d 11 (1st Cir. 1989); *Durham v. SMI Indus.*, 882 F.2d 881 (4th Cir. 1989); *In re Pieri*, 86 B.R. 208 (Bankr. 9th Cir. 1988); *United States v. Norton*, 717 F.2d 767 (3d Cir. 1983); *In re McLean Indus.*, 90 B.R. 614 (Bankr. S.D.N.Y. 1988).

19.     In this case, any claims asserted by Marriott with respect to the HMA are disputed and have not been determined.  As is typical of Marriott's relationship with the Debtor, Marriott provides no support or detail for the amounts allegedly owed.  Indeed, Marriott asserts claims for significant amounts that it admits that it has not even spent yet.  Recoupment Motion at 43.[2]

20.     Marriott alleges that it has been expending funds on behalf of the Debtor under the HMA to protect and manage the Hotel in light of the Covid-19 Pandemic.  However, the Debtor contends that Marriott made decisions with respect to maintaining or furloughing its own employees of its own accord and without the Debtor's consent.  To the extent Marriott substantially and unnecessarily increased its employee-related expenses, it should not now be permitted to recoup these costs from the Debtor.  Additionally, as noted above, far from protecting the Hotel and the employees, the Debtor submits that Marriott incurred substantial excess costs as part of a litigation and negotiation tactic primarily focused on claims it asserts under the terms of the SNDA.  At a minimum, all of these asserted claims are entitled to review by the Debtor, parties in interest in this case, and the Court.

---

[2] Marriott also asserts, presumably because these amounts may be paid after the Petition Date, that the claims are "postpetition."  However, spending the funds after the Petition Date does not elevate claims that are, at best, part of Marriott's rejection damages claims to postpetition claims.  *See, CDI Tr. v. U.S. Elec., Inc. (In re Commun. Dynamics, Inc.)*, 382 B.R. 219 (Bankr. D. Del. 2008)

21.    In light of the substantial disputes about Marriott's claims as well as Debtor's significant counterclaims, permitting recoupment or setoff at this juncture would be premature and risk significant prejudice to the Debtor and its creditors.

## C.    Marriott Does Not Meet the Standard for Asserting a Right of Recoupment

22.    Marriott asserts that recoupment is appropriate in this case because both the Marriott claims and the Debtor's "claim" to the funds in the FF&E Reserve arose under the HMA.  Where a party seeks to recoup claims arising under the same agreement, courts have found that they be part of the "same transaction" to meet the standard for recoupment.  *See, e.g.*, *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1080 (3d Cir. 1992); *Conoco, Inc. v. Styler (In re Peterson Distrib.)*, 82 F.3d 956, 960 (10th Cir. 1996); *United States ex rel. United States Postal Serv. v. Dewey Freight Sys.*, 31 F.3d 620, 623 (8th Cir. 1994); *HHI Formtech, LLC v. Magna Powertrain USA, Inc. (In re FormTech Indus., LLC)*, 439 B.R. 352, 362 (Bankr. D. Del. 2010).  As the Third Circuit stated in Universal Medical:

> … a mere logical relationship is not enough: the fact that the same two parties are involved, and that similar subject matter gave rise to both claims … does not mean that the two arose from the same transaction.  Rather, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of the transaction without also meeting its obligations. Use of this stricter standard for delineating the bounds of a transaction in the context of recoupment is in accord with the principle that this doctrine, as a non-statutory, equitable exception to the automatic stay, should be narrowly construed.

*University Medical*, 973 F.2d at 1081 (citations omitted).  "Recoupment is "narrowly construed" in bankruptcy cases because it violates the basic bankruptcy principle of equal distribution to creditors." *Conoco, Inc. v. Styler (In re Peterson Distrib.)*, 82 F.3d 956, 959-60 (10th Cir. 1996).

23.    Recoupment is not appropriate in this case because the "debt" that Marriott seeks to recoup against Marriott's alleged claims are not part of a single transaction. The amounts placed in the FF&E Reserve are Debtor's funds that are held by Marriott for "replacements, renewals and additions to [furniture, fixtures and equipment] to the Hotel; and Special Capital Expenditures" (as defined by the HMA).  HMA, Section 5.02.  Marriott seeks to use the FF&E Reserve to set off debts allegedly incurred for general operating expenses of the Hotel authorized elsewhere in the HMA.  Although both these obligations are defined by the HMA, they are not part of a "single integrated transaction" as required by Third Circuit law. Thus, recoupment is not appropriate under these circumstances.

DOCS_NY:42144.5 92203/001

WHEREFORE, the Debtor respectfully requests that this Court enter an order denying the Recoupment Motion and granting such other and further relief as this Court deems appropriate.

Dated: February 3, 2021

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Timothy P. Cairns*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@pszjlaw.com
          dbertenthal@pszjlaw.com
          tcairns@pszjlaw.com

Proposed Counsel to the Debtor and Debtor in Possession

10