## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WARDMAN HOTEL OWNER, L.L.C. | Case No. 21-10023 (JTD) |
| Debtor.[1] | **Requested Hearing Date:**<br>**March 23, 2021 at 2:00 p.m. (ET)** |
| | **Requested Objection Deadline:**<br>**At the hearing** |

### MARRIOTT HOTEL SERVICES, INC.'S MOTION FOR ORDER (I) AUTHORIZING RULE 2004 EXAMINATIONS OF WARDMAN HOTEL OWNER, LLC, JBG SMITH PROPERTIES, AND HOTEL ASSET VALUE ENHANCEMENT, INC. AND (II) EXTENDING THE CHALLENGE DEADLINE

Marriott Hotel Services, Inc. ("Marriott"), by and through its undersigned counsel, hereby moves the Court (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2004 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2004-1 and 9006-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), (i) authorizing and directing discovery from Wardman Hotel Owner, LLC (the "Debtor"), JBG Smith Properties ("JBG"), and Hotel Asset Value Enhancement, Inc. ("HotelAVE"), pursuant to Rule 2004 of the of Bankruptcy Rules (the "Rule 2004 Examinations"), and (ii) extending the Challenge Deadline (as defined herein) through and including April 29, 2021, without prejudice to Marriott's right to seek further extensions.  In support of this Motion, Marriott respectfully represents as follows:

---

[1] The last four digits of the taxpayer identification number for the Debtor are 9717. The mailing address for the Debtor is 5035 Riverview Road, NW, Atlanta, Georgia 30327.

**PRELIMINARY STATEMENT**

1.      Despite not having conducted *any* investigation of the pre-petition conduct of Pacific Life Insurance Company ("Pacific Life") beyond a cursory review of the validity, priority, or enforceability of Pacific Life's pre-petition liens, the Debtor granted Pacific Life, its insider, 100% owner, and controlling member, broad releases and waivers covering significant events, including the 2018 recapitalization transaction, any unknown transfers, and the events leading to the Debtor's insolvency and ultimate bankruptcy filing.  Under the Final DIP Order (as defined herein), if the DIP Stipulations (as defined herein) are not challenged by the Challenge Deadline of March 30, 2021, they will become automatically binding on the estate and all third parties.  Not surprisingly, given that this case is largely a two-party dispute engineered for the sole benefit of Pacific Life, there is no official committee of unsecured creditors that would traditionally lead this investigation of the DIP Stipulations.  Therefore, the burden and expense has fallen directly on Marriott to investigate these DIP Stipulations for the benefit of the Debtor's bankruptcy estate.

2.      Marriott has been attempting to work cooperatively with JBG, the Debtor, HotelAVE, and Pacific Life to informally obtain necessary documents and information to complete the investigation.  Unfortunately, it has become clear that an informal discovery process is not sufficient.  Although the Debtor produced non-privileged documents in the possession of its current manager, Jim Decker, it has taken the untenable position that it does not have possession, custody, or control over documents prior to Mr. Decker's appointment as manager of the Debtor in October 2020, which was shortly before the Petition Date (as defined herein).  This includes records in the possession of its previous managing member, JBG.  In other words, it includes

highly-relevant documents that are not only the Debtor's property, but are plainly within the Debtor's legal possession, custody, and control.

3.      Rather than compel JBG to turn over documents relevant to the investigation to Marriott, as the Debtor has a right to do under the 2018 Operating Agreement (as defined herein) and Delaware law, the Debtor has refused to even request that JBG produce relevant documents. Instead, the Debtor has asserted that Marriott must incur the time and expense of taking third-party discovery to obtain records that, again, are the Debtor's property and within the Debtor's legal possession, custody, and control.[2]  Prior to filing this Motion, Marriott informally provided these document requests to JBG, which indicated that it could not comply prior to the expiration of the Challenge Deadline.  With the impending Challenge Deadline approaching, Marriott was left with no choice but to seek this discovery through Rule 2004 to ensure compliance with the discovery requests in a timely manner.

4.       Further, in connection with the investigation, Marriott has informally sought documents from HotelAVE, who has historically served as the Debtor's asset manager and possesses a very significant number of documents related to the Hotel and the issues being investigated.   HotelAVE recently indicated that it will cooperate with Marriott's discovery requests, but indicated that it could not comply Marriott's requested return date and indicated that it would prefer until April 6, 2021 to complete its production.  That request was communicated in direct conversations between counsel for HotelAVE and Marriott, which became necessary only after the Debtor reneged on its commitment to producing documents from the custodial files of

---

[2] In connection with its own production, the Debtor has produced a privilege log.  But, by way of example, the Debtor's privilege log does not indicate the basis for withholding particular documents and does not appear to provide sufficient information about the subject matter of the communication that has been withheld.  Nevertheless, Marriott has made a good faith effort to discern what it can from the information provided, and is engaging the Debtor in discussion about whether certain documents are subject to a privilege or protection.

HotelAVE, something it had done during discovery related to the motion for DIP financing and indicated it was prepared to do during discovery related to Marriott's ongoing investigation. To the extent that disputes arise with HotelAVE's document production, Marriott is seeking a Rule 2004 Examination to ensure compliance with those discovery requests. The necessity for Court approval is particularly acute given HotelAVE's inability to meet Marriott's requested production date, along with the upcoming expiration of the Challenge Deadline.

5.      Given these circumstances, the Rule 2004 Examinations are the most expeditious tool to facilitate investigation of the DIP Stipulations. Relatedly, because of the refusal by the Debtor to produce documents that are plainly within its legal possession, custody, and control, Marriott requests a thirty-day extension of the Challenge Deadline under the Final DIP Order so that it may (i) obtain and review highly relevant documents from the Debtor's former managing member, or in the alternative, to the extent such documents are insufficient for Marriott to conduct its investigation of the DIP Stipulations, obtain and review relevant documents from the Debtor, as well as an adequate privilege log from the Debtor, (ii) obtain and review highly relevant documents from the Debtor's longtime asset manager, HotelAVE, and (iii) conduct depositions of the Debtor and JBG pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7030.[3]

6.      For these reasons, Marriott respectfully requests that the Court (i) grant Marriott the authority to conduct the Rule 2004 Examinations as set forth in the JBG Request for Production (as defined herein), the JBG 30(b)(6) Notice (as defined herein), the Debtor Request for Production

---

[3] Marriott has met and conferred with the Debtor about extending the Challenge Deadline. Upon information and belief, the Debtor has conferred with Pacific Life about extending the Challenge Deadline. As of the date of this Motion, those parties have not indicated whether they will consent to the extension of the Challenge Deadline.

(as defined herein), and the HotelAVE Request for Production (as defined herein) and (ii) extend the Challenge Deadline to April 29, 2021.

## JURISDICTION

7. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

8. The legal bases for the relief requested herein are section 105(a) of the Bankruptcy Code, Bankruptcy Rules 2004 and 9006 and Rules 2004-1 and 9006-2 of the Local Rules.

## BACKGROUND

### A.     JBG's Ownership of the Wardman Park Hotel

9.     In 2005, Thayer Lodging Group sold the Wardman Park Hotel (the "Hotel")  to JBG and CIM Group ("CIM") for $300 million.  *See Declaration of James D. Decker in Support of the Debtor's Chapter 11 Petition and First Day Relief*, ECF No. 2, at ¶ 14.

10.     In 2014, JBG redeveloped the largely unoccupied western portion of the Hotel's property, constructing an apartment building designed to mirror the historic Wardman Tower. *Id.* at ¶ 15.

11.     In 2015, JBG renovated floors 3-8 of the Wardman Tower into 32 luxury condominiums. The first and second floors remain part of the Hotel. The condominiums are separate from the Hotel and do not share an entrance or connecting interior passageways. *Id.* at ¶ 16.

12.     In January 2018, JBG and CIM, which had owned roughly equal interests in the Hotel, sold a controlling interest in the property (66.67%) to PL Wardman Member, LLC ("PL

Wardman"), an affiliate of Pacific Life, with JBG and CIM each retaining 16.67% in connection

with the restructuring of the then-existing secured financing. *Id.* at ¶ 17.

13.     On January 19, 2018, the Debtor executed the *Limited Liability Company*

*Agreement of Wardman Hotel Owner, L.L.C* (the "2018 Operating Agreement"). JBG, in its

capacity as managing member of the Debtor, was required to maintain the books and records of

the Debtor. *See* 2018 Operating Agreement, at § 8.01.  In addition, the 2018 Operating Agreement

unambiguously granted any member of the Debtor the right to examine those books and records:

> All Members and their duly authorized representatives shall have
> the right at the Company's expense, upon reasonable notice and at
> reasonable times, to examine and make copies of all tax, financial
> and other books and records of the Company, Including books and
> records necessary to enable a Member to defend any tax audit or
> related proceeding.

*Id.*

14.     In February 2020, CIM Group surrendered its interest in the Hotel to JBG, leaving

affiliates of Pacific Life and JBG as the sole owners (with PL Wardman owning 80% and the JBG

affiliate owning 20%). *Id.*

15.     On September 3, 2020, PL Wardman filed a petition for dissolution of the Debtor

in Delaware court citing a deadlock with JBG regarding a plan to address the deteriorating financial

condition of the Hotel.  On October 2, 2020, PL Wardman dismissed the complaint. *Id.* at ¶ 18.

16.     As of the Petition Date (as defined herein), Pacific Life indirectly owns 100% of

the interests in the Debtor as a result of its ownership of PL Wardman, the Debtor's sole member.

*Id.*

**B.     HotelAVE's Relationship with Wardman Hotel Owner, LLC**

17.     HotelAve has been Debtor's asset manager since at least January of 2018 and, in

its role, necessarily receives records and documents pertaining to the Hotel.  In fact, as set out

below, the Debtor's privilege log contains a considerable number of entries involving HotelAVE,

illustrating its critical role in matters relating to the Hotel.  *See infra* at ¶ 55.

### C.    The Debtor's Bankruptcy Filing and the Final DIP Order

18.    On January 11, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code.

19.    On the Petition Date, the Debtor filed a motion to obtain post-petition secured

financing (the "DIP Motion"). ECF No. 5. The DIP Motion sought the entry of an order authorizing

Pacific Life to provide post-petition secured financing to the Debtor.

20.    On February 9, 2021, this Court entered a final order authorizing Pacific Life to

provide post-petition secured financing (the "Final DIP Order").  ECF No. 126.

21.    Pursuant to Paragraph G of the Final DIP Order, the Debtor made expansive

stipulations (collectively, the "DIP Stipulations") relating to the purported validity, enforceability,

perfection, and priority of the pre-petition loan between the Debtor and Pacific Life and granted

broad releases of liability of Pacific Life, subject to the Challenge Deadline described below.

22.    Paragraph 27(a) of the Final DIP Order governs the procedure and timing of

challenges to the DIP Stipulations as set forth below:

> The Debtor's Stipulations set forth in paragraph F(i)[4] of this Order
> shall be binding on the Debtor or any other estate representative
> appointed in the Chapter 11 Case or any Successor Case. The
> Stipulations, as they relate to the claims that could be brought by, on
> behalf of, or through the Debtor, shall also be binding on all
> creditors, any trustee, and other parties in interest and all of their
> respective successors and assigns, including, without limitation, a
> Committee (if appointed), unless, and solely to the extent that, a

---

[4] The reference to paragraph F(i) appears to be an inadvertent error as the DIP Stipulations were included in paragraph
G of the Final DIP Order.

party in interest with standing and requisite authority (i) has timely filed a motion seeking standing (a "Standing Motion") to commence or otherwise pursue an appropriate proceeding or contested matter required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 27) challenging any of the Stipulations (each such proceeding or contested matter, a "Challenge") by no later than (a) for a Committee (if appointed), sixty (60) days from its formation or (b) for all other parties in interest (excluding the Debtor), March 30, 2021 (the "Challenge Deadline"), as such deadline may be extended in writing from time to time in the sole discretion of Prepetition Secured Party, the Challenge Deadline shall be tolled solely with respect to such moving party and solely with respect any Challenge specifically identified by such Standing Motion.

Final DIP Order, at ¶ 27(a).

**D.      The Debtor's Refusal to Produce Critical Documents or a Rule 30(b)(6) Witness**

23.      On February 26, 2021, Marriott served an informal request for the production of documents on the Debtor (the "Debtor Request for Production"), a copy of which is attached hereto as Exhibit B.

24.      On March 5, 2021, the Debtor asked that Marriott direct its document requests to any relevant third parties.  The Debtor further indicated that it had not contacted JBG about Marriott's requests for the production of documents.  Also on March 5, 2021, Marriott requested an opportunity to meet and confer with the Debtor.

25.      On March 8, 2021, the Debtor and Marriott participated in a meet and confer. During the course of that meet and confer, the Debtor represented that it had produced all or nearly all of the documents held by its current manager, Jim Decker, but did not have any additional documents.  The Debtor further represented that it did not have documents held by its former managing member, JBG.  The Debtor asserted that, while it might be able to obtain JBG documents, doing so was not a good use of estate resources.  The Debtor reiterated that Marriott

should seek documents directly from JBG, and indicated that it would not oppose Marriott's request that documents be provided.  Marriott reserved its right to seek the Court's intervention to secure documents within the Debtor's possession, custody, and control.

26.     During these discussions, the Debtor, (i) refused to make any demand on JBG for documents and records even though it could legally do so; and (ii) stated that although it did do a brief perfection analysis, it did not investigate whether other claims preceding Mr. Decker's appointment as manager exist, and it did not do as broad of a perfection analysis and investigation as a creditors committee would have done.

27.     On March 9, 2021, in order to exhaust efforts to obtain documents without Court intervention and minimize the burden on the Debtor's estate, Marriott served a request for the production of documents (the "JBG Request for Production") upon JBG pursuant to Bankruptcy Rule 7026, a copy of which is attached hereto as Exhibit C.

28.     Also on March 9, 2021, Marriott noticed the deposition of Jim Decker.  The Debtor subsequently requested an opportunity to meet and confer about the need for a deposition.

29.     On March 11, 2021, the Debtor and Marriott participated in a meet and confer. During the meet and confer, Marriott explained that a deposition of Mr. Decker was appropriate to address matters not exhausted during the course of a prior deposition concerning the Debtor's DIP Motion.  However, Marriott also indicated that a Rule 30(b)(6) deposition of the Debtor could address those matters, as well as  historical issues between the Debtor and Pacific Life, and would thus be more efficient.  The Debtor indicated that it would not produce a Rule 30(b)(6) witness because it lacked a witness with historical knowledge, as well as the records needed to educate that witness.  Marriott reserved its right to seek the Court's intervention to secure a Rule 30(b)(6) witness, as needed.

30.     On March 12, 2021, in order to exhaust its ability to obtain information pertinent to its investigation and minimize the burden on the Debtor's estate, Marriott served a notice of deposition (the "JBG 30(b)(6) Notice") upon JBG pursuant to Rule 30(b)(6), a copy of which is attached hereto as Exhibit D.

31.     On March 18, 2021, outside counsel for JBG and Marriott participated in a meet and confer, wherein counsel for JBG indicated that it could not comply with the JBG Request for Production or the JBG 30(b)(6) Notice until after expiration of the Challenge Deadline.

**E.     HotelAVE's Request for More Time to Produce Responsive Documents**

32.     During discovery taken in connection with Debtor's motion for DIP financing, the Debtor produced documents from the custodial files of HotelAVE.

33.     On March 1, 2021, the Debtor informed Marriott that it would produce non-privileged documents in HotelAVE's possession that relate to the Debtor going back to 2018.

34.     On March 5, 2021, the Debtor told Marriott that it would not produce documents on behalf of HotelAVE. The Debtor also failed to provide any contact information for HotelAVE.

35.     On March 9, 2021, Marriott requested the relevant contact information for HotelAVE. On March 10, 2021, the Debtor provided the contact information for HotelAVE's outside counsel.

36.     On March 11, 2021, Marriott served an informal request for the production of documents on HotelAVE (the "HotelAVE Request for Production"), a copy of which is attached hereto as Exhibit E.

37.     On March 16, 2021, HotelAVE responded to the request for production, and stated that they would not be able to produce the requested documents in the timeframe provided in the HotelAVE Request for Production.

38.    On March 17, 2021, outside counsel for HotelAVE and Marriott participated in a meet and confer, wherein counsel for HotelAVE indicated that it would prefer until April 6, 2021 to complete its production.

## RELIEF REQUESTED

39.    By this Motion, Marriott respectfully requests that this Court enter an order, substantially in the form annexed hereto as <u>Exhibit A</u>, (i) granting Marriott the authority to conduct the Rule 2004 Examinations of the Debtor, JBG and HotelAVE; and (ii) extending the Challenge Deadline through and including April 29, 2021, without prejudice to Marriott's right to seek further extensions.[5]

## BASIS FOR RELIEF

### I.    Marriott Is Entitled to Conduct the Rule 2004 Examinations

40.    As noted above, Marriott informally requested that the Debtor  produce documents in its possession, custody, and control. In response, the Debtor represented that it did not possess documents held by JBG, its former managing member.

41.    Even though the Debtor has maintained that it does not have access the relevant documents and information that JBG holds, the Bankruptcy Code clearly provides that these documents and information are property of the Debtor's estate.  *See* 11 U.S.C. 541(a) ("Such estate is comprised of all the following property, wherever located and *by whomever held* . . . all legal or equitable interests of the debtor in property as of the commencement of the case") (emphasis added); *see also In re Buzzelli*, 246 B.R. 75, 98 (Bankr. W.D. Pa. 2000) (citing *In re Hyde*, 222 B.R. 214, 218 (Bankr. S.D.N.Y. 1998)) (all books and records of a debtor, including those not

---

[5] Marriott is attempting to work cooperatively with Pacific Life, and has requested that Pacific Life informally produce documents and an adequate privilege log of documents withheld by Pacific Life in the course of previous discovery between the parties.  To the extent that such requests cannot be resolved consensually, Marriott reserves its right to file a motion pursuant to Rule 2004 against Pacific Life.

relating to property of the debtor's bankruptcy estate, are property of his bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1)).  Thus, the Debtor's estate is entitled to these documents, and its conduct during the discovery process thus far consists of refusing to produce documents that are in its legal possession, custody, or control. This wrongful refusal has led to additional time and expense needed to conduct sufficient discovery, and is the catalyst for necessitating the Rule 2004 Examinations.

42.    Additionally, the Debtor, (i) has refused to make a demand on JBG for documents and records even thought it could legally do so; (ii) has stated that although it did do a brief perfection analysis, it did not fully investigate whether other claims preceding Mr. Decker's appointment as manager exist; (iii) has failed to produce a adequate privilege log sufficient to facilitate a complete assessment of Debtor's basis for withholding certain documents; and (iii) is unwilling to provide a Rule 30(b)(6) witness that is knowledgeable about topics that predate October 2020 and are directly relevant to the DIP Stipulations and the waivers in the Final DIP Order.  These actions and positions are not only legally untenable, but also impose additional burdens on Marriott and slow down what otherwise should be a straightforward production of documents held by the Debtor and its former managing member.

## A.    Applicable Law Governing the Rule 2004 Examinations

43.    Under section 105(a) of the Bankruptcy Code, the Court has broad equitable powers to fashion an order or decree in aid of the enhancement of the value of a Debtor's estates for the benefit of stakeholders.  Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity."  Rule 2004(b) provides further that the scope of such examination may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the

debtor's right to a discharge."  In addition, Rule 2004(c) provides that "the attendance of an entity for examination and for the production of documents . . . may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial."

44.    The purpose of a Rule 2004 examination is to "discover the nature and extent of the bankruptcy estate" in order to distribute debtor's assets for the benefit of its creditors.  *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016).  Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred. *Id.* Potential examinees include third parties that possess knowledge of the debtor's acts, conduct, liabilities or financial condition which relate to the administration of the bankruptcy estate. *Id; see also In re Teleglobe Communications Corp.*, 493 F.3d 345, 354 n.6 (3d Cir. 2007) ("Rule 2004 allows parties with an interest in the bankruptcy estate to conduct discovery into matters affecting the estate").

45.    Unlike traditional discovery, which narrowly focuses on the issues germane to the dispute, the scope of Rule 2004 is broad and unfettered.  *Millennium Lab Holdings II, LLC*, 562 B.R. at 626.  A Rule 2004 examination is undertaken prelitigation, that is, before the filing of a lawsuit or motion.  *See In re 2435 Plainfield Ave., Inc.*, 223 B.R. 440, 455 (Bankr. D. N.J. 1998); *see also In re Wash. Mut., Inc.*, 408 B.R. 45, 53 (Bankr. D. Del. 2009) ("One of the primary purposes of a Rule 2004 examination is as a pre-litigation device").

46.    Here, the documents and information that Marriott seeks meet the threshold for allowing the requested Rule 2004 Examinations of the Debtor, JBG and HotelAVE.  As an initial matter, it is necessary to place the requests for the Rule 2004 Examinations into context.  The Debtor has granted Pacific Life broad DIP Stipulations under the Final DIP Order and has not fully investigated the validity of those DIP Stipulations.  As no official committee of unsecured creditors

has been appointed in the Debtor's bankruptcy case, there is no other party to investigate the DIP Stipulations. It has fallen on Marriott, at its own expense, to pursue an investigation for the benefit of the Debtor's estate and its creditors. Bankruptcy Rule 2004 contemplates that Marriott, as a party in interest, should have the ability to take discovery to investigate the DIP Stipulations. Therefore, the Rule 2004 Examinations will benefit the Debtor's estate and its creditors. Prior to seeking these Rule 2004 Examinations, Marriott attempted to resolve these issues consensually with the Debtor, JBG and HotelAVE.

### B.     JBG Rule 2004 Requests

47.     Marriott has ample reason to believe that JBG has knowledge of the Debtor's acts, conduct, liabilities or financial condition which relate to the administration of the Debtor's estate. JBG was the managing member of the Debtor prior to Jim Decker being appointed manager on or about October 8, 2020. Pursuant to the 2018 Operating Agreement, JBG, in its capacity as managing member of the Debtor, was required to maintain the books and records of the Debtor. *See* 2018 Operating Agreement, at § 8.01. In addition, the 2018 Operating Agreement unambiguously granted any member of the Debtor the right to examine those books and records:

> All Members and their duly authorized representatives shall have the right at the Company's expense, upon reasonable notice and at reasonable times, to examine and make copies of all tax, financial and other books and records of the Company, including books and records necessary to enable a Member to defend any tax audit or related proceeding.

*Id.* Additionally, 6 Del. C. § 18-305 provides:

> Each member of a limited liability company . . . has the right . . . to obtain from the limited liability company from time to time upon reasonable demand for any purpose reasonably related to the member's interest as a member of the limited liability company . . . (1) True and full information regarding the status of the business and financial condition of the limited liability company.

6 Del. C. § 18-305.  Thus, pursuant to the 2018 Operating Agreement and applicable Delaware law, JBG's former role as managing member of the Debtor enables it to have crucial knowledge of documents and information related to the DIP Stipulations.

48.    The  Debtor has voluntarily produced documents within Mr. Decker's possession. However, the Debtor acknowledges that the documents in Mr. Decker's possession are (primarily) materials created since Mr. Decker was retained as the Debtor's manager in October 2020.  The Debtor has taken the position that it is not required to produce other documents that are plainly its property and also within its legal possession, custody, or control, including records held by its former managing member, JBG.  This conduct is plainly insufficient to "discover the nature and extent of the bankruptcy estate" seeing as Mr. Decker apparently has few records, emails, or other documents, regarding the entire period concerning the recapitalization transaction, Pacific Life's pre-petition loan, the litigation with JBG, and CIM's decision to cease being a member (among other things). These items are highly relevant to the DIP Stipulations and the waivers of the Debtor that are provided in the Final DIP Order. Accordingly, in order to adequately analyze the nature and extent of the Debtor's estate, as well as potential causes of action of action against Pacific Life, Marriott, as a party with an interest in the Debtor's bankruptcy estate, should have the ability to conduct the Rule 2004 Examinations, and fully examine the matters and materials set forth in the JBG Request for Production and the JBG 30(b)(6) Notice.

49.    The documents and information related to the topics identified in the JBG Request for Production and the JBG 30(b)(6) Notice bear on potential challenges to the DIP Stipulations and, thus, are needed to ensure that Marriott can assess whether there are any causes of action that should be pursued against Pacific Life and would bring value to the Debtors' estate. Accordingly, Marriott's request to conduct the examination of JBG pursuant to Rule 2004 should be granted.

## B.    Debtor Rule 2004 Requests

50.    To the extent that Marriott does not receive sufficient information from the JBG Request for Production to enable it to conduct an investigation of matters related to the DIP Stipulations, Marriott requests an examination of the Debtor pursuant to Rule 2004.  As noted above, the Debtor has a legal obligation to produce the documents that are in JBG's possession, and therefore if JBG cannot produce the documents as set forth in the JBG Request for Production, the Debtor must produce such documents (and an adequate privilege log).

51.    Additionally, to the extent that Marriott does not receive sufficient information from the JBG 30(b)(6) Notice to enable it to conduct an investigation of matters related to the DIP Stipulations, the Debtor is obligated provide a representative with knowledge of the matters set forth in the JBG 30(b)(6) Notice to be deposed.

52.    Accordingly, to the extent that the documents and information received from JBG are not sufficient for Marriott to be able to conduct an investigation of matters related to the DIP Stipulations, Marriott's request to conduct the examinations of the Debtor pursuant to Bankruptcy Rule 2004 should be granted.

## C.    HotelAVE Rule 2004 Requests

53.    HotelAVE has, only just recently, responded to the HotelAVE Request for Production. However in its response, HotelAVE stated that it would not be able to comply with the return date provided in the HotelAVE Request for Production, thus delaying Marriott's ability to review documents produced by HotelAVE even further. As set forth in the HotelAVE Request for Production, the topics covered in this document request include prepetition loan documents, documents concerning recapitalization and capital contributions, and documents related to capital contributions that the Debtor received from Pacific, all of which closely relate to potential

challenges to the DIP Stipulations. In order for Marriott to be able to fully investigate whether there are any causes of action against Pacific Life, it is crucial that Marriott be able to properly and sufficiently review any documents produced by HotelAVE, the Debtor's longtime asset manager. However, the Challenge Deadline presents a serious obstacle to Marriott's ability to sufficiently review documents that HotelAVE will produce. Therefore, Marriott no longer has time for additional discussions and extensions with the impending expiration of the Challenge Deadline, and as such, to the extent that HotelAVE does not comply with the HotelAVE Request for Production and disputes arise, an examination of HotelAVE pursuant to Rule 2004 is necessary.

54.    Moreover, Marriott has more than enough reason to believe that HotelAVE has knowledge of the Debtor's acts, conduct, liabilities or financial condition which relate to the administration of the Debtor's estate. HotelAve has been the Debtor's asset manager since at least January of 2018 and, in its role, necessarily receives records and documents pertaining to the Hotel.  Thus, HotelAVE's role as asset manager of the Debtor enables it to have crucial knowledge of records, documents and information related to the DIP Stipulations.

55.    As further evidence of HotelAVE's central role, the Debtor's privilege log contains more than 1,900 entries that consist of communications involving HotelAVE.  Whether those third-party communications have appropriately been withheld on the basis of privilege is not an issue presented in this Motion, but the existence of so many responsive documents involving HotelAVE demonstrates their central role in these issues and the need to take discovery of HotelAVE for the investigation.

56.    Accordingly, Marriott's request to conduct the examinations of JBG, the Debtor, and HotelAVE pursuant to Bankruptcy Rule 2004 should be granted.[6]

---

[6] As of the filing of this Motion, Marriott is in initial discussions with counsel to JBG and HotelAve regarding the scope and timing of their potential responses to Marriott's discovery requests.  To the extent that Marriott reaches an

## II.    Cause Exists to Extend the Challenge Deadline

57.    Pursuant to Bankruptcy Rule 9006, this Court may extend unexpired time periods, such as the Challenge Deadline:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period  originally prescribed or as extended by a previous order . . . .

Fed. R. Bankr. P. 9006(b)(1).[7]  In general, "cause" imposes an obligation on the movant to show some justification for the relief requested. *See In re Wooten*, 620 B.R. 351, 358 (Bankr. D.N.M. 2020). Because there is no clear definition of what constitutes "cause", discretionary relief . . . must be determined on a case by case basis. *Id*; *see also In re Cripps*, 549 B.R. 836, 858 (Bankr. W.D. Mich. 2016) (finding that "cause" should be determined on a case-by-case basis).

58.     The Challenge Deadline was established by the Final DIP Order and therefore falls squarely within Bankruptcy Rule 9006(b)(1).  Marriott's request to extend the Challenge Deadline comes before its expiration, and, as such, this Court  has the discretion to extend the Challenge Deadline as requested in this Motion.

59.    Marriott respectfully submits that there is good cause and justification to extend the Challenge Deadline through and including April 29, 2021 because such an extension is necessary for Marriott to conduct the Rule 2004 Examinations and discover the nature and extent of the Debtor's estate for the benefit of unsecured creditors. Such an extension of the Challenge Deadline would provide time for the production of additional documents, for any depositions to take place,

---

acceptable resolution with those parties, Marriott anticipates that such resolution will be incorporated in a consensual Rule 2004 order with those parties.
[7] Pursuant to Local Rule 9006-2, the filing of the Motion prior to the expiration of the current Challenge Deadline automatically extends the deadline until the Court acts on the Motion, without the necessity for the entry of a bridge order.

and for Marriott to complete its investigation with respect to the matters set forth in the JBG Request for Production, the JBG 30(b)(6) Notice, the Debtor Request for Production, and the HotelAVE Request for Production.

60.    Specifically, good cause exists to extend the Challenge Deadline because the Debtor has not provided information related to activities that pre-date the appointment of Mr. Decker as the manager in October 2020.  Absent the Rule 2004 Examinations, Pacific Life will obtain the expansive releases set forth in the Final DIP Order without appropriate scrutiny.  As a result of the Debtor's failure to obtain and produce documents held by its former managing member, and unwillingness to produce a corporate designee to address matters predating Mr. Decker's retention, there is insufficient time for Marriott to adequately examine the DIP Stipulations and to determine whether there are causes of action against Pacific Life.  An extension of the Challenge Deadline will provide Marriott with sufficient time to conduct the Rule 2004 Examinations.  Further, this extension will not burden the administration of the estate because, while the Debtor is seeking buyers and may be taking steps to sell its assets, the Debtor has not yet filed a motion related to such a sale, sought to sell its assets, or sought to propose a chapter 11 plan.

61.    Additionally, good cause exists to extend the Challenge Deadline because JBG and HotelAVe are not able to comply with Marriott's requested return dates and have expressed a preference or need to complete their productions by dates after the expiration of the Challenge Deadline.  *See supra* ¶¶ 3-4.  As stated above, JBG and HotelAVE have crucial knowledge of documents and information related to the DIP Stipulations, and thus, Marriott will not be able to conduct a sufficient investigation into matters related to the DIP Stipulations unless it has the opportunity to obtain and review documents and information produced by JBG and HotelAVE.

An extension of the Challenge Deadline will provide Marriott with sufficient time to adequately review such documents and information.

62.    Accordingly, Marriott's request to extend the Challenge Deadline to April 29, 2021 should be granted.

## RESERVATION OF RIGHTS

63.    Marriott reserves the right to amend, modify, or supplement this Motion in all respects.  Nothing herein constitutes a waiver of Marriott's rights or remedies.

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2004-1

64.    The undersigned counsel for Marriott certifies that it conferred with the Debtor's counsel, JBG's counsel, and HotelAVE's counsel, as required by Local Rule 2004-1, and no agreement regarding the Rule 2004 Examinations sought herein was reached.

**WHEREFORE**, for the reasons discussed above Marriott respectfully requests that the Court grant the relief requested herein and such other and further relief as is just and necessary.

Dated: March 18, 2021
      Wilmington, Delaware        **MORRIS, NICHOLS, ARSHT, & TUNNELL LLP**

By:     */s/ Curtis S. Miller*
         Curtis S. Miller (No. 4583)
         1201 North Market Street, 16th Floor
         P.O. Box 1347
         Wilmington, DE 19899-1347
         Telephone: (302) 351-9412
         Email: cmiller@mnat.com

         -and-

         **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
         Ori Katz (admitted *pro hac vice*)
         Four Embarcadero Center, 17th Floor
         San Francisco, CA 94111-4109
         Phone: (415) 434-9100
         Facsimile: (415) 434-3947

Email: okatz@sheppardmullin.com

-and-

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Michael T. Driscoll (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701
Email: mdriscoll@sheppardmullin.com

-and-

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Jennifer L. Nassiri (admitted *pro hac vice*)
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
Telephone: (213) 620-1780
Facsimile: (213) 620-1398
Email:  jnassiri@sheppardmullin.com

-and-

**JENNER & BLOCK LLP**
Lindsay Harrison (admitted *pro hac vice*)
Alex S. Trepp
1099 New York Avenue, N.W.
Suite 900, Washington, DC 20001-4412
Phone: (202) 639-6000
Facsimile: (202) 639-6066
Email: lharrison@jenner.com
Email: atrepp@jenner.com

-and-

**JENNER & BLOCK LLP**
Paul Rietema
353 N. Clark Street
Chicago, IL 60654-3456
Phone: (312) 840-7208
Facsimile: (312) 840-7308
Email: prietema@jenner.com

- 21 -

*Attorneys for Marriott Hotel Services, Inc.*