# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| WARDMAN HOTEL OWNER, L.L.C.,[1] | ) ) ) | Case No. 21-10023 (JTD) |
| Debtor. | ) ) ) ) | **Related to Docket No. 157** |

## PACIFIC LIFE INSURANCE COMPANY'S OBJECTION
## TO MARRIOTT HOTEL SERVICES, INC.'S MOTION
## FOR ORDER EXTENDING THE CHALLENGE DEADLINE

Pacific Life Insurance Company ("**Pacific Life**") in its capacity as senior secured prepetition and post-petition lender[2] to Wardman Hotel Owner, L.L.C. (the "**Debtor**"), files this Objection to Marriott Hotel Services, Inc's ("**Marriott**") Motion For Order (I) Authorizing Rule 2004 Examinations of Wardman Hotel Owner, LLC, JBG Smith Properties, and Hotel Asset Value Enhancement, Inc. and (II) Extending the Challenge Deadline (the "**Marriott Challenge Period Extension Motion**"),[3] and respectfully states as follows:

## SUMMARY OF THE OBJECTION

1.    In the Marriott Challenge Period Extension Motion, Marriott seeks to take advantage of its calculated litigation decision—to defer seeking discovery from known third parties—and the artificial time pressure caused thereby—to seek a modification of the Final DIP Order's March 30, 2021, Challenge Deadline notwithstanding the fact that (i) the Final DIP Order

---

[1]    The last four digits of the Debtor's U.S. tax identification number are 9717. The Debtor's mailing address is 5035 Riverview Road, NW, Atlanta, GA 30327.

[2]    As of February 2, 2021, Pacific Life is owed not less than $134.5 million under the pre-petition loan and the post-petition DIP Loan.

[3]    Terms not otherwise defined herein shall have the meaning given to them in the Marriott Challenge Period Extension Motion.

provides no such right,[4] (ii) granting an extension of the Challenge Period, without Pacific Life's consent, will cause a default under the Debtor's postpetition financing, and (iii) Marriott's discovery is not necessary.

2.      Marriott has sat on its rights and not sought what it asserts is "necessary" discovery. The Final DIP Order (D.I. 126) was entered on February 9, 2021. It set the Challenge Period Deadline of March 30, 2021, seven weeks later. Marriott has known about the need for discovery from JBG Smith Properties ("**JBG**"), the Debtor's former managing member for months, because, on January 28, 2021, the Debtor clearly told Marriott that the Debtor did not "have custody, possession, or control of documents that belong to or were created by JBG Smith, the prior co-member of the Debtor that previously managed certain of its affairs, nor are any of these documents remotely related to the pending DIP motion." Marriott has similarly known about the need for discovery from Hotel Asset Value Enhancement, Inc. (**"HotelAVE"**), and even took the deposition of John Paulson of HotelAVE on February 2, 2021. Yet, despite Marriott's clear knowledge about JBG and HotelAVE, it did not take formal steps to obtain the information it alleges it needs through use of Bankruptcy Rule 2004 until March 19, 2021.[5]

3.      Further, even though couched as a request pursuant to Bankruptcy Rule 9006(b)(1), Marriott's Challenge Period Motion fails because Marriott's purported need for discovery is a red

---

[4] Although it is not uncommon to include a provision authorizing the extension of a challenge deadline for "good cause," no such provision was included in the Final DIP Order. This was not an oversight as this was in Paragraph 27 of the Final DIP Order which was one of the many negotiated and modified provisions to address Marriott's various objections.

[5] Marriott's extraordinarily passive approach to its use of the seven week period in which it could seek court authority to pursue a challenge should be compared to Marriott's aggressiveness in objecting to the DIP Loan and seeking to transfer venue of the Debtor's bankruptcy case in which it took depositions of Mr. Decker, the Debtor's Independent Manager, Mr. Waldeck of Pacific Life and PL Wardman Member, and Mr. Paulson of HotelAVE, and served extensive interrogatories and requests for documents on the Debtor, Pacific Life, and PL Wardman Member for which Marriott received a large volume of documents and answers to interrogatories, as discussed further below.

herring. Marriott has extensive information about Pacific Life and the Debtor, as Marriott has (i) been integrally involved with all aspects of the Hotel's management and operation since 2005; (ii) been actively engaged in discussions with the Debtor relative to the Hotel's poor performance; (iii) already, and aggressively, pursued claims against the Debtor and Pacific Life in the Delaware Chancery Court and in the Maryland state court; and (iv) already obtained extensive (and unnecessary) discovery relative to the Debtor's prior business affairs. Because Marriott has already obtained extensive discovery as part of its investigation and did not timely seek discovery from known third parties, the Marriott Challenge Period Extension Motion should be denied.

## RELEVANT FACTS

4. Marriott managed the Hotel for years and, in that capacity, knows all facts relevant to the Hotel's operations and decision-making on account of its role under that certain Second Amended and Restated Management Agreement, dated July 1, 2005 (as amended, the "**HMA**") between Marriott and certain former affiliates of Debtor (the "**Former Owner**").[6]

5. Pursuant to the HMA, since 2005, Marriott had the "exclusive supervision and control" of the Hotel and was responsible for the Hotel's operation.[7]

6. Marriott also has extensive information relative to Pacific Life's relationship with the Hotel and the Debtor.

7. In 2005, Marriott first consented to the Former Owner's incurrence of Pacific Life's original loan (the "**Original Pacific Life Loan**").[8]

---

[6] Marriott State Court Complaint ¶ 19.
[7] Marriott State Court Complaint ¶ 20.
[8] In connection with the Original Pacific Life Loan, Marriott and Pacific Life entered into Subordination, Non-Disturbance and Attornment Agreements dated July 1, 2005, July 12, 2007, and August 22, 2007, that are substantially similar to the Subordination, Non-Disturbance and Attornment Agreement entered into on January 19, 2018 in connection with the Recapitalization.

8. Thereafter, Marriott consented to the deleveraging recapitalization (the "**Recapitalization**") wherein (i) Pacific Life and the Former Owner formed the Debtor; (ii) the Former Owner sold the Hotel to Debtor; and (iii) the Debtor funded its acquisition of the Hotel through a new loan from Pacific Life (the "**New Pacific Life Loan**") and $60 million in equity contributions from CIM, JBG and PL Wardman Member, the proceeds of which, in conjunction with the proceeds of the New Pacific Life Loan, were used to repay the Original Pacific Life Loan in full.

9. In connection with the Recapitalization, (i) Marriott and Pacific Life entered into a new Subordination, Non-Disturbance and Attornment Agreement dated as of January 19, 2018 (the "**SNDA**")[9] and (ii) Marriott issued to Pacific Life that certain Manager Estoppel Certificate, dated January 19, 2018 (the "**Marriott Estoppel**"), thereby facilitating the Recapitalization, the transfer of the Hotel to the Debtor, the Debtor's incurrence of the New Pacific Life Loan a senior secured loan, and consenting to the subordination of Marriott's interests under the HMA.[10]

10. In the SNDA, Marriott, among other things, acknowledged the Prepetition Loan, subordinated its interests under the HMA to Pacific Life's mortgage, agreed to the Debtor's collateral assignment of the HMA to Pacific Life "as security for the indebtedness secured by the Mortgage", and agreed to remit all amounts owing to the Debtor to Pacific Life.

---

[9] The January 19, 2018 SNDA and prior versions of the SNDA are attached to the Declaration of David Wender filed contemporaneously herewith (the "**Wender Declaration**") as **Exhibit F**.

[10] Of note, though Marriott asserts in paragraph 10 and 11 the Marriott Challenge Period Extension Motion that the Former Owner's redevelopment and renovation of certain aspects of the Hotel's property harmed the Hotel, and has separately argued that the Debtor (and the Former Owners) have wanted to close the Hotel for many years, and that these actions have negatively affected the Hotel, it is noteworthy that the Marriott Estoppel confirmed that none of the foregoing constituted defaults under the HMA. *See, also*, Marriott Motion to Intervene in Delaware Dissolution Proceeding ¶ 11 ("In about 2013, the Owner embarked on a plan to shrink the Hotel and convert at least 181 rooms into luxury condominiums. In light of the long-term management contract, Marriott agreed to the Owner undertaking this project.")

11. On the Petition Date, the Debtor filed its DIP Motion, seeking to incur postpetition financing from Pacific Life.

12. In connection with the Debtor's incurrence of postpetition financing, the Final DIP Order established a deadline of March 30, 2021, for parties to challenge the stipulations set forth in the Paragraph G of the Final DIP Order (the "**Debtor's Stipulations**"), which were narrowly tied to the validity, enforceability, perfection, and priority of Pacific Life's prepetition debt. Of note, though not uncommon in other debtor-in-possession financing orders, the Final DIP Order does not provide creditors with the right to extend the deadline for cause. *See* Final DIP Order ¶ 27(a). Instead the Final DIP Order provides that the Prepetition Secured Party [Pacific Life] could extend the Challenge Period Deadline **in its sole discretion** (which has not been given). *See Final DIP Order* ¶ 27(a). As reflected in the redline of the Final DIP Order submitted to Court and in the parties representations to the Court, the parties actively negotiated, and ultimately agreed to, the terms and provisions associated with the Debtor's Stipulations and Paragraph 27 of the Final DIP Order.

13. Though Marriott contends in the Marriott Challenge Period Extension Motion that it needs more time to investigate the Debtor's Stipulations, its conduct and prior judicial admissions belie this contention. Specifically, with respect to its need to investigate the Debtor's incurrence of the New Pacific Life Loan, Marriott's stated need for discovery fails because (i) Marriott participated in, and approved, the Debtor's incurrence of the New Pacific Life Loan and (ii) Marriott has repeatedly acknowledged, in solemn judicial admissions, that the New Pacific Life Loan was a loan from Pacific Life to the Debtor.[11]

---

[11] Marriott State Court Complaint ¶ 34 ("In 2018, PacLife entered into a new Mortgage with the [Debtor] to reduce its debt to $122,500,000 in exchange for PacLife taking a 66.6% interest in the Hotel through an affiliate."); ¶ 37 ("The SNDA acknowledged that the Owner's mortgage, held by PacLife, indebted the Owner to PacLife 'in the original principal amount of One Hundred

14. Similarly, with respect to Marriott's ability to conduct an investigation relative to the Debtor's Stipulations, Marriott's contention that it is unable to conclude its investigation by the Challenge Period Deadline is unsupported. In addition to the knowledge gained by Marriott through (i) its past management of the Hotel; (ii) its participation in and approval of the Recapitalization; and (iii) Marriott's nearly-continuous discussions with the Debtor, JBGS (through JBGS Manager, the entity responsible for managing the Debtor) and Pacific Life relative to the long term operation of the Hotel, Marriott has sought and obtained extensive discovery. To date Pacific Life and PL Wardman Member have provided the following:

  a. Responses to 36 Interrogatory Requests from Marriott;[12]

  b. Productions of documents in response to 212 separate requests for documents from Marriott (requested in three formal and one informal setting), totaling not less than **7,788 records and almost 80,000 individual images**);[13]

  c. Documents specifically associated with the following categories:

     i. The Debtor's prepetition loan documents (dating back to 2005);

     ii. Internal email communications (created or exchanged between March 2017 and January 2021);

     iii. Specific electronic documents provided by Pacific Life and PL Wardman Member to the Debtor (including valuation packages provided by JLL and

---

Twenty-Two Million Five Hundred Thousand Dollars.'" SNDA at 3. As security for this indebtedness, the Owner collaterally assigned to PacLife 'all of Owner's right, title and interest in and to the Management Agreement.' SNDA at 7."); Marriott Motion to Intervene in Delaware Dissolution Proceeding ¶ 5 ("The PacLife Lender, [Debtor's] indirect parent, has loaned the Owner hundreds of millions of dollars in connection with the Hotel").

[12] Pacific Life's and PL Wardman Member's Interrogatory Responses are attached to the Wender Declaration as **Exhibit A**.

[13] Marriott's formal and informal Requests for Production of Documents on Pacific Life and PL Wardman Member are attached to the Wender Declaration as **Exhibits B and D**.

    Eastdil);

  iv. Communications between Pacific Life, JBG, CIM Group, and Eastdil;

  v. Communications with Marriott;

  vi. The Debtor's original LLC Agreement, including communications relative to the negotiation and documentation thereof;

  vii. Documents related to the Recapitalization, including the negotiation and documentation thereof;

  viii. Communications with James Decker (and his counsel) relative to the negotiation and documentation of Mr. Decker's retention as the Independent Manager and related amendments to the Debtor's LLC Agreement; and

  ix. Communications with the Debtor related to DIP Loan.

15. The Debtor has similarly responded to Marriott's Interrogatories and requests for production of documents, producing not less than 3,100 records.

16. Marriott has also deposed or cross examined: (i) Jim Decker, in his capacity as the Debtor's representative (one deposition and two cross-examinations at evidentiary hearings before this Court); (ii) John Waldeck, in his individual capacity and in his corporate capacities for Pacific Life and PL Wardman Member (one deposition); (iii) John Paulson, in his capacity as corporate representative of HotelAVE (one deposition); and (iv) a corporate representative of JBG (at an evidentiary hearing on Marriott's motion for a preliminary injunction before the Maryland state court).

17. While Pacific Life recognizes that Marriott contends in the Marriott Challenge Period Extension Motion that JBG would not produce documents until April 6, 2021, Pacific Life

notes that this "delayed" production is the direct result of Marriott's tactical decision not to seek discovery from JBG earlier. Specifically, even though the Debtor informed Marriott in January that the Debtor did not "have custody, possession, or control of documents that belong to or were created by JBG Smith, the prior co-member of the Debtor that previously managed certain of its affairs, nor are any of these documents remotely related to the pending DIP motion,"[14] Marriott waited a full month from the entry of the Final DIP Order before seeking discovery from JBG and more than 5 weeks to seek authority to obtain Rule 2004 discovery.

18. Moreover, though Pacific Life believes that Marriott's investigation and aggressive pursuit of claims is nothing more than litigation strategy designed to harass the Debtor, Pacific Life, and PL Wardman Member, and believes that Marriott's allegations are factually and legally unsupported, Marriott's previous contentions demonstrate that Marriott does not need further pre-litigation discovery:

    a. On September 8, 2020, Marriott commenced the State Court Action by filing the State Court Complaint in the Circuit Court for Montgomery County, Maryland.[15] In the State Court Complaint, Marriott alleged, in pertinent part, that:

        i. "PacLife is seeking to increase the recovery on its secured debt by forcing the Hotel to close permanently"[16]

        ii. "PacLife, as the majority owner of the equity interest and as the lender, is fully aware both of Owner's lack of equity and the value of the debt."[17]

        iii. "PacLife is improperly using its position as equity holder to improve the recovery on its debt."[18]

        iv. "PacLife has purposefully exerted pressure and influence over the Owner

---

[14] The January 28, 2021 email from the Debtor to Marriott is attached to the Wender Declaration as **Exhibit C**.
[15] Marriott's State Court Complaint is attached to the Wender Declaration as **Exhibit E**.
[16] Marriott State Court Complaint ¶ 82.
[17] Marriott State Court Complaint ¶ 84.
[18] Marriott State Court Complaint ¶ 85.

        to refuse Marriott's requests for Working Capital. PacLife intended for this pressure to cause the Owner to breach its contractual obligation to fund Working Capital. Moreover, PacLife knew that discouraging the Owner from funding Working Capital would cause the Owner to breach its obligations under the Management Agreement. PacLife took these actions without lawful justification and in a manner that caused the Owner to breach the Management Agreement."[19]

    v. "PacLife has continued to discourage the Owner from funding Working Capital, and PacLife itself has also not provided Working Capital pursuant to the SNDA."[20]

    vi. "PacLife intentionally induced the Owner to breach its contractual duty to fund Working Capital."[21]

b. In seeking to intervene in the Delaware state court dissolution proceeding commenced by PL Wardman Member, Marriott alleged that:[22]

    i. "it appears the main goal of [the dissolution] proceeding may actually be to pursue the interests of a different party, the PacLife Lender."[23]

    ii. "The Petitioner, the PacLife Member, wants to dissolve the Owner, in large part to benefit the PacLife Lender."[24]

c. In objecting to the Debtor's incurrence of postpetition financing from Pacific Life in the Chapter 11 case and before Marriott ultimately withdrew Marriott's objection to the DIP Motion, Marriott asserted that the documents that it obtained from the Debtor, PL Wardman, and Pacific Life, at a minimum, supported colorable recharacterization and subordination claims.[25]

19. Because Marriott has obtained extensive discovery to date, has clearly demonstrated its ability to assert claims in the State Court Complaint and make legal conclusions

---

[19] Marriott State Court Complaint ¶ 86.
[20] Marriott State Court Complaint ¶ 90.
[21] Marriott State Court Complaint ¶ 90.
[22] Marriott's Motion to Intervene is attached to the Wender Declaration as **Exhibit G**.
[23] Marriott Motion to Intervene in Delaware Dissolution Proceeding ¶ 35.
[24] Marriott Motion to Intervene in Delaware Dissolution Proceeding ¶ 36.
[25] Marriott DIP Objection (D.I. 87) ¶ 46.

in Marriott's objection to the DIP Motion, the Marriott Challenge Period Deadline Extension Motion should be denied. It is obvious from the preceding that Marriott can and will request standing to bring a challenge. Whether such a request will be granted or denied by the Court is yet to be determined, though Pacific Life believes it should be denied based on the record to date and Marriott's numerous admissions in its various pleadings and motions. Ultimately, however, because Marriott's purported inability to obtain discovery prior to the expiration of the Challenge Deadline was caused by Marriott's actions and inactions, an extension of the Challenge Period is not warranted.

## Argument

20. The Final DIP Order's Challenge Deadline was included for the benefit of Pacific Life as part of a larger bargain negotiated by the parties in finalizing language for the Final DIP Order and approved by the Court. To establish cause to modify the Challenge Deadline, Marriott must show that someone prevented or interfered with its investigation, and that it acted with appropriate diligence. *See In re AOG Ent., Inc.*, 558 B.R. 98, 108 (Bankr. S.D.N.Y. 2016)("The paradigm for cause is the prepetition lenders' delay in producing requested discovery or obstructing that discovery.").

21. Here, Pacific Life has neither delayed nor otherwise obstructed Marriott's discovery. To the contrary, Pacific Life has timely (i) provided written responses to 36 Interrogatory Requests; (ii) produced **7,788 records** (totaling almost **80,000** individual images) in respect of Marriott's 212 requests for production of documents; and (iii) put forward John Waldeck to participate in a deposition in both his personal and corporate capacities.

22. Moreover, though Marriott has now been told that HotelAVE and JBG will not produce documents before the March 30 Challenge Deadline, the timing "difficulties" are not the result of the Debtor's or some third party's efforts to prevent or frustrate Marriott's "need" for

discovery. Instead, the timing is of Marriott's making. By way of background, even though the Marriott DIP Objection stated that documents already produced to Marriott "reveal that, at a minimum, colorable recharacterization and subordination claims exist" after the Bankruptcy Court entered the Final DIP Order on February 9, 2021—which established the March 30 Challenge Deadline—Marriott did not seek any **additional discovery**[26] until it sent informal discovery requests to the Debtor, Pacific Life, and PL Wardman Member at 8:48 in the evening on Friday, February 26, 2021.[27]

23. Thereafter, even though the Debtor informed Marriott in January that the Debtor did not "have custody, possession, or control of documents that belong to or were created by JBG Smith, the prior co-member of the Debtor that previously managed certain of its affairs, nor are any of these documents remotely related to the pending DIP motion" Marriott did not serve a document request on JBG until March 9, 2021, and did not serve a notice of deposition on JBG until March 12, 2021.[28] *See* Marriott Challenge Period Extension Motion ¶¶ 27, 30.

24. An extension of the Challenge Period, or approval of discovery under Bankruptcy Rule 2004 is similarly not justified because (i) Marriott cannot show that the discovery is necessary to further investigate the Debtor's Stipulations and (ii) Marriott's litigation before this Court demonstrates that Marriott is seeking to obtain discovery to advance its independent claims against Pacific Life. *See, e.g.*, *In re AOG Ent., Inc.*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016) ("

---

[26] As noted above, in connection with the Maryland State Court Action and Marriott's withdrawn Marriott DIP Objection, Marriott obtained not less than 3,100 records and 27 interrogatory responses from the Debtor and not less than 2,400 records and 36 interrogatory responses from Pacific Life and PL Wardman Member.

[27] The February 26, 2021 email from Alex Trepp, counsel for Marriott, enclosing Marriott's informal requests for production is attached to the Wender Declaration as **Exhibit D**.

[28] Pacific Life notes that (i) Marriott's discovery on JBG has not been authorized under the applicable rules and (ii) to date, Marriott has not served Pacific Life with copies of any of its efforts to obtain discovery from JBG and has not been consulted about its availability to attend a deposition.

A party seeking to conduct a Rule 2004 examination typically shows good cause by establishing that the proposed examination 'is necessary to establish the claim of the party seeking the examination, or . . . denial of such request would cause the examiner undue hardship or injustice.'") (internal citation omitted); I*n re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626-27 (Bankr. D. Del. 2016).

      WHEREFORE, for the reasons set forth herein, Pacific Life respectfully requests that the Court deny the Marriott Challenge Period Extension Motion.

Dated: March 26, 2021
Wilmington, Delaware

**KLEHR HARRISON HARVEY BRANZBURG LLP**

*/s/ Domenic E. Pacitti*
Domenic E. Pacitti (DE Bar No. 3989)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone: (302) 552-5511
Facsimile: (302) 426-9193
Email: dpacitti @klehr.com

-and-

**ALSTON & BIRD LLP**
David A. Wender (admitted *pro hac vice*)
Grant T. Stein (admitted *pro hac vice*)
1201 West Peachtree Street
Atlanta, Georgia, 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: david.wender@alston.com
Email: grant.stein@alston.com

*Counsel to Pacific Life Insurance Company*