**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WARDMAN HOTEL OWNER, L.L.C., | ) | Case No. 21-10023 (JTD) |
| | ) | |
| | ) | **Objection Deadline: June 2, 2021 at 4:00 PM** |
| Debtor.[1] | ) | **Hearing Date: June 9, 2021 at 3:00 PM (ET)** |
| | ) | |
| | ) | **Related Docket No. 229** |

**OBJECTION OF UNITE HERE LOCAL 25 AND LOCAL 99, INTERNATIONAL
UNION OF OPERATING ENGINEERS TO DEBTOR'S MOTION FOR ENTRY OF AN
ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF THE ASSETS OF
DEBTOR, (B) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE
SALE AND APPROVE THE FORM AND MANNER OF NOTICES RELATED
THERETO; (C) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN CONTRACTS, INCLUDING NOTICE OF
PROPOSED CURE AMOUNTS; (D) APPROVING BREAKUP FEE;
AND (E) GRANTING OTHER RELATED RELIEF**

UNITE HERE Local 25 and Local 99, International Union of Operating Engineers ("the Unions") submit this Objection to the Debtor's Motion for Entry of an Order (A) Approving Bid Procedures for the Sale of the Assets of Debtor, (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notices Related Thereto; (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts; (D) Approving Breakup Fee; and (E) Granting Other Related Relief ("Bid Procedures Motion"). In support of this objection, the Unions state as follows:

---

[1] The last four digits of the taxpayer identification number for the Debtor are 9717. The mailing address for the Debtor is 5035 Riverview Road, NW, Atlanta, Georgia 30327.

## PRELIMINARY STATEMENT

1. Following a hearing on May 11, 2021, this Court issued an order on May 18 granting the Unions relief from the automatic stay. Under that Order, the Debtor must enter arbitration with the Unions to determine the scope of the Debtor's labor obligations to the Unions and to the hundreds of workers who have spent their careers working at the Wardman Park property.

2. Those obligations arise, in the first instance, under the "Owner's Letter," an agreement between the Debtor, as owner of the property, and each of the Unions, as collective bargaining representatives of workers employed at the property.[2]

3. As explained in the Unions' Motion for Relief from Stay, the central purpose of the Owner's Letters is to protect the rights of the workers and the Union through transitions in ownership and operation. The Letters accomplish this goal by imposing three specific obligations on the Owner:

4. This letter spells out the collectively-bargained obligations of the owner of the Hotel and is designed to ensure that, in circumstances where different entities own and operate the property, the rights and benefits of employees are continuously maintained and protected through any transitions in either the ownership entity or the operating entity. Those obligations are specific.

*First*, it expressly binds the Owner to the "successorship" provisions of the main agreement—Article 1.12 of the Local 25 agreement, and Article V, Section 5.22 of the Local 99 contract—which provide for the job security of the unit and maintenance of terms during a sale

---

[2] Further background concerning the Owner's Letters is set forth in the Unions' Motion to Compel Debtor's Compliance with its Obligations Under Section 1113 or, in the Alternative, for Relief from Stay to Pursue Arbitration to Determine Debtor's Contractual Obligations to the Movants (D.I. No. 146), and is incorporated here by reference. *Id.* ¶¶ 10-14.

or transfer.  *See* Ex. 1 to Boardman Decl., at 76 (Addendum V) (D.I. No. 146-3)("Owner agrees to be bound by the Leases and Sales provision (currently Art. 1.12) of the CBA.  Nothing herein shall limit the Leases and Sales provision.");

*Second*, it requires the Owner to assume all provisions of the labor agreement if the operator is terminated and is not replaced.  *Id.*; and

*Third*, and most significantly in the context of the Debtor's Proposed Bid Procedures, the Owner's Letter runs with the property, and obligates the Owner to ensure, as a condition of sale, that any purchasers of the asset assume the Owner's Letter.  *Id.* ("Owner shall make it a written material condition of any transaction of any kind whatsoever which transfers majority ownership, management or operational control of the Hotel that the entity assuming . . . must assume and be bound in writing . . . (b) to the terms of this letter agreement, if the Transferee obtains an ownership interest in the Hotel.").

5.   Under this Court's May 18, 2021 Order (D.I. No. 228), the Debtor is compelled to arbitrate the second issue with the Unions – that is, whether the Owner was contemporaneously bound to the full terms of the Unions' labor agreements with Marriott upon the Owner's termination of Marriott.  But the proposed Bid Procedures provide no notice to potential purchasers of this pending litigation or, more to the point, of the distinct contingency that the property the Debtor seeks to sell is governed by the terms of two collective bargaining agreements. And, further, the schedule set forth in the Bid Procedures fails to incorporate the timeline of the arbitrations – now scheduled for consolidated hearing on June 18 – into the process, and, in fact, seems calculated to ignore those court-ordered proceedings entirely.

6.   But even more, the Bid Procedures *also* omit any mention of the other obligation imposed under the Owner's Letter that applies specifically in connection with the sale of the

property: the requirement that any purchaser of the hotel must assume and be bound by the terms of the Owner's Letter itself as a "written material condition" of the transaction. *See* Ex. 1 to Boardman Decl., at 76 (Addendum V).

7.  The Debtor's proposed Bid Procedures fail to ensure adoption of the Owner's Letter by prospective purchasers – indeed, they fail even to tell the bidders that the Owner's Letters exist – and fail to accommodate the arbitration process ordered by the Court.  Adoption of these procedures without substantive change in the APA terms and without adjustment of the schedule ignores the Unions' rights under these agreements and under the Bankruptcy Code. The Unions submit that the Bid Procedures Motion should not be granted without explicit adoption of the Owner's Letter, and a modest adjustment to the proposed Bid Schedule.

## **OBJECTION**

Assumption of Owner's Letter

8.  The Proposed Bid Procedures repeatedly assert that the property will be sold "free and clear of any Liens, Claims, and Encumbrances to the maximum extent permitted by section 363 of the Bankruptcy Code." *See, e.g.,* Proposed Bid Procedures at 8 (D.I. No. 229-2) ("Bid Procedures").

9.  However, the Bid Procedures nowhere acknowledge that the purchaser is required to assume the Owner's Letters with the Unions. In fact, the Unions – and the Owner's Letters – are not mentioned anywhere in the Bid Procedures at all.  *See* Proposed Form of Asset Purchase Agreement (D.I. No. 229-6) Schedule 1.3 (noting some contracts may be assumed by purchaser, but not requiring the Owner's Letter to be amongst them). In fact, the Bid Procedures suggest that bidders will have unfettered choice of which contracts they assume. *See* Proposed Bid

Procedures at 2 ("A Bid must identify with particularity each and every condition to closing and all executory contracts to be assumed and assigned.")

10.    In fact, it is clear that no assumption of the Owner's Letter is contemplated.  The only "contracts" mentioned are described as "certain executory contracts" – a category that does not include the Owner's Letter. To qualify as an "executory contract," "performance [must be] due to some extent on both sides." *In re Exide Techs.*, 607 F.3d 957, 962 (3d Cir. 2010) (quoting H.R. Rep. No. 95-595, 347 (1977)). The Owner's Letters do not meet this definition because the Unions performed their obligations under the Owner's Letters long before the bankruptcy petition, when they entered into full collective bargaining agreements with the hotel operator that managed the property for the Debtor.

11.    In combination, the complete omission of the Unions and any mention of the Owner's Letters, the recitation of the "free and clear" sale, and identification only of "executory contracts" create a false impression that the buyer will have no labor obligations at all. But the Bankruptcy Code does not provide a mechanism for the Debtor to rid itself of the Owner's Letter obligations. They are neither "claims" that can be discharged nor executory contracts that can be rejected, and Section 363(f) does not provide for a sale free and clear of the interests they create in the property.

12.    For the reasons noted above, the Owner's Letters are not executory contracts.  They also cannot be discharged as "claims." Because the Owner's Letters establish a "right to an equitable remedy for breach of performance," they would constitute a claim only "if such breach gives rise to a right to payment." 11 U.S.C. § 101(5)(B). There is no such a right to payment here. *See, e.g.*, *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 308 (3d Cir. 1999) (holding that a partnership interest was not a dischargeable claim because "monetary damages are not an adequate

substitute" for reinstatement); *In re Nyren*, 187 B.R. 424 (Bankr. D. Conn. 1995) (holding that a non-compete covenant is not a dischargeable claim because "[n]o expenditure of money is required to comply").

13.   Nor will Section 363(f) permit the sale of the hotel free and clear of the obligation to assume the Owner's Letters. The Owner's Letters admittedly establish "interests in the property" as they create "obligations that are connected to, or arise from, the property being sold." *In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003) (defining employment-discrimination claims as "interests in property"). Section 363(f) allows for a sale free and clear of an interest in the property "only" in five very limited, and specific, circumstances, none of which is present here. There is no "applicable nonbankruptcy law [that] permits" a free and clear sale; the Unions do not consent; and the obligation is not a lien. 11 U.S.C. § 363(f)(1)-(3). Nor is there any "bona fide dispute" regarding the obligation to convey subject to the Owner's Letter obligations. 11 U.S.C. § 363(f)(4); *see also In re Revel AC, Inc.*, 802 F.3d 558, 574-75 (3d Cir. 2015) (staying a 363(f) sale due to a reasonable likelihood that there was no "objective basis" to doubt the legitimacy of a lease on the property). And because the Owner's Letters do not present "claims," neither could the Unions "be compelled . . . to accept a money satisfaction" of the successorship obligations. 11 U.S.C. § 363(f)(5). With none of the 363(f) criteria met, any sale must require a buyer to assume the Owner's Letters. *See generally In re Dewey Ranch Hockey, LLC*, 406 B.R. 30 (Bankr. D. Ariz. 2009) (refusing to allow sale of a hockey team free and clear of agreements with the league and host city regarding team location, where the Debtor failed to establish a "bona fide dispute" or other basis for free-and-clear sale).

14.   Further, a Purchase Agreement that omits the Owner's Letter would also violate Section 1113(f)'s prohibition on unilateral alteration of a collective bargaining agreement. Although this

Court earlier reserved decision on whether the Owner's Letters merit protection under Section 1113, Ex. A, Tr. of May 11, 2021 Hrg. 47:5-7 (D.I. No. 225), such protection remains justified. Section 1113 protects more than "solely those terms which are specifically set forth in an agreement labeled by the parties as a collective bargaining agreement." *In re Bunting Bearings*, 302 B.R. 210, 218 (Bankr. N.D. Ohio 2003) (holding that Section 1113 protects a Pension Plan that was intertwined with a CBA, notwithstanding that the Pension Plan involved a separate entity from the Union and Employer). Like the Pension Plan in *Bunting Bearings*, the Owner's Letters were incorporated in each Union's main CBA and represent collectively-bargained obligations regarding the terms of employment at the hotel. Before they can be altered, the Debtor must comply with the precise requirements of Section 1113.

15.   The Bid Procedures should be amended to clarify that the purchaser will assume the Owner's Letters.[3]

Bid Procedures Schedule

16.   Debtor filed its Bid Procedures Motion two days after this Court granted relief from the automatic stay for the Unions and Debtor to arbitrate whether the Debtor is bound by the CBAs. *See* Order on Mot. to Compel (D.I. No. 228). In deciding to grant relief, the Court noted that it was "important" and beneficial to the estate to "inform potential buyers" whether the Debtor is bound by the CBAs, so that the buyers can decide "how they are going to approach the purchase of th[e] property." Ex. A, Tr. 48:16-20. By ordering the parties to resolve their dispute regarding the scope of the Debtor's obligations promptly, the Court sought to ensure that the Unions would not "end up getting jammed at the end" of the sale process. Ex. A, Tr. 48:21-25.

---

[3] The Unions reserve their rights to object to any sale motion that does not require such an assumption.

17.   Yet, unfortunately, the schedule outlined in the Proposed Bid Procedures will not permit potential purchasers to learn the results of the arbitration process before placing their bids. That is through no fault of the Unions, who promptly worked with Debtor's labor counsel to arrange the arbitrations and offered to streamline the process by conducting a joint hearing. The Debtor has ultimately agreed to that proposal, and a hearing before the arbitrator has been scheduled on June 18. Both Unions have emphasized to the arbitrator the importance of a prompt resolution of this matter and requested a decision by July 2, 2021. While the arbitrator has acknowledged the need for expedited treatment, she has not expressly committed to make a decision by any date certain. Amid this uncertainty, the Debtor controls the proposed bid schedule.  And under that proposed schedule, despite the Unions' efforts, prospective purchasers will have an extremely abbreviated window – if that – in which to digest the awards before submitting their offers by the July 8 deadline.  Proposed Bid Procedures (D.I. No. 229-2) at 3. The auction will be held less than two weeks later. *Id.* at 6.  If, as the Unions expect, the arbitrator determines that the Debtor is bound by the Marriott collective bargaining agreements, this leaves any potential buyer with little time to incorporate that information into its bid.

18.   Further, if the arbitrator rules in the Unions' favor and determines that the Debtor is bound by the full terms of the collective bargaining agreements, each Bid must provide for assumption of those agreements, either by the potential buyer or by an operator. If the Successful Bid fails to do so, the Debtor would be legally precluded from accepting that Bid: to do so would violate Section 1113(f), as it would be "bind[ing] itself contractually to obtain a change in the legal relations created by a CBA as a condition precedent to closing [the] sale." *Am. Flint Glass Workers Union v. Anchor Resol. Corp.*, 197 F.3d 76, 81 (3d Cir. 1999); *see also In re Stein Henry Co.*, Bankruptcy No. 91–15491S, 1992 WL 122902 at *2 (Bankr. E.D .Pa. June 1, 1992)

(rejecting a Chapter 11 plan that attempted to sell assets without complying with successorship provisions of a CBA).

19.   The schedule should be amended to allow Potential Bids to be submitted by July 16, 2021, which would allow sufficient time to complete the arbitrations and for potential buyers to incorporate the results, while allowing the auction to move forward on the current date of July 20, 2021.

<u>Union Attendance at Auction</u>

20.   Finally, the Proposed Bid Procedures limit attendance at the auction to "the authorized representatives and professional advisors of . . . Pacific Life, the Qualified Bidders, the Debtor, and the U.S. Trustee." Bid Procedures at 6. In light of the Unions' strong interest in the auction process, both Local 25 and Local 99 should be permitted to attend the auction. Unions regularly attend auctions related to other bankruptcy cases, including in such cases as *National Steel*, *LTV Steel*, and *Bruno's Supermarkets*. The Bid Procedures should be amended to allow for union attendance at the auction.

## **CONCLUSION**

21.   For these reasons, the Bid Procedures Motion should not be approved unless amended to address the issues raised in this Objection.

Dated: June 2, 2021
     Wilmington, Delaware

*/s/ Susan E. Kaufman*
Susan E. Kaufman (Bar No. 3381)
LAW OFFICE OF SUSAN E. KAUFMAN, LLC
919 N. Market Street, Ste. 460
Wilmington, DE 19801
Tel. (302) 472-7420
Fax. (302) 792-7420
Email: skaufman@skaufmanlaw.com
*Counsel for UNITE HERE Local 25 and Local 99,*
*International Union of Operating Engineers*


Devki K. Virk*
Joshua Rosenthal*
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street, N.W., Ste. 1000
Washington, D.C. 20005
Tel. (202) 842-2600
Fax. (202) 842-1888
Email: dvirk@bredhoff.com
       jrosenthal@bredhoff.com

*Counsel for UNITE HERE Local 25*

Robert E. Paul*
LAW OFFICES OF ROBERT E. PAUL, PLLC
1025 Connecticut Ave. NW, Ste. 1000
Washington, DC 20036-5420
Tel. (202) 857-5000
Fax. (202) 327-5499
Email: rpaul@robertpaul.com

*Counsel for Local 99, International Union of*
*Operating Engineers*


*admitted pro hac vice