**Exhibit 1**

**Bid Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| WARDMAN HOTEL OWNER, L.L.C.,[1] | ) ) ) | Case No. 21-10023 (JTD) |
| Debtor. | ) ) | |

## BID PROCEDURES FOR SALE OF DEBTOR' ASSETS

The above-captioned debtor and debtor in possession (the "Debtor") filed a motion dated May __, 2021 (the "Motion"),[2] seeking, among other things, approval of the process and procedures set forth below (the "Bid Procedures") through which they will determine the highest and best offer for the sale of the business assets of the Debtor (the "Assets"). On June __, 2021, the Bankruptcy Court entered its order (the "Bid Procedures Order"), which, among other things, approved the Bid Procedures.

On **July 22, 2021 at 1:00 p.m. (prevailing Eastern time)**, as further described below and in the Bid Procedures Order, the Bankruptcy Court shall conduct the "Sale Hearing" at which the Debtor shall seek entry of the Sale Order authorizing and approving the sale of the Assets to the Stalking Horse Purchaser (defined below), if any, or to one or more other Qualified Bidders (defined below) that the Debtor, in its sole discretion, determine to have made the highest and best offer.

*Agreement*

The Debtor has not currently chosen a "stalking horse" bidder for the Assets. Prospective bidders should submit a proposed asset purchase agreement, similar in form and substance, as modified, to the Agreement attached to the Motion as Exhibit E (the "Agreement"). Subject to the approval of the Court, the highest or best bidder at the auction will purchase the Assets, and assume certain executory contracts (the "Assumed Contracts"), free and clear of any liens, claims or encumbrances. The transaction contemplated is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to Bankruptcy Code §§ 363 and 365.

*Assets for Sale*

The Debtor is offering for sale the Assets, which generally consist of real property located in the Washington, D.C., at 2660 Woodley Road NW, Washington, D.C. 20008 (the "Land") and the buildings, structures and improvements erected or located on the Land (collectively, the "Improvements," and together with the Land, collectively, the "Real Property"). Except as otherwise provided in the Agreement, all of the Debtor's right, title and interest in and to the Assets subject thereto shall be sold free and clear of any Liens, Claims, interests and encumbrances (other than Permitted Liens and/or except as otherwise provided in

---

[1] The last four digits of the Debtor's U.S. tax identification number are 9717. The Debtor's mailing address is 5035 Riverview Road, NW, Atlanta, GA 30327.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

the Agreement) (collectively, the "Liens, Claims and Encumbrances") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens, Claims and Encumbrances to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Liens, Claims and Encumbrances applied against the Assets.

*Participation Requirements*

In order to participate in the bidding process and to or otherwise be considered for any purpose hereunder, a person interested in all or portions of the Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Debtor and its counsel, not later than five (5) business days before the Bid Deadline (defined below):

i. An executed confidentiality agreement ("Confidentiality Agreement") in form and substance acceptable to the Debtor;

ii. identification of the Potential Bidder, its principals, and the representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated transaction;

iii. written disclosure of any connections or agreements with the Debtor, the Stalking Horse Bidder, any other known Potential Bidder or Qualified Bidder, and/or any manager or direct or indirect equity security holder of the Debtor; and

iv. sufficient information, as may be requested by the Debtor in its discretion, to allow the Debtor to determine that the bidder has the operational and financial capability to close a sale of the Assets (which may include, but is not limited to, a bank account statement showing the ability of a Potential Bidder to pay cash for the Assets, current audited financial statements (or such other form of financial disclosure and credit-quality support or enhancement acceptable to the Debtor) of the Potential Bidder or those entities that will guarantee in full the payment obligations of the Potential Bidder, proof of any debt or equity funding commitments that are needed to close the contemplated transaction, and/or operational information).

*Designation as Qualified Bidder*

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for the assets of the Debtor do not overlap and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents described above and otherwise satisfies the requirements of the Bid Procedures Order and the procedures set forth herein, and that the Debtor, in its discretion, determines is reasonably likely to submit a *bona fide* offer for the Assets and to be able to consummate a sale if selected as a Successful Bidder (defined below).

The Debtor, as soon as is practicable, shall determine and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

Pacific Life and any Stalking Horse Purchaser (defined below) (together with any assigns) are Qualified Bidders and are deemed to satisfy all Bid requirements as set forth below.

*Access to Due Diligence Materials*

Only Potential Bidders that execute and deliver a confidentiality agreement satisfactory to the Debtor are eligible to receive due diligence access or additional non-public information. If the Debtor determines that a Potential Bidder that has satisfied the Participation Requirements

does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate. The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders. The Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Debtor is not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Assets.

*Due Diligence From Bidders*

Each Potential Bidder and Qualified Bidder (collectively, a "Bidder") shall comply with all reasonable requests for additional information and due diligence access by the Debtor or its advisors regarding such Bidder and its contemplated transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtor to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtor to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

### Bidding Process

The Debtor and its advisors, shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions hereof; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Assets.

*Bid Deadline*

On or before the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its Bid to the Debtor, Wardman Hotel Owner, L.L.C., 5035 Riverview Road, NW, Atlanta, GA 30327, Attn: James D. Decker, with a copy to counsel for the Debtor, Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, Delaware 19801, Attn: Laura Davis Jones; and the Debtor's broker, Eastdil Secured, L.L.C., 40 West 57th Street, 23rd Floor, New York, NY 10019, Attn: Alan Davis, not later than **July 8, 2021 at 5:00 p.m. (prevailing Eastern time)** (the "Bid Deadline").

A Bid received after the Bid Deadline shall not constitute a Qualified Bid. The Debtor is authorized, but is not required to, select the Stalking Horse Purchaser from the Qualified Bids received on or before **July 13, 2021 at 5:00 p.m. (prevailing Eastern time)** (the "Stalking Horse Selection Deadline").

*Bid Requirements*

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtor to satisfy each of the following conditions unless waived or modified by the Debtor in its sole discretion, or not applicable due to the exercise of a right to credit bid:

1. Good Faith Deposit. Each Bidder, other than Pacific Life, must make a deposit in escrow with Debtor's counsel the sum of $5,000,000 (together with all interest from time to time accrued thereon while held by Debtor's counsel, the "Initial Deposit"). Within two (2) business days following entry of the Sale Order, (i) Debtor's counsel shall deliver the Initial Deposit to a title or escrow company designated by the Debtor (the "Escrow Holder") and (ii) the Successful Bidder, unless the Successful Bidder is Pacific Life, shall deposit with the Escrow Holder an additional $5,000,000 (the "Additional Deposit," and,

3

does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate. The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders. The Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Debtor is not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Assets.

*Due Diligence From Bidders*

Each Potential Bidder and Qualified Bidder (collectively, a "Bidder") shall comply with all reasonable requests for additional information and due diligence access by the Debtor or its advisors regarding such Bidder and its contemplated transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtor to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtor to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

### Bidding Process

The Debtor and its advisors, shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions hereof; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Assets.

*Bid Deadline*

On or before the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its Bid to the Debtor, Wardman Hotel Owner, L.L.C., 5035 Riverview Road, NW, Atlanta, GA 30327, Attn: James D. Decker, with a copy to counsel for the Debtor, Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, Delaware 19801, Attn: Laura Davis Jones; and the Debtor's broker, Eastdil Secured, L.L.C., 40 West 57th Street, 23rd Floor, New York, NY 10019, Attn: Alan Davis, not later than **July 8, 2021 at 5:00 p.m. (prevailing Eastern time)** (the "Bid Deadline").

A Bid received after the Bid Deadline shall not constitute a Qualified Bid. The Debtor is authorized, but is not required to, select the Stalking Horse Purchaser from the Qualified Bids received on or before **July 13, 2021 at 5:00 p.m. (prevailing Eastern time)** (the "Stalking Horse Selection Deadline").

*Bid Requirements*

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtor to satisfy each of the following conditions unless waived or modified by the Debtor in its sole discretion, or not applicable due to the exercise of a right to credit bid:

1. Good Faith Deposit. Each Bidder, other than Pacific Life, must make a deposit in escrow with Debtor's counsel the sum of $5,000,000 (together with all interest from time to time accrued thereon while held by Debtor's counsel, the "Initial Deposit"). Within two (2) business days following entry of the Sale Order, (i) Debtor's counsel shall deliver the Initial Deposit to a title or escrow company designated by the Debtor (the "Escrow Holder") and (ii) the Successful Bidder, unless the Successful Bidder is Pacific Life, shall deposit with the Escrow Holder an additional $5,000,000 (the "Additional Deposit," and,

3

        together with the Initial Deposit, and all interest from time to time accrued thereon while held by Debtor's counsel and the Escrow Holder, the "<u>Good Faith Deposit</u>").  The Debtor reserves the right to modify the amount of the Good Faith Deposit in its discretion.

2.    <u>Minimum Bid</u>.  The consideration proposed by the Bid may include only cash and/or other consideration acceptable to the Debtor in an amount of no less than $100,000,000 (the "<u>Minimum Bid</u>"), <u>provided</u>, <u>however</u>, that in the event that the Debtor selects a Stalking Horse Purchaser, in order to qualify for the Auction, any competing Bid must be for more than an amount equal to the offer of the Stalking Horse Purchaser, plus the aggregate sum of (a) $250,000 in cash and (b) the dollar value of the Breakup Fee (as defined below), if any.

3.    <u>Irrevocable</u>.  All Bids must be irrevocable until three (3) business days after the Court has entered the Sale Order (the "<u>Termination Date</u>").  Bids selected as the Successful Bid or a Back-up Bid must be further irrevocable until three (3) business days after the closing of the sale.

4.    <u>Principal Terms</u>.  A Bid must include an executed agreement pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "<u>Contemplated Transaction Documents</u>") and a black-lined copy of the Agreement marked to show all changes requested by the Qualified Bidder, including specification of the proposed purchase price and any changes to any exhibits or schedules to the Agreement.  A Bid must identify with particularity each and every condition to closing and all executory contracts to be assumed and assigned pursuant to the Contemplated Transaction Documents.  The Contemplated Transaction Documents must include a commitment to close by no later than 30 days after entry of the Sale Order.  A Bid should propose a contemplated transaction involving all or substantially all of the Assets, <u>provided</u>, <u>however</u>, that the Debtor in its discretion may consider proposals for less than substantially all the Assets, <u>provided further</u> that the Debtor will evaluate all Bids, in its sole discretion, to determine whether such Bid or combination of Bids maximizes the value of the Debtor's estate as a whole in light of any factors regarding such bid which the Debtor, in its discretion, determines are appropriate to be considered in evaluating Bids.  A Bid must further disclose the planned use of the Property, including whether the Bidder intends to operate any part of the Property as a hotel.

5.    <u>Contingencies</u>.  A Bid may not be conditioned on obtaining financing or any internal approval or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties at or before closing or the satisfaction in all material respects at the closing of specified conditions.

6.    <u>Authorization to Bid</u>.  A Bid must include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body, or a statement as to why such approval is unnecessary) with respect to the submission, execution, delivery and closing of the Contemplated Transaction Documents.

7.    <u>Financing Sources</u>.  A Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Debtor with appropriate contact information for such financing sources.

8.    <u>No Fees Payable to Qualified Bidder</u>.  Except with respect to the Breakup Fee, if any, that may be provided to the Stalking Horse Purchaser, if any, a Bid may not request or entitle the Qualified Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment.  Moreover, by submitting a Bid, a Bidder shall be deemed to

4

waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bid Procedures.

9. <u>Immediate Payment of the Breakup Fee</u>.  A Bid must allow for the immediate payment of the Breakup Fee, if any, to the Stalking Horse Purchaser, if any, from the first proceeds of the cash portion of the purchase price of such Bid.

10. <u>Non-Reliance.</u> A Bid must include an acknowledgement and representation of the Qualified Bidder that it has had an opportunity to conduct any and all due diligence regarding the Assets and Assumed Liabilities prior to making its bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, the Assumed Liabilities, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Contemplated Transaction Documents.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements and that satisfies the Bid Deadline requirement above shall constitute a "Qualified Bid," if the Debtor believes, in its reasonable discretion, that such Bid would be consummated if selected as the Successful Bid.  The Debtor shall have the right to reject any and all bids that it believes, in its reasonable discretion, do not comply with the Bid Procedures.  In the event that any Potential Bidder is determined by the Debtor not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit with interest thereon, if any has accrued, by the Termination Date.

*Breakup Fee*

The Debtor may solicit "stalking horse" bids for the Assets prior to the Auction. Recognizing a stalking horse bidder's expenditure of time, energy and resources, and that the stalking horse provides a floor bid with respect to the Assets that it offers to purchase, the Debtor is authorized to provide the following bidding protections in the event that a stalking horse (the "<u>Stalking Horse Purchaser</u>") is selected by the Debtor in its sole discretion in advance of the Auction.

1. The Debtor may agree to pay a Stalking Horse Purchaser a breakup fee and/or expense reimbursement in an amount not to exceed $3,000,000 in the aggregate (the "<u>Breakup Fee</u>") in the event that: (i) the Stalking Horse Bidder is not approved by the Bankruptcy Court as the purchaser of the Assets on which it bid, (ii) the Stalking Horse Purchaser is not in default of its obligations under its asset purchase agreement with the Debtor, **and** (iii) the assets on which the Stalking Horse Purchaser bid are thereafter sold to a Successful Bidder(s) at the Auction for consideration in excess of the purchase price provided for in the asset purchase agreement with the Stalking Horse Purchaser notwithstanding the Stalking Horse Purchaser's willingness and ability to consummate the transactions contemplated by the Stalking Horse Purchaser's asset purchase agreement.  Such payments shall be made to the Stalking Horse Purchaser solely out of the proceeds of closing with the Successful Bidder(s) of the Assets on which the Stalking Horse Purchaser bid.

2. In the event a Stalking Horse Purchaser is designated, any bid(s) submitted by a party or parties other than the Stalking Horse Purchaser must be in an amount that is sufficient to pay the Breakup Fee and result in additional consideration to the Debtor's estate in the amount of at least $250,000 after payment of the Breakup Fee.

5

**Auction**

The Debtor will conduct an auction (the "Auction") to determine the highest and best bid with respect to the Assets.  Unless otherwise designated by the Debtor, Auction shall commence on **July 20, 2021 at 10:00 a.m. (prevailing Eastern time)**, at 2660 Woodley Road NW, Washington, D.C. 20008, or by video conference to the live proceedings at this location.

In advance of the Auction, the Debtor will notify all Qualified Bidders of (i) the highest and best Qualified Bid, as determined by the Debtor in its discretion (the "Baseline Bid") and (ii) the time and place of the Auction.

If no higher and better offer is obtained at the Auction, then the Stalking Horse Purchaser, if any, or the Qualified Bidder submitting the Baseline Bid will be deemed the Successful Bidder.

The Auction shall be conducted according to the following procedures:

1. **Participation at the Auction**

Pacific Life, the Stalking Horse Purchaser, if any, and Qualified Bidders that have submitted Qualified Bids are eligible to participate at the Auction.  The authorized representatives and professional advisors of each of Pacific Life, the Qualified Bidders, the Debtor, the U.S. Trustee, UNITE HERE Local 25, Local 99, International Union of Operating Engineers, and Marriott shall be permitted to attend the Auction.  Any other creditor of the Debtor who would like to attend the auction should contact counsel for the Debtor, Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, Delaware 19801, Attn: Laura Davis Jones (ljones@pszjlaw.com), for instructions to attend live or by video conference.

Except as otherwise set forth herein, the Debtor may conduct the Auction in the manner they determine will result in the highest or best offer for the Assets.

2. **The Debtor Shall Conduct the Auction**

The Debtor and its professionals shall direct and preside over the Auction.  At the start of the Auction, the Debtor shall describe the terms of the Baseline Bid.  The determination of which Qualified Bid constitutes the Baseline Bid shall be made by the Debtor in its discretion and may take into account, among other things, (a) the terms of the asset Agreement submitted by each Bidder; (b) the extent to which such terms are likely to delay closing of the sale of the Assets and the cost to the Debtor of such delay; (c) the total consideration to be received by the Debtor, including consideration of any liabilities proposed to be assumed pursuant to the Bid; (d) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (e) the net benefit to the estate, taking into account any Breakup Fee; and (f) any other matter as the Debtor's fiduciary duty may require (the "Bid Assessment Criteria").  All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders.  The Debtor shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.  Pursuant to Local Rule 6004-1, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the Bidding Procedures, the Auction or the proposed transaction.

3. **Terms of Overbids**

An "Overbid" is any bid made at the Auction subsequent to the Debtor's announcement of the Baseline Bid. To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

**(a)    Minimum Overbid Increment**

During the Auction, bidding shall begin initially with the highest Baseline Bid, which may be the Bid of a Stalking Horse Purchaser, and subsequently continue with an initial minimum overbid of $250,000 (the "Initial Overbid") (plus the Breakup Fee, if any, in the event that the Baseline Bid is the Bid of a Stalking Horse Purchaser).

**(b)    Remaining Terms are the Same as for Qualified Bids**

Any Overbid after the Initial Overbid shall be made in increments of at least $250,000 in cash. Additional consideration in excess of the amount set forth in the Baseline Bid may include only cash and/or other consideration acceptable to the Debtor; provided, however, that any overbids by a Stalking Horse Purchaser thereafter shall only be required to be equal to the sum of (1) the then existing lead Bid plus (2) $250,000 less (3) the dollar value of the Breakup Fee, if any.

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtor accepts a higher Qualified Bid as an Overbid.

**4.    Additional Procedures**

The Debtor may adopt rules for the Auction at or prior to the Auction that, in its reasonable discretion, will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bid Procedures Order or the Bankruptcy Code. All such rules will provide that all Bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (*i.e.*, the principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

The Debtor may extend the Bid Deadline or the Auction Date, as determined, beyond the dates provided herein. In the event of such an extension, the Debtor shall provide notice to the Sale and Bid Procedures Notice Parties and any Qualified Bidders of such extension, any related time and location details with respect to same, and any consequent continuance of the Sale Hearing.

**5.    Consent to Jurisdiction as Condition to Bidding**

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of each Qualified Bidder's Contemplated Transaction Documents, as applicable.

**6.    Closing the Auction**

Upon conclusion of the bidding, the Auction shall be closed, and the Debtor shall immediately identify the highest or best offer for the Assets (which may be an aggregate of bids for less than all of the Assets) (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest or best offer will provide the greatest amount of net

value to the Debtor, and the next two (2) highest or best offers after the Successful Bid (the "Back-up Bids") and the entities submitting the Back-up Bids (the "Back-up Bidders"), and advise the Qualified Bidders of such determination.

Bids selected as the Successful Bid or the Back-up Bid must be irrevocable until three (3) business days after the closing of the sale. As provided above, all Bids other than the Successful Bid and the Back-up Bids shall be considered revoked as of the Termination Date, which is three (3) business days after the Court has entered the Sale Order.

### Acceptance of Successful Bid

The Debtor shall sell the Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. In the event the transaction does not close with the Successful Bidder, the Debtor shall be authorized to sell the Assets to the Back-up Bidders. The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of such Qualified Bid. The Debtor will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.

### "As Is, Where Is"

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or its estate except to the extent set forth in the Agreement of the Successful Bidder. Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures or the asset purchase agreement of the Successful Bidder.

### Free of Any and All Interests

Except as otherwise provided in the Successful Bidder's asset purchase agreement and subject to the approval of the Bankruptcy Court, all of Debtor's right, title and interest in and to the Assets subject thereto shall be sold free and clear of any Liens, Claims, and Encumbrances to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens, Claims and Encumbrances to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Liens, Claims and Encumbrances applied against the Assets.

### Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on **July 22, 2021 at 1:00 p.m. (prevailing Eastern time)**, or on such other date as may be established by the Bankruptcy Court.

If the Successful Bidder fails to consummate an approved sale in accordance with the applicable asset purchase agreement or such agreement is terminated, the Debtor shall be authorized, but not required, to deem the Back-up Bids, as disclosed at the Sale Hearing, the Successful Bids, and the Debtor shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting the next highest such Bid without further order of the Bankruptcy Court.

8

## **Return of Good Faith Deposit**

Good Faith Deposits of all Qualified Bidders shall be held in a trust account by Debtor's counsel or the Escrow Holder. Any Good Faith Deposit of the Successful Bidder (or Back-up Bidder that becomes a Successful Bidder) shall be applied to the purchase price of such transaction at closing. Good Faith Deposits of the Back-up Bidders shall be returned within three (3) days after the closing of the sale, with accumulated interest thereon, if any. Good Faith Deposits of all other Qualified Bidders shall be returned to the respective bidders on the Termination Date, with accumulated interest thereon, if any. If a Successful Bidder (including any Back-up Bidder that has become the Successful Bidder) fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor shall be entitled to retain the Successful Bidder's Good Faith Deposit as part of the Debtor's damages resulting from such Successful Bidder's breach or failure to perform.

## **Modifications**

The Bid Procedures may not be modified except with the express written consent of the Debtor.

The Debtor may (a) determine, which Qualified Bid, if any, is the highest and best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale; or (iii) contrary to the best interests of the Debtor, its estate and creditors.

At or before the Sale Hearing, the Debtor may impose such other terms and conditions as the Debtor may determine to be in the best interests of the Debtor's estate, its creditors and other parties in interest.