**IN THE UNITED STATES BANKRUPTCY**
**COURT FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WARDMAN HOTEL OWNER, L.L.C.,[1] | ) | Case No. 21-10023(JTD) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## AFFIDAVIT OF SERVICE

I, Amanda L. Hinchey, depose and say that I am employed by Stretto, the Administrative Advisor for the Debtor in the above-captioned case.

On September 2, 2021, at my direction and under my supervision, employees of Stretto caused the following documents to be served via overnight mail on Pacific Life Insurance Company at Attn: Legal Dept., 700 Newport Center Drive, Newport Beach, CA 92660:

- **Order (I) Granting Interim Approval of the Disclosure Statement; (II) Scheduling a Plan Confirmation Hearing and Approving Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Form of Ballot; and (V) Granting Related Relief** (Docket No. 324)

- **Notice of (I) Conditional Approval of Disclosure Statement; (II) Hearing to Consider Confirmation of the Plan; (III) Deadline for Filing Objections to Confirmation of the Plan; (IV) Deadline for Voting on the Plan; and (V) Bar Date for Filing Administrative Claims Established by the Plan** (Docket No. 325)

- **Notice of Filing of Plan Supplement with Respect to the Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Docket No. 330)

- **Disclosure Statement with Respect to Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Attached Hereto as **Exhibit D**)

- **Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Attached Hereto as **Exhibit E**)

- **Ballot to Accept or Reject Plan of Liquidation Class 3 – Pacific Life Secured Claim [Customized]** (Attached Hereto as **Exhibit F**)

- **Pre-addressed, postage prepaid return envelope** (Attached Hereto as **Exhibit G**)

[SPACE LEFT INTENTIONALLY BLANK]

---

[1] The last four digits of the Debtor's U.S. tax identification number are 9717. The Debtor's mailing address is 5996 Mitchell Road, #16, Atlanta, GA 30328.

Furthermore, on September 2, 2021, at my direction and under my supervision, employees of Stretto caused the following documents to be served via electronic mail on the service list attached hereto as **Exhibit A**:

- **Order (I) Granting Interim Approval of the Disclosure Statement; (II) Scheduling a Plan Confirmation Hearing and Approving Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Form of Ballot; and (V) Granting Related Relief** (Docket No. 324)

- **Notice of (I) Conditional Approval of Disclosure Statement; (II) Hearing to Consider Confirmation of the Plan; (III) Deadline for Filing Objections to Confirmation of the Plan; (IV) Deadline for Voting on the Plan; and (V) Bar Date for Filing Administrative Claims Established by the Plan** (Docket No. 325)

- **Notice of Filing of Plan Supplement with Respect to the Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Docket No. 330)

- **Disclosure Statement with Respect to Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Attached Hereto as **Exhibit D**)

- **Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Attached Hereto as **Exhibit E**)

- **Ballot to Accept or Reject Plan of Liquidation Class 3 – Pacific Life Secured Claim [Customized]** (Attached Hereto as **Exhibit F**)

Furthermore, on September 2, 2021, at my direction and under my supervision, employees of Stretto caused the following documents to be served via overnight mail on Marriott Hotel Service Inc. at Attn:  Legal Department, 10400 Fernwood Road, Bethesda, MD 20817:

- **Order (I) Granting Interim Approval of the Disclosure Statement; (II) Scheduling a Plan Confirmation Hearing and Approving Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Form of Ballot; and (V) Granting Related Relief** (Docket No. 324)

- **Notice of (I) Conditional Approval of Disclosure Statement; (II) Hearing to Consider Confirmation of the Plan; (III) Deadline for Filing Objections to Confirmation of the Plan; (IV) Deadline for Voting on the Plan; and (V) Bar Date for Filing Administrative Claims Established by the Plan** (Docket No. 325)

- **Notice of Filing of Plan Supplement with Respect to the Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Docket No. 330)

- **Disclosure Statement with Respect to Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Attached Hereto as **Exhibit D**)

- **Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Attached Hereto as **Exhibit E**)

- **Ballot to Accept or Reject Plan of Liquidation Class 4 Marriot Claim [Customized]** (Attached Hereto as **Exhibit H**)

- **Pre-addressed, postage prepaid return envelope** (Attached Hereto as **Exhibit I**)

Furthermore, on September 2, 2021, at my direction and under my supervision, employees of Stretto caused the following documents to be served via electronic mail on the service list attached hereto as **Exhibit B**:

- **Order (I) Granting Interim Approval of the Disclosure Statement; (II) Scheduling a Plan Confirmation Hearing and Approving Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Form of Ballot; and (V) Granting Related Relief** (Docket No. 324)

- **Notice of (I) Conditional Approval of Disclosure Statement; (II) Hearing to Consider Confirmation of the Plan; (III) Deadline for Filing Objections to Confirmation of the Plan; (IV) Deadline for Voting on the Plan; and (V) Bar Date for Filing Administrative Claims Established by the Plan** (Docket No. 325)

- **Notice of Filing of Plan Supplement with Respect to the Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Docket No. 330)

- **Disclosure Statement with Respect to Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Attached Hereto as **Exhibit D**)

- **Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Attached Hereto as **Exhibit E**)

- **Ballot to Accept or Reject Plan of Liquidation Class 4 Marriot Claim [Customized]** (Attached Hereto as **Exhibit H**)

[SPACE LEFT INTENTIONALLY BLANK]

Furthermore, on September 2, 2021, at my direction and under my supervision, employees of Stretto caused the following documents to be served via overnight mail on American Roentgen Ray Society at Attn: Legal Department, 44211 Statestone Court, Leesburg, VA 20176:

- **Order (I) Granting Interim Approval of the Disclosure Statement; (II) Scheduling a Plan Confirmation Hearing and Approving Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Form of Ballot; and (V) Granting Related Relief** (Docket No. 324)

- **Notice of (I) Conditional Approval of Disclosure Statement; (II) Hearing to Consider Confirmation of the Plan; (III) Deadline for Filing Objections to Confirmation of the Plan; (IV) Deadline for Voting on the Plan; and (V) Bar Date for Filing Administrative Claims Established by the Plan** (Docket No. 325)

- **Notice of Filing of Plan Supplement with Respect to the Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Docket No. 330)

- **Disclosure Statement with Respect to Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Attached Hereto as **Exhibit D**)

- **Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Attached Hereto as **Exhibit E**)

- **Ballot to Accept or Reject Plan of Liquidation Class 5 General Unsecured Claims [Customized]** (Attached Hereto as **Exhibit J**)

- **Pre-addressed, postage prepaid return envelope** (Attached Hereto as **Exhibit K**)

Furthermore, on September 2, 2021, at my direction and under my supervision, employees of Stretto caused the following documents to be served via electronic mail on the service list attached hereto as **Exhibit C**:

- **Order (I) Granting Interim Approval of the Disclosure Statement; (II) Scheduling a Plan Confirmation Hearing and Approving Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Form of Ballot; and (V) Granting Related Relief** (Docket No. 324)

- **Notice of (I) Conditional Approval of Disclosure Statement; (II) Hearing to Consider Confirmation of the Plan; (III) Deadline for Filing Objections to Confirmation of the Plan; (IV) Deadline for Voting on the Plan; and (V) Bar Date for Filing Administrative Claims Established by the Plan** (Docket No. 325)

- **Notice of Filing of Plan Supplement with Respect to the Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Docket No. 330)

- **Disclosure Statement with Respect to Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Attached Hereto as **Exhibit D**)

- **Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code** (Attached Hereto as **Exhibit E**)

- **Ballot to Accept or Reject Plan of Liquidation Class 5 General Unsecured Claims [Customized]** (Attached Hereto as **Exhibit J**)

In addition to the methods of service set forth herein, parties who have requested electronic notification of filings via the Bankruptcy Court's CM/ECF system were sent the above referenced documents via electronic service.

Dated: September 3, 2021

Amanda L. Hinchey

State of Colorado    )
                     ) SS.
County of Denver     )

Subscribed and sworn before me this 3rd day of September 2021 by Amanda L. Hinchey.

(Notary's Official Signature)

VICTORIA XUAN HUONG TRAN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20194011214
MY COMMISSION EXPIRES MARCH 21, 2023

# **Exhibit A**



**Exhibit A**
Served Via Electronic Mail
Class 3 Voting Parties

| Name | Attention 1 | Attention 2 | Email |
|------|-------------|-------------|-------|
| Pacific Life Insurance Company | c/o Alston & Bird LLP | Attn: Grant Stein, David Wender and Brian D. Frey | david.wender@alston.com grant.stein@alston.com brian.frey@alston.com |
| Pacific Life Insurance Company | c/o Klehr Harrison Harvey Branzburg LLP | Attn: Dominic E. Pacitti | dpacitti@klehr.com |

# **Exhibit B**



**Exhibit B**
Served Via Electronic Mail
Class 4 Voting Parties

| Name | Attention 1 | Attention 2 | Email |
|------|------------|-------------|-------|
| Marriott Hotel Service, Inc | c/o Jenner & Block LLP | Attn: Lindsay Harrison, Kali Bracey, and Jessica Ring Amunson | lharrison@jenner.com<br>kbracey@jenner.com<br>jamunson@jenner.com |
| Marriott Hotel Services, Inc. | c/o Morris, Nichols, Arsht, & Tunnell LLP | Attn: Curtis S. Miller | cmiller@mnat.com |
| Marriott Hotel Services, Inc. | c/o Sheppard, Mullin, Richter & Hampton LLP | Attn: Ori Katz | okatz@sheppardmullin.com |
| Marriott Hotel Services, Inc. | c/o Sheppard, Mullin, Richter & Hampton LLP | Attn: Michael T. Driscoll | mdriscoll@sheppardmullin.com |

# **<u>Exhibit C</u>**



**Exhibit C**
Served Via Electronic Mail
Class 5 Voting Parties

| Name | Attention 1 | Attention 2 | Email |
|---|---|---|---|
| Aero Club of Washington | | | aerodub1@verizon.net |
| Airgas USA LLC | | | Amanda.dopieralski@airgas.com |
| American Historical Association | | | ddoyle@historians.org |
| American Physical Society | | | clemens@aps.org |
| Baker & Hostetler LLP | Attention: Jay P. Krupin | | jkrupin@bakerlaw.com |
| Belfast-Beltway Boxing Project | The Belfast-Beltway Boxing Project | | patti.bbbp@gmail.com |
| Boland Trane Services Inc. | | | tylerhughes@commercialcollection.com |
| Capitol Boiler Works, Inc. | | | kquigley@capitolboilerworks.com |
| Cintas Corporation dba Cintas Location No. 41 | c/o Keating Muething & Klekamp PLL | Attn: Jason V. Stitt | jstitt@kmklaw.com |
| Congressional Hotel Dry Cleaning LLC | | | chrismakki@aol.com |
| Connect Computer | | | ckarcher@connectcomputer.com |
| DC Gov'T Office of Tax and Revenue | | | angela.coleman@dc.gov |
| Destination DC | | | bruno@washington.org john@washington.org |
| Direct Energy Business, LLC | c/o McDowell Hetherington LLP | Attn: Nicole Su | Nicole.su@mhllp.com |
| Ecolab | | | billy.mcgee@ecolab.com |
| Enseo, LLC (f/k/a Enseo, Inc.) | c/o Enseo, LLC | Attn: Helen Jenkins | HJenkins@enseo.com |
| Extracorporeal Life Support Organization | c/o Bodman PLC | Attn: Marc M. Bakst | mbakst@bodmanlaw.com |
| FedEx Corporate Services Inc. as Assignee of FedEx Express/Ground/Frieght/Office | | | bankruptcy@fedex.com |
| Haislip Corporation | | | tiffani@haislipcorp.com |
| Innovative Security Systems Inc. | | | accounting@innovativesecurity.com |
| Insight Direct USA, Inc. | | | barbara.ross@insight.com |
| International Gourmet Foods, Inc. | | | kcable@igf-inc.com |
| KUMC Research Institute, Inc. | Attn: Treasurer | | pgriffith@kumc.edu |
| Marriott Hotel Service, Inc. | | | julie.bowen@marriott.com |
| Mathematical Association of Am | | | pearson@maa.org |
| Nalco Water | | | billy.mcgee@ecolab.com |
| New Life Solutions, LLC | | | rita@nlshygiene.com |
| Oracle America, Inc. | c/o Buchalter PC | Attn: Shawn M. Christianson, Esq. | schristianson@buchalter.com |
| Pryor Cashman LLP | Attn: Todd E. Soloway, Esq. | | Tsoloway@pryorcashman.com |
| Restaurant Technologies, Inc. | | | collections@rti-inc.com |
| Schindler Elevator Corporation | c/o Walsh Pizzi O'Reilly Falanga LLP | | sfalanga@walsh.law |
| Smallwood Lock Supply Inc. | | | julia@smallwoodlock.com |
| Teddy's Fresh Baked Pizza | | | teddyspizza@hotmail.com |
| The Institute for Educational Leadership, Inc. | | | munozj@iel.org |
| Titan Global Distribution, Inc. | | | micbeng@atlasworldgroup.com |
| Veterans Storage Inc | | | john@vetsstorage.com |
| Xerox Corporation | | | vanessa.adams@xerox.com |

# **<u>Exhibit D</u>**

*Solicitation Version*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WARDMAN HOTEL OWNER, L.L.C.,[1] | Case No. 21-10023 (JTD) |
| Debtor. | |

## DISCLOSURE STATEMENT WITH RESPECT TO DEBTOR'S PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400
email:   ljones@pszjlaw.com
       dbertenthal@pszjlaw.com
       tcairns@pszjlaw.com

Counsel for Debtor and Debtor in Possession

Dated:   August 18, 2021

---

[1] The last four digits of the Debtor's U.S. tax identification number are 9717.  The Debtor's mailing address is 5996 Mitchell Road, #16, Atlanta, GA 30328.

*Solicitation Version*

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| I. INTRODUCTION | | 1 |
| A. | Solicitation Packages | 4 |
| B. | Only Impaired Classes Vote | 4 |
| C. | Voting Procedures | 5 |
| D. | Plan Objection Deadline | 6 |
| E. | Confirmation Hearing | 6 |
| F. | Overview of the Plan | 6 |
| II. BACKGROUND AND CHAPTER 11 CASE | | 8 |
| A. | The Debtor's Background and Prepetition Operations | 8 |
| B. | Capital Structure and Significant Indebtedness | 9 |
| | 1. Equity Ownership | 9 |
| | 2. Significant Prepetition Indebtedness | 9 |
| | 3. Other Indebtedness. | 10 |
| C. | Events Leading to Chapter 11 Filing, the Debtor's Prepetition  Litigation with Marriott, and the Commencement of the Chapter 11 Case | 11 |
| | 1. The Hotel's Declining Operations Prior to COVID-19 | 11 |
| | 2. Shutdown of the Hotel Due to COVID-19 | 11 |
| | 3. The Debtor's Prepetition Litigation with Marriott | 11 |
| D. | Developments in the Debtor's Chapter 11 Case | 13 |
| | 1. First Day and Other Early Motions and Orders | 13 |
| E. | Retention of Chapter 11 Professionals | 13 |
| F. | DIP Financing | 13 |
| G. | Filing of Schedules and Statement of Financial Affairs | 14 |
| H. | Marriott's Motion to Transfer Venue of the Bankruptcy Case from the Bankruptcy Court to the District of Columbia | 14 |
| I. | Claims Bar Date Order | 15 |
| J. | Marriott's Motion to Remand Claims Against Pacific Life to the Maryland Court | 15 |
| K. | The Debtor's Postpetition Complaint Against Marriott | 16 |
| L. | Motion to Approve Bid Procedures and the Sale  of the Debtor's Real Property and Related Assets | 16 |

|  | 1. | Postpetition Sale Efforts and Retention of Eastdil to Market the Sale of the Hotel and Related Assets | 16 |
|  | 2. | The Sale of the Debtor's Real Property and Related Assets | 17 |
|  | 3. | The Unions' Motion to Compel and Arbitration Award | 18 |
| M. |  | Motion to Compromise Controversies and Causes of Action between the Debtor and Marriott | 19 |

**III. SUMMARY OF THE PLAN** ........................................................................ 19

| A. |  | General | 19 |
| B. |  | Classification and Treatment of Claims and Equity Interests | 20 |

**IV. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS** ........................................ 20

| A. |  | Summary | 20 |
| B. |  | Classification and Treatment of Claims against the Debtor | 20 |
|  | 1. | Class 1 – Priority Non-Tax Claims | 21 |
|  | 2. | Class 2 – Other Secured Claims | 21 |
|  | 3. | Class 3 – Pacific Life Secured Claim | 22 |
|  | 4. | Class 4 – Marriott Claim | 22 |
|  | 5. | Class 5 – General Unsecured Claims | 23 |
|  | 6. | Class 6 – Equity Interests | 23 |

**V. ACCEPTANCE OR REJECTION OF THE PLAN** .......................... 23

| A. |  | Voting Classes | 23 |
| B. |  | Presumed Acceptance of Plan | 24 |
| C. |  | Acceptance by Impaired Classes | 24 |
| D. |  | Presumed Rejection of Plan | 24 |
| E. |  | Nonconsensual Confirmation | 24 |

**VI. MEANS FOR IMPLEMENTATION OF THE PLAN** ..................... 24

| A. |  | Settlement of Claims and Causes of Action Between the Debtor and Marriott | 24 |
| B. |  | Dissolution of Debtor | 25 |
| C. |  | Appointment of the Liquidating Trustee | 25 |
| D. |  | The Liquidating Trust | 25 |
|  | 1. | Formation of the Liquidating Trust | 25 |
|  | 2. | Funding of the Liquidating Trust | 25 |
| E. |  | Rights and Powers of the Liquidating Trustee | 26 |

| | | |
|---|---|---|
| F. | Fees and Expenses of the Liquidating Trust | 26 |
| G. | Transfer of Beneficial Interests in the Liquidating Trust | 27 |
| H. | Plan Contribution Amount | 27 |
| I. | Litigation of Debtor's Causes of Action | 27 |
| J. | Full and Final Satisfaction | 27 |
| K. | Distribution Procedures | 27 |
| L. | Resolution of Disputed Claims | 28 |
| M. | Reserve Provisions for Disputed Claims | 30 |
| N. | Rounding | 30 |
| O. | No Cash Payments of Less Than $50 on Account of Allowed Claims | 30 |
| P. | Delivery of Distributions and Unclaimed Property | 31 |
| Q. | Withholding Taxes | 31 |
| R. | United States Trustee Fees | 32 |
| S. | Books and Records | 32 |
| T. | No Modification of Terms of the Sale Order | 32 |
| VII. | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 32 |
| A. | Rejection of Executory Contracts and Unexpired Leases | 32 |
| B. | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 33 |
| C. | Insurance Policies | 33 |
| D. | Excess Proceeds | 33 |
| VIII. | CONDITIONS PRECEDENT TO CONFIRMATION  OF THE PLAN AND TO THE EFFECTIVE DATE | 34 |
| A. | Conditions to Confirmation of the Plan | 34 |
| B. | Effect of Failure of Conditions to Confirmation | 34 |
| C. | Conditions to Effective Date | 34 |
| D. | Effective Date | 35 |
| IX. | EFFECTS OF CONFIRMATION | 35 |
| A. | Binding Effect of Plan | 35 |
| B. | Vesting of Property of Debtor in the Liquidating Trust | 35 |
| C. | Property Free and Clear | 35 |
| D. | Exculpation | 36 |
| E. | Releases | 36 |
| 1. | Debtor Release. | 36 |

2.       Third Party Release.                                                                    37

3.       Global Limited Release of Claims between Marriott, the Debtor and Pacific
         Life                                                                                    38

F.       Injunction                                                                              39

G.       Post-Confirmation Liability of Liquidating Trustee                                       39

H.       Preservation of Rights of Action                                                        40

1.       Vesting of Causes of Action.                                                            40

2.       Preservation of All Causes of Action Not Expressly Settled or Released.                 40

I.       No Discharge                                                                            41

X. VOTING REQUIREMENTS; ACCEPTANCE AND CONFIRMATION OF THE PLAN          41

A.       Parties in Interest Entitled to Vote                                                    41

B.       Classes Impaired Under the Plan                                                         42

C.       Voting Procedures and Requirements                                                      42

D.       Confirmation Standards                                                                  42

E.       Best Interests Test                                                                     44

F.       Liquidation Analysis                                                                    45

G.       Feasibility                                                                             45

H.       Acceptance by Impaired Classes.                                                         46

I.       Compliance with the Applicable Provisions of the Bankruptcy Code                        47

XI. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN            47

XII. RISK FACTORS                                                                                48

A.       Risks Relating to Confirmation and Consummation of the Plan                             48

1.       Parties in Interest May Object to Classification of Claims and Interests                48

2.       The Debtor May Object to a Claim or Equity Interest                                     48

3.       The Debtor May Fail to Satisfy the Vote Requirement                                     48

4.       Plan May Not Be Accepted, Confirmed or Consummated                                      49

5.       Non-Consensual Confirmation of the Plan May Be Necessary                                49

6.       The Marriott Settlement Motion May Not Be Granted by the Court                          50

7.       The Sale May Not Close                                                                  50

B.       Risks Relating to the Chapter 11 Process                                                50

1.       The Debtor's Exclusivity Period May Terminate                                           50

2.       Continuation of the Chapter 11 Case May Harm the Debtor's Estate                        50

3.       The Chapter 11 Case May Be Converted to Chapter 7                                       50

C.      Risks Relating to Recoveries Under the Plan                          51

XIII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN              51

A.      Federal Income Tax Consequences to Certain Creditors              52

1.      In General                                                        52

2.      Non-United States Persons                                        52

3.      Tax Consequences in Relation to Liquidating Trust              53

B.      Information Reporting and Backup Withholding                      55

XIV. RECOMMENDATION                                                      56

# I.

## **INTRODUCTION**

The above-captioned debtor and debtor in possession (the "Debtor") has filed its proposed *Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated August 18, 2021 (as may be amended or modified, the "Plan"), with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). A copy of the Plan is attached hereto as **Exhibit A**.[2] The Debtor hereby submits this Disclosure Statement with respect to the Plan (as may be amended or modified, the "Disclosure Statement"), pursuant to Section 1125 of the Bankruptcy Code in connection with the solicitation of acceptances or rejections of the Plan from certain Holders of Claims against the Debtor.

On September 1, 2021, the Court entered the *Order (I) Conditionally Approving the Disclosure Statement; (II) Scheduling a Plan Confirmation Hearing and Approving Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Form of Ballot; and (V) Granting Related Relief,* which granted provisional approval of the Disclosure Statement and approved of the forms of Plan ballots and notices, as well as set **September 20, 2021, at 1:00 p.m. (Eastern Time)** as the time for the hearing to consider final approval of the Disclosure Statement and confirm the Plan.

If confirmed, the Plan will implement the formation of a liquidating trust to distribute proceeds from that certain *Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of the Debtor's Assets Outside of the Ordinary Course of Business; (B) Authorizing the Sale of Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), 363(f), 363(m) and 1146; (C) Assuming and Assigning Certain Executory Contracts and Unexpired Leases; and (D) Granting Other Related Relief* [Docket No. 292], entered on July 22, 2021 (the "Sale Order") and the Marriott Settlement Motion (discussed below) as well as to pursue any remaining Causes of Action, liquidate remaining Estate assets, and distribute proceeds according to the Plan. Prior to the entry of the Sale Order, the Debtor conducted a lengthy and robust auction for the sale of the assets that are the subject of the Sale Order. Three bids for subject assets were received, two of which were deemed qualified bids under the terms of the bid procedures previously approved by the Court. The lead bid submitted at the start of the Auction for the subject assets was in the amount of $120,000,000. The Auction resulted in 130 rounds of bidding. At the conclusion of the Auction, Carmel Partners Realty VII, LLC was declared the successful bidder (the "Successful Bidder") with a purchase price of $152,250,000 and 2660 Woodley Road NW (C) Owner, LLC was named as the backup up bidder with a purchase price of $152,000,000.[3]

---

[2] Capitalized terms used herein that are not otherwise defined herein shall have the meanings ascribed to them in the Plan. The summary of the Plan provided herein is qualified in its entirety by reference to the Plan. In the case of any inconsistency between this Disclosure Statement and the Plan, the Plan will govern.

[3] For avoidance of doubt, although the Plan implements the distribution of proceeds from the Sale, the Plan does not seek to modify, alter or otherwise affect the terms and provisions of the Sale Order, including, without limitation, the respective rights and obligations of the Successful Bidder and the applicable unions with respect to the collective bargaining agreements provided in paragraphs D and 25 of the Sale Order.

The Plan also effectuates a global settlement of the claims and litigation by and between the Debtor, Pacific Life, PL Wardman Member LLC, and Marriott – which filed the largest unsecured claim in this case by far in excess of $82 million – pursuant to a separately filed motion to compromise and settle the controversies and disputes between the parties (the "Marriott Settlement Motion").  Under the proposed settlement, Marriott would receive $18 million in distributions on account of its filed proof of claim in full and final settlement of any all of its claims against the Debtor, Pacific Life, and PL Wardman Member, LLC relating to, among others, the Debtor, its assets or the Chapter 11 Case.  The Debtor, Pacific Life, and PL Wardman Member, LLC would each waive and release any and all of their claims against Marriott relating to, among others, the Debtor, its assets or the Chapter 11 Case under the proposed settlement, which is subject to approval by the Bankruptcy Court. Pursuant to the proposed settlement and for settlement purposes only, Marriott has agreed to have the Marriott Claim separately classified from other unsecured claims. If the Plan is not confirmed by the Bankruptcy Court or the Marriott Settlement Motion is not granted by the Bankruptcy Court, Marriott reserves all of its rights to contest separate classification of any and all of its claims against the Debtor.

The Debtor seeks Bankruptcy Court approval of the Plan.  Before soliciting acceptances of a proposed plan of reorganization, section 1125 of the Bankruptcy Code requires a plan proponent to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of a chapter 11 plan.  This Disclosure Statement is being submitted in accordance with such requirements.  This Disclosure Statement includes, without limitation, information about:

- the Debtor's corporate history and corporate structure, business operations, and prepetition capital structure and indebtedness (Article II);

- events leading to the commencement of the Debtor's chapter 11 case under the Bankruptcy Code (the "Chapter 11 Case") (Article II);

- significant events in the Chapter 11 Case (Article II);

- the classification and treatment of Claims and Interests under the Plan (Article IV), including who is entitled to vote and how to vote on the Plan (Article X);

- certain important effects of Confirmation of the Plan (Article IX);

- releases contemplated by the Plan (Article IX);

- the statutory requirements for confirming the Plan (Article X);

- certain risk factors Holders of Claims should consider before voting to accept or reject the Plan and information regarding alternatives to Confirmation of the Plan (Article XII); and

- certain United States federal income tax consequences of the Plan (Article XIII).

In light of the foregoing, the Debtor believes this Disclosure Statement contains "adequate information" to enable a hypothetical reasonable investor to make an informed judgment about the Plan and complies with all aspects of section 1125 of the Bankruptcy Code. Pursuant to Section 1125(a)(1) of the Bankruptcy Code, "adequate information" is defined as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and the history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the Plan to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the Plan."

All creditors entitled to vote to accept the Plan should return their ballots (as defined herein), so as to be **actually received** by the Debtor no later than **September 13, 2021, at 4:00 p.m. prevailing Eastern Time**.  Assuming the requisite acceptances to the Plan are obtained, the Debtor intends to seek the Bankruptcy Court's approval of the Plan at the Confirmation Hearing.

The Plan and all documents to be executed, delivered, assured, and/or performed in connection with the consummation of the Plan, including the documents to be included in the Plan Supplement, are subject to revision and modification from time to time prior to the Effective Date (subject to the terms of the Plan).

NOTHING CONTAINED IN THIS DOCUMENT SHALL CONSTITUTE AN OFFER, ACCEPTANCE, OR A LEGALLY BINDING OBLIGATION OF THE DEBTOR OR ANY OTHER PARTY IN INTEREST, SINCE THIS DISCLOSURE STATEMENT AND THE PLAN IT SUPPORTS REMAINS, *INTER ALIA*, SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT.  THE INFORMATION CONTAINED HEREIN IS PRELIMINARY AND DEVELOPMENTS MAY OCCUR THAT REQUIRE MODIFICATIONS OR ADDITIONS TO, OR DELETIONS FROM, THIS DISCLOSURE STATEMENT AND THE PLAN IT SUPPORTS.  THIS DISCLOSURE STATEMENT HAS BEEN PROVISIONALLY APPROVED BY THE COURT AND HAS NOT YET BEEN GRANTED FINAL APPROVAL.

THIS DISCLOSURE STATEMENT AND THE PLAN IT SUPPORTS ARE THE ONLY DOCUMENTS THAT CREDITORS AND OTHER PARTIES IN INTEREST SHOULD CONSIDER IN CONNECTION WITH CONFIRMATION OF THE PLAN, INCLUDING, WITHOUT LIMITATION, THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN.  NO STATEMENTS OR INFORMATION CONCERNING THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY HAVE BEEN AUTHORIZED, OTHER THAN THE STATEMENTS AND INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND THE INFORMATION ACCOMPANYING THIS DISCLOSURE STATEMENT.  ALL OTHER STATEMENTS REGARDING THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY, WHETHER WRITTEN OR ORAL, ARE UNAUTHORIZED.

PROVISIONAL APPROVAL OF THE DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT INDICATE THAT THE BANKRUPTCY COURT RECOMMENDS EITHER ACCEPTANCE OR REJECTION OF THE PLAN, NOR DOES SUCH APPROVAL CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT

OF THE FAIRNESS OR MERITS OF THE PLAN OR OF THE ACCURACY OR
COMPLETENESS OF THE INFORMATION CONTAINED IN THE DISCLOSURE
STATEMENT.

THE DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION
THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN.  EACH
HOLDER OF A CLAIM OR EQUITY INTEREST SHOULD READ THIS DISCLOSURE
STATEMENT AND THE PLAN IN THEIR ENTIRETY.  AFTER CAREFULLY
REVIEWING THESE DOCUMENTS, IF YOU ARE A CLAIM HOLDER ENTITLED TO
VOTE, PLEASE INDICATE YOUR VOTE WITH RESPECT TO THE PLAN ON THE
ENCLOSED BALLOT AND RETURN IT IN THE ENVELOPE PROVIDED.

A.      **Solicitation Packages**

On September 1, 2021, the Bankruptcy Court entered an order provisionally approving
the Disclosure Statement (the "Disclosure Statement Order").]  Holders of Claims who are
eligible to vote to accept or reject the Plan will receive appropriate solicitation materials
(collectively, the "Solicitation Package"), including:

- the Disclosure Statement, as provisionally approved by the Bankruptcy Court
  (with all exhibits thereto);

- the Plan (Exhibit A to the Disclosure Statement);

- the Disclosure Statement Order (without exhibits thereto);

- the Combined Hearing Notice;

- an appropriate ballot with voting instructions with respect thereto, together with a
  pre-addressed, postage prepaid return envelope; and

- any supplemental documents the Debtor may file with the Bankruptcy Court prior
  to solicitation or that the Bankruptcy Court orders to be made available.

B.      **Only Impaired Classes Vote**

Pursuant to the provisions of the Bankruptcy Code, only Classes of Claims that are
"impaired" under the Plan may vote to accept or reject the Plan.  Generally, a claim is impaired
under a plan if the holder's legal, equitable, or contractual rights are changed under such plan.  In
addition, if the holders of claims or interests in an impaired class do not receive or retain any
property under the Plan on account of such claims or interests, such impaired class is deemed to
have rejected the Plan and shall not be afforded an opportunity to vote to accept or reject the
Plan.

Under the Plan, Claims in Classes 3, 4 and 5 are Impaired.  The Holder of Equity
Interests in Class 6 is also Impaired, is anticipated to receive no distribution, and, accordingly,
such Equity Interest Holder(s) is deemed to reject the Plan, and its vote is not being solicited.
ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS

BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASS 3, CLASS 4 AND CLASS 5.

**C.**    **Voting Procedures**

The deadline to vote on the Plan is **September 13, 2021, at 4:00 p.m., prevailing Eastern Time** (the "Voting Deadline").  All votes to accept or reject the Plan must be received by the Debtor by the Voting Deadline.

Ballots must be actually received by the Debtor's proposed balloting and solicitation agent, Stretto (the "Balloting Agent"), by the Voting Deadline at the following address, whether sent by first class mail, personal deliver, or overnight courier:

PLEASE FOLLOW THE DIRECTIONS CONTAINED ON THE ENCLOSED BALLOT CAREFULLY.  IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED A BALLOT OR ADDITIONAL COPIES OF THE PLAN, DISCLOSURE STATEMENT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE BALLOTING AGENT, STRETTO, VIA EMAIL AT TeamWardmanHotel@stretto.com AND REFERENCE "WARDMAN HOTEL OWNER, L.L.C." IN THE SUBJECT LINE OR BY TELEPHONE AT TOLL FREE: 855.295.3672, OR INTERNATIONAL: 949-266-6335.

YOU SHOULD COMPLETE AND SIGN YOUR BALLOT AND RETURN IT IN THE ENCLOSED ENVELOPE TO:

**Wardman Hotel Owner, L.L.C.**
c/o Stretto
410 Exchange, Ste. 100
Irvine, CA  92602

**Alternatively, to submit your Ballot via the Voting Agent's online balloting portal, visit https://cases.stretto.com/wardman.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.  You will need the unique E-Ballot Password included with your Ballot to vote via the online balloting portal.**

VOTES CANNOT BE TRANSMITTED ORALLY.  FACSIMILE OR ELECTRONIC BALLOTS WILL NOT BE ACCEPTED (OTHER THAN THROUGH THE ONLINE BALLOTING PORTAL).  TO BE COUNTED, ORIGINAL SIGNED BALLOTS MUST BE RECEIVED ON OR BEFORE SEPTEMBER 13, 2021, AT 4:00 P.M., PREVAILING EASTERN TIME.  IT IS OF THE UTMOST IMPORTANCE TO THE DEBTOR THAT YOU VOTE PROMPTLY TO ACCEPT THE PLAN.

More detailed instructions regarding how to vote on the Plan are contained on the ballots distributed to Holders of Claims that are entitled to vote to accept or reject the Plan. All votes to accept or reject the Plan must be cast by using the appropriate ballot. All ballots must be properly executed, completed, and delivered according to their applicable voting instructions by: (a) first class mail, in the return envelope provided with each ballot; (b) overnight delivery; or (c) personal delivery, so that the ballots are actually received by the Balloting Agent no later than

the Voting Deadline at the return address set forth in the applicable ballot.  Any ballot that is properly executed by the Holder of a Claim entitled to vote that does not clearly indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.  Ballots received by facsimile or by electronic means will not be counted.

Each Holder of a Claim entitled to vote to accept or reject the Plan may cast only one ballot for each Claim held by such Holder.  By signing and returning a ballot, each Holder of a Claim entitled to vote will certify to the Bankruptcy Court and the Balloting Agent that no other ballots with respect to such Claim has been cast or, if any other ballots have been cast with respect to such Claim, such earlier ballots are superseded and revoked.

All ballots will be accompanied by return envelopes.  It is important to follow the specific instructions provided on each ballot, as failing to do so may result in the ballot not being counted.

## D.     Plan Objection Deadline

The Bankruptcy Court has established **September 15, 2021, at 4:00 p.m.**, prevailing Eastern Time, as the deadline to object to confirmation of the Plan (the "Plan Objection Deadline").  All such objections must be filed with the Bankruptcy Court and served on the Debtor and certain other parties in interest in accordance with the Disclosure Statement Order so that they are actually received on or before the Plan Objection Deadline.  The Debtor believes that the Plan Objection Deadline, as established by the Bankruptcy Court, affords the Bankruptcy Court, the Debtor, and other parties in interest reasonable time to consider the objections to the Plan before a Confirmation Hearing.

## E.     Confirmation Hearing

The Bankruptcy Court has scheduled a hearing to consider final approval of the Disclosure Statement and confirmation of the Plan for **September 20, 2021 at 1:00  p.m. (ET)** in the Bankruptcy Court, located at 824 N. Market Street, 5th Floor, Courtroom 5, Wilmington, DE 19801 (the "Confirmation Hearing").  The Confirmation Hearing may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment filed with the Bankruptcy Court and served on the entities who have filed objections to the Plan, without further notice to other parties in interest.  The Bankruptcy Court, in its discretion and before a Confirmation Hearing, may put in place additional procedures governing such hearing.  The Plan may be modified, if necessary, before, during, or as a result of the hearing to confirm the Plan without further notice to parties in interest, subject to the terms of the Plan.

## F.     Overview of the Plan

THE FOLLOWING IS A BRIEF SUMMARY OF THE TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN.  CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW THE MORE DETAILED DESCRIPTION OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT AND THE PLAN ITSELF.

The Plan is a plan of liquidation which, among other things, provides for a Liquidating Trustee to disburse proceeds of the Sale, liquidate or otherwise dispose of the Estate's remaining assets, and distribute and/or utilize the Plan Contribution Amount pursuant to the terms of the Plan and implement the terms of any order granting the Marriott Settlement Motion. The Sale proceeds to be derived from the Sale Order constitute the source of funding for, and payments under, the Plan. In addition, Pacific Life has agreed to fund the wind-down of the Debtor's estate pursuant to a wind-down budget currently being negotiated with the Debtor. Thus, the Plan is predicated and dependent on the funding of expenses and reserves from the sale proceeds pursuant to the Sale Order to the extent required for the Plan to become effective and for the Liquidating Trustee to administer and implement the Plan for the benefit of the Debtor's economic constituents. The Plan proposes to vest all of the assets of the Debtor into a single Liquidating Trust for administration and distribution in accordance with the Plan and the Liquidating Trust Agreement.

| DESCRIPTION/CLASS | ESTIMATED ALLOWED AMOUNT | ESTIMATED DISTRIBUTION (%) |
|---|---|---|
| Administrative Claims[4] | $241,000 | 100% |
| Priority Tax Claims | None | 100% |
| Class 1 – Priority Non-Tax Claims | None | 100% |
| Class 2 – Other Secured Claims | None | 100% |
| Class 3 – Pacific Life Secured Claim | $135,351,673.85[5] | 87%[6] |
| Class 4 – Marriott Claim | $87,500,000 | 20.57%[7] |
| Class 5 – General Unsecured Claims | $187,332 to $832,514 | 60% to 100% |
| Class 6 – Equity Interests | N/A | 0% |

---

[4] Does not include any potential claims or amounts that may be required to be prorated or otherwise satisfied pursuant to the terns of the Sale Order or the Pacific Life's DIP Claim, which claim is addressed in footnote 5 below.

[5] Represents Pacific Life's claim as of September 1, 2021 with respect to the Prepetition Loan Obligations (defined below). Pacific Life's DIP Loan claim (defined below) calculated as of September 1, 2021 is $10,000,000. Pacific Life's Prepetition Loan Obligations claim is senior to the DIP Loan.

[6] Pacific Life's recovery is based on current estimates and subject to amounts incurred in the post-confirmation wind down of the Debtor.

[7] The Marriott Claim represents both the secured claim in the amount $4,749,402 and an unsecured claim in the amount of $82,750,598 asserted by Marriott. The amount of the Marriott Claim and projected recovery is premised on the settlement that is the subject of the Marriott Settlement Motion and does not constitute an admission by the Debtor as to the validity or amount of such claim and the Debtor reserves all of its all rights to object to this claim on any and all available grounds in the event that the Marriott Settlement Motion is not granted or the Effective Date of the Plan does not occur. Similarly, if the Plan is not confirmed by the Bankruptcy Court or the Marriott Settlement Motion is not granted by the Bankruptcy Court, Marriott reserves all of its rights to contest separate classification of any and all of its claims against the Debtor.

## II.

## BACKGROUND AND CHAPTER 11 CASE

**A.**    **The Debtor's Background and Prepetition Operations**

The Debtor is the sole owner of property located at 2600 Woodley Road, NW, in the Woodley Park neighborhood of Washington, D.C.  The real property was previously operated as Washington Marriott Wardman Park, a convention hotel.  The 1,152-room hotel contained 195,000 square feet of total event space and 95,000 square feet of exhibit space, and was the third largest hotel by room count is Greater Washington.  As explained in more detail below, the Debtor permanently closed the hotel prior to the Petition Date.

Built between 1917 and 1918 by local developer Harry Wardman and designed by local architect Frank Russell White, the Wardman Park Hotel opened on November 23, 1918.  The hotel was hugely successful, due to the housing shortage caused by Washington's growth during World War I.  In 1928, the hotel was expanded with an eight-story, 350-room residential-hotel annex (the "Wardman Tower").  That building is listed on the National Register of Historic Places, the only surviving portion of the original Wardman Park.

In 1953, the original owners sold the hotel to Sheraton Hotels.  Renamed the Sheraton-Park Hotel, the largely residential hotel was gradually converted to house mainly overnight guests.  Substantial additions were made to the property, transforming it into a full-scale convention hotel, including large new ballrooms and the 1965 addition known as the Motor Inn and later known as the Park Tower.  By the late 1970s, it was decided that the 1918 main building was outdated and unable to be modernized.

Construction began in 1977 on a modern replacement hotel, immediately adjacent on the property.  When it opened in 1980, as the Sheraton Washington Hotel, the original building closed and was demolished.  In 1998, following a protracted lawsuit against Sheraton by the hotel's then owners, John Hancock Insurance and the Sumitomo Corporation, Marriott International took over management of the property, renaming the hotel the Marriott Wardman Park Hotel.

In 1998, Thayer Lodging Group of Annapolis, Maryland purchased the hotel for $227 million and spent another $100 million on renovations.  In 2005, Thayer Lodging Group sold the hotel to JBG Smith ("JBG") and CIM Group ("CIM") for $300 million.  In 2014, JBG redeveloped the largely unoccupied western portion of the hotel's property, constructing an apartment building designed to mirror the historic Wardman Tower.  It was first named Wardman West, but was later renamed The Woodley.  The Woodley units were sold for a record-breaking $920K each.

In 2015, JBG renovated floors 3-8 of the Wardman Tower into 32 luxury condominiums.  The first and second floors remain part of the hotel.  The condominiums are separate from the hotel and do not share an entrance or connecting interior passageways.  In January 2018, JBG and CIM, which had owned roughly equal interests in the hotel, sold a majority interest in the property (66.67%) to PL Wardman Member, LLC, an affiliate of Pacific Life Insurance

Company ("Pacific Life"), with JBG and CIM each retaining 16.67% in connection with the restructuring of the then-existing secured financing. In February 2020, CIM Group surrendered its interest in the hotel, leaving affiliates of Pacific Life and JBG as the sole owners (with PL Wardman Member, LLC owning 80% and the JBG affiliate owning 20%).

On September 3, 2020, PL Wardman Member, LLC filed a petition for dissolution of the Debtor in Delaware court citing a deadlock with JBG regarding a plan to address the deteriorating financial condition of the hotel. On October 2, 2020, PL Wardman Member, LLC dismissed the complaint. As of the Petition Date, Pacific Life indirectly owns 100% of the interests in Debtor as a result of its ownership of PL Wardman Member, LLC, the Debtor's sole member.

Prior to the termination of operations, the Hotel's day to day hotel operations had been managed by Marriott since 1998. The Company and Marriott were parties to a hotel Management Agreement (the "HMA") governing Marriott's services. The HMA was set to expire on December 28, 2029, but would have automatically extended for three ten-year periods unless Marriott gave notice of its intent not to renew the HMA a year before each of the ten-year periods expired.[8] On January 11, 2021, the Debtor terminated the HMA prior to the commencement of the Chapter 11 Case. Marriott contests the validity of the termination.

## B.    Capital Structure and Significant Indebtedness

### 1.    Equity Ownership

The Debtor was incorporated as a Delaware limited liability company in January 2018. The current Debtor has been owned through one or more companies. The equity interests of the Debtor is currently owned by PL Wardman Member, LLC, a wholly-owned indirect subsidiary of Pacific Life.

### 2.    Significant Prepetition Indebtedness

As of the Petition Date, the principal amount of the Debtor's funded debt obligations totaled approximately $130 million under the Term Loan Credit Facility described in greater detail herein.

On January 19, 2018, the Debtor obtained a loan from Pacific Life, in the principal sum One Hundred Twenty-Two Million Five Hundred Thousand and 00/100 Dollars ($122,500,000.00) (the "Prepetition Loan") pursuant to the terms of that certain Term Loan Agreement (the "Prepetition Loan Agreement" and, together with any other agreements and documents executed or delivered in connection therewith, each as amended, restated, supplemented, waived, or otherwise modified from time to time, the "Prepetition Loan Documents") to facilitate Debtor's purchase of the Hotel and related real and personal property. As of December 21, 2020, the Debtor was indebted to Pacific Life in respect of the Prepetition Loan in an aggregate principal amount, not less than $130,537,383 (collectively, together with accrued and unpaid interest, fees, expenses, and disbursements (including, without limitation,

---

[8] On February 9, 2021, the Court entered an order granting the Debtor's motion to reject the HMA as of the Petition Date [Docket No. 127].

any accrued and unpaid attorneys' fees, accountants' fees, appraisers' fees, and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, plus all interest, fees, costs, and other charges thereunder, the "Prepetition Loan Obligations").[9]

The Prepetition Loan was obtained in connection with a recapitalization through which a previously issued loan from Pacific Life (the "Old Loan") was satisfied through (i) the proceeds of a new loan from Pacific Life (the Prepetition Loan), (ii) new equity from the prior owners of the Hotel, and (iii) PL Wardman Member's $40 million capital contribution into equity in the Debtor, a newly-formed joint venture.

In connection with the Prepetition Loan Obligations, the Debtor granted to Pacific Life a first-priority security interest in and continuing lien (the "Prepetition Secured Party Liens") on "Collateral" and "Secured Property" (the "Prepetition Secured Party Collateral"), as the term "Collateral" is defined in the Prepetition Loan Agreement and that certain Security Agreement dated January 19, 2018 between Debtor and Pacific Life and as the term "Secured Property" is defined in that certain Deed of Trust, Financing Statement and Security Agreement (with Assignment of Rents and Fixture Filing) dated January 19, 2018 between Debtor, Pacific Life and the Trustee (as defined therein).

### 3.    Other Indebtedness.

The Debtor's main potential unsecured obligation is to its former Hotel manager, Marriott.  On June 30, 2021, Marriott filed a proof of claim in which it asserted a secured claim in the amount $4,749,402 and an unsecured claim in the amount of $82,750,598.  The Debtor disputes the amounts alleged by Marriott in its proof of claim.  The Debtor has also asserted claims against Marriott in its litigation with Marriott.  The Debtor asserts that pursuant to the terms of the HMA, all vendors and service suppliers for Hotel operations entered into contracts with Marriott and that, as a result, the Debtor has few (if any) direct obligations to satisfy the claims of Marriott's creditors.  Marriott disputes these assertions.  Specifically, Marriott disputes Debtor's position that contracts with the Hotel as well as certain other group contracts are contracts with Marriott and that creditors of the Hotel are allegedly creditors of Marriott.  Moreover, the Debtor has no employees, the validity of which Marriott disputes.  Other than Marriott, approximately $1.7 million in general unsecured claims have been filed on the claims register maintained by the Bankruptcy Court.[10]

---

[9] Pacific Life's debt calculated as of September 1, 2021 is $135,351,673.85, plus interest as it continues to accrue, attorney's fees, and other lawful costs and expenses.  The DIP Loan debt calculated as of September 1, 2021 is 8,907,000.00, plus interest as it continues to accrue, attorney's fees, and other lawful costs and expenses.

[10] As noted below, the bar date fixed by the Bankruptcy Court for the filing of prepetition claims expired on June 30, 2021.  The Debtor has yet not reconciled each of the asserted claims filed in this Chapter 11 Case.  The Debtor (and Liquidation Trustee, as applicable) reserves all rights to object to any claims filed in this Chapter 11 Case.

C.    **Events Leading to Chapter 11 Filing, the Debtor's Prepetition Litigation with Marriott, and the Commencement of the Chapter 11 Case[11]**

1.    **The Hotel's Declining Operations Prior to COVID-19**

Over the last decade, well before the COVID-19 pandemic upended the hotel's operations and the hospitality industry more broadly, the hotel languished relative to its peers under Marriott's management according to Debtor.  From 2010 to 2018 alone, the hotel's net operating income plunged from $24.77 million to $5.02 million, an 80% drop.  The Debtor asserts that Marriott repeatedly failed to live up to its required standards of performance and to fulfill its contractual obligations as set forth in the HMA, causing this consistent and material decline in the hotel's performance. Marriott disputes this assertion.

The hotel was designed to cater to and attract group business, and historically derived the substantial portion of its revenue from large group events.  However, since 2011, the hotel attracted less and less group business, and significantly trailed its competitors during the last several years.  At peak, the hotel had 225,000 group room nights annually.  In the last full year of operations (2019), the hotel failed to achieve 200,000 group room nights.

2.    **Shutdown of the Hotel Due to COVID-19**

The Company's dire financial condition was exacerbated by the COVID-19 pandemic, which resulted in a sharp decline in tourism, the elimination of essentially all business travel, and the cancelation of all conventions.

Local ordinances enacted in Washington, D.C during the early days of the pandemic further restricted the Hotel's ability to welcome guests.  On March 11, 2020, Mayor Bowser of the District of Columbia issued a declaration of public emergency due to the onset of the COVID-19 pandemic.  Approximately two weeks later, on March 24, 2020, Mayor Bowser issued an order declaring the closure of all non-essential businesses and a prohibition on all gatherings often or more persons.

On March 25, 2020, Marriott closed the hotel.  Between March and December of 2020, the hotel continued to lose approximately $1.5 million per month.  Since the start of 2020, the hotel had losses totaling more than $19.3 million (through November), and it is projecting 2020 annual losses totaling more than $21 million.

3.    **The Debtor's Prepetition Litigation with Marriott**

On or about March 16, 2020, just as large parts of the country were shutting down as a result of the COVID-19 pandemic, Marriott served the first of several working capital demands on the Debtor.  Marriott demanded that the Debtor fund $10 million of working capital. On or about March 19, 2020, the Debtor informed Marriott that it would not fund $10 million as, the Debtor asserts, that Marriott did not show such amount was "reasonably necessary to satisfy the

---

[11] Marriott contests the validity of, and disputes, the assertions made by the Debtor against Marriott in this section of this Disclosure Statement.

needs of the Hotel" as required by the HMA.  Marriott disputes this assertion. Nevertheless, the Debtor agreed that Marriott could use $5 million out of the hotel's Furniture, Fixtures and Equipment Reserve ("FF&E Reserve") account for working capital needs.

On May 15, 2020 and June 11, 2020, Marriott and the Debtor, respectively, issued notices of default to each other under the HMA.  In its notice, Marriott demanded, among other things, that the Company remit $10 million, and agreed to take lesser sums for the month of May to fund the ongoing operations of the Hotel.  Even at the reduced amount, the Debtor lacked the funds to satisfy Marriott's demands.

Marriott issued additional working capital demands in May 2020 (for $1 million), May 26, 2020 (for $1.5 million), June 25, 2020 (for $1.3 million), July 24, 2020 (for $2.7 million) and September 4, 2020 (for $2.2 million).  The Debtor rejected each of these demands.

On September 8, 2020, Marriott sued the Debtor and Pacific Life (as lender) in the Circuit Court for Montgomery County, Maryland (the "Maryland Court") for breach of contract and tortious interference.  Marriott's complaint alleged that the Debtor's failure to fund the Hotel's working capital breached the HMA, and further alleged that Pacific Life's failure to fund the same obligations breached the Subordination, Non-Disturbance and Attornment Agreement (the "SNDA") between Pacific Life and Marriott.

Marriott's lawsuit sought, among other things, specific performance requiring the Debtor to make the demanded working capital payments, or damages in the same amount.  On September 23, 2020, Marriott also filed a motion seeking mandatory preliminary injunctive relief to force the Debtor to make working capital payments immediately.

On December 8, 2020, the Maryland Court entered an order preliminarily and mandatorily compelling the Debtor to pay money to Marriott upon Marriott's issuance of unilateral, future capital call notices (the "Mandatory Injunction").  Before the Mandatory Injunction was even entered, Marriott noticed a $2 million capital call and, on December 4, 2020, withdrew (with the Debtor's consent) an additional $2 million from the FF&E Reserve to satisfy certain asserted working capital expenses.   Additional capital calls from Marriott were expected.  The Debtor appealed the Mandatory Injunction.[12]  The Debtor also filed significant counterclaims against Marriott in response to the complaint in the Maryland Court.

As of the Petition Date, the Debtor had limited amounts of operating cash, and no viable means to satisfy Marriott's capital call (let alone more future calls), and, consequently, no lawful or practically effective means to abide by the Mandatory Injunction.  While the Debtor believes that there is approximately $4.75 million remaining in the FF&E Reserve, and the Debtor had agreed to previously use certain of these funds to temporarily satisfy the Marriott capital calls, those funds are the Debtor's property and were designated for the specific purpose of upgrading the furnishings of the hotel.

---

[12] On December 9, 2020, the Debtor filed a motion to stay the Mandatory Injunction in lieu of the appeal.  The motion was denied by the Maryland Court.

The Debtor had no other source of funding for the current and future capital calls. The Debtor's sole indirect equity holder and secured lender, Pacific Life, declined to make additional capital contributions to fund Marriott's capital calls or provide further needed lending other than through a debtor in possession financing facility, reasoning that additional funding to meet Marriott's demands made no economic sense to Debtor given (a) Marriott's refusal to provide financial information in support of its capital calls and (b) the current shutdown of the Hotel. Further, and separate from its ability to pay Marriott's capital calls, the Debtor had no independent resources to pay for the ongoing security and maintenance obligations other than the cash provided to Marriott pursuant to the HMA.

Consequently, even considering the reduced expenses due to the closed state, the Debtor lacked the funds to continue to maintain the Hotel. Left with little cash and no other option to respond to Marriott's continuing capital calls or fund Debtor's other obligations outside of a bankruptcy (including those incurred to maintain and secure the property upon termination of Marriott), the Debtor filed its voluntary chapter 11 petition with the Bankruptcy Court on January 11, 2021.

**D.    Developments in the Debtor's Chapter 11 Case**

**1.    First Day and Other Early Motions and Orders**

The Debtor filed motions and obtained approval for among other things:

(i)    authorizing maintenance of existing bank accounts and continuity of cash management system [Docket Nos. 3, 36, and 110];

(ii)    determining adequate assurance of payment for utility services [Docket Nos. 4, 37, and 111];

(iii)    obtaining debtor-in-possession financing [Docket Nos. 5, 38, and 126]; and

(iv)    rejecting the HMA with Marriott [Docket Nos. 6 and 127];

**E.    Retention of Chapter 11 Professionals**

The Debtor filed applications and obtained authority to retain various professionals to assist the Debtor in carrying out their duties under the Bankruptcy Code during the Chapter 11 Case. The applications for those professional were approved by the Bankruptcy Court and include: (i) Eastdil Secured, L.L.C. as real estate broker [Docket Nos 46 and 105]; (ii) Pryor Cashman LLP as special litigation counsel [Docket Nos. 49 and 106]; and (iii) Pachulski Stang Ziehl & Jones LLP as general bankruptcy counsel [Docket Nos. 50 and 107].

**F.    DIP Financing**

To support and finance its operations in Chapter 11, the Debtor negotiated a debtor-in-possession financing facility with its prepetition lender, Pacific Life. Pursuant to motion filed on the Petition Date, the Debtor requested entry of orders (a) authorizing the Debtor to obtain secured postpetition financing on a superpriority basis and to borrow from time to time, up to

$8.0 million (the "DIP Loan") from Pacific Life (in its capacity as the lender under the DIP Loan, the "DIP Lender") pursuant to the terms and conditions of that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement and the ancillary documents thereto (the "DIP Loan Documents"), (b) granting liens and superpriority administrative expense claims, (c) authorizing the use of cash collateral, (d) modifying the automatic stay, and (e) granting related relief.

On February 9, 2021 the Court entered the *Final Order (I) Authorizing Debtor to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Secured Party, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 126] (the "Final DIP Order") approving the DIP Loan and related relief.  Pursuant the Final DIP Order and DIP Loan Documents, Pacific Life was granted, in order to secure the obligations under the DIP Loan, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens (collectively, the "DIP Liens") on all the real and personal property, whether now existing or hereafter arising and wherever located, tangible or intangible, of the Debtor (the "DIP Collateral").  See Final DIP Order, ¶ 8.  The DIP Liens, among other things, (a) encumber on a first priority basis all DIP Collateral that was unencumbered by duly perfected liens as of the Petition Date or by liens that are perfected after the Petition Date to the extent permitted by the Bankruptcy Code and (b) encumber all DIP Collateral on a junior basis solely to the extent such DIP Collateral is subject to the Prepetition Secured Party Liens.  See Final DIP Order, ¶ 9(a) and (b).  As provided for in the Final DIP Order, and the passage of the deadline for parties to challenge Pacific Life's prepetition liens, the Prepetition Secured Party Liens constitute valid, first-priority, liens on the Collateral and Secured Property.  See Final DIP Order ¶ G.  No timely challenge to the Prepetition Secured Party Liens was filed.  On July 1, 2021, the Debtor filed its *Motion for Entry of Order Approving First Amendment to Debtor's Postpetition Secured Financing Agreement* [Docket No 270] to provide for an extension of the DIP Loan, which the Court approved by order entered on July 21, 2021 [Docket No. 283].

## G.    Filing of Schedules and Statement of Financial Affairs

On February 10, 2021, the Debtor filed its Schedules of Assets and Liabilities [Docket No. 134] (the "Schedules") and Statement of Financial Affairs [Docket No. 135].

## H.    Marriott's Motion to Transfer Venue of the Bankruptcy Case from the Bankruptcy Court to the District of Columbia

On January 25, 2021, Marriott filed a motion to transfer venue of the Chapter 11 Case from the Bankruptcy Court to the United States Bankruptcy Court for the District of Columbia [Docket No. 59] (the "Venue Transfer Motion").  The Debtor filed an opposition to the Venue Transfer Motion on February 2, 2021 [Docket No. 80].  The Court conducted an evidentiary hearing on the Venue Transfer Motion on February 9, 2021.  On February 11, 2021, the Bankruptcy Court and an order [Docket No. 137] denying the Venue Transfer Motion.

I.        **Claims Bar Date Order**

On April 27, 2021, the Bankruptcy Court entered the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Setting a Bar Date for the Filing of Proofs of Claim by Governmental Units, (III) Setting a Bar Date for the Filing of Requests for Allowance of Administrative Expense Claims, (IV) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (V) Approving the Form of an Manner for Filing Proofs of Claim, (VI) Approving Notice of Bar Date, and (VII) Granting Related Relief* [Docket No. 208] (the "Bar Date Order").  Pursuant to the Bar Date Order, the Bankruptcy Court has established (i) June 30, 2021, as the deadline for all non-governmental units, including claims arising under section 503(b)(9), to file proofs of claim in the Chapter 11 Cases (the "General Bar Date"); (ii) June 30, 2021 as the deadline for parties asserting a request for payment of administrative claims ("Administrative Claims") arising on or prior to May 31, 2021 to file a request for an Administrative Claim (excluding fee and expense claims of professionals retained in this case) (the "Administrative Claims Bar Date"); (iii) July 12, 2021, as the deadline for all governmental units of the Bankruptcy Code) to file proofs of claim in the Debtor's Chapter 11 Case (the "Governmental Bar Date"); and (iv) the later of (a) the General Bar Date, (b) 5:00 p.m. prevailing Eastern time on the date that is thirty days following entry of an order approving the rejection of any executory contract or unexpired lease of the Debtor; and (c) any date the Court may fix in the applicable order approving such rejection as the deadline by which persons or entities asserting claims resulting from such rejection must file proofs of claim. If the Debtor files a previously unfiled Schedule or amends or supplements the Schedules after having given notice of the bar date, the Debtor shall give notice by first-class mail of any filing, amendment, or supplement to holders of claims affected thereby, and the deadline for those holders to file proofs of claim, if necessary, shall be the later of (a) the General Bar Date or the Governmental Bar Date, as applicable, or (b) 5:00 p.m., prevailing Eastern Time, on the date that is twenty-one days from the date of the notice of the filing, amendment, or supplement is given or another time period as maybe fixed by the Court).

J.        **Marriott's Motion to Remand Claims Against Pacific Life to the Maryland Court**

On February 18, 2021, Pacific Life filed a notice of removal of the Maryland Action to the United States Bankruptcy Court for the District of Maryland (the "Maryland Bankruptcy Court") and a motion to transfer the action to the Bankruptcy Court.  On March 18, 2021, the Maryland Bankruptcy Court entered an order transferring the Maryland Action to the Bankruptcy Court.  On March 19, 2021, Marriott filed a Motion in the Bankruptcy Court for (i) mandatory abstention from hearing and remand of Marriott's claims against Pacific Life commenced in the Maryland Action pursuant to 28 U.S.C. § 1334(c)(2) or alternatively (ii) permissible abstention and remand of Marriott's claims against Pacific Life (the "Remand Motion").   On May 13, 2021, the Bankruptcy Court entered an order granting the Remand Motion as to Marriott's claims against Pacific Life, remanded Marriott's claims against Pacific Life that are the subject of the Maryland Action to the Maryland Court, and abstained from hearing such claims pursuant to 28 U.S.C. § 1334(c)(2).

**K.      The Debtor's Postpetition Complaint Against Marriott**

On July 23, 2021, the Debtor filed its *Complaint Against Marriott Hotel Services, Inc. For (1) Avoidance and Recovery of Preferential Transfer; (II) Turnover of FF&E Reserve Funds to Estate; (III) Declaratory Judgment Regarding FF&E Reserve Funds; (IV) Breach of Contract; (V) Breach of Covenant of Good Faith and Fair Dealing; (VI) Breach of Fiduciary Duty; and (VII) Disallowance of Filed Claim* [Adv. Proc. No. 21- 51005 (JTD) Docket No 1] (the "Marriott Complaint").  Pursuant to the Marriott Complaint, the Debtor seeks to, among other things, (i) avoid and recover from Marriott $2 million from the FF&E Reserve; (ii) turnover of $4.7 million of funds in the FF&E Reserve in the possession, custody or control of Marriott; (iii) declaratory relief that Marriott does not have any liens or rights against the remaining funds in the FF&E Reserve and such amounts are not encumbered by, or subject to, the asserted liens or rights of Marriott and the Debtor was within its rights to terminate the HMA prepetition; (iv) damages against Marriott resulting from its breach of the HMA; (v) Marriott's breach of the covenant of good faith and fair dealing imposed by the HMA and Marriott's breach thereof; (vi) Marriott's breach of fiduciary duty by virtue of the Debtor's entrustment to Marriott of the management of the Hotel and the handling of revenues, operating funds, and process related thereto; (vii) an award of attorneys' fees and costs incurred by the Debtor under the terms of the HMA; and (viii) disallowance of Marriott's claims under section 502(d) of the Bankruptcy Code and a general objection and request for disallowance of Marriott's proof of claim in full.

**L.      Motion to Approve Bid Procedures and the Sale
of the Debtor's Real Property and Related Assets**

**1.      Postpetition Sale Efforts and Retention of Eastdil to Market the Sale of the Hotel and Related Assets**

Beginning on the Petition Date, the Debtor and its professionals engaged in numerous activities related to the marketing of its real property and related assets sold under the Sale Order, including:

- That certain real property located in the Washington, D.C., commonly known as 2660 Woodley Road NW, Washington, D.C. 20008 (the "Land");

- The buildings, structures and improvements erected or located on the Land (collectively, the "Improvements," and together with the Land, collectively, the "Real Property");

- Any rights and appurtenances pertaining to the Land, including minerals, oil and gas rights, air, water and development rights, roads, alleys, easements, streets and ways adjacent to the Land, rights of ingress and egress thereto, any strips and gores within or bounding the Land and in profits or rights or appurtenances pertaining to the Land (the "Appurtenant Rights");

- Certain agreements affecting the Property (collectively, the "Miscellaneous Agreements");

- All assignable permits and licenses to the extent the same pertain to the Real Property (collectively, the "Permits");

- All assignable intangible property, if any, used exclusively in connection with the occupancy and operation of the Real Property (the "Intangible Property");

- All assignable warranties of any contractor, manufacturer or materialman which relate to the Improvements or Personal Property included in the sale (collectively, the "Warranties"); and

- Any of the Debtor's fixtures, furniture or equipment with respect to the foregoing (the "FF&E").[13]

The Debtor retained Eastdil Secured, L.L.C. ("Eastdil") as its real estate broker to market the Assets in accordance with the terms and conditions of the engagement agreement between the parties.  The Debtor selected Eastdil as its real estate broker in this chapter 11 case based upon Eastdil's excellent reputation for its real estate brokerage services.  Eastdil is consistently recognized as the preeminent commercial property intermediary in the country, due to its extensive and unparalleled knowledge of the real estate industry and capital markets.  Eastdil has completed over $495 billion in property sale transactions since 2009, among them many of the most landmark single asset and portfolio sales throughout all property types.  Beginning on the Petition Date, the Debtor and its professionals engaged in numerous activities to market the Assets.

## 2.      The Sale of the Debtor's Real Property and Related Assets

On May 19, 2021, the filed its *Motion for Entry of an Order (A) Approving Bid Procedures for the Sale of the Assets of Debtor, (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notices Related Thereto; (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts; (D) Approving Breakup Fee; and (E) Granting Other Related Relief* [Docket No. 229] (the "Bid Procedures Motion").  The Court entered an order granting the Bid Procedures Motion on June 15, 2021 and approved certain sale and bid procedures in connection therewith (the "Bid Procedures") [Docket No. 250].

The Debtor filed its *Motion for Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Debtor's Assets Outside the Ordinary Course of Business; (B) Authorizing the Sale of Assets Free and Clear of Liens, Claims, Rights, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(B), 363(F), 363(M) and 1146; (C) Assuming and Assigning Certain Executory Contracts and Unexpired Leases; and*

---

[13] The Real Property, Appurtenant Rights, Miscellaneous Agreements, Permits, Intangible Property, Warranties, and FF&E are herein collectively referred to as the "Assets."  The Assets do not include any rights, claims, interests, remedies or recoveries of Debtor arising under or in connection with the allegations made in that certain action titled *Wardman Tower Residential Condominium Unit Owners Association v. JBG Smith Properties, et al.*, pending in the Superior Court of the District of Columbia under Case No. 2020 CA 004807 B.  Further, the Assets do not include any of the Debtor's claims and causes of action against Marriott Hotel Services, Inc. or any of the estate's avoidance actions under chapter 5 of the Bankruptcy Code.

*(D) Granting Related Relief* [Docket No. 262] (the "Sale Motion") on June 18, 2021. Three bids to acquire the Assets were received, two of which constituted qualified bids under the Bid Procedures. An auction was held on July 20, 2021 (the "Auction"). The initial baseline bid at the start of the Auction for the Assets was $120,000,000. The Auction was subject to 130 rounds of bidding. At the conclusion of the Auction, Carmel Partners Realty VII, LLC was declared the successful bidder with a Sale purchase price of $152,250,000 and 2660 Woodley Road NW (C) Owner, LLC was named as the backup up bidder with a purchase price of $152,000,000.

The Unions (defined below) filed an objection to the Sale Motion. However, the Debtor consensually resolved the Unions' objection through the inclusion of mutually agreed language in the Sale Order with respect to the real property purchased by the Successful Bidder. A hearing to consider the Sale Motion took place on July 22, 2021 and the Court entered the Sale Order on that same date [Docket No. 292].

### 3.      The Unions' Motion to Compel and Arbitration Award

On March 12, 2021, two labor unions purportedly representing 575 former employees of the Hotel filed their *Joint Motion of Unite Here Local 25 and Local 99, International Union of Operating Engineers, to Compel Debtor's Compliance with its Obligations Under Section 1113 Or, In the Alternative, For Relief from Stay to Pursue Arbitration to Determine Debtor's Contractual Obligations to the Movants* [Docket No. 146] (the "Motion to Compel") filed jointly by UNITE HERE Local 25 ("Local 25") and Local 99, International Union of Operating Engineers ("Local 99" and together with Local 25, the "Unions").

Under the Motion to Compel, the Unions sought to compel or obtain relief from the automatic stay to require the Debtor to arbitrate the scope and nature of the Debtor's obligations to the Unions. The Unions asserted that the Debtor is obligated by the terms of the respective collective bargaining agreements with Local 25 and Local 99 upon the termination of Marriott's position as manager due to the terms of certain "Owner's Letters" executed by the Debtor prior to the Petition Date. On May 18, 2021, the Court entered an order granting the Motion to Compel and granted the Unions relief from the automatic stay (the "Stay Relief Order") to pursue arbitration with the Debtor to determine, whether under the provisions of the Owner's Letter upon the termination of Marriott as operator on January 11, 2021, the Debtor became contemporaneously bound to Marriott's collective bargaining agreements with each of Local 25 and Local 99, and their respective terms and conditions as a successor.

### a.      Arbitrator Decisions and Resolution of the Unions' Objection to the Sale of the Assets

On July 5, 2021, the arbitrator in the proceeding AAA No.: 01-21-0003-9854 issued an award with respect to Local 25 providing that based upon the provision of the Owner's Letter and upon the January 22, 2021 termination of Marriott, the Debtor became contemporaneously bound to Marriott's collective bargaining agreement with Local 25.[14] The arbitrator in the

---

[14] Notwithstanding the limited relief granted under the Stay Relief Order, the arbitrator further determined that the Debtor was contractually required under the applicable provisions of the Owner's Letters to make a "written, material condition" of the approaching sale of the hotel that the buyer must assumed and be bound by the collective

above-proceeding issued a separate award on July 5, 2021, with respect to Local 99 providing that based upon the provision of the Owner's Letter and upon the January 22, 2021 termination of Marriott, the Debtor became contemporaneously bound to Marriott's collective bargaining agreement with Local 99.

As noted above, the Unions' objection to the Sale Motion was consensually resolved through the inclusion of mutually acceptable language in the Sale Order with respect to the collective bargaining agreements and the Owner's Letters that were the subject of the objection.

**M.    Motion to Compromise Controversies and**
**Causes of Action between the Debtor and Marriott**

The Debtor intends to shortly file its Motion to Approve Compromise and Settlement of Claims and Causes of Action by and between the Debtor, Marriott Hotel Services, Inc. and Pacific Life Insurance Company (the "Marriott Settlement Motion").   The Marriott Settlement Motion provides for a global settlement of all claims and causes of action relating to the Debtor, its assets, and this Chapter 11 Case between the Debtor, PL Wardman Member, LLC, and Pacific Life, on the one hand, and Marriott on the other hand.   Pursuant to the Marriott Settlement Motion, Marriott would receive an aggregate distribution in the amount of $18 million on account of its claim comprised of (i) the current amount of the FF&E Reserve Marriott is currently holding; plus (ii) cash proceeds from the sale approved pursuant to the Sale Motion to be funded by Pacific Life agreeing to allow a distribution of sale proceeds to Marriott, through a limited subordination of its right to receive payment, pursuant to the Marriott Contribution Amount provided under the Plan.  The Debtor intends to seek approval of the Marriott Settlement Motion concurrently with the Confirmation Hearing.

**III.**

**SUMMARY OF THE PLAN**

**A.    General**

As noted above, the Plan is a plan of liquidation which, among other things, provides for a Liquidating Trustee to liquidate or otherwise dispose of the Estate's remaining assets, distribute the Plan Contribution Amount pursuant to the terms of the Plan.  The Plan Contribution Amount represents an agreement by Pacific Life allow a distribution, through a limited subordination of its right to receive payment, to provide: (a) a minimum recovery to Holders of General Unsecured Claims in Class 5 of the Plan of $500,000 subject to additional Distributions; (b) a total recovery to Marriott on account of its Class 4 Claim in the amount of $18,000,000 in accordance with the Marriott Settlement Motion discussed earlier between Marriott, the Debtor, Pacific Life and PL Wardman Member, LLC; (c) provides sufficient funding to pay Administrative and Priority Claims, and; (d) provides sufficient amounts to fund the necessary plan reserves and pay costs and expenses arising under the Plan and Sale Order and in connection with the Liquidating Trust.

---

bargaining agreements with Local 25 and Local 99.  The Debtor believes that the Stay Relief Order did not grant relief from the automatic stay to allow arbitrator to make these additional determinations and that such determinations were therefore void.

The Sale proceeds to be derived from the Sale Order constitute the source of funding for, and payments under, the Plan.  Thus, the Plan is predicated and dependent on the funding of expenses and reserves from the proceeds from the Sale Order that are included in the Plan Contribution Amount for the Plan to become effective and for the Liquidating Trustee to administer and implement the Plan for the benefit of the Debtor's creditors.  The Plan proposes to vest all of the assets of the Debtor into a single Liquidating Trust for administration and distribution in accordance with the Plan and the Liquidating Trust Agreement.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of Creditors, and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed.[15]  If the Plan is not confirmed, the Bankruptcy Court may order the Chapter 11 Case dismissed or converted to a liquidating case under chapter 7 of the Bankruptcy Code, or the Debtor or other parties in interest may propose a different plan.

**B.**     **Classification and Treatment of Claims and Equity Interests**

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation, and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**IV.**

**CLASSIFICATION AND TREATMENT OF**

**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.**     **Summary**

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation, and Distribution (if any) pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

**B.**     **Classification and Treatment of Claims against the Debtor**

The classification of Claims and Equity Interests against the Debtor pursuant to the Plan is as follows:

---

[15] It is anticipated that the Equity Interest Holder will receive nothing under the Plan, and therefore, the Class of Equity Interests is deemed to have rejected the Plan.  Accordingly, acceptances are not being solicited from the Holder of Equity Interests.

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 – Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 2 – Other Secured Claims | Unimpaired | Not Entitled to Vote |
| Class 3 – Pacific Life Secured Claim | Impaired | Entitled to Vote |
| Class 4 – Marriott Claim | Impaired | Entitled to Vote |
| Class 5 – General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 – Equity Interests | Impaired | Not Entitled to Vote |

1.    **Class 1 – Priority Non-Tax Claims**

     a.    **Classification**:  Class 1 consists of Priority Non-Tax Claims.

     b.    **Treatment**:  Each Holder of an Allowed Priority Non Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Non Tax Claim, (i) Cash in the amount of such claim, as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed by the Debtor and such holder.

     c.    **Voting**:  Class 1 is not an Impaired Class and Holders of Priority Non-Tax Claims are not entitled to vote on the Plan.

2.    **Class 2 – Other Secured Claims**

     a.    **Classification**:  Class 2 consists of Other Secured Claims.  For purposes of distributions under the Plan, each Holder of Other Secured Claim in Class 2 is considered to be in its own separate subclass within Class 2 (i.e., Class 2A, Class 2B, etc.), and each such subclass is deemed to be a separate Class for purposes of the Plan.

     b.    **Treatment**:  Except to the extent previously paid in full, to the extent any Other Secured Claims exist, at the option of the Debtor or the Liquidating Trustee, as applicable, one of the following treatments shall be provided: (i) the Holder of such Other Secured Claim shall retain its Lien on its collateral until such collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such collateral, shall be paid to such Holder in full satisfaction, release, and discharge of such Allowed Other Secured Claim; (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Other Secured Claim, or as otherwise agreed between the Holder of such Other Secured Claim and the Debtor or the Liquidating Trustee, as applicable, the Holder of such Other Secured Claim will receive a Cash payment equal to the amount of its Other Allowed Other Secured Claim in full and final satisfaction, settlement, discharge and release of, and in exchange for such Other Secured Claim; or (iii) the collateral securing the Creditor's Other Secured Claim shall be abandoned to such Creditor, in full and final satisfaction and release of such Other Secured Claim.

  **c.**  **Voting**:  Class 2 is not an Impaired Class, and Holders of Other Secured Claims are not entitled to vote on the Plan.

**3.**  <u>**Class 3 – Pacific Life Secured Claim**</u>

  **a.**  **Classification**:  Class 3 consists of Pacific Life Secured Claim and the Pacific Life DIP Loan Claim.

  **b.**  **Treatment**:  the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim are and shall be Allowed in the full amount of such claim as provided under the Final DIP Order.  To the extent not paid previously in whole or part in connection with a closing of the sale of Pacific Life's collateral, on or as soon as practicable after the Effective Date, the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim shall receive Cash in the full Allowed amount of such Claim, after the payment of the Plan Contribution Amount to the Liquidating Trust, in full and final satisfaction and release of such claim provided however that if the Liquidating Trustee does not have sufficient Cash to fully and indefeasibly pay the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim on the Effective Date, Pacific Life shall receive subsequent Distributions (including Distributions on account of any excess amounts of the Plan Contribution Amount), from the net proceeds of any Liquidating Trust Assets that constitute Collateral under the Final DIP Order, until the remainder of the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim is fully paid.  For avoidance of doubt, the Holder of the Pacific Life Secured Claim and the Pacific Life DIP Claim shall not receive any distributions from the GUC Contribution Amount on account of any of such holder's unsecured deficiency claims unless each Holder of an Allowed General Unsecured Claim is paid in full.

  **c.**  **Voting**:  Class 3 is an Impaired Class and the Holder of the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim is entitled to vote to accept or reject the Plan.

**4.**  <u>**Class 4 – Marriott Claim**</u>

  **a.**  **Classification**:  Class 4 consists of the Marriott Claim.

  **b.**  **Treatment**:  Provided Marriott supports the Marriott Settlement, votes in favor of the Plan and does not oppose or otherwise seek to repudiate the releases provided under the Plan, on the Effective Date, the Holder of the Allowed Marriott Claim shall receive the Marriott Contribution Amount, in full and final satisfaction, settlement and release of, and in exchange for, such Marriott Claim.  The Marriott Claim shall be deemed an Allowed Claim and receive the treatment herein in full satisfaction of such claim subject to the entry of the Marriott Settlement Order and the occurrence of the Effective Date.  For the avoidance of doubt, with respect to the Released Parties, the Marriott Contribution Amount shall be the sole source of recovery and Distributions to the Holder of the Marriott Claim on account of such claim, provided, that in no event shall the payment of the Marriott Contribution Amount limit (i) Marriott's defenses in response to the claims, if any, of third parties to the extent such claims are not released

pursuant to the Third Party Release, and (ii) Marriott's right to recover amounts owing to or recoverable by Marriott from third parties other than the Released Parties

       **c.**      **Voting**:  Class 4 is an Impaired Class and the Holder of the Marriott Claim is entitled to vote to accept or reject the Plan.

**5.**      **Class 5 – General Unsecured Claims**

       **a.**      **Classification**:  Class 5 consists of all General Unsecured Claims.

       **b.**      **Treatment**:  Each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, settlement, and release of, and in exchange for such Allowed General Unsecured Claim: (i) Pro Rata Distribution of the GUC Contribution Amount; (ii) Pro Rata Distribution of the net Liquidation Trust Proceeds that do not constitute Collateral under the Final DIP Order; and (iii) solely in the event the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim are indefeasibly and fully paid, Pro Rata Distributions from the net proceeds derived from the remaining Liquidating Trust Assets.

       **c.**      **Voting**:  Class 5 is an Impaired Class and Holders of Claims in this Class are entitled to vote to accept or reject the Plan.

**6.**      **Class 6 – Equity Interests**

       **a.**      **Classification**:  Class 6 consists of Equity Interests.

       **b.**      **Treatment**:  As of the Effective Date, all Equity Interests of any kind shall be deemed void, cancelled, and of no further force and effect and the Holders thereof shall not receive or retain any property or interest in property under the Plan on account of such Equity Interests, provided however that Each holder of an Equity Interest shall receive such Holder's Pro Rata share of the Residue, if any, determined in accordance with its percentage ownership of Equity Interests in the Debtor.

       **c.**      **Voting**:  Class 6 is deemed to have rejected the Plan and Holders of Equity Interests are not entitled to vote on the Plan.

**V.**

**ACCEPTANCE OR REJECTION OF THE PLAN**

**A.**      **Voting Classes**

Each Holder of an Allowed Claim in Classes are entitled to vote either to accept or to reject the Plan.  Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.

**B.      Presumed Acceptance of Plan**

The Holders of Claims in Class 1 and Class 2 are unimpaired under the Plan and are therefore deemed to accept the Plan.

**C.      Acceptance by Impaired Classes**

Class 3, 4 and 5 shall have accepted the Plan if: (a) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.[16]

**D.      Presumed Rejection of Plan**

The Holders of Class 6 Equity Interests are not anticipated to receive any distributions under the Plan and are therefore deemed to reject the Plan and are not entitled to vote.

**E.      Nonconsensual Confirmation**

Because Class 6 is deemed to reject the Plan by operation of law, the Debtor will request the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.  Without limiting the foregoing, in the event that any Class of Claims entitled to vote on the Plan fails to accept the Plan as required by Section 1129(a) of the Bankruptcy Code, the Plan may be amended and, in any event, as applicable, the Debtor reserves the right to seek confirmation of the Plan over such rejection pursuant to Section 1129(b) of the Bankruptcy Code.

**VI.**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.      Settlement of Claims and Causes of Action Between the Debtor and Marriott**

The entry of the Marriott Settlement Order and confirmation of the Plan shall constitute the Bankruptcy Court's approval of the compromise and settlement of claims, causes of action, and controversies by and between the Debtor, Pacific Life, PL Wardman Member, LLC, and Marriott, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtor, its Estate, and is fair, equitable, reasonable, and in the best interests of the Debtor and its Estate.

---

[16]  In the event the Debtor seeks confirmation of the Plan under Section 1129(b) of the Bankruptcy Code, the Debtor will not seek to propose Class 3 (Pacific Life Secured Claim) as the impaired accepting class required to confirm the Plan provided under section 1129(a)(10) of the Bankruptcy Code.

**B.**    **Dissolution of Debtor**

From and after the Effective Date, the Liquidating Trustee may dissolve the Debtor, without any further action required on the part of the Debtor or the Debtor's officers, directors, managers, members, equity holders, and/or any other parties; provided, however, the Liquidating Trustee in his or her discretion shall be authorized to take any and all actions necessary or desirable in relation to dissolution of the Debtor.

**C.**    **Appointment of the Liquidating Trustee**

The initial Liquidating Trustee is James Decker.  From and after the Effective Date, professionals may be retained by the Liquidating Trustee without further need for documentation or Bankruptcy Court approval.  All fees and expenses incurred by the professionals retained by the Liquidating Trustee following the Effective Date shall be paid by the Liquidating Trust from the Liquidating Trust Assets (after payment in full of all Allowed Administrative Claims) in accordance with the Liquidating Trust Agreement.

**D.**    **The Liquidating Trust**

**1.**    **Formation of the Liquidating Trust**

On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, inter alia, (a) administering the Liquidating Trust Assets including the distributions and payments contemplated by the Plan Contribution Amount, (b) prosecuting and/or resolving all Disputed Claims, (c) investigating and pursuing any Causes of Action the Debtor holds or may hold against any Entity, and (d) making all Distributions to the Beneficiaries provided for under the Plan. The Liquidating Trust is intended to qualify as a liquidating trust pursuant to Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of the trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.  Accordingly, the Liquidating Trustee shall, in an expeditious but orderly manner, make distribution to Holders of Allowed Claims subject to the terms of the plan, liquidate and convert to Cash the remaining Liquidating Trust Assets, and make timely Distributions to the Beneficiaries of the proceeds thereof, and not unduly prolong the duration of the Liquidating Trust.  Neither the Liquidating Trust nor the Liquidating Trustee shall be or shall be deemed a successor-in-interest of the Debtor for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.

**2.**    **Funding of the Liquidating Trust**

On the Effective Date, the Liquidating Trust Assets shall vest automatically in the Liquidating Trust.  The Plan shall be considered a motion pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for such relief.  The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries. The assets comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtor to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the

Liquidating Trust. The Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall succeed to all of the Debtor's rights, title and interest in the Liquidating Trust Assets, and the Debtor will have no further interest in or with respect to the Liquidating Trust Assets.

Except to the extent definitive guidance from the IRS or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations or the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, as soon as possible after the Effective Date, the Liquidating Trustee shall make a good-faith valuation of the Liquidation Trust Assets.  The valuation shall be used consistently by all parties (including, without limitation, the Debtor, the Liquidating Trust, the Beneficiaries) for all federal income tax purposes.

### E.    Rights and Powers of the Liquidating Trustee

The Liquidating Trustee shall be deemed the Estate's representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules to act on behalf of the Liquidating Trust.  Without limiting the foregoing, the Liquidating Trustee will have the right to, among other things, (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate the Liquidating Trust Assets; (3) investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtor holds or may hold against any Entity; (4) make Distributions as contemplated hereby, (5) establish and administer any necessary reserves for Disputed Claims that may be required; (6) object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (7) assert or waive any attorney-client privilege on behalf of the Debtor and Estate with regard to acts or events during time periods prior to the Petition Date; and (8) employ and compensate professionals and other agents, including, without limitation, existing Professionals employed by the Debtor in accordance with the Liquidating Trust Agreement or the Plan, provided, however, that any such compensation shall be made only out of the Liquidating Trust Assets, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

### F.    Fees and Expenses of the Liquidating Trust

Subject to payment in full of all Allowed Administrative Claims, and except as otherwise ordered by the Bankruptcy Court, expenses incurred by the Liquidating Trust on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court.

**G.** **Transfer of Beneficial Interests in the Liquidating Trust**

Liquidating Trust Interests shall not be transferable except upon death of the interest holder or by operation of law. The Liquidating Trust shall not have any obligation to recognize any transfer of Claims or Equity Interests occurring after the Distribution Record Date.

**H.** **Plan Contribution Amount**

On or as soon as practicable following the Effective Date, the Liquidating Trust Assets Account shall be opened by the Liquidating Trustee and funded with the Plan Contribution Amount and which funds shall constitute Liquidating Trust Assets. Thereafter, from time to time, upon receipt of any Liquidation Proceeds or any Causes of Action recoveries, the Liquidating Trustee shall deposit such funds into the Liquidating Trust Assets Account, and they shall become part of the Liquidating Trust Assets.

**I.** **Litigation of Debtor's Causes of Action**

Except as otherwise provided in the Plan, all Causes of Action are retained, vested in the Liquidating Trust, and preserved pursuant to Section 1123(b) of the Bankruptcy Code. From and after the Effective Date, all Causes of Action will be prosecuted or settled by the Liquidating Trustee. Except as otherwise provided in the Plan, to the extent any Causes of Action are already pending on the Effective Date, the Liquidating Trustee, as successor to the Debtor (in any derivative capacity or as an intervening party), will continue the prosecution of such Causes of Action and shall be substituted as plaintiff, defendant, or in any other capacity for the Debtor pursuant to the Plan and the Confirmation Order on the Effective Date without need for any further motion practice or notice in any case, action, or matter.

**J.** **Full and Final Satisfaction**

Commencing upon the Effective Date, subject to the terms of the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized and directed to distribute the amounts required under the Plan to the Holders of Allowed Claims according to the provisions of the Plan. Upon the Effective Date, all Debts of the Debtor shall be deemed fixed and adjusted pursuant to the Plan, and the Liquidating Trust shall have no liability on account of any Claims or Equity Interests except as set forth in the Plan and in the Liquidating Trust Agreement. All payments and all distributions made by the Liquidating Trustee under the Plan shall be in full and final satisfaction, settlement, and release of all Claims against the Liquidating Trust; provided, however, that nothing contained in this Section V of the Plan, or in any other provision of the Plan, shall be deemed to constitute or result in a discharge of the Debtor under Bankruptcy Code Section 1141(d).

**K.** **Distribution Procedures**

1. _Distribution Dates_. The Liquidating Trustee shall make Distributions to Holders of Claims as provided in Article III of the Plan.

2. _Subsequent Distributions_. Any Distribution not made on the Initial Distribution Date or a Subsequent Distribution Date because the Claim relating to such Distribution had not

been Allowed on that Distribution Date shall be held by the Liquidating Trust for Distribution on any Subsequent Distribution Date after such Claim is Allowed. No interest shall accrue or be paid on the unpaid amount of any Distribution.

3.        <u>Distribution Record Date</u>. Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date. The Liquidating Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any Distribution with respect to any Claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to the Liquidating Trustee as of the Distribution Record Date.

4.        <u>Manner of Cash Payments Under the Plan or Liquidating Trust Agreement</u>. Cash payments made pursuant to the Plan or Liquidating Trust Agreement shall be in United States dollars by checks drawn on a domestic bank selected by the Liquidating Trustee or by wire transfer from a domestic bank, at the option of the Liquidating Trustee.

5.        <u>Time Bar to Cash Payments by Check</u>. Checks issued by the Liquidating Trustee on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Article shall be made directly to the Liquidating Trustee by the Holder of the Allowed Claim to which the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of six months from the Effective Date or 90 days after the date of issuance thereof. After that date, all Claims in respect of voided checks shall be disallowed and forever barred and the proceeds of those checks shall revest in and become the property of the Liquidating Trust as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code.

## L.      <u>Resolution of Disputed Claims</u>

1.        <u>No Distribution Pending Allowance</u>. Notwithstanding any other provision of the Plan, the Liquidating Trustee shall not Distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed. Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim.

2.        <u>Resolution of Disputed Claims</u>. Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Liquidating Trustee shall have the right to make, file, prosecute, settle, withdraw, or resolve objections to Claims. The costs of pursuing the objections to Claims shall be borne by the Liquidating Trust. From and after the Confirmation Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent, the Liquidating Trustee elects to withdraw any such objection or the Liquidating Trustee and the

Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Equity Interest without approval of the Bankruptcy Court.

3.    Objection Deadline.  All objections to Disputed Claims shall be filed and served upon the Claimant not later than the Claims Objection Deadline, as such may be extended by order of the Bankruptcy Court.  If and when the Liquidating Trustee ever determines that there is likely to be remaining Liquidation Proceeds realized by the Liquidating Trust after the payment (or reserve for payment) in full of all Liquidating Trust expenses, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Other Secured Claims, the Allowed Pacific Life Claim, the Allowed Marriott Claim, and Allowed General Unsecured Claims, with interest accrued from and after the Petition Date, the Liquidating Trustee will file a notice to this effect with the Bankruptcy Court with such additional excess proceeds to be distributed Pro Rata to Equity Security Holders as Residue.

4.    Estimation of Claims.  At any time, (a) prior to the Effective Date, the Debtor, and (b) after the Effective Date, the Liquidating Trustee, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Liquidating Trust has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtor or the Liquidating Trust, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdraw, or resolved by any mechanism of the Bankruptcy Court.

5.    Disallowance of Claims.

(a)    Except as otherwise agreed, any and all proofs of claim filed after the Bar Date shall be deemed disallowed as of the Effective Date without any further notice or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Date the Bankruptcy Court has entered an order deeming such Claim to be timely filed.

(b)    Subject to and in accordance with the Plan, any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or Entities that are transferees of transfers avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, provided that such Cause of Action is retained by the Liquidating Trust, shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action the Debtor holds or may hold against any Entity have been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums

due, if any, to the Estate by that Entity have been turned over or paid to the Debtor or Liquidating Trust.

6.    Adjustment Without Objection.  Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged from the claims register at the direction of the Debtor or the Liquidating Trustee, as applicable, without an objection filed and without further notice to or action, order, or approval of the Bankruptcy Court.

## M.    Reserve Provisions for Disputed Claims

1.    Establishment of Disputed Reserves.  On or prior to a Distribution Date, the Liquidating Trustee shall reserve Cash required for Distribution on Disputed Claims as if such Claims were Allowed as filed with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee (the "Disputed Claim Reserve").  On each Distribution Date after the Effective Date in which the Liquidating Trustee makes Distributions to Holders of Allowed Claims, the Liquidating Trustee shall retain on account of Disputed Claims an amount the Liquidating Trustee estimates would be necessary to fund the Pro Rata Share of such Distributions to Holders of Disputed Claims if such Claims were Allowed, with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee.

2.    Maintenance of Disputed Claim Reserves.  The Liquidating Trust shall hold property in the Disputed Claim Reserve in trust for the benefit of the Holders of Disputed Claims that are ultimately determined to be Allowed.  Each Disputed Claim Reserve shall be closed (or deemed closed) by the Liquidating Trust when all Distributions and other dispositions of Cash of other property required to be made hereunder will have been made in accordance with the terms of the Plan.  Upon closure of a Disputed Claim Reserve, all Cash or other property held in that Disputed Claim Reserve shall revest in and become unrestricted property of the Liquidating Trust to be distributed in accordance with the Plan and the Liquidating Trust Agreement.

3.    Limitations on Funding Disputed Claim Reserves.  Except as expressly set forth in the Plan, neither the Debtor nor the Liquidating Trustee shall have any duty to fund any Disputed Claim Reserve except from the Liquidating Trust Assets.

## N.    Rounding

Whenever any payment of a fraction of a cent would otherwise be called for, the actual Distribution shall reflect a rounding of such fraction down to the nearest cent.

## O.    No Cash Payments of Less Than $50 on Account of Allowed Claims

Notwithstanding anything herein to the contrary, except with respect to Administrative, Priority Tax, Secured and Priority Non-Tax Claims, if a Distribution to be made to a Holder of an Allowed Claim on the Initial Distribution Date or any Subsequent Distribution Date would be $50 or less in the aggregate, no such Distribution will be made to that Holder unless a request therefor is made in writing to the Liquidating Trustee.  If such request is made, such Cash shall be held for such Holder until the earlier of (i) the next time an interim Distribution is made to the

Holders of Allowed Claims (unless the Distribution would still be less than $50, in which case this Section shall again apply), or (ii) subject to Section Q below, the date on which Final Distributions are made to the Holders of Allowed Claims.

## P.    <u>Delivery of Distributions and Unclaimed Property</u>

1.    <u>Delivery of Distributions</u>.  Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims shall be made by the Liquidating Trustee at (a) the address of each Claimant as set forth in the Schedules, unless superseded by the address set forth on proof(s) of claim filed by such Claimant, or (b) the last known address of such Claimant if no proof of claim is filed or the Debtor or Liquidating Trustee has been notified in writing of a change of address.  If any Distribution is returned as undeliverable, the Liquidating Trustee may, in its discretion, make reasonable efforts to determine the current address of the Holder of the Claim with respect to which the Distribution was made as the Liquidating Trustee deems appropriate, but no Distribution to any such Holder shall be made unless and until the Liquidating Trustee has determined the then-current address of such Holder, at which time the Distribution to such Holder shall be made without interest.  Amounts in respect of any undeliverable Distributions shall be returned to, and held in trust by, the Liquidating Trustee until the Distributions are claimed or are deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code, as set forth in Article V, Paragraph K of the Plan.  The Liquidating Trustee shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or Liquidating Trust Agreement.  On or about the time that the final Distribution is made, the Liquidating Trustee may make a charitable donation with undistributed funds if, in the reasonable judgment of the Liquidating Trustee, the cost of calculating and making the Final Distribution of the remaining funds is excessive in relation to the benefits to the holders of Claims that would otherwise be entitled to such Distributions, and such charitable donation is provided to an entity not otherwise related to the Debtor or the Liquidating Trustee.

2.    <u>Unclaimed Property</u>.  Except with respect to property not distributed because it is being held in the Disputed Claim Reserve, Distributions that are not claimed by the later of the expiration of six (6) months from the Effective Date or (90) days after the date of a Distribution shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Liquidating Trust, and the Claims with respect to which those Distributions are made shall be automatically cancelled.  After the expiration of that period, the claim of any Entity to those Distributions shall be disallowed and forever barred.  Nothing contained in the Plan shall require the Liquidating Trust to attempt to locate any holder of an Allowed Claim.  All funds or other property that vest or revest in the Liquidating Trust pursuant to this Article shall be distributed by the Liquidating Trustee to the other holders of Allowed Claims or Equity Interests in accordance with the provisions of the Plan or the Liquidating Trust Agreement.

## Q.    <u>Withholding Taxes</u>

In connection with making Distributions under the Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed

on it by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Liquidating Trustee may withhold the entire Distribution to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any Governmental Unit.  Any property so withheld will then be paid by the Liquidating Trustee to the appropriate authority.  If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any Governmental Unit within six months after the date of first notification to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such Holder's Distribution shall be treated in accordance with Article V, Paragraph Q of the Plan.

### R.     United States Trustee Fees

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtor on or before the Effective Date.  Thereafter, the Liquidating Trustee shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a Final Decree or an order converting or dismissing the Chapter 11 Case.

### S.     Books and Records

Subject to the Sale Order, the Debtor shall transfer dominion and control over all of its books and records, in whatever form, manner or media, including, without limitation, the specific provision and presentation, to the Liquidating Trustee of all passcodes for security systems and computers, keys, keycards, and notice letters to landlords, warehousemen or other relevant parties.

### T.     No Modification of Terms of the Sale Order

Nothing in the Plan or Confirmation Order shall be deemed to alter, modify or amend the terms and provisions of the Sale Order.

### VII.

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.     Rejection of Executory Contracts and Unexpired Leases

Except with respect to executory contracts or unexpired leases that: (i) were previously assumed, assumed and assigned, or rejected by order of the Bankruptcy Court (including, without limitation, the Sale Order), and (ii) are the subject of a pending motion to assume or reject, pursuant to Section 365 of the Bankruptcy Code, on the Effective Date, each executory contract and unexpired lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code; provided, however, that nothing in Section VI.A of the Plan shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtor and the Estate, the Debtor's officers, directors and managers and/or the Liquidating Trust.  Nothing in Article VI of the Plan shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease.  For avoidance of doubt, the Confirmation Order shall constitute a rejection of (i) any collective bargaining

agreements entered into by Marriott and/or that may be binding on the Debtor; and (ii) those certain Owner's Letters relating to such collective bargaining agreements(collectively, the "CBAs"), provided however that nothing in the Plan or the Confirmation Order shall impair or otherwise affect any rights or obligations of the Successful Bidder (as defined in the Sale Order) or the applicable unions with respect to the CBAs to the extent provided under paragraphs D and 25 of the Sale Order.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date. The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases, and neither the Debtor nor the Liquidating Trust shall bear any liability for costs associated with respect to the forgoing.

## B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be filed with the Bankruptcy Court within thirty (30) days after the earlier of the Effective Date or an order of the Bankruptcy Court approving such rejection. Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan that is not filed within such times will be subject to objection. All such Claims for which Proofs of Claim are timely and properly filed and ultimately Allowed will be treated as General Unsecured Claims subject to the provisions of Article III of the Plan.

## C.    Insurance Policies

Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations of the Insurance Policies. To the extent one or more of the Insurance Policies provide potential coverage related to one or more Causes of Action the Debtor holds or may hold against any Entity, the Debtor shall, to the extent permissible under each Insurance Policy, assign all of its rights thereunder with respect to such Causes of Action to the Liquidating Trust. All net proceeds (including, for the avoidance of doubt, net of any deductibles or retentions) of Insurance Policies received by the Liquidating Trust shall be treated as proceeds of such Causes of Action for all purposes under the Plan. The Debtor shall take no action to or otherwise impair the Insurance Policies. Nothing in the Plan shall diminish or impair the enforceability of the Insurance Policies and related agreements that may cover Claims and Causes of Action against the Debtor or any other Entity.

## D.    Excess Proceeds

To the extent the net proceeds of the Liquidation Trust Assets exceed the amount necessary to fully perform the Plan and the Liquidating Trust (including the payment of all expenses, costs and payments required thereunder) and make all of the distributions to the holders of Allowed Claims required under the Plan, such excess shall become part of the Residue.

# VIII.

## CONDITIONS PRECEDENT TO CONFIRMATION

## OF THE PLAN AND TO THE EFFECTIVE DATE

**A.    Conditions to Confirmation of the Plan**

Confirmation of the Plan is conditioned upon the satisfaction of each of the following conditions precedent: (i) the Bankruptcy Court shall have approved the Disclosure Statement in form and substance acceptable to the Debtor, Marriott, and Pacific Life, in all reasonable respects, unless the Debtor, Marriott, and Pacific Life otherwise agree in writing to waive this condition precedent; (ii) unless the Debtor agrees in writing to waive this condition precedent, the Debtor shall have determined, that there will be sufficient Cash on the Effective Date to pay (or with respect to Disputed Claims to reserve for as required pursuant to the Plan) (A) Allowed Administrative Claims, Non-Tax Priority Claims and Priority Tax Claims in full (or in such amount as may be agreed by the applicable Claimant; and (B) and fund the reserves and other amounts required under the Plan and Liquidating Trust Agreement, including the funding of the Professional Fee Reserve and the Plan Contribution Amount; (iii) the Marriott Settlement Order to be presented to the Bankruptcy Court at the Confirmation Hearing shall be acceptable to the Debtor, Marriott, and Pacific Life in form and substance, in all reasonable respects, unless the Debtor, Marriott, and Pacific Life agree in writing to waive this condition precedent; and (iv) the Confirmation Order to be presented to the Bankruptcy Court at the Confirmation Hearing shall be acceptable to the Debtor, Marriott and Pacific Life and in form and substance, in all reasonable respects, unless the Debtor, Marriott, and Pacific Life otherwise agree in writing to waive this condition precedent.

**B.    Effect of Failure of Conditions to Confirmation**

If any one or more of the conditions in Section VII.A of the Plan is not met, the Debtor may withdraw the Plan and, if withdrawn, the Plan shall be of no further force or effect.

**C.    Conditions to Effective Date**

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent: (i) a Confirmation Order in form and substance acceptable to the Debtor, Marriott and Pacific Life, in all reasonable respects, shall have been entered by the Bankruptcy Court, unless the Debtor, Marriott, and Pacific Life otherwise agree in writing to waive this condition precedent; (ii) the Marriott Settlement Order in form and substance acceptable to the Debtor, Marriott, and Pacific Life, in all reasonable respects, shall have been entered by the Bankruptcy Court, unless the Debtor, Marriott, and Pacific Life otherwise agree in writing to waive this condition precedent; (iii) unless otherwise waived in writing by the Debtor, the Liquidating Trust shall have  been created pursuant to the terms of the Plan, the Liquidating Trustee shall have been appointed by order of the Bankruptcy Court (which may be the Confirmation Order) and the Liquidating Trust Agreement shall have  been executed by the Liquidating Trustee; (iv) unless otherwise waived in writing by the Debtor, the Sale shall have closed on or before the Effective Date; (v) unless otherwise waived in writing by the Debtor, the

Plan Contribution Amount shall have been funded; and (vi) unless otherwise waived in writing by the Debtor, all other actions and documents determined by the Debtor to be necessary to implement the Plan shall have been effected and executed.

## D.      Effective Date

Provided the above-referenced conditions to the occurrence of the Effective Date are satisfied, the Plan shall become effective on the Effective Date.  If any one or more of the conditions in Section VII.C of the Plan is not met, the Debtor may withdraw the Plan and, if withdrawn, the Plan shall be of no further force or effect.

## IX.

## EFFECTS OF CONFIRMATION

## A.      Binding Effect of Plan

The provisions of the confirmed Plan shall bind the Debtor, the Liquidating Trust, the Liquidating Trustee, any Entity acquiring property under the Plan, any Beneficiary, and any Creditor or Equity Interest Holder, whether or not such Creditor or Equity Interest Holder has filed a Proof of Claim or Equity Interest in the Chapter 11 Case, whether or not the Claim of such Creditor or the Equity Interest of such Equity Interest Holder is impaired under the Plan, and whether or not such Creditor or Equity Interest Holder has accepted or rejected the Plan.  All Claims and Debts shall be fixed and adjusted pursuant to the Plan.  The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under the Plan or related to any transaction contemplated under the Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code Section 1146(a).

## B.      Vesting of Property of Debtor in the Liquidating Trust

Upon the Effective Date, title to all property of the Estate of the Debtor in the Chapter 11 Case shall vest in the Liquidating Trust and shall be retained by the Liquidating Trust for the purposes contemplated under the Plan pursuant to the Liquidating Trust Agreement.  Without limiting the generality of the foregoing, all Causes of Action the Debtor holds or may hold against any Entity, recoveries from any Causes of Action, rights to Liquidation Proceeds, and all resulting Liquidating Trust Assets shall vest in the Liquidating Trust upon the Effective Date and shall no longer constitute property of the Estate.

## C.      Property Free and Clear

Except as otherwise provided in the Plan or the Confirmation Order, all property that shall vest in the Liquidating Trust shall be free and clear of all Claims, Equity Interests, Liens, interests, charges, or other encumbrances of Creditors or Interest Holders, other than as set forth herein, the Final DIP Order, in the Liquidating Trust Agreement, and in relevant documents, agreements, and instruments contained in the Plan Supplement.  Following the Effective Date, the Liquidating Trustee may transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the

Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

## D. Exculpation

The Exculpated Parties will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken after the Petition Date in connection with or related to the Chapter 11 Case, the sale of the Debtor's assets (including, without limitation the sale of the assets pursuant to the Sale Order) or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; provided, however, that this limitation will not affect or modify the obligations created under the Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction); provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan, and such reasonable reliance shall form an absolute defense to any such claim, Cause of Action, or liability.  Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of Section 1125(e) of the Bankruptcy Code.  Except as specifically set forth in Section VIII.E of the Plan, no provision of the Plan or the Disclosure Statement shall be deemed to act to or release any claims, Causes of Action, claims or rights, or liabilities that the Liquidating Trust or the Estate may have against any Entity or person for any act, omission, or failure to act that occurred prior to the Petition Date, nor shall any provision of the Plan be deemed to act to release any Causes of Action and litigation claims.

## E. Releases

### 1. Debtor Release.

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtor and its estate shall release each Released Party, and each Released Party is deemed released by the Debtor and the estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor or its estate, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or the estate would have been legally entitled to assert in its own right, or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's liquidation, the Chapter 11 Case, the purchase, sale, transfer of any security, asset, right, or interest of the Debtor, the transactions made by or contemplation under the Sale Order, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the treatment of Claims and Equity Interests prior to or in the Chapter 11 Case, the**

negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence; provided, that the foregoing Debtor Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan.  For avoidance of doubt, the foregoing Debtor Release does release any of the Debtor's claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities with respect to the Wardman Tower Residential Condominium Unit Owners Association v. JBG Smith Properties, et al action currently pending in the Superior Court of the District of Columbia under Case No. 2020 CA 004807.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtor and all Holders of Claims and Equity Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtor or its estate asserting any Claim or Cause of Action released pursuant to the Debtor Release.

2.     <u>Third Party Release.</u>

On, and as of, the Effective Date and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Released Parties shall be forever released (the "Third Party Release") from any and all claims, obligations, actions, suits, rights, debts, accounts, causes of action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, defenses, and liabilities throughout the world under any law or court ruling through the Effective Date (including all claims based on or arising out of factors or circumstances that existed as of or prior to the Effective Date, including claims based on negligence or strict liability, and further including any derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise) which the Debtor, its estate, Creditors, or other persons receiving or who are entitled to receive distributions under the Plan may have against any of them in any way related to this Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, and related to the Debtor (or its predecessors), its business and/or its assets; provided however that the foregoing releases are granted only by the (a) Creditors who returned a Ballot and did not check the opt-out box on the Ballot; and (b) Creditors who were sent a solicitation package, but either (i) did not vote; or (ii) did not return a Ballot with the opt-out box checked; *provided however* that the release provided in this section shall not apply to (A) any Creditor whose Claim is not Allowed either in whole or in part; or (B) any Creditor in category (b) above if the

**solicitation package was returned to the Debtor as undelivered and that such Creditor did not otherwise submit a Ballot; and provided further, however, that the release provided in this Section shall not extend to any claims by any Governmental Unit with respect to criminal liability under applicable law, willful misconduct or bad faith under applicable law, ultra vires acts under applicable law, or a Creditor's claims against Marriott solely based upon such Creditor's direct contractual rights, if any, against Marriott.  For avoidance of doubt, Pacific Life and Marriott shall be deemed to have granted the Third Party Release.**

     **3.**    **Global Limited Release of Claims between Marriott, the Debtor and Pacific Life**

Subject to and effective as of the occurrence of Effective Date, Marriott, on the one hand and the Debtor, PL Wardman Member, LLC, and Pacific Life, on the other hand, each of the forgoing, on behalf of themselves and their respective affiliates, successors, assigns, transferees, officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such), shall be deemed to have conclusively and unconditionally released each other and their respective successors, assigns, transferees, officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such), from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever based on or related to, or in any manner arising from or related to the Debtor, the Debtor's assets, the Debtor's liquidation, the Marriott Claim, the Chapter 11 Case, the Maryland Action, Wardman Hotel Owner, L.L.C. v. Marriott Hotel Services, Inc. [Adv. Proc. No. 21-51005], Marriott's operation of the hotel located at 2600 Woodley Road, NW in the Woodley Park neighborhood of Washington, D.C., the purchase, sale, transfer of any security, asset, right, or interest of the Debtor, and the business and contractual arrangements between Marriott, Pacific Life, PL Wardman Member, LLC and/or the Debtor which relate to the foregoing, based on facts now in existence whether known or unknown, and all such claims whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, provided however, that the foregoing shall not impact or modify the treatment of the Marriott Claim provided under the Plan.  Marriott, the Debtor, Pacific Life and PL Wardman Member, LLC each hereby waives and releases any and all rights under Section 1542 of the California Civil Code with respect to the matters referenced in this paragraph, which provides as follows:

     **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASING PARTY.**

F.    **Injunction**

**In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Equity Interests in the Debtor, the Liquidating Trust, or the Estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor, the Estate, the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the Estate, the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtor, the Estate, or the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest, including without limitation, any act taken in violation of Section VIII.E.2 of the Plan against any of the Released Parties with respect to any matters released under the Plan in favor of such Released Parties.   Nothing contained in this Section shall prohibit the Holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtor or the Liquidating Trust under the Plan.**

G.    **Post-Confirmation Liability of Liquidating Trustee**

The Liquidating Trustee, together with his or her consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the foregoing (collectively, the "Indemnified Parties") shall not be liable for any and all liabilities, losses, damages, claims, causes of action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the Holders of Claims or Equity Interests for any action or inaction taken in good faith in connection with the performance or discharge of their duties under the Plan, except the Indemnified Parties will be liable for actions or inactions that are grossly negligent, fraudulent, or which constitute willful misconduct (in each case, liability shall be subject to determination by final order of a court of competent jurisdiction).  However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, fraud or willful misconduct.  In addition, the Liquidating Trust and the Estate shall, to the fullest extent permitted by the laws of the State of Delaware, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust and the Estate or the

implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidating Trust and the Estate. To the extent the Liquidating Trust indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidating Trust Expenses. All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan.

## H.    Preservation of Rights of Action

### 1.    Vesting of Causes of Action.

(a)    Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor holds or may hold against any Entity shall vest upon the Effective Date in the Liquidating Trust, except to the extent provided under Final DIP Order.

(b)    Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action the Debtor holds or may hold against any Entity, in accordance with the terms of the Liquidating Trust Agreement and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case.

(c)    Causes of Action and recoveries therefrom shall remain the sole property of the Liquidating Trust, for the ratable benefit of the Beneficiaries of the Liquidating Trust, and holders of Claims shall have no direct right or interest in to any such Causes of Action or recovery.

### 2.    Preservation of All Causes of Action Not Expressly Settled or Released.

(a)    Unless a Cause of Action against a holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order, and the Final DIP Order), the Debtor and the Liquidating Trustee expressly reserve such retained Cause of Action for later adjudication by the Debtor or the Liquidating Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere, or of which the Debtor may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time, or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order (including the Confirmation Order). In addition, the Debtor and Liquidating Trustee expressly reserve the right to pursue or adopt claims alleged in any lawsuit in which the Debtor is a defendant or an interested party against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

(b)    Subject to the immediately preceding paragraph, any Entity to which the Debtor has incurred an obligation (whether on account of services, the purchase or sale of goods, or otherwise), or that has received services from the Debtor or a transfer of money or property of the Debtor, or that has received services from the Debtor or a transfer or money or property of the Debtor, or that has transacted business with the Debtor, or that has leased equipment or property from the Debtor, should assume and is hereby advised that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether (i) such Entity has filed a proof of claim against the Debtor in the Chapter 11 Case; (ii) the Debtor or Liquidating Trustee has objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtor or Liquidating Trustee has objected to any such Entity's scheduled Claim; (v) any such Entity's scheduled Claim has been identified by the Debtor or Liquidating Trustee as disputed, contingent, or unliquidated; or (vi) the Debtor has identified any potential claim or Cause of Action against such Entity herein or in the Disclosure Statement.

**I.    No Discharge**

Nothing contained in the Plan shall be deemed to constitute a discharge of the Debtor under Bankruptcy Code section 1141(d)(3).

**X.**

**VOTING REQUIREMENTS; ACCEPTANCE**

**AND CONFIRMATION OF THE PLAN**

The Bankruptcy Code requires that, in order to confirm the Plan, the Bankruptcy Court must make a series of findings concerning the Plan and the Debtor, including that (i) the Plan has classified Claims and Equity Interests in a permissible manner, (ii) the Plan complies with applicable provisions of the Bankruptcy Code, (iii) the Debtor has complied with applicable provisions of the Bankruptcy Code, (iv) the Debtor has proposed the Plan in good faith and not by any means forbidden by law, (v) the disclosure required by Section 1125 of the Bankruptcy Code has been made, (vi) the Plan has been accepted by the requisite votes of creditors (except to the extent that cramdown is available under Section 1129(b) of the Bankruptcy Code), (vii) the Plan is feasible and confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor, (viii) the Plan is in the "best interests" of all holders of Claims or Equity Interests in an impaired Class by providing to such holders on account of their Claims or Equity Interests property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain in a chapter 7 liquidation, unless the Holder has accepted the Plan, and (ix) all fees and expenses payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on Confirmation, have been paid or the Plan provides for the payment of such fees on the Effective Date.

**A.    Parties in Interest Entitled to Vote**

Pursuant to the Bankruptcy Code, only classes of claims and interests that are "impaired" (as defined in Section 1124 of the Bankruptcy Code) under the Plan are entitled to vote to accept

or reject the Plan.  A class is impaired if the legal, equitable, or contractual rights to which the claims or equity interests of that class entitled the holders of such claims or equity interests are modified, other than by curing defaults and reinstating the debt.  Classes of claims and interests that are not impaired are not entitled to vote on the Plan and are conclusively presumed to have accepted the Plan.  In addition, classes of claims and interests that receive no distributions under the Plan are not entitled to vote on the Plan and are deemed to have rejected the Plan.

## B.    Classes Impaired Under the Plan

Class 3 (Pacific Life Secured Claim), Class 4 (Marriott Claim) and Class 5 (General Unsecured Claims) are each Impaired under the Plan.  Class 6 (Equity Interests) is also Impaired under the Plan, but is anticipated to receive no Distributions on account of such interests.  As it is not anticipated that Class 6 will receive no distribution under the Plan it is therefore deemed to reject the Plan.  Acceptances of the Plan are being solicited only from members in Impaired Classes that will or may receive a distribution under the Plan.  Accordingly, the Debtor is soliciting acceptances from members of Class 3, Class 4 and Class 5.

## C.    Voting Procedures and Requirements

In voting for or against the Plan, please use only the ballot or ballots sent to you with this Disclosure Statement.

PLEASE FOLLOW THE DIRECTIONS CONTAINED ON THE ENCLOSED BALLOT CAREFULLY.  IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED A BALLOT OR ADDITIONAL COPIES OF THE PLAN, DISCLOSURE STATEMENT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE BALLOTING AGENT, STRETTO, VIA EMAIL AT TeamWardmanHotel@stretto.com AND REFERENCE "WARDMAN HOTEL OWNER, L.L.C." IN THE SUBJECT LINE OR BY TELEPHONE AT TOLL FREE: 855.295.3672, OR INTERNATIONAL: 949-266-6335.

YOU SHOULD COMPLETE AND SIGN YOUR BALLOT AND RETURN IT IN THE ENCLOSED ENVELOPE TO:

**Wardman Hotel Owner, L.L.C.**
c/o Stretto
410 Exchange, Ste. 100
Irvine, CA  92602

VOTES CANNOT BE TRANSMITTED ORALLY.  FACSIMILE OR ELECTRONIC BALLOTS WILL NOT BE ACCEPTED.  TO BE COUNTED, ORIGINAL SIGNED BALLOTS MUST BE RECEIVED ON OR BEFORE SEPTEMBER 13, 2021, AT 4:00 P.M., PREVAILING EASTERN TIME.  IT IS OF THE UTMOST IMPORTANCE TO THE DEBTOR THAT YOU VOTE PROMPTLY TO ACCEPT THE PLAN.

## D.    Confirmation Standards

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan

satisfies the requirements of section 1129 of the Bankruptcy Code. The Debtor believes that the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code and that they have complied or will have complied with all of the requirements of chapter 11 of the Bankruptcy Code. Specifically, the Debtor believes that the Plan satisfies or will satisfy the applicable confirmation requirements of section 1129 of the Bankruptcy Code, including those set forth below.

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtor has complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or to be made under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been or will be disclosed to the Bankruptcy Court, and any such payment: (1) made before the Confirmation of the Plan is reasonable; or (2) is subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after confirmation of the Plan.

- With respect to each Class of Claims, each Holder of an Impaired Claim has accepted the Plan or will receive or retain under the Plan on account of such Claim property of a value as of the Effective Date of the Plan that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated on that date under chapter 7 of the Bankruptcy Code. With respect to each Class of Interests, each Holder of an Impaired Interest has accepted the Plan or will receive or retain under the Plan on account of such Interest property of a value as of the Effective Date of the Plan that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated on that date under chapter 7 of the Bankruptcy Code.

- Each Class of Claims or Interests that is entitled to vote on the Plan has either accepted the Plan or is not Impaired under the Plan, or the Plan can be confirmed without the approval of such voting Class of Claims or Interests pursuant to section 1129(b) of the Bankruptcy Code.

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Holders of Claims specified in section 507(a)(2) will receive, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order Allowing such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtor or the Liquidating Trustee, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtor's business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtor's business or as otherwise provided in the Plan;

or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.[17]

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, Holders of Claims specified in sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of the Bankruptcy Code are treated as Class 1 Priority Non Tax Claims.  Holders of Priority Non Tax Claims will receive, in full and final satisfaction of such Claims either (i) Cash in the amount of such claim, as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed by the Debtor and such holder.

- Except to the extent that a Holder of a particular claim will agree to a different treatment of its Claim, Holders of Claims specified in section 507(a)(8) of the Bankruptcy Code constitute Priority Tax Claims.  The Plan provides for the following treatment of Priority Tax Claims:   (a) Cash equal to the unpaid portion of the Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, (b) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable non-bankruptcy law as of the calendar month in which the Confirmation Date occurs in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, or (c) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the Debtor shall have agreed upon in writing.

- At least one Class of Impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any "insider," as that term is defined by section 101(31) of the Bankruptcy Code, holding a Claim in that Class.

- Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor or any successors thereto under the Plan, unless the Plan contemplates such liquidation or reorganization.

- The Debtor has paid or the Plan provides for the payment of the required fees pursuant to 28 U.S.C. § 1930 to the clerk of the Bankruptcy Court.

## E.    **Best Interests Test**

In order to confirm the Plan, the Bankruptcy Court must independently determine that the Plan is in the best interests of each Holder of a Claim or Equity Interest in any such impaired Class who has not voted to accept the Plan.  Accordingly, if an Impaired Class does not unanimously accept the Plan, the best interests test requires the Bankruptcy Court to find that the

---

[17] The foregoing provides for the Plan's treatment of Administrative Claims other than Professional Fee Claims. Holders of Professional Fee Claims, to the extent required under the terms of their retention, must file a request for payment of fees and expenses no later than sixty (60) days after the Effective Date.

Plan provides to each member of such impaired Class a recovery on account of the Class member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that each such member would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

## F.    Liquidation Analysis

Set forth below is the Debtor's liquidation analysis that compares estimated distributions to Holders of Claims under the Plan to estimated recoveries pursuant to a hypothetical liquidation of the Debtor under Chapter 7 of the Bankruptcy Code and set forth on the chart attached hereto as **Exhibit B** (the "Liquidation Analysis").

If the Chapter 11 Case were converted to a Chapter 7 case, the Debtor's estate would incur the costs of payment of a statutorily allowed commission to the Chapter 7 trustee, as well as the costs of counsel and other professionals retained by the trustee.  The Debtor believes that such amounts would exceed the amount of expenses that will be incurred in implementing the Plan and winding up the affairs of the Debtor in its Chapter 11 Case.  The Debtor contemplates an orderly administration and winding down of the Estate by parties that are already familiar with the Debtor, its assets and affairs, and its creditors and liabilities.  Such familiarity will allow the Liquidating Trust to complete liquidation of the remaining assets (including prosecution of Causes of Action), and distribute the net proceeds to creditors more efficiently and expeditiously than a Chapter 7 trustee.  The Estate would suffer additional delays, as a Chapter 7 trustee and his/her counsel took time and incur professional expenses to develop a necessary learning curve in order to complete the administration of the Estate (including the prosecution of Causes of Action).  Also, a new time period for the filing of claims would commence under Bankruptcy Rule 1019(2), possibly resulting in the filing of additional Claims against the Estate.

Additionally, a chapter 7 trustee would not have the benefit of the Plan Contribution Amount, which includes the Marriott Contribution Amount and the GUC Contribution Amount, and which would otherwise allow the Liquidating Trustee to establish and fund the necessary reserves to fund anticipated Plan Expenses if the Plan is confirmed and becomes effective and what, if any, of the net Sale Proceeds would remain in the chapter 7 estate to the extent they are the subject of Pacific Life's Secured Claim.

Based upon the foregoing, the Debtor believes that creditors will receive at least as much under the Plan and likely more, than they would receive if the Chapter 11 Case were converted to a Chapter 7 case.

## G.    Feasibility

Under Section 1129(a)(11) of the Bankruptcy Code, the Debtor must show that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor (unless such liquidation or reorganization is proposed in the Plan).  The Plan complies with this requirement.  The Plan is a liquidating plan that contemplates the wind down and eventual dissolution of the Debtor.  The funding of the Plan includes the Marriott Contribution Amount, the GUC Contribution Amount, plus additional amounts in order to fund the necessary reserves and payments contemplated under the Plan, including a reserve for Disputed Claims and expenses associated with the

administration of the Plan.  The net proceeds from the sale of the Assets (including the Real Property) will be disbursed pursuant the terms of the Plan by the Liquidating Trustee.  Any remaining Estate assets will be liquidated by the Liquidating Trustee and the net proceeds therefrom will be distributed to creditors in furtherance of and pursuant to the terms of the Plan. Furthermore, the feasibility of the Plan under section 1129(a)(11) is supported by the liquidation analysis discuss above.

## H.    Acceptance by Impaired Classes.

Bankruptcy Code § 1129(b) provides that a plan can be confirmed even if it has not been accepted by all impaired classes as long as at least one impaired class of claims has accepted it. The process by which nonaccepting classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown."  The Bankruptcy Court may confirm the Plan at the request of the Debtor notwithstanding the Plan's rejection (or deemed rejection) by impaired Classes as long as the Plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired Class that has not accepted it.  A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to other classes of equal rank.

A class of claims under a plan accepts the plan if the plan is accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims in the class that actually vote on the plan.  A class of interests accepts the plan if the plan is accepted by holders of interests that hold at least two-thirds in amount of the allowed interests in the class that actually vote on a plan.

A class that is not "impaired" under a plan is conclusively presumed to have accepted the plan.  Solicitation of acceptances from such a class is not required.  A class is "impaired" unless (1) the legal, equitable and contractual rights to which a claim or interest in the class entitles the holder are not modified, or (2) the effect of any default is cured and the original terms of the obligation are reinstated.

A plan is fair and equitable as to a class of secured claims that rejects the plan if the plan provides (1)(a) that the holders of claims included in the rejecting class retain the liens securing those claims, whether the property subject to those liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims, and (b) that each holder of a claim of such class receives on account of that claim deferred cash payments totaling at least the allowed amount of that claim, of a value, as of the effective date of the plan, at least equal to the value of the holder's interest in the estate's interest in such property; (2) for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing the claims included in the rejecting class, free and clear of the liens, with the liens to attach to the proceeds of the sale, and the treatment of the liens on proceeds under clause (1) or (2) of this paragraph; or (3) for the realization of the indubitable equivalent of such claims.

A plan is fair and equitable as to a class of unsecured claims that rejects the plan if the plan provides (1) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim, or (2) that the holder of any claim or interest that is junior to the

claims of such rejecting class will not receive or retain on account of such junior claim or interest any property at all.

A plan is fair and equitable as to a class of interests that rejects a plan if the plan provides (1) that each holder of an interest included in the rejecting class receive or retain on account of that interest property that has a value, as of the effective date of the plan, equal to the greater of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (2) that the holder of any interest that is junior to the interest of such rejecting class will not receive or retain under the plan on account of such junior interest any property at all.

AS CLASS 6 EQUITY INTERESTS ARE DEEMED TO REJECT THE PLAN, THE PLAN PROPONENTS INTEND TO SEEK CONFIRMATION OF THE PLAN UNDER THE CRAMDOWN PROVISIONS OF SECTION 1129(b) OF THE BANKRUPTCY CODE WITH RESPECT TO SUCH CLASS.  FURTHER, THE PLAN PROPONENTS WILL REQUEST CONFIRMATION OF THE PLAN UNDER SECTION 1129(B) WITH RESPECT TO ANY OTHER IMPAIRED CLASS ENTITLED TO VOTE ON THE PLAN THAT DOES NOT ACCEPT THE PLAN.

## I.    **Compliance with the Applicable Provisions of the Bankruptcy Code**

Section 1129(a)(1) of the Bankruptcy Code requires that the Plan comply with the applicable provisions of the Bankruptcy Code.  The Debtor has considered each of these issues in the development of the Plan and believes that the Plan complies with all applicable provisions of the Bankruptcy Code.

**XI.**

**ALTERNATIVES TO CONFIRMATION AND**

**CONSUMMATION OF THE PLAN**

The Debtor believes that the Plan affords Holders of Claims the potential for the maximum distribution on account of their claims and, therefore, is in the best interests of such Holders.  If the Plan is not confirmed, the only viable alternatives are dismissal of the Chapter 11 Case or conversion to Chapter 7 of the Bankruptcy Code.  For the reasons described herein, neither of these alternatives is preferable to confirmation and consummation of the Plan.

If the Chapter 11 Case were dismissed, creditors would revert to a "race to the courthouse," the result being that creditors would not receive a fair and equitable distribution of the Debtor's remaining assets. Moreover, as set forth above, the Debtor believes the Plan provides a greater recovery to creditors than would be achieved in a Chapter 7 case.  Therefore, a Chapter 7 case is not an attractive or superior alternative to the Plan.  Thus, the Plan represents the best available alternative for maximizing returns to creditors.

# XII.

# RISK FACTORS

PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS THAT ARE IMPAIRED AND ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CONSIDER CAREFULLY THE RISK FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.  THESE FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

## A.    Risks Relating to Confirmation and Consummation of the Plan

### 1.    Parties in Interest May Object to Classification of Claims and Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class.  The Debtor believes that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor created Classes of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation and consummation of the Plan and could increase the risk that the Plan will not be confirmed or consummated.

### 2.    The Debtor May Object to a Claim or Equity Interest

Except as otherwise provided in the Plan, the Debtor reserves the right to object to the amount or classification of any Claim or Equity Interest under the Plan.  The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim or Equity Interest where such Claim or Equity Interest is or may become subject to an objection, counterclaim or other suit by the Debtor.  Any Holder of a Claim or Equity Interest that is or may become subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

### 3.    The Debtor May Fail to Satisfy the Vote Requirement

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtor intends to seek, as promptly as practicable thereafter, confirmation of the Plan.  In the event that sufficient votes are not received, the Debtor may seek to accomplish an alternative chapter 11 plan.  There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims or Equity Interests as those proposed in the Plan.

4.      **Plan May Not Be Accepted, Confirmed or Consummated**

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan and requires, among other things, findings by the bankruptcy court that:  (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting Holders of Claims within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received.  Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan.  A non-accepting Holder of an Allowed Claim or Equity Interest might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules.  Even if the Bankruptcy Court determined that the Disclosure Statement, the balloting procedures and voting results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes, or the Plan contains other terms disapproved of by the Bankruptcy Court.

The Debtor reserves the right to modify the terms and conditions of the Plan as necessary for confirmation.  Any such modifications could result in less favorable treatment of any non-accepting Class, as well as any Classes junior to such non-accepting Class, than the treatment currently provided in the Plan.  Such less favorable treatment could include a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution of property whatsoever under the Plan.  Section 1127 of the Bankruptcy Code permits the Debtor to modify the Plan at any time before confirmation, but not if such modified Plan fails to meet the requirements for confirmation.  The Debtor may modify the Plan at any time after confirmation of the Plan and before substantial consummation of the Plan if circumstances warrant such modification and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, but not if such modified Plan fails to meet the requirements for confirmation.  The Debtor will comply with the disclosure and solicitation requirements set forth in section 1125 of the Bankruptcy Code with respect to the modified Plan.  Any Holder of a Claim or Equity Interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

5.      **Non-Consensual Confirmation of the Plan May Be Necessary**

In the event that any impaired class of claims or equity interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm such a plan at the proponents' request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class) ("Accepting § 1129(a)(10) Class") and, as to each impaired class that has not accepted the plan, the bankruptcy court

determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. If there is an Accepting § 1129(a)(10) Class, the Debtor believes that the Plan satisfies these other requirements and the Debtor may request such non-consensual confirmation in accordance with subsection 1129(b) of the Bankruptcy Code. Nevertheless, in the event that a Voting Class does not accept the Plan, there can be no assurance that the Bankruptcy Court will reach this conclusion.

### 6. The Marriott Settlement Motion May Not Be Granted by the Court

The Plan is conditioned on, among other things, the Bankruptcy Court's approval of the Marriott Settlement Motion. Even if the Debtor obtains the requisite amount of acceptances required to confirm the Plan and the Bankruptcy Court otherwise approves confirmation of the Plan, there is no guarantee that the Bankruptcy Court will approve the Marriott Settlement Motion. If the Bankruptcy Court does not grant the Marriott Settlement Motion or confirm the Plan, Marriott reserves all of its rights to contest separate classification of any and all of its claims against the Debtor.

### 7. The Sale May Not Close

The distributions contemplated under the Plan are dependent on the sale proceeds to be derived from the Sale Order and which the Debtor expects to receive at the closing of the Sale. However, despite entry of the Sale Order, there is no guarantee that the sale will actually close with either the Successful Bidder or back-up bidder and enable the Debtor to receive the sale proceeds required to fund the payments and distributions contemplated under the Plan.

### B. Risks Relating to the Chapter 11 Process

### 1. The Debtor's Exclusivity Period May Terminate

At the outset of the Chapter 11 Case, the Bankruptcy Code provides the Debtor with the exclusive right to propose the Plan and prohibits creditors and others from proposing a plan. The Debtor will have retained the exclusive right to propose the Plan upon filing its petition and the Bankruptcy Court's extension of the Debtor's exclusive right to propose and solicit acceptances of the Plan. If the Bankruptcy Court terminates that right, however, or the exclusivity period otherwise expires, there could be a material adverse effect on the Debtor's ability to achieve confirmation of the Plan in order to achieve the Debtor's stated goals.

### 2. Continuation of the Chapter 11 Case May Harm the Debtor's Estate

A prolonged continuation of this Chapter 11 Case may adversely affect the Debtor's estate. So long as the Chapter 11 Case continues, the Debtor may be required to incur substantial costs for professional fees and other expenses associated with the proceedings.

### 3. The Chapter 11 Case May Be Converted to Chapter 7

If the Bankruptcy Court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the Bankruptcy Court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code. In such event, a chapter 7 trustee would be appointed or elected to liquidate the Debtor's assets for distribution in accordance with the

priorities established by the Bankruptcy Code.  The Debtor believes that liquidation under chapter 7 would result in significantly smaller distributions being made to creditors than those provided for in the Plan because of (a) the likelihood that the remaining assets would have to be sold or otherwise disposed of in a disorderly fashion over a short period of time, rather than liquidating in a controlled manner through the Liquidating Trust; (b) a chapter 7 trustee may not have sufficient resources to maintain and prosecute the Causes of Action under the Plan; and (c) additional administrative expenses involved in the appointment of a chapter 7 trustee.

## C.    **Risks Relating to Recoveries Under the Plan**

Except to the extent otherwise provided under the Plan with respect to Claims to be paid in full and the amount due to Marriott under the Marriott Settlement Motion, the projected distributions set forth in this Disclosure Statement are based upon the Debtor's good-faith estimate of the amount of expenses that will be incurred and total amount of Claims in each Class that will ultimately be Allowed.  The actual amount of such expenses could be greater than expected for a variety of reasons, including greater than anticipated administrative and litigation costs associated with resolving Disputed Claims.  Additionally, the actual amount of Allowed Claims in any class could be greater than anticipated, which would impact the distributions to be made to Holders of Claims.

## XIII. **CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

THE FOLLOWING IS INTENDED TO BE ONLY A SUMMARY OF SELECTED FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH, AND RECEIPT OF TAX ADVICE FROM, A TAX PROFESSIONAL.  THE SELECTED FEDERAL TAX CONSEQUENCES THAT ARE DESCRIBED HEREIN AND OTHER FEDERAL, STATE AND LOCAL TAX CONSEQUENCES THAT ARE NOT ADDRESSED HEREIN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN.  SUCH TAX CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST.  ACCORDINGLY, EACH HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST IS STRONGLY ADVISED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE PLAN.  THE BELOW SUMMARY OF TAX CONSEQUENCES IS NOT INTENDED TO BE AND IS NOT TAX ADVICE.

THE DEBTOR DOES NOT INTEND TO REQUEST A TAX RULING FROM THE INTERNAL REVENUE SERVICE OR ANY OTHER TAXING AUTHORITY WITH RESPECT TO ANY OF THE TAX CONSEQUENCES OF THE PLAN.  CONSEQUENTLY, THE INTERNAL REVENUE SERVICE OR ANOTHER TAXING AUTHORITY MAY DISAGREE WITH AND MAY CONTEST ONE OR MORE OF THE TAX CONSEQUENCES DESCRIBED HEREIN TO THE DEBTOR, HOLDERS OF CLAIMS AND HOLDERS OF INTERESTS.

## A.        Federal Income Tax Consequences to Certain Creditors

### 1.        In General

Generally, a holder of a Claim should in most, but not all circumstances, recognize gain or loss equal to the difference between the "amount realized" by such holder in exchange for its Claim and such holder's adjusted tax basis in the Claim.  The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan of reorganization in respect of a holder's Claim.  The tax basis of a holder in a Claim will generally be equal to the holder's cost therefor.  To the extent applicable, the character of any recognized gain or loss (*e.g.*, ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the Claim in the holder's hands, the purpose and circumstances of its acquisition, the holder's holding period of the Claim, and the extent to which the holder previously claimed a deduction for the worthlessness of all or a portion of the Claim.  Generally, if the Claim is a capital asset in the holder's hands, any gain or loss realized will generally be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the holder has held such Claim for more than one year.

A creditor who received Cash in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest.  A creditor who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized for U.S. federal income tax purposes as interest, regardless of whether such creditor realizes an overall gain or loss as a result of surrendering its Claim.  A creditor who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such creditor realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim.

Under the Plan, the holders of certain Claims will likely receive only a partial distribution of their Allowed Claims.  Whether the applicable holder of such Claims will recognize a loss or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the holder and its Claims.  Creditors should consult their own tax advisors.

### 2.        Non-United States Persons

A holder of a Claim that is a Non-U.S. Person generally will not be subject to U.S. federal income tax with respect to property (including money) received in exchange for such Claim pursuant to the Plan, unless (i) such holder is engaged in a trade or business in the United States to which income, gain or loss from the exchange is "effectively connected" for United States federal income tax purposes, or (ii) if such holder is an individual, such holder is present in the United States for 183 days or more during the taxable year of the exchange and certain other requirements are met.

3.    **Tax Consequences in Relation to Liquidating Trust**

As of the Effective Date, the Liquidating Trust will be established for the benefit of the holders of certain Allowed Claims.  The tax consequences of the Plan in relation to the Liquidating Trust and the beneficiaries thereof are subject to uncertainties due to the complexity of the Plan and the lack of interpretative authority regarding certain changes in the tax law.

Allocations of taxable income of the Liquidating Trust (other than taxable income allocable to the Liquidating Trust's claims reserves) among holders of Claims will be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of its assets (valued at their tax book value) to the holders of the beneficial interests in the Liquidating Trust, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust.  Similarly, taxable loss of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining trust assets.

The tax book value of the trust assets for this purpose will equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.  Uncertainties with regard to federal income tax consequences of the Plan may arise due to the inherent nature of estimates of value that will impact tax liability determinations.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an IRS private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee may (a) elect to treat any trust assets allocable to, or retained on account of, Disputed Claims (the "Trust Claims Reserve") as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  Accordingly, any Trust Claims Reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to the trust assets in such reserves, and all distributions from such reserves will be treated as received by holders in respect of their Claims as if distributed by the Debtor.  All parties (including, without limitation, the Liquidating Trustee and the holders of beneficial interests in the Liquidating Trust) will be required to report for tax purposes consistently with the foregoing.

The Liquidating Trust is intended to qualify as a liquidating trust for federal income tax purposes.  In general, a liquidating trust is not a separate taxable entity but rather is treated for federal income tax purposes as a "grantor" trust (*i.e.*, a pass-through entity).  The IRS, in Revenue Procedure 94-45, 1994.28 I.R.B. 124, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan.  The Liquidating Trust has been structured with the intention of complying with such general criteria.  Pursuant to the Plan and Liquidating Trust Agreement, and in conformity with Revenue Procedure 94-45, *supra*, all parties (including the Liquidating Trustee and the holders of beneficial interests in the

Liquidating Trust) are required to treat for federal income tax purposes, the Liquidating Trust as a grantor trust of which the holders of the applicable Allowed Claims are the owners and grantors.  While the following discussion assumes that the Liquidating Trust would be so treated for federal income tax purposes, no ruling has been requested from the IRS concerning the tax status of the Liquidating Trust as a grantor trust.  Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust as a grantor trust.  If the IRS were to challenge successfully such classification, the federal income tax consequences to the Liquidating Trust and the beneficiaries thereof could materially vary from those discussed herein.

In general, each creditor who is a beneficiary of the Liquidating Trust will recognize gain or loss in an amount equal to the difference between (i) the "amount realized" by such beneficiary in satisfaction of its applicable Allowed Claim, and (ii) such beneficiary's adjusted tax basis in such Claim.  The "amount realized" by a beneficiary will equal the sum of cash and the aggregate fair market value of the property received by such party pursuant to the Plan (such as a beneficiary's undivided beneficial interest in the assets transferred to the Liquidating Trust).  Where gain or loss is recognized by a beneficiary in respect of its Allowed Claim, the character of such gain or loss (*i.e.*, long-term or short-term capital, or ordinary income) will be determined by a number of factors including the tax status of the party, whether the Claim constituted a capital asset in the hands of the party and how long it had been held, whether the Claim was originally issued at a discount or acquired at a market discount and whether and to what extent the party had previously claimed a bad debt deduction in respect of the Claim.

After the Effective Date, any amount that a creditor receives as a distribution from the Liquidating Trust in respect of its beneficial interest in the Liquidating Trust should not be included, for federal income tax purposes, in the party's amount realized in respect of its Allowed Claim, but should be separately treated as a distribution received in respect of such party's beneficial interest in the Liquidating Trust.

In general, a beneficiary's aggregate tax basis in its undivided beneficial interest in the assets transferred to the Liquidating Trust will equal the fair market value of such undivided beneficial interest as of the Effective Date and the beneficiary's holding period in such assets will begin the day following the Effective Date.  Distributions to any beneficiary will be allocated first to the original principal portion of the beneficiary's Allowed Claim as determined for federal tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim.  However, there is no assurance that the IRS will respect such allocation for federal income tax purposes.

For all federal income tax purposes, all parties (including the Liquidating Trustee and the holders of beneficial interests in the Liquidating Trust) will treat the transfer of assets to the Liquidating Trust, in accordance with the terms of the Plan and Liquidating Trust Agreement, as a transfer of those assets directly to the holders of the applicable Allowed Claims followed by the transfer of such assets by such holders to the Liquidating Trust.  Consistent therewith, all parties will treat the Liquidating Trust as a grantor trust of which such holders are to be owners and grantors.  Thus, such holders (and any subsequent holders of interests in the Liquidating Trust) will be treated as the direct owners of an undivided beneficial interest in the assets of the Liquidating Trust for all federal income tax purposes.  Accordingly, each holder of a beneficial

interest in the Liquidating Trust will be required to report on its federal income tax return(s) the holder's allocable share of all income, gain, loss, deduction or credit recognized or incurred by the Liquidating Trust.

The Liquidating Trust's taxable income will be allocated to the holders of beneficial interests in the Liquidating Trust in accordance with each such holder's *pro rata* share. The character of items of income, deduction and credit to any holder and the ability of such holder to benefit from any deductions or losses may depend on the particular situation of such holder.

The federal income tax reporting obligation of a holder of a beneficial interest in the Liquidating Trust is not dependent upon the Liquidating Trust distributing any cash or other proceeds. Therefore, a holder of a beneficial interest in the Liquidating Trust may incur a federal income tax liability regardless of the fact that the Liquidating Trust has not made, or will not make, any concurrent or subsequent distributions to the holder. If a holder incurs a federal tax liability but does not receive distributions commensurate with the taxable income allocated to it in respect of its beneficial interests in the Liquidating Trust it holds, the holder may be allowed a subsequent or offsetting loss.

The Liquidating Trustee will file with the IRS returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a). The Liquidating Trust will also send to each holder of a beneficial interest in the Liquidating Trust a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct the holder to report such items on its federal income tax return.

Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, could also change the federal income tax consequences of the Plan and the transactions contemplated thereunder.

## B.      <u>Information Reporting and Backup Withholding</u>

Distributions pursuant to the Plan will be subject to any applicable federal income tax reporting and withholding. The IRC imposes "backup withholding" on certain "reportable" payments to certain taxpayers, including payments of interest. Under the IRC's backup withholding rules, a holder of a Claim may be subject to backup withholding with respect to distributions or payments made pursuant to the Plan, unless the holder (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional federal income tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of income tax. A holder of a Claim may be required to establish an exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

**THE FOREGOING SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY.  ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS**

CONCERNING THE FEDERAL, STATE, LOCAL AND OTHER TAX
CONSEQUENCES APPLICABLE UNDER THE PLAN.

## XIV.

### RECOMMENDATION

The Debtor strongly recommends that all creditors receiving a ballot vote in favor of the Plan.  The Debtor believes that the Plan is in the best interests of creditors.  The Plan as structured, among other things, allows creditors with Allowed Claims to participate in distributions believed to be in excess of those that would otherwise be available were the Chapter 11 Case dismissed or converted under Chapter 7 of the Bankruptcy Code and minimizes delays in recoveries to creditors.

FOR ALL THE REASONS SET FORTH IN THIS DISCLOSURE STATEMENT, THE DEBTOR BELIEVES THAT THE CONFIRMATION AND CONSUMMATION OF THE PLAN IS PREFERABLE TO ALL OTHER ALTERNATIVES.  THE DEBTOR URGES ALL CREDITORS ENTITLED TO VOTE TO ACCEPT THE PLAN AND TO EVIDENCE SUCH ACCEPTANCE BY RETURNING THEIR BALLOTS SO THAT THEY WILL BE RECEIVED BY 4:00 P.M. EASTERN STANDARD TIME ON SEPTEMBER 13, 2021.

Dated:  August 18, 2021                    Respectfully Submitted,


   */s/ James D. Decker*
WARDMAN HOTEL OWNER, L.L.C.
By:  James D. Decker
Its:  Independent Manager

# EXHIBIT A

# (THE PLAN)

*Solicitation Version*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| WARDMAN HOTEL OWNER, L.L.C., [1] | ) | Case No. 21-10023 (JTD) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S PLAN OF LIQUIDATION
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
         dbertenthal@pszjlaw.com
         tcairns@pszjlaw.com

*Counsel to the Debtor and Debtor in Possession*

Dated: August 18, 2021

---

[1] The last four digits of the Debtor's U.S. tax identification number are 9717. 5996 Mitchell Road, #16, Atlanta, GA 30328.

## TABLE OF CONTENTS

**Page**

I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW ................................................ 3

    A.    Rules of Interpretation, Computation of Time and Governing Law ............................. 3

    B.    Defined Terms ........................................................................................................ 4

II. UNCLASSIFIED ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES, AND PRIORITY TAX CLAIMS .................................................................. 26

    A.    Introduction .......................................................................................................... 26

    B.    Administrative Claims ......................................................................................... 26

    C.    Professional Fee Claims ...................................................................................... 27

    D.    Priority Tax Claims .............................................................................................. 28

III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ........................................................................ 29

    A.    Summary ............................................................................................................... 29

    B.    Classification and Treatment of Claims against the Debtor ................................ 30

IV. ACCEPTANCE OR REJECTION OF THE PLAN ........................................................ 35

    A.    Voting Classes ..................................................................................................... 35

    B.    Presumed Acceptance of Plan .............................................................................. 35

    C.    Acceptance by Impaired Classes ......................................................................... 35

    D.    Presumed Rejection of Plan ................................................................................. 36

    E.    Nonconsensual Confirmation ............................................................................... 36

V. MEANS FOR IMPLEMENTATION OF THE PLAN ......................................................... 36

    A.    Settlement of Claims and Causes of Action Between the Debtor and Marriott .......... 36

    B.    Dissolution of Debtor .......................................................................................... 37

    C.    Appointment of the Liquidating Trustee ............................................................. 37

    D.    The Liquidating Trust .......................................................................................... 37

    E.    Rights and Powers of the Liquidating Trustee .................................................... 39

    F.    Fees and Expenses of the Liquidating Trust ....................................................... 40

    G.    Transfer of Beneficial Interests in the Liquidating Trust .................................... 40

    H.    Plan Contribution Amount ................................................................................... 41

1

I.      Litigation of Debtor's Causes of Action .......................................................... 41

J.      Full and Final Satisfaction ............................................................................ 41

K.      Distribution Procedures ................................................................................ 42

L.      Resolution of Disputed Claims ..................................................................... 44

M.      Reserve Provisions for Disputed Claims ....................................................... 46

N.      Rounding ....................................................................................................... 48

O.      No Cash Payments of Less Than $50 on Account of Allowed Claims ........ 48

P.      Delivery of Distributions and Unclaimed Property ...................................... 48

Q.      Withholding Taxes ........................................................................................ 50

R.      United States Trustee Fees ........................................................................... 51

S.      Books and Records ....................................................................................... 51

T.      No Modification of Terms of the Sale Order ................................................ 51

VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............. 51

A.      Rejection of Executory Contracts and Unexpired Leases ............................. 51

B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases .................. 53

C.      Insurance Policies ......................................................................................... 53

D.      Excess Proceeds ........................................................................................... 54

VII. CONDITIONS PRECEDENT TO CONFIRMATION  OF THE PLAN AND TO THE
EFFECTIVE DATE ................................................................................................... 54

A.      Conditions to Confirmation of the Plan ....................................................... 54

B.      Effect of Failure of Conditions to Confirmation ......................................... 55

C.      Conditions to Effective Date ........................................................................ 55

D.      Effective Date ............................................................................................... 56

VIII. EFFECTS OF CONFIRMATION ....................................................................... 56

A.      Binding Effect of Plan .................................................................................. 56

B.      Vesting of Property of Debtor in the Liquidating Trust .............................. 57

C.      Property Free and Clear ................................................................................ 57

D.      Exculpation .................................................................................................. 58

E.      Releases ........................................................................................................ 59

F.      Injunction ..................................................................................................... 64

G.      Post-Confirmation Liability of Liquidating Trustee .................................... 65

H.      Preservation of Rights of Action .................................................................. 66

I.        No Discharge ................................................................................................... 68

IX. RETENTION OF JURISDICTION ............................................................................ 69

X. MISCELLANEOUS ..................................................................................................... 70

A.        Revocation of Plan ......................................................................................... 70

B.        Severability of Plan Provisions ...................................................................... 71

C.        Exhibits .......................................................................................................... 71

D.        Notices ............................................................................................................ 72

E.        Reservation of Rights ..................................................................................... 72

F.        Defects, Omissions and Amendments ............................................................ 73

G.        Filing of Additional Documents .................................................................... 74

H.        Successors and Assigns ................................................................................. 74

I.        Setoffs and Recoupments .............................................................................. 74

J.        Section 1146(a) Exemption ........................................................................... 74

K.        Securities Exemption ..................................................................................... 76

L.        Implementation .............................................................................................. 76

M.        Certain Actions .............................................................................................. 76

N.        Substantial Consummation ............................................................................ 77

O.        Waiver of Fourteen-Day Stay ....................................................................... 77

**Preliminary Statement**

Pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), the above-captioned debtor and debtor in possession (the "Debtor") hereby proposes the following Plan.[2]  Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtor's history, business, results of operations, the post-petition marketing and sale of the Debtor's assets that will be consummated pursuant to the Plan, and a summary and analysis of the Plan.  All Creditors entitled to vote on the Plan should read the Disclosure Statement and the Plan carefully—and consult with their counsel and other applicable professionals—before voting to accept or reject the Plan.

The Plan is a plan of liquidation which, among other things, provides for a Liquidating Trustee to liquidate or otherwise dispose of the Estate's remaining assets, distribute the Plan Contribution Amount pursuant to the terms of the Plan.  The Sale proceeds to be derived from the Sale Order constitute the source of funding for, and payments under, the Plan.  Thus, the Plan is predicated and dependent on the funding of expenses and reserves from the Sale Proceeds to the extent required for the Plan to become effective and for the Liquidating Trustee to administer and implement the Plan for the benefit of the Debtor's economic constituents.  The Plan proposes to vest all of the assets of the Debtor into a single Liquidating Trust for administration and distribution in accordance with the Plan and the Liquidating Trust Agreement.

The Plan also effectuates a global settlement of the claims and litigation by and between the Debtor, Pacific Life, PL Wardman Member, LLC, and Marriott pursuant to the Marriott

---

[2]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in Article 1 of this Plan.

1

Settlement Motion.  The Marriott Settlement Motion is expected to be heard by the Bankruptcy Court contemporaneously with confirmation of the Plan.  Pursuant to the proposed settlement, Marriott would receive $18 million in distributions (as described below) in full and final satisfaction of (i) its filed proof of claim and (ii) any and all claims that it holds or may hold against the Debtor, Pacific Life and PL Wardman Member, LLC.  Under the settlement proposed by the Marriott Settlement Motion, the Debtor, Pacific Life and PL Wardman Member, LLC would also waive any and all of their claims against Marriott relating to, among others, the Chapter 11 Case, the Debtor and its assets, which settlement is subject to (i) approval of the Marriott Settlement Motion by the Bankruptcy Court and (ii) the occurrence of the Effective Date of this Plan, and Marriott will provide a mutual release to the Debtor, Pacific Life, and PL Wardman Member, LLC.

With the Plan, Creditors entitled to vote will receive a Ballot for voting on the Plan, a Disclosure Statement that provides information concerning the Debtor, and the Plan.  The Disclosure Statement includes a summary of the assets and liabilities of the Debtor, a summary of what Creditors will receive under the Plan, a summary of the procedures and voting requirements necessary for confirmation of the Plan, and a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of Creditors, and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed.[3]  If the Plan is not confirmed, the

---

[3]  Equity Interest Holders will receive nothing under the Plan, and therefore, the Class of Equity Interests is deemed to have rejected the Plan.  Accordingly, acceptances are not being solicited from the Holders of Equity Interests.

LEGAL02/40807839v5

Bankruptcy Court may order the Chapter 11 Case dismissed or converted to a liquidating case under chapter 7 of the Bankruptcy Code, or the Debtor or other parties in interest may propose a different plan.

## I.

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

### A. Rules of Interpretation, Computation of Time and Governing Law

1. For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine, or neuter gender, shall include the masculine, feminine, and the neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereunder," and "hereto" and similar terms refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) references to a part includes the whole, except where the context clearly requires otherwise; (g) unless otherwise specified, "or" has the inclusive meaning represented by the phrase

3

"and/or"; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (j) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.       In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.       Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

**B.**       **Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

1.       "<u>Administrative Claim</u>" means an expense of administration of the Chapter 11 Case arising under Sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate; (b) the value of any goods received by the Debtor within 20 days before the Petition Date in which the goods were sold to the Debtor in

4

the ordinary course of the Debtor's business; (c) Professional Fee Claims; (d) all fees and charges assessed against the Estate under 28 U.S.C. § 1930; and (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court.

2.      "Administrative Claims Bar Date" means the last date by which an Entity must file a request for payment of an Administrative Claim.  For Administrative Claims arising on or prior to May 31, 2021, including Claims arising under Section 503(b)(9) of the Bankruptcy Code (excluding Professional Fee Claims), the Administrative Claims Bar Date was June 30, 2021 pursuant to the Bar Date Order.  For Administrative Claims arising on or after June 1, 2021 (excluding Professional Fee Claims and Claims arising under Section 503(b)(9) of the Bankruptcy Code), the Administrative Claims Bar Date shall be the date that is  sixty (60) after the Effective Date.

3.      "Allowed" means, with respect to any Claim, except as otherwise provided herein: (i) any Claim, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date(s) for filing proofs of Claim with respect to such Claim, or which has been or hereafter is scheduled by the Debtor on the Schedules as liquidated in amount and not disputed or contingent, and to which no party in interest has filed an objection thereto; (ii) any Administrative Claim, request for payment of which was filed on or before the applicable Administrative Claims Bar Date, which has been determined, in whole or in part, in favor of the Holder of such Administrative Claim by a Final Order of the Bankruptcy Court; or (iii) a Claim (including an Administrative Claim) that is allowed (a) pursuant to any contract, instrument, or other agreement entered into in connection with the Plan, (b) in a Final Order, (c) pursuant to the

5

terms of the Plan, or (d) for purposes of Distributions, by designation of the Liquidating Trustee

with respect to Claims and Administrative Claims as to which the period within which to object

has not yet expired.

4.      "Allowed Claim" or "Allowed [   ] Claim" means a Claim that has been

Allowed.

5.      " Ballots" mean the ballots upon which the Holders of Impaired Claims

shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting

Instructions.

6.      "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C.

§§ 101-1532 (as may be amended) and applicable portions of titles 18 and 28 of the United

States Code.

7.      "Bankruptcy Court" means the United States Bankruptcy Court for the

District of Delaware, or such other court having jurisdiction over the Chapter 11 Case.

8.      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as

amended from time to time, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C.

§ 2075 and the General and Local Rules of the Bankruptcy Court.

9.      "Bar Date" means, as applicable, the General Claims Bar Date, the

applicable Administrative Claims Bar Date, or any other applicable deadline to file Claims

referenced in the Plan.

10.     "Bar Date Order" means the *Order (I) Setting Bar Dates For Filing*

*Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (I) Setting a Bar Date*

6

*for the Filing of Proofs of Claim by Governmental Units, (III) Setting a Bar Date for the Filing*

*of Requests for Allowance of Administrative Expense Claims, (IV) Establishing Amended*

*Schedules Bar Date and Rejection Damages Bar Date, (V) Approving the Form of and Manner*

*for Filing Proofs of Claim, (VI) Approving Notice of Bar Dates, and (VII) Granting Related*

*Relief* [Docket No. 208], which established the General Claims Bar Date, the deadline to file

Administrative Claims arising on or prior May 31, 2021, Administrative Claims arising pursuant

to Section 503(b)(9) of the Bankruptcy Code, and certain other deadlines and procedures.

11.    "Beneficiaries" means holders of Allowed Claims entitled to receive

Distributions from the Liquidating Trust under the Plan, whether or not such Claims were

Allowed on the Effective Date.

12.    "Business Day" means any day, other than a Saturday, Sunday or legal

holiday as defined in Bankruptcy Rule 9006(a).

13.    "Cash" means cash and cash equivalents, including, but not limited to,

bank deposits, wire transfers, checks, and readily marketable securities, instruments, and legal

tender of the United States of America or instrumentalities thereof.

14.    "Causes of Action" means all claims, actions, causes of action, choses in

action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties,

covenants, contracts, controversies, agreements, promises, variances, trespasses, damages,

judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims,

reimbursement claims, indemnity claims, counterclaims, and crossclaims, including, without

limitation, all claims and any avoidance, preference, recovery, subordination or other actions of

7

the Debtor (unless the context expressly states that such Causes of Action belong to the another

Entity) against Creditors, insiders, and/or any other Entities under the Bankruptcy Code, based in

law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect,

derivative, or otherwise and whether asserted or unasserted as of the Effective Date.  For

avoidance of doubt and without limitation, Causes of Action includes any and all of the Debtor's

claims, causes of action, rights, interests remedies or interests held by the Debtor arising under or

in connection with the allegations made in the following or in relation to: (i) *Wardman Tower

Residential Condominium Unit Owners Association v. JBG Smith Properties, et al*, pending in

the Superior Court of the District of Columbia under Case No. 2020 CA 004807 B; (ii) Civil

Action No. 483406-V commenced in the Circuit Court for Montgomery County, Maryland, and

subsequently removed to the Bankruptcy Court and remains pending as Adversary Proceeding

No. 21-50263; (iii) that certain *Hotel Management Agreement*, between the Debtor and Marriott;

and (iv) the Debtor's *Complaint Against Marriott Hotel Services, Inc. For (1) Avoidance and

Recovery of Preferential Transfer; (II) Turnover of FF&E Reserve Funds to Estate; (III)

Declaratory Judgment Regarding FF&E Reserve Funds; (IV) Breach of Contract; (V) Breach of

Covenant of Good Faith and Fair Dealing; (VI) Breach of Fiduciary Duty; and (VII)

Disallowance of Filed Claim* [Adv. Proc. No. 21- 51005 (JTD) Docket No 1] filed on July 23,

2021, *provided however*, that the Causes of Action by and between the Debtor, Pacific Life, PL

Wardman Member, LLC, and Marriott, including the Causes of Action set forth in (ii) through

(iv) above, would be settled and released pursuant to this Plan.  For the avoidance of doubt,

8

Causes of Action does not include claims, challenges or other matters barred or otherwise released in the Final DIP Order.

15.     "Chapter 11 Case" means the Chapter 11 case commenced when the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on the Petition Date and with the following case number:  21-10023 (JTD).

16.     "Claim" means a claim (as defined in Section 101(5) of the Bankruptcy Code) against the Debtor, including, but not limited to: (a) any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

17.     "Claimant" means the Holder of a Claim.

18.     "Claims Objection Deadline" means, with respect to all Claims other than Professional Fee Claims, (a) 180 days after the Effective Date, subject to extension as set forth in Section V.L. of the Plan.

19.     "Class" means a category of Holders of Claims or Equity Interests, as set forth in Article 3 of the Plan.

20.     "Collateral" means any property or interest in property of the Estate of the Debtor subject to a Lien, charge, or other encumbrance to secure the payment of the Pacific Life Secured Claim, to the extent granted under and pursuant to the Final DIP Order.

21.    "<u>Confirmation</u>" means the entry of the Confirmation Order, subject to all conditions specified in Article 7 of the Plan having been (a) satisfied or (b) waived pursuant to Article 7.

22.    "<u>Confirmation Date</u>" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

23.    "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

24.    "<u>Consummation</u>" or "<u>Consummate</u>" means the occurrence of the Effective Date.

25.    "<u>Creditor</u>" means any Holder of a Claim against the Debtor as specified in Section 101(10) of the Bankruptcy Code.

26.    "<u>Debt</u>" means liability on a Claim.

27.    "<u>Debtor</u>" means Wardman Hotel Owner, L.L.C., a Delaware limited liability company.

28.    " <u>Disclosure Statement</u>" means the *Disclosure Statement with Respect to Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated August 18, 2021, as amended, supplemented, or modified from time to time, describing the Plan, which was prepared and distributed in accordance with the Bankruptcy Code and Bankruptcy Rules and other applicable law.

29.     "<u>Disputed Claim</u>" means, with respect to any Claim: (a) listed on the Schedules as either unliquidated, disputed, or contingent; (b) as to which the Debtor, the Liquidating Trustee, or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtor or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or (c) unless otherwise indicated in the Plan, a Claim as to which the period within which to object to such Claim has not yet expired and which is not Allowed.

30.     "<u>Distributions</u>" means the distributions of Cash to be made in accordance with the Plan.

31.     "<u>Distribution Dates</u>" means collectively the Initial Distribution Date, any Subsequent Distribution(s) Date, and the date of the Final Distribution.

32.     "<u>Distribution Record Date</u>" means the close of business on the Business Day immediately preceding the Effective Date.

33.     "<u>Effective Date</u>" means the date selected by the Debtor which is a Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect, and (b) all conditions specified in Article 7 of the Plan have been satisfied, unless waived by the Debtor.

34.     "<u>Entity</u>" means an entity as defined in Section 101(15) of the Bankruptcy Code.

LEGAL02/40807839v5

35.    "Equity Interest(s)" means any membership interest or other equity security interest in the Debtor, including, but not limited to, any warrants, options, or contract rights to purchase or acquire such interests at any time.

36.    "Estate" means the estate of the Debtor in the Chapter 11 Case created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

37.    "Exculpated Parties" means, collectively the Debtor and its respective officers, directors, shareholders, members, managers, employees, agents, advisors, accountants, attorneys, and representatives and their respective property.

38.    "FF&E Reserve" means the Cash that constitutes property of the Debtor and its Estate and is currently held by Marriott under the "Furniture, Fixtures and Equipment Reserve" established under that certain *Second Amended and Restated Management Agreement*, dated as of July 1, 2005, in order to provide for working capital needs at the Debtor's property formerly operated by Marriott, that Marriott claims is subject to Marriott's rights of recoupment and/or setoff under applicable law, totaling not less than $4,750,000.00.

39.    "Final Decree" means the decree contemplated under section 350 of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Rule 5099-1 closing the Chapter 11 Case.

40.    "Final Distribution" means the last payment to Holders of Allowed Claims in accordance with the provisions of the Plan.

41.    "Final DIP Order" means the *Final  Order (I) Authorizing Debtor to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority*

12

*Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Secured Party, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief*, entered by the Court on February 9, 2021 [Docket No. 126].

42.    "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) that has not been reversed, stayed, modified, or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

43.    "General Claims Bar Date" means June 30, 2021, at 5:00 p.m. Eastern Time, which is the general deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims against the Debtor that arose prior to the Petition Date.

44.    "General Unsecured Claim" means any Claim against the Debtor or Estate that is not an Other Secured Claim, Pacific Life Secured Claim (except to the extent not satisfied in full), the Pacific Life DIP Loan Claim (except to the extent not satisfied in full), Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim or the Marriott Claim.

45.    "Governmental Unit" means the United States; State; Commonwealth, District, Territory, municipality, foreign state, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under Chapter 11), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

13

46.    "GUC Contribution Amount" means $500,000 of the Sale Proceeds that Pacific Life agrees may be distributed to fund the GUC Contribution Amount (which amounts would otherwise be distributed on account of the Pacific Life Secured Claim or the Pacific Life DIP Loan Claim), to be deposited to the Liquidation Trust Asset Account on the Effective Date, or as soon as practicable thereafter, for Pro Rata distribution to Holders of Allowed General Unsecured Claims free and clear of any liens, claims or encumbrances of Pacific Life, provided however, that to the extent that all Allowed General Unsecured Claims are fully and indefeasibly paid pursuant to the treatment provided in Article III of the Plan, any remaining amounts of the GUC Contribution Amount shall be distributed to Pacific Life in accordance with the treatment provided in Article III of the Plan solely to the extent that the Pacific Life Secured Claim and/or the Pacific Life DIP Claim have not been fully satisfied pursuant to the Plan.  For avoidance of doubt, the GUC Contribution Amount is without prejudice of the rights of Holders of Allowed General Unsecured Claims to receive additional Pro Rata Distributions of the net proceeds of Liquidating Trust Assets, as provided under the Plan.

47.    "Holder" means an Entity holding a Claim or Equity Interest.

48.    "Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

49.    "Initial Distribution Date" means the Effective Date, or as soon as practicable thereafter when the initial distribution shall be made to the Holders of Allowed Claims, as determined by the Liquidating Trustee in its reasonable discretion.

14

50.    "<u>Insider</u>" means an insider of the Debtor, as defined in Section 101(31) of the Bankruptcy Code.

51.    "<u>Insurance Policies</u>" means all insurance policies maintained by the Debtor.

52.    "<u>Interim Fee Order</u>" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 109], entered by the Bankruptcy Court on February 5, 2021.

53.    "<u>Lien</u>" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind) to secure payment of a debt or performance of an obligation.

54.    "<u>Liquidation Proceeds</u>" means any Cash or other consideration paid to or realized by the Debtor or the Liquidating Trustee, as applicable, upon the sale, transfer, assignment, or other disposition of the Liquidating Trust Assets.

55.    "<u>Liquidating Trust</u>" means the grantor trust to be created upon the Effective Date for the benefit of the Beneficiaries.

56.    "<u>Liquidating Trust Agreement</u>" means the agreement, substantially in the form included in the Plan Supplement governing the Liquidating Trust, as it may be subsequently modified from time to time.

57.    "<u>Liquidating Trust Assets</u>" means the assets held in the Liquidating Trust comprised of (i) Cash, including the Plan Contribution Amount; (ii) all Causes of Action the Debtor holds or may hold against any Entity; (iii) all Claims and rights of the Debtor under any

15

Insurance Policies; and (iv) any and all other assets, interests, rights, claims and defenses of the

Debtor or Estate, including, without limitation, all rights under any order of the Bankruptcy

Court.  For avoidance of doubt, Liquidating Trust Assets includes (i) any and all tax refunds to

which the Debtor may be entitled; and (ii) the Debtor's rights, claims and causes of action in

*Wardman Tower Residential Condominium Unit Owners Association v. JBG Smith Properties, et*

*al*, pending in the Superior Court of the District of Columbia under Case No. 2020 CA 004807

B.

58.    "Liquidating Trust Assets Account" means an interest-bearing bank

account or money-market account to be established and held in trust by the Liquidating Trustee

on or after the Effective Date for the purpose of holding the Liquidating Trust Assets to be

distributed pursuant to the Plan and any interest, dividends, or other income earned upon the

investment of the Liquidating Trust Assets.  The Liquidating Trust Assets Account will be

initially funded by the Debtor or Liquidating Trustee, as applicable, on or immediately after the

Effective Date with the Plan Contribution Amount.

59.    "Liquidating Trust Interests" means the non-transferable interests in the

Liquidation Trust, distributions of which will be made to Holders of Allowed Other Secured

Claims, the Allowed Pacific Life Claim,  Allowed Priority Tax Claims, Allowed Priority Non-

Tax Claims, Allowed General Unsecured Claims, and the Allowed Marriott Claim, in

accordance with Article III and V hereof.

60.    "Liquidating Trustee" means the Person appointed by the Debtor to act as

trustee of the Liquidating Trust in accordance with the terms of the Plan, the Confirmation

16

Order, and the Liquidating Trust Agreement, or such successor appointed as the trustee in accordance with the Liquidating Trust Agreement.  The initial Liquidating Trustee shall be James D. Decker.

61.    "Manager" means James D. Decker, in his capacity as the sole and independent manager to the Debtor.

62.    "Marriott" means Marriott Hotel Services, Inc. and any of its direct or indirect parents, subsidiaries, affiliates, successors, assigns, and their respective current and former officers, directors, principals, partners, members, management, employees, shareholders, trustees, agents, financial advisors, attorneys, accountants, professionals, advisors, and representatives.

63.    "Marriott Claim" means any and all Claims that have been or could have been asserted by Marriott against the Debtor and Pacific Life, including, without limitation, the Claims asserted under or in connection with (i) the Maryland Action' (ii) the *Hotel Management Agreement* between Debtor and Marriott, as set forth in Proof of Claim filed by Marriott on June 30, 2021, Docketed as Claim 42; and (iii) Marriott's alleged right to setoff and recoupment under applicable law with respect to the FF&E Reserve.

64.    "Marriott Contribution Amount" means Cash in the amount of $18,000,000, which amount is comprised of (i) the existing balance of the FF&E Reserve, plus (ii) Sale Proceeds that Pacific Life agrees may be distributed to Marriott (which amounts would otherwise be distributed in whole or in part on account of the Pacific Life Secured Claim or the Pacific Life DIP Loan Claim), solely to the extent Marriott supports the Marriott Settlement,

17

votes in favor of the Plan, and does not otherwise oppose the releases provided under the Plan, to be distributed to the Holder of the Marriott Claim free and clear of any liens, claims or encumbrances of Pacific Life in accordance with the terms of the Plan.  For the avoidance of doubt, except with respect to the inclusion of the existing balance of the FF&E Reserve, the Marriott Contribution Amount shall not be subject to reduction, setoff, withholding or recoupment in any way.

65.    " Marriott Settlement Motion" means that certain *Motion to Approve Compromise And Settlement of Claims and Causes of Action by and between the Debtor, Marriott Hotel Services, Inc, PL Wardman Member, LLC and Pacific Life Insurance Company,* filed in the Bankruptcy Court.

66.    "Marriott Settlement Order" means the order granting the Marriott Settlement Motion entered by the Bankruptcy Court.

67.    "Maryland Action" means Civil Action No. 483406-V in the Circuit Court for Montgomery County, Maryland, originally commenced by Marriott against the Debtor and Pacific Life on September 8, 2020 and removed to and pending in the Bankruptcy Court as Adversary Proceeding No. 21-50263 including the Debtor's counterclaim against Marriott filed therein, and Case No. 8:21-cv-1297 pending in the United States District Court for the District of Maryland between Marriott and Pacific Life.

68.    "Ordinary Course Professional Order" means the *Order (I) Authorizing the Debtor to Retain and Compensate Professionals Utilized in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 108].

18

69.     "Other Secured Claim" means any Secured Claim against the Debtor, other than the Pacific Life Claim or any tax claim asserted by a Governmental Unit that may constitute a Secured Claim under applicable non bankruptcy law.

70.     "Pacific Life" means Pacific Life Insurance Company and any of its direct or indirect parents, subsidiaries, affiliates, successors, and assigns and each of their current and former officers, directors, principals, partners, members, employees, shareholders, trustees, agents, financial advisors, attorneys, accountants, professionals, advisors, and representatives.

71.     "Pacific Life Secured Claim" means the pre-petition Secured Claim held by Pacific Life against the Debtor pursuant to the Final DIP Order.

72.     "Pacific Life DIP Loan Claim" means the Administrative Expense Claim and Secured Claim held by Pacific Life against the Debtor pursuant to the Final DIP Order.

73.     "Person" means any individual, corporation, limited liability company, general partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit, or other Entity.

74.     "Petition Date" means January 11, 2021, the date on which the Debtor filed a voluntary petition for relief commencing the Chapter 11 Case.

75.     "Plan" means this Plan of Liquidation, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules, including, without limitation, any exhibits and schedules hereto, either in its present form or as the same may be amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof.

19

76.    "Plan Contribution Amount" means the contribution made by Pacific Life to the Liquidating Trust from the Sale Proceeds in the amounts required to: (i) fund the GUC Contribution Amount, (ii) fund the Marriott Contribution Amount; (iii) pay (or reserve for payment) of any amounts, costs or expenses arising or coming due pursuant to the Sale Order or the Sale; (iv) fund the Professional Fee Reserve; (v) pay (or reserve for payment of) Administrative Claims; Non-Priority Tax Claims and Priority Tax Claims, (vi) initially fund the Liquidation Trust Assets Account in an amount to be mutually agreed by the Debtor, the Liquidating Trustee, and Pacific Life and (vii) make additional payments that may be required or contemplated pursuant to the Plan and fund the necessary reserves required under the Liquidating Trust and the Plan (including, without limitation the Disputed Claim Reserve and amounts payable to the United States Trustee pursuant to 28 U.S.C. § 1930) in the reasonable judgment and estimation of the Liquidating Trustee, provided however, that to the extent the Liquidating Trust holds any Plan Contribution Amount in excess of the amounts necessary to satisfy the payments and expenses provided herein and after the full administration of the Plan by the Liquidating Trustee, any such remaining Plan Contribution Amount shall be distributed to Pacific Life in accordance with the treatment provided in Article III of the Plan solely to the extent that the Pacific Life Secured Claim and/or the Pacific Life DIP Claim have not been fully satisfied pursuant to the Plan.

77.    "Plan Supplement" means the pleading or pleadings identified in the Plan or Disclosure Statement for filing with the Bankruptcy Court not later than seven (7) calendar days prior to the deadline established by the Bankruptcy Court for filing and serving objections

to Confirmation of the Plan, which shall include certain exhibits and schedules to this Plan, as well as documents, agreements, and instruments evidencing and effectuating the Plan.

78.     "Priority Non-Tax Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

79.     "Priority Tax Claim" means a Claim that is entitled to priority under Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

80.     "Pro Rata" means the proportion that the Allowed Claim in a particular Class bears to the aggregate amount of (a) Allowed Claims in such Class as of the date of determination, plus (b) Disputed Claims in such Class as of the date of determination, in their aggregate face amounts or such other amount: (i) as calculated by the Liquidating Trustee on or before the date of any such Distribution; (ii) as determined by an Order of the Bankruptcy Court estimating such Disputed Claim; or (iii) as directed by a Final Order of the Bankruptcy Court.

81.     "Professional" means an Entity:  (a) employed pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

82.     "Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to Sections 330, 331, or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

83.     "Professional Fee Reserve" means a reserve fund established by the Liquidating Trustee on or as soon as practicable after the Effective Date, to pay any accrued and unpaid (a) Professional Fee Claims incurred by a Professional and which have not yet been approved by the Bankruptcy Court; (b) fees or expenses incurred by an entity or person retained under the Ordinary Court Professional Order; (c) Professional Fee Claims approved by the Bankruptcy Court; and (d) fees and expenses of the Manager as described in Section II.C of the Plan.  The amounts deposited into the Professional Fee Reserve shall be free and clear of all liens, claims and encumbrances of any Persons or Entities except to the extent that any excess amounts remain in the Professional Fee Reserve after payment of all Allowed Professional Fee Claims, such excess amounts to be distributed in accordance with the Plan.

84.     "Proof of Claim" means a proof of claim filed pursuant to Section 501 of the Bankruptcy Code or any order of the Bankruptcy Court, together with supporting documents.

85.     "Purchaser" shall mean the purchaser(s) of all or a portion of the Debtor's assets pursuant to the Sale Order.

86.     "Rejection Bar Date" means the last date for any Entity whose claims arise out of the Bankruptcy Court approved rejection of an executory contract or unexpired lease to file a proof of claim for damages related to such rejection unless otherwise ordered by the Court.  The Rejection Bar Date for Claims arising from the rejection of executory contracts and unexpired leases rejected pursuant to the Plan shall be 30 days after the Effective Date of the Plan, unless otherwise provided in the Confirmation Order.  For all other rejected executory

22

contracts and unexpired leases, the Rejection Bar Date shall be the date set forth in the order approving such rejection.

87. "Released Parties" means, collectively, (a) the Debtor, (b) the Debtor's Manager, (c) Pacific Life, (d) PL Wardman Member, LLC, a wholly owned subsidiary of Pacific Life, and (e) Marriott, and (f) each of such Entities 'respective successors and assigns, and respective current and former shareholders, affiliates, subsidiaries, principals, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, and consultants. For avoidance of doubt, Released Parties does not extend to any Entities or Persons with respect to the Debtor's claims or Causes of Action in the *Wardman Tower Residential Condominium Unit Owners Association v. JBG Smith Properties, et al* action currently pending in the Superior Court of the District of Columbia under Case No. 2020 CA 004807.[4] As between the Debtor, Pacific Life and PL Wardman Member, LLC on the one hand, and Marriott, on the other hand, the release provision provided in Section VIII.E.3 controls.

88. "Residue" shall means the net proceeds of Liquidating Trust Assets remaining, if any, after (i) the full and indefeasible payment of the Allowed Other Secured Claims, the Pacific Life Secured Claim, Allowed Administrative Claims (including the Pacific Life DIP Loan Claim), Allowed Priority Tax Claims, Allowed Priority-Non Tax Claims, Allowed General Unsecured Claims, inclusive of payment of applicable interest (where required) at the Federal Judgement Rate except with respect to the Pacific Life Secured Claim, Pacific Life

---

[4] For avoidance of doubt, the Debtor is not providing a release to the defendants in this lawsuit with respect to any of the Debtor's asserted rights, claims or causes of action against any of the parties in such lawsuit.

23

DIP Loan Claim; (ii) the full and indefeasible payment of the Marriott Contribution Amount to the Holder of the Marriott Claim in full and final satisfaction of such claim; and (iii) the establishment of appropriate reserves for any Disputed Claims and costs or expenses either incurred or expected to be incurred by the Liquidation Trust or Liquidating Trustee in connection with the Plan.

89. "Sale" means the assets sold to the Purchaser and approved pursuant to the Sale Order

90. "Sale Order" means the order entered on July 22, 2021, granting the *Motion for Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of the Debtor's Assets Outside of the Ordinary Course of Business; (B) Authorizing the Sale of Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), 363(f), 363(m) and 1146; (C) Assuming and Assigning Certain Executory Contracts and Unexpired Leases; and (D) Granting Other Related Relief* [Docket No. 292].

91. "Sale Proceeds" means the proceeds from the sale of the Debtor's assets to the Purchaser(s) pursuant to Sale Order after the payment of the Plan Contribution Amount to the Liquidating Trust.

92. "Schedules" means the schedules of assets and liabilities as the Bankruptcy Court required the Debtor to file pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time, and the Debtor's statements of financial affairs filed with the

LEGAL02/40807839v5

Bankruptcy Court, as the Bankruptcy Court required the Debtor to file pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

93.    "Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under Sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

94.    "Subsequent Distribution Date" means any date after the Initial Distribution Date upon which the Liquidating Trust makes a distribution to any Holders of Allowed Administrative, Secured, Priority, or Unsecured Claims.

95.    "Tax" means any tax, charge, fee, levy, impost, or other assessment by any federal, state, local, or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation, and withholding tax.  "Tax" shall include any interest or additions attributable to, imposed on, or with respect to such assessments.

96.    "Tax Claim" means all or that portion of an Allowed Claim held by a Governmental Unit for a Tax assessed or assessable against the Debtor.

97.    "Unimpaired Claim" means an unimpaired Claim within the meaning of Section 1124 of the Bankruptcy Code.

98.    "U. S. Trustee" means the Office of the United States Trustee for the District of Delaware.

99.    "Voting Instructions" means the instructions for voting on the Plan contained in Article 1 of the Disclosure Statement and in the Ballots.

100.    "Voting Record Date" means the date fixed by the Bankruptcy Court as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Plan.

## II.

## UNCLASSIFIED ADMINISTRATIVE CLAIMS,

## PROFESSIONAL FEES, AND PRIORITY TAX CLAIMS

### A.    Introduction

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code, as set forth below.

### B.    Administrative Claims

Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim, (other than a Professional Fee Claim), shall receive, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order Allowing such Claim; (b) in accordance with the

26

terms and conditions of agreements between the Holder of such Claim and the Debtor or the Liquidating Trustee, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtor's business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtor's business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.

Notwithstanding any provision in the Plan regarding payment of Administrative Claims to the contrary, all Administrative Claims (other than Professional Fee Claims and the Pacific Life DIP Loan Claim which is Allowed) must be filed by either: (i) the Bar Date Order, solely with respect to Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code, or (ii) the applicable Administrative Claims Bar Date. Holders of Administrative Claims that do not file/have not filed such requests by the applicable deadlines provided for herein may be subject to objection for untimeliness and may be prohibited by order of the Bankruptcy Court from asserting such claims against the Debtor, the Estate, the Liquidating Trust, or their successors or assigns, or their property.

## C.     **Professional Fee Claims**

Professionals requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code or required to file fee applications by order of the Bankruptcy Court for services rendered prior to the Effective Date must file and serve pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days

27

after the Effective Date.[5]  All such applications for final allowance of compensation and

reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy

Court.  Any objection to Professional Fee Claims shall be filed on or before the objection

deadline specified in the application for final compensation or order of the Bankruptcy Court.

On the Effective Date, or as soon as practicable thereafter, the Liquidating Trustee shall

establish an appropriate Professional Fee Reserve based upon estimates of anticipated fees

provided by Professionals for services rendered and expenses incurred prior to the Effective

Date, including estimated fees for services rendered, and actual and necessary costs incurred, in

connection with the filing, service and prosecution of any applications for allowance of

Professional Fees pending on the Effective Date or filed and/or served after the Effective Date.

The Liquidating Trustee shall supplement the Professional Fee Reserve if the amount originally

established is insufficient to pay Allowed Professional Fee Claims.  Upon approval of the fee

applications by the Bankruptcy Court for Professional Fee Claims, the Liquidating Trustee shall

pay Professionals all of their respective accrued and Allowed fees and reimburse Allowed

expenses arising prior to the Effective Date.

## D.    <u>Priority Tax Claims</u>

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less

favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge

of each Allowed Priority Tax Claim, the Liquidating Trust shall pay each holder of an Allowed

---

[5] For avoidance of doubt, any entities or persons employed or retained pursuant to the Ordinary Course Professional Order shall not be required to file applications for payment of fees and reimbursement of expenses on behalf of the Debtor.

LEGAL02/40807839v5

Priority Tax Claim the full unpaid amount of such Allowed Priority Tax Claim as follows: (a) Cash equal to the unpaid portion of the Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, (b) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable non-bankruptcy law as of the calendar month in which the Confirmation Date occurs in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, or (c) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the Debtor shall have agreed upon in writing.

**III.**

**CLASSIFICATION AND TREATMENT OF**

**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.    Summary**

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation, and Distribution (if any) pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been

paid or otherwise settled prior to the Effective Date.

**B.**     <u>**Classification and Treatment of Claims against the Debtor**</u>

The classification of Claims and Equity Interests against the Debtor pursuant to the Plan

is as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 – Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 2 – Other Secured Claims | Unimpaired | Not Entitled to Vote |
| Class 3 – Pacific Life Secured Claim | Impaired | Entitled to Vote |
| Class 4 – Marriott Claim | Impaired | Entitled to Vote |
| Class 5 – General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 – Equity Interests | Impaired | Not Entitled to Vote |

    1.     <u>Class 1 – Priority Non-Tax Claims</u>

        a.     **Classification:**  Class 1 consists of Priority Non-Tax Claims.

        b.     **Treatment:**  Each Holder of an Allowed Priority Non Tax Claim

shall receive, in full and final satisfaction of such Allowed Priority Non Tax Claim, (i)

Cash in the amount of such claim, as soon as practicable following the later of: (a) the

Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim;

or (ii) such other treatment as may be agreed by the Debtor and such holder.

        c.     **Voting:**  Class 1 is not an Impaired Class and Holders of Priority

Non-Tax Claims are not entitled to vote on the Plan.

    2.     <u>Class 2 – Other Secured Claims</u>

      **a.**      **Classification:**  Class 2 consists of Other Secured Claims.  For purposes of distributions under the Plan, each Holder of Other Secured Claim in Class 2 is considered to be in its own separate subclass within Class 2 (*i.e.*, Class 2A, Class 2B, *etc.*), and each such subclass is deemed to be a separate Class for purposes of the Plan.

      **b.**      **Treatment:**  Except to the extent previously paid in full, to the extent any Other Secured Claims exist, at the option of the Debtor or the Liquidating Trustee, as applicable, one of the following treatments shall be provided: (i) the Holder of such Other Secured Claim shall retain its Lien on its collateral until such collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such collateral, shall be paid to such Holder in full satisfaction, release, and discharge of such Allowed Other Secured Claim; (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Other Secured Claim, or as otherwise agreed between the Holder of such Other Secured Claim and the Debtor or the Liquidating Trustee, as applicable, the Holder of such Other Secured Claim will receive a Cash payment equal to the amount of its Other Allowed Other Secured Claim in full and final satisfaction, settlement, discharge and release of, and in exchange for such Other Secured Claim; or (iii) the collateral securing the Creditor's Other Secured Claim shall be abandoned to such Creditor, in full and final satisfaction and release of such Other Secured Claim.

      **c.**      **Voting:**  Class 2 is not an Impaired Class, and Holders of Other Secured Claims are not entitled to vote on the Plan.

3.     Class 3 – Pacific Life Secured Claim

**a.     Classification:** Class 3 consists of Pacific Life Secured Claim and the Pacific Life DIP Loan Claim.

**b.     Treatment:** the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim are and shall be Allowed in the full amount of such claim as provided under the Final DIP Order.  To the extent not paid previously in whole or part in connection with a closing of the sale of Pacific Life's collateral, on or as soon as practicable after the Effective Date, the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim shall receive Cash in the full Allowed amount of such Claim, after the payment of the Plan Contribution Amount to the Liquidating Trust, in full and final satisfaction and release of such claim *provided however* that if the Liquidating Trustee does not have sufficient Cash to fully and indefeasibly pay the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim on the Effective Date, Pacific Life shall receive subsequent Distributions (including Distributions on account of any excess amounts of the Plan Contribution Amount), from the net proceeds of any Liquidating Trust Assets that constitute Collateral under the Final DIP Order, until the remainder of the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim is fully paid.  For avoidance of doubt, the Holder of the Pacific Life Secured Claim and the Pacific Life DIP Claim shall not receive any distributions from the GUC Contribution Amount on account of any of such holder's unsecured deficiency claims unless each Holder of an Allowed General Unsecured Claim is paid in full.

32

    **c.**    **Voting:**  Class 3 is an Impaired Class and the Holder of the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim is entitled to vote to accept or reject the Plan.

    4.    <u>Class 4 – Marriott Claim</u>

    **a.**    **Classification:**  Class 4 consists of the Marriott Claim.

    **b.**    Treatment:  Provided Marriott supports the Marriott Settlement, votes in favor of the Plan and does not oppose or otherwise seek to repudiate the releases provided under the Plan, on the Effective Date, the Holder of the Allowed Marriott Claim shall receive the Marriott Contribution Amount, in full and final satisfaction, settlement and release of, and in exchange for, such Marriott Claim.  The Marriott Claim shall be deemed an Allowed Claim and receive the treatment herein in full satisfaction of such claim subject to the entry of the Marriott Settlement Order and the occurrence of the Effective Date.  For the avoidance of doubt, with respect to the Released Parties, the Marriott Contribution Amount shall be the sole source of recovery and Distributions to the Holder of the Marriott Claim on account of such claim, provided, that in no event shall the payment of the Marriott Contribution Amount limit (i) Marriott's defenses in response to the claims, if any, of third parties to the extent such claims are not released pursuant to the Third Party Release, and (ii) Marriott's right to recover amounts owing to or recoverable by Marriott from third parties other than the Released Parties

    **c.**    **Voting:**  Class 4 is an Impaired Class and the Holder of the Marriott Claim is entitled to vote to accept or reject the Plan.

33

5.  Class 5 – General Unsecured Claims

a.  **Classification:**  Class 5 consists of all General Unsecured Claims.

b.  **Treatment:**  Each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, settlement, and release of, and in exchange for such Allowed General Unsecured Claim: (i) Pro Rata Distribution of the GUC Contribution Amount; (ii) Pro Rata Distribution of the net Liquidation Trust Proceeds that do not constitute Collateral under the Final DIP Order; and (iii) solely in the event the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim are indefeasibly and fully paid, Pro Rata Distributions from the net proceeds derived from the remaining Liquidating Trust Assets.

c.  **Voting:**  Class 5 is an Impaired Class and Holders of Claims in this Class are entitled to vote to accept or reject the Plan.

6.  Class 6 – Equity Interests

a.  **Classification:**  Class 6 consists of Equity Interests.

b.  **Treatment:**  As of the Effective Date, all Equity Interests of any kind shall be deemed void, cancelled, and of no further force and effect and the Holders thereof shall not receive or retain any property or interest in property under the Plan on account of such Equity Interests, *provided however* that Each holder of an Equity Interest shall receive such Holder's Pro Rata share of the Residue, if any, determined in accordance with its percentage ownership of Equity Interests in the Debtor.

34

c.      **Voting:** Class 6 is deemed to have rejected the Plan and Holders of Equity Interests are not entitled to vote on the Plan.

# IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

A.      **Voting Classes**

Each Holder of an Allowed Claim in Classes are entitled to vote either to accept or to reject the Plan.  Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.

B.      **Presumed Acceptance of Plan**

The Holders of Claims in Class 1 and Class 2 are unimpaired under the Plan and are therefore deemed to accept the Plan.

C.      **Acceptance by Impaired Classes**

Class 3, 4 and 5 shall have accepted the Plan if: (a) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.[6]

---

[6] In the event the Debtor seeks confirmation of the Plan under Section 1129(b) of the Bankruptcy Code, the Debtor will not seek to propose Class 3 (Pacific Life Secured Claim) as the impaired accepting class required to confirm the Plan provided under section 1129(a)(10) of the Bankruptcy Code.

35

**D.**      **Presumed Rejection of Plan**

The Holders of Class 6 Equity Interests are not anticipated to receive any distributions under the Plan and are therefore deemed to reject the Plan and are not entitled to vote.

**E.**      **Nonconsensual Confirmation**

Because Class 6 is deemed to reject the Plan by operation of law, the Debtor will request the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code. Without limiting the foregoing, in the event that any Class of Claims entitled to vote on the Plan fails to accept the Plan as required by Section 1129(a) of the Bankruptcy Code, the Plan may be amended and, in any event, as applicable, the Debtor reserves the right to seek confirmation of the Plan over such rejection pursuant to Section 1129(b) of the Bankruptcy Code.

## V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.**      **Settlement of Claims and Causes of Action Between the Debtor and Marriott**

The entry of the Marriott Settlement Order and confirmation of this Plan shall constitute the Bankruptcy Court's approval of the compromise and settlement of claims, causes of action, and controversies by and between the Debtor, Pacific Life, PL Wardman Member, LLC, and Marriott, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtor, its Estate, and is fair, equitable, reasonable, and in the best interests of the Debtor and its Estate.

36

**B.**    **Dissolution of Debtor**

From and after the Effective Date, the Liquidating Trustee may dissolve the Debtor, without any further action required on the part of the Debtor or the Debtor's officers, directors, managers, members, equity holders, and/or any other parties; provided, however, the Liquidating Trustee in his or her discretion shall be authorized to take any and all actions necessary or desirable in relation to dissolution of the Debtor.

**C.**    **Appointment of the Liquidating Trustee**

The initial Liquidating Trustee is James Decker.  From and after the Effective Date, professionals may be retained by the Liquidating Trustee without further need for documentation or Bankruptcy Court approval.  All fees and expenses incurred by the professionals retained by the Liquidating Trustee following the Effective Date shall be paid by the Liquidating Trust from the Liquidating Trust Assets (after payment in full of all Allowed Administrative Claims) in accordance with the Liquidating Trust Agreement.

**D.**    **The Liquidating Trust**

1.    Formation of the Liquidating Trust

On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, *inter alia*, (a) administering the Liquidating Trust Assets including the distributions and payments contemplated by the Plan Contribution Amount, (b) prosecuting and/or resolving all Disputed Claims, (c) investigating and pursuing any Causes of Action the Debtor holds or may hold against any Entity, and (d) making all Distributions to the Beneficiaries provided for under the Plan. The Liquidating Trust is intended

37

to qualify as a liquidating trust pursuant to Treas. Reg. § 301.7701-4(d), with no objective to

continue or engage in the conduct of the trade or business, except to the extent reasonably

necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.  Accordingly,

the Liquidating Trustee shall, in an expeditious but orderly manner, make distribution to Holders

of Allowed Claims subject to the terms of this Plan, liquidate and convert to Cash the remaining

Liquidating Trust Assets, and make timely Distributions to the Beneficiaries of the proceeds

thereof, and not unduly prolong the duration of the Liquidating Trust.  Neither the Liquidating

Trust nor the Liquidating Trustee shall be or shall be deemed a successor-in-interest of the

Debtor for any purpose other than as specifically set forth herein or in the Liquidating Trust

Agreement.

2. <u>Funding of the Liquidating Trust</u>

On the Effective Date, the Liquidating Trust Assets shall vest automatically in the

Liquidating Trust.  The Plan shall be considered a motion pursuant to Sections 105, 363 and 365

of the Bankruptcy Code for such relief.  The transfer of the Liquidating Trust Assets to the

Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries. The assets

comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by

the Debtor to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and

then by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the

Liquidating Trust. The Beneficiaries shall be treated as the grantors and owners of the

Liquidating Trust. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall

succeed to all of the Debtor's rights, title and interest in the Liquidating Trust Assets, and the Debtor will have no further interest in or with respect to the Liquidating Trust Assets.

Except to the extent definitive guidance from the IRS or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations or the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, as soon as possible after the Effective Date, the Liquidating Trustee shall make a good-faith valuation of the Liquidation Trust Assets. The valuation shall be used consistently by all parties (including, without limitation, the Debtor, the Liquidating Trust, the Beneficiaries) for all federal income tax purposes.

E.    **Rights and Powers of the Liquidating Trustee**

The Liquidating Trustee shall be deemed the Estate's representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules to act on behalf of the Liquidating Trust. Without limiting the foregoing, the Liquidating Trustee will have the right to, among other things, (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate the Liquidating Trust Assets; (3) investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtor holds or may hold

39

against any Entity; (4) make Distributions as contemplated hereby, (5) establish and administer any necessary reserves for Disputed Claims that may be required; (6) object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (7) assert or waive any attorney-client privilege on behalf of the Debtor and Estate with regard to acts or events during time periods prior to the Petition Date; and (8) employ and compensate professionals and other agents, including, without limitation, existing Professionals employed by the Debtor in accordance with the Liquidating Trust Agreement or the Plan, *provided*, *however*, that any such compensation shall be made only out of the Liquidating Trust Assets, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

**F.      Fees and Expenses of the Liquidating Trust**

Subject to payment in full of all Allowed Administrative Claims, and except as otherwise ordered by the Bankruptcy Court, expenses incurred by the Liquidating Trust on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court.

**G.      Transfer of Beneficial Interests in the Liquidating Trust**

Liquidating Trust Interests shall not be transferable except upon death of the interest holder or by operation of law. The Liquidating Trust shall not have any obligation to recognize any transfer of Claims or Equity Interests occurring after the Distribution Record Date.

**H.**    **Plan Contribution Amount**

On or as soon as practicable following the Effective Date, the Liquidating Trust Assets Account shall be opened by the Liquidating Trustee and funded with the Plan Contribution Amount and which funds shall constitute Liquidating Trust Assets.  Thereafter, from time to time, upon receipt of any Liquidation Proceeds or any Causes of Action recoveries, the Liquidating Trustee shall deposit such funds into the Liquidating Trust Assets Account, and they shall become part of the Liquidating Trust Assets.

**I.**    **Litigation of Debtor's Causes of Action**

Except as otherwise provided in this Plan, all Causes of Action are retained, vested in the Liquidating Trust, and preserved pursuant to Section 1123(b) of the Bankruptcy Code.  From and after the Effective Date, all Causes of Action will be prosecuted or settled by the Liquidating Trustee.  Except as otherwise provided in this Plan, to the extent any Causes of Action are already pending on the Effective Date, the Liquidating Trustee, as successor to the Debtor (in any derivative capacity or as an intervening party), will continue the prosecution of such Causes of Action and shall be substituted as plaintiff, defendant, or in any other capacity for the Debtor pursuant to this Plan and the Confirmation Order on the Effective Date without need for any further motion practice or notice in any case, action, or matter.

**J.**    **Full and Final Satisfaction**

Commencing upon the Effective Date, subject to the terms of this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized and directed to distribute the amounts required under the Plan to the Holders of Allowed Claims according to the

41

provisions of the Plan.  Upon the Effective Date, all Debts of the Debtor shall be deemed fixed

and adjusted pursuant to this Plan, and the Liquidating Trust shall have no liability on account of

any Claims or Equity Interests except as set forth in this Plan and in the Liquidating Trust

Agreement.  All payments and all distributions made by the Liquidating Trustee under the Plan

shall be in full and final satisfaction, settlement, and release of all Claims against the Liquidating

Trust; *provided, however*, that nothing contained in this Section V of the Plan, or in any other

provision of this Plan, shall be deemed to constitute or result in a discharge of the Debtor under

Bankruptcy Code Section 1141(d).

## K.    <u>Distribution Procedures</u>

1.    <u>Distribution Dates</u>.  The Liquidating Trustee shall make Distributions to Holders

of Claims as provided in Article III of the Plan.

2.    <u>Subsequent Distributions</u>.  Any Distribution not made on the Initial Distribution

Date or a Subsequent Distribution Date because the Claim relating to such Distribution had not

been Allowed on that Distribution Date shall be held by the Liquidating Trust for Distribution on

any Subsequent Distribution Date after such Claim is Allowed.  No interest shall accrue or be

paid on the unpaid amount of any Distribution.

3.    <u>Distribution Record Date</u>.  Except as otherwise provided in a Final Order of the

Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule

3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims

for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for

objecting to the transfer may not have expired by the Distribution Record Date.  The Liquidating

42

Trustee shall have no obligation to recognize any transfer of any Claim occurring after the

Distribution Record Date.  In making any Distribution with respect to any Claim, the Liquidating

Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the

Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the

Holder thereof as of the close of business on the Distribution Record Date and upon such other

evidence or record of transfer or assignment that is known to the Liquidating Trustee as of the

Distribution Record Date.

       4.     <u>Manner of Cash Payments Under the Plan or Liquidating Trust Agreement</u>.  Cash

payments made pursuant to the Plan or Liquidating Trust Agreement shall be in United States

dollars by checks drawn on a domestic bank selected by the Liquidating Trustee or by wire

transfer from a domestic bank, at the option of the Liquidating Trustee.

       5.     <u>Time Bar to Cash Payments by Check</u>.  Checks issued by the Liquidating Trustee

on account of Allowed Claims shall be null and void if not negotiated within 90 days after the

date of issuance thereof.  Requests for the reissuance of any check that becomes null and void

pursuant to this Article shall be made directly to the Liquidating Trustee by the Holder of the

Allowed Claim to which the check was originally issued.  Any Claim in respect of such voided

check shall be made in writing on or before the later of six months from the Effective Date or 90

days after the date of issuance thereof.  After that date, all Claims in respect of voided checks

shall be disallowed and forever barred and the proceeds of those checks shall revest in and

become the property of the Liquidating Trust as unclaimed property in accordance with Section

347(b) of the Bankruptcy Code.

**L.**     **Resolution of Disputed Claims**

1.     No Distribution Pending Allowance.  Notwithstanding any other provision of the Plan, the Liquidating Trustee shall not Distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed.  Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim.

2.     Resolution of Disputed Claims.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Liquidating Trustee shall have the right to make, file, prosecute, settle, withdraw, or resolve objections to Claims.  The costs of pursuing the objections to Claims shall be borne by the Liquidating Trust.  From and after the Confirmation Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent, the Liquidating Trustee elects to withdraw any such objection or the Liquidating Trustee and the Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Equity Interest without approval of the Bankruptcy Court.

3.     Objection Deadline.  All objections to Disputed Claims shall be filed and served upon the Claimant not later than the Claims Objection Deadline, as such may be extended by order of the Bankruptcy Court.  If and when the Liquidating Trustee ever determines that there is likely to be remaining Liquidation Proceeds realized by the Liquidating Trust after the payment (or reserve for payment) in full of all Liquidating Trust expenses, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Other

44

Secured Claims, the Allowed Pacific Life Claim, the Allowed Marriott Claim, and Allowed

General Unsecured Claims, with interest accrued from and after the Petition Date, the

Liquidating Trustee will file a notice to this effect with the Bankruptcy Court with such

additional excess proceeds to be distributed Pro Rata to Equity Security Holders as Residue.

4.      Estimation of Claims.  At any time, (a) prior to the Effective Date, the Debtor,

and (b) after the Effective Date, the Liquidating Trustee, may request that the Bankruptcy Court

estimate any contingent or unliquidated Claim to the extent permitted by Section 502(c) of the

Bankruptcy Code regardless of whether the Debtor or the Liquidating Trust has previously

objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the

Bankruptcy Court shall have jurisdiction to estimate any Claim at any time to any such objection.

If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount

shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim,

as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum

limitation on the Claim, the Debtor or the Liquidating Trust, as applicable, may elect to pursue

supplemental proceedings to object to the ultimate allowance of the Claim.  All of the

aforementioned Claims objection, estimation, and resolution procedures are cumulative and not

exclusive of one another.  Claims may be estimated and subsequently compromised, settled,

withdraw, or resolved by any mechanism of the Bankruptcy Court.

5.      Disallowance of Claims.

(a)      Except as otherwise agreed, any and all proofs of claim filed after the Bar

Date shall be deemed disallowed as of the Effective Date without any further notice or action,

45

order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any

Distributions on account of such Claims, unless on or before the Confirmation Date the

Bankruptcy Court has entered an order deeming such Claim to be timely filed.

(b)     Subject to and in accordance with this Plan, any Claims held by Entities

from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code

or Entities that are transferees of transfers avoidable under Section 522(f), 522(h), 544, 545, 547,

548, 549, or 724(a) of the Bankruptcy Code, provided that such Cause of Action is retained by

the Liquidating Trust, shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy

Code, and Holders of such Claims may not receive any Distributions on account of such Claims

until such time as such Causes of Action the Debtor holds or may hold against any Entity have

been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums

due, if any, to the Estate by that Entity have been turned over or paid to the Debtor or

Liquidating Trust.

6.     Adjustment Without Objection.  Any Claim that has been paid or satisfied, or any

Claim that has been amended or superseded, may be adjusted or expunged from the claims

register at the direction of the Debtor or the Liquidating Trustee, as applicable, without an

objection filed and without further notice to or action, order, or approval of the Bankruptcy

Court.

## M.     Reserve Provisions for Disputed Claims

1.     Establishment of Disputed Reserves.  On or prior to a Distribution Date, the

Liquidating Trustee shall reserve Cash required for Distribution on Disputed Claims as if such

Claims were Allowed as filed with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee (the "Disputed Claim Reserve").  On each Distribution Date after the Effective Date in which the Liquidating Trustee makes Distributions to Holders of Allowed Claims, the Liquidating Trustee shall retain on account of Disputed Claims an amount the Liquidating Trustee estimates would be necessary to fund the Pro Rata Share of such Distributions to Holders of Disputed Claims if such Claims were Allowed, with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee.

2.       Maintenance of Disputed Claim Reserves.  The Liquidating Trust shall hold property in the Disputed Claim Reserve in trust for the benefit of the Holders of Disputed Claims that are ultimately determined to be Allowed.  Each Disputed Claim Reserve shall be closed (or deemed closed) by the Liquidating Trust when all Distributions and other dispositions of Cash of other property required to be made hereunder will have been made in accordance with the terms of the Plan.  Upon closure of a Disputed Claim Reserve, all Cash or other property held in that Disputed Claim Reserve shall revest in and become unrestricted property of the Liquidating Trust to be distributed in accordance with the Plan and the Liquidating Trust Agreement.

3.       Limitations on Funding Disputed Claim Reserves.  Except as expressly set forth in the Plan, neither the Debtor nor the Liquidating Trustee shall have any duty to fund any Disputed Claim Reserve except from the Liquidating Trust Assets.

LEGAL02/40807839v5

**N.**    **Rounding**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual Distribution shall reflect a rounding of such fraction down to the nearest cent.

**O.**    **No Cash Payments of Less Than $50 on Account of Allowed Claims**

Notwithstanding anything herein to the contrary, except with respect to Administrative, Priority Tax, Secured and Priority Non-Tax Claims, if a Distribution to be made to a Holder of an Allowed Claim on the Initial Distribution Date or any Subsequent Distribution Date would be $50 or less in the aggregate, no such Distribution will be made to that Holder unless a request therefor is made in writing to the Liquidating Trustee.  If such request is made, such Cash shall be held for such Holder until the earlier of (i) the next time an interim Distribution is made to the Holders of Allowed Claims (unless the Distribution would still be less than $50, in which case this Section shall again apply), or (ii) subject to Section Q below, the date on which Final Distributions are made to the Holders of Allowed Claims.

**P.**    **Delivery of Distributions and Unclaimed Property**

1.    _Delivery of Distributions_.  Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims shall be made by the Liquidating Trustee at (a) the address of each Claimant as set forth in the Schedules, unless superseded by the address set forth on proof(s) of claim filed by such Claimant, or (b) the last known address of such Claimant if no proof of claim is filed or the Debtor or Liquidating Trustee has been notified in writing of a change of address.  If any Distribution is returned as undeliverable, the Liquidating Trustee may, in its discretion, make reasonable efforts to

48

determine the current address of the Holder of the Claim with respect to which the Distribution

was made as the Liquidating Trustee deems appropriate, but no Distribution to any such Holder

shall be made unless and until the Liquidating Trustee has determined the then-current address of

such Holder, at which time the Distribution to such Holder shall be made without interest.

Amounts in respect of any undeliverable Distributions shall be returned to, and held in trust by,

the Liquidating Trustee until the Distributions are claimed or are deemed to be unclaimed

property under Section 347(b) of the Bankruptcy Code, as set forth in Article V, Paragraph K of

the Plan.  The Liquidating Trustee shall have the discretion to determine how to make

Distributions in the most efficient and cost-effective manner possible; *provided, however*, that its

discretion may not be exercised in a manner inconsistent with any express requirements of the

Plan or Liquidating Trust Agreement.  On or about the time that the final Distribution is made,

the Liquidating Trustee may make a charitable donation with undistributed funds if, in the

reasonable judgment of the Liquidating Trustee, the cost of calculating and making the Final

Distribution of the remaining funds is excessive in relation to the benefits to the holders of

Claims that would otherwise be entitled to such Distributions, and such charitable donation is

provided to an entity not otherwise related to the Debtor or the Liquidating Trustee.

      2.    <u>Unclaimed Property</u>.  Except with respect to property not distributed because it is

being held in the Disputed Claim Reserve, Distributions that are not claimed by the later of the

expiration of six (6) months from the Effective Date or (90) days after the date of a Distribution

shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and

shall vest or revest in the Liquidating Trust, and the Claims with respect to which those

Distributions are made shall be automatically cancelled.  After the expiration of that period, the

claim of any Entity to those Distributions shall be disallowed and forever barred.  Nothing

contained in the Plan shall require the Liquidating Trust to attempt to locate any holder of an

Allowed Claim.  All funds or other property that vest or revest in the Liquidating Trust pursuant

to this Article shall be distributed by the Liquidating Trustee to the other holders of Allowed

Claims or Equity Interests in accordance with the provisions of the Plan or the Liquidating Trust

Agreement.

**Q.**     **Withholding Taxes**

In connection with making Distributions under this Plan, to the extent applicable, the

Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed

on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to

such withholding and reporting requirements.  The Liquidating Trustee may withhold the entire

Distribution to any Holder of an Allowed Claim until such time as such Holder provides the

necessary information to comply with any withholding requirements of any Governmental Unit.

Any property so withheld will then be paid by the Liquidating Trustee to the appropriate

authority.  If the Holder of an Allowed Claim fails to provide the information necessary to

comply with any withholding requirements of any Governmental Unit within six months after

the date of first notification to the Holder of the need for such information or for the Cash

necessary to comply with any applicable withholding requirements, then such Holder's

Distribution shall be treated in accordance with Article V, Paragraph Q of the Plan.

50

**R.**     **United States Trustee Fees**

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtor on or before the Effective Date.  Thereafter, the Liquidating Trustee shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a Final Decree or an order converting or dismissing the Chapter 11 Case.

**S.**     **Books and Records**

Subject to the Sale Order, the Debtor shall transfer dominion and control over all of its books and records, in whatever form, manner or media, including, without limitation, the specific provision and presentation, to the Liquidating Trustee of all passcodes for security systems and computers, keys, keycards, and notice letters to landlords, warehousemen or other relevant parties.

**T.**     **No Modification of Terms of the Sale Order**

Nothing in the Plan or Confirmation Order shall be deemed to alter, modify or amend the terms and provisions of the Sale Order.

## VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**     **Rejection of Executory Contracts and Unexpired Leases**

Except with respect to executory contracts or unexpired leases that: (i) were previously assumed, assumed and assigned, or rejected by order of the Bankruptcy Court (including, without limitation, the Sale Order), and (ii) are the subject of a pending motion to assume or reject, pursuant to Section 365 of the Bankruptcy Code, on the Effective Date, each executory

51

contract and unexpired lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code; *provided, however*, that nothing in this Section VI.A shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtor and the Estate, the Debtor's officers, directors and managers and/or the Liquidating Trust.  Nothing in this Article VI shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease.  For avoidance of doubt, the Confirmation Order shall constitute a rejection of (i) any collective bargaining agreements entered into by Marriott and/or that may be binding on the Debtor; and (ii) those certain Owner's Letters relating to such collective bargaining agreements(collectively, the "CBAs"), *provided however* that nothing in the Plan or the Confirmation Order shall impair or otherwise affect any rights or obligations of the Successful Bidder (as defined in the Sale Order) or the applicable unions with respect to the CBAs to the extent provided under paragraphs D and 25 of the Sale Order.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date.  The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases, and neither the Debtor nor the Liquidating Trust shall bear any liability for costs associated with respect to the forgoing.

LEGAL02/40807839v5

**B.**     <u>**Claims Based on Rejection of Executory Contracts or Unexpired Leases**</u>

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be filed with the Bankruptcy Court within thirty (30) days after the earlier of the Effective Date or an order of the Bankruptcy Court approving such rejection.  Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan that is not filed within such times will be subject to objection.  All such Claims for which Proofs of Claim are timely and properly filed and ultimately Allowed will be treated as General Unsecured Claims subject to the provisions of Article III of the Plan.

**C.**     <u>**Insurance Policies**</u>

Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations of the Insurance Policies.  To the extent one or more of the Insurance Policies provide potential coverage related to one or more Causes of Action the Debtor holds or may hold against any Entity, the Debtor shall, to the extent permissible under each Insurance Policy, assign all of its rights thereunder with respect to such Causes of Action to the Liquidating Trust.  All net proceeds (including, for the avoidance of doubt, net of any deductibles or retentions) of Insurance Policies received by the Liquidating Trust shall be treated as proceeds of such Causes of Action for all purposes under the Plan.  The Debtor shall take no action to or otherwise impair the Insurance Policies.  Nothing in this Plan shall diminish or impair the enforceability of the Insurance Policies and related agreements that may cover Claims and Causes of Action against the Debtor or any other Entity.

LEGAL02/40807839v5

**D.** **Excess Proceeds**

To the extent the net proceeds of the Liquidation Trust Assets exceed the amount necessary to fully perform this Plan and the Liquidating Trust (including the payment of all expenses, costs and payments required thereunder) and make all of the distributions to the holders of Allowed Claims required under the Plan, such excess shall become part of the Residue.

**VII.**

**CONDITIONS PRECEDENT TO CONFIRMATION**

**OF THE PLAN AND TO THE EFFECTIVE DATE**

**A.** **Conditions to Confirmation of the Plan**

Confirmation of this Plan is conditioned upon the satisfaction of each of the following conditions precedent: (i) the Bankruptcy Court shall have approved the Disclosure Statement in form and substance acceptable to the Debtor, Marriott, and Pacific Life, in all reasonable respects, unless the Debtor, Marriott, and Pacific Life otherwise agree in writing to waive this condition precedent; (ii) unless the Debtor agrees in writing to waive this condition precedent, the Debtor shall have determined, that there will be sufficient Cash on the Effective Date to pay (or with respect to Disputed Claims to reserve for as required pursuant to the Plan) (A) Allowed Administrative Claims, Non-Tax Priority Claims and Priority Tax Claims in full (or in such amount as may be agreed by the applicable Claimant; and (B) and fund the reserves and other amounts required under the Plan and Liquidating Trust Agreement, including the funding of the Professional Fee Reserve and the Plan Contribution Amount; (iii) the Marriott Settlement Order

54

to be presented to the Bankruptcy Court at the Confirmation Hearing shall be acceptable to the Debtor, Marriott, and Pacific Life in form and substance, in all reasonable respects, unless the Debtor, Marriott, and Pacific Life agree in writing to waive this condition precedent; and (iv) the Confirmation Order to be presented to the Bankruptcy Court at the Confirmation Hearing shall be acceptable to the Debtor, Marriott and Pacific Life and in form and substance, in all reasonable respects, unless the Debtor, Marriott, and Pacific Life otherwise agree in writing to waive this condition precedent.

**B.**     **Effect of Failure of Conditions to Confirmation**

If any one or more of the conditions in Section VII.A is not met, the Debtor may withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

**C.**     **Conditions to Effective Date**

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent: (i) a Confirmation Order in form and substance acceptable to the Debtor, Marriott and Pacific Life, in all reasonable respects, shall have been entered by the Bankruptcy Court, unless the Debtor, Marriott, and Pacific Life otherwise agree in writing to waive this condition precedent; (ii) the Marriott Settlement Order in form and substance acceptable to the Debtor, Marriott, and Pacific Life, in all reasonable respects, shall have been entered by the Bankruptcy Court, unless the Debtor, Marriott, and Pacific Life otherwise agree in writing to waive this condition precedent; (iii) unless otherwise waived in writing by the Debtor, the Liquidating Trust shall have been created pursuant to the terms of the Plan, the Liquidating Trustee shall have been appointed by order of the Bankruptcy Court (which may be the

Confirmation Order) and the Liquidating Trust Agreement shall have been executed by the Liquidating Trustee; (iv) unless otherwise waived in writing by the Debtor, the Sale shall have closed on or before the Effective Date; (v) unless otherwise waived in writing by the Debtor, the Plan Contribution Amount shall have been funded; and (vi) unless otherwise waived in writing by the Debtor, all other actions and documents determined by the Debtor to be necessary to implement the Plan shall have been effected and executed.

**D.      Effective Date**

Provided the above-referenced conditions to the occurrence of the Effective Date are satisfied, this Plan shall become effective on the Effective Date.  If any one or more of the conditions in Section VII.C is not met, the Debtor may withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

**VIII.**

**EFFECTS OF CONFIRMATION**

**A.      Binding Effect of Plan**

The provisions of the confirmed Plan shall bind the Debtor, the Liquidating Trust, the Liquidating Trustee, any Entity acquiring property under the Plan, any Beneficiary, and any Creditor or Equity Interest Holder, whether or not such Creditor or Equity Interest Holder has filed a Proof of Claim or Equity Interest in the Chapter 11 Case, whether or not the Claim of such Creditor or the Equity Interest of such Equity Interest Holder is impaired under the Plan, and whether or not such Creditor or Equity Interest Holder has accepted or rejected the Plan.  All Claims and Debts shall be fixed and adjusted pursuant to this Plan.  This Plan shall also bind any

56

taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under this Plan or related to any transaction contemplated under this Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code Section 1146(a).

**B.**     **Vesting of Property of Debtor in the Liquidating Trust**

Upon the Effective Date, title to all property of the Estate of the Debtor in the Chapter 11 Case shall vest in the Liquidating Trust and shall be retained by the Liquidating Trust for the purposes contemplated under this Plan pursuant to the Liquidating Trust Agreement.  Without limiting the generality of the foregoing, all Causes of Action the Debtor holds or may hold against any Entity, recoveries from any Causes of Action, rights to Liquidation Proceeds, and all resulting Liquidating Trust Assets shall vest in the Liquidating Trust upon the Effective Date and shall no longer constitute property of the Estate.

**C.**     **Property Free and Clear**

Except as otherwise provided in this Plan or the Confirmation Order, all property that shall vest in the Liquidating Trust shall be free and clear of all Claims, Equity Interests, Liens, interests, charges, or other encumbrances of Creditors or Interest Holders, other than as set forth herein, the Final DIP Order, in the Liquidating Trust Agreement, and in relevant documents, agreements, and instruments contained in the Plan Supplement.  Following the Effective Date, the Liquidating Trustee may transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the

LEGAL02/40807839v5

Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

## D.    <u>Exculpation</u>

**The Exculpated Parties will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken after the Petition Date in connection with or related to the Chapter 11 Case, the sale of the Debtor's assets (including, without limitation the sale of the assets pursuant to the Sale Order) or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan;** *provided, however***, that this limitation will not affect or modify the obligations created under this Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction);** *provided* **that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under this Plan, and such reasonable reliance shall form an absolute defense to any such claim, Cause of Action, or liability.  Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of Section 1125(e) of the Bankruptcy Code.  Except as specifically set forth in Section VIII.E below, no provision of this Plan or the Disclosure Statement shall be deemed to act to or release any claims, Causes of Action, claims or rights, or liabilities that the Liquidating Trust or the Estate**

**may have against any Entity or person for any act, omission, or failure to act that occurred prior to the Petition Date, nor shall any provision of this Plan be deemed to act to release any Causes of Action and litigation claims.**

**E.    Releases**

**1.    Debtor Release.**

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtor and its estate shall release each Released Party, and each Released Party is deemed released by the Debtor and the estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor or its estate, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or the estate would have been legally entitled to assert in its own right, or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's liquidation, the Chapter 11 Case, the purchase, sale, transfer of any security, asset, right, or interest of the Debtor, the transactions made by or contemplation under the Sale Order, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the**

business or contractual arrangements between any Debtor and any Released Party, the treatment of Claims and Equity Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence; provided, that the foregoing Debtor Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan.  For avoidance of doubt, the foregoing Debtor Release does release any of the Debtor's claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities with respect to the *Wardman Tower Residential Condominium Unit Owners Association v. JBG Smith Properties, et al* action currently pending in the Superior Court of the District of Columbia under Case No. 2020 CA 004807.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtor and all Holders of Claims and Equity Interests; (d) fair, equitable, and

60

reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar

to any of the Debtor or its estate asserting any Claim or Cause of Action released pursuant

to the Debtor Release.

2.     **Third Party Release**.

On, and as of, the Effective Date and for good and valuable consideration, the

receipt and sufficiency of which are acknowledged, the Released Parties shall be forever

released (the "**Third Party Release**") from any and all claims, obligations, actions, suits,

rights, debts, accounts, causes of action, remedies, avoidance actions, agreements, promises,

damages, judgments, demands, defenses, and liabilities throughout the world under any

law or court ruling through the Effective Date (including all claims based on or arising out

of factors or circumstances that existed as of or prior to the Effective Date, including claims

based on negligence or strict liability, and further including any derivative claims asserted

on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or

hereinafter arising, in law, equity, or otherwise) which the Debtor, its estate, Creditors, or

other persons receiving or who are entitled to receive distributions under the Plan may

have against any of them in any way related to this Chapter 11 Case, the negotiation,

formulation, or preparation of the Plan or related agreements, instruments, or other

documents, any other act or omission, transaction, agreement, event, or other occurrence

taking place on and before the Petition Date, and related to the Debtor (or its

predecessors), its business and/or its assets; *provided however* that the foregoing releases

are granted only by (a) Creditors who returned a Ballot and did not check the opt-out box

61

**on the Ballot; and (b) Creditors who were sent a solicitation package, but either (i) did not vote; or (ii) did not return a Ballot with the opt-out box checked;** *provided however* **that the release provided in this section shall not apply to (A) any Creditor whose Claim is not Allowed either in whole or in part; or (B) any Creditor in category (b) above if the solicitation package was returned to the Debtor as undelivered and that such Creditor did not otherwise submit a Ballot; and provided further, however, that the release provided in this Section shall not extend to any claims by any Governmental Unit with respect to criminal liability under applicable law, willful misconduct or bad faith under applicable law, ultra vires acts under applicable law, or a Creditor's claims against Marriott solely based upon such Creditor's direct contractual rights, if any, against Marriott.  For avoidance of doubt, Pacific Life and Marriott shall be deemed to have granted the Third Party Release.**

3. <u>**Global Limited Release of Claims between Marriott, the Debtor and Pacific Life**</u>

Subject to and effective as of the occurrence of Effective Date, Marriott, on the one hand and the Debtor, PL Wardman Member, LLC, and Pacific Life, on the other hand, each of the forgoing, on behalf of themselves and their respective affiliates, successors, assigns, transferees, officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such), shall be deemed to have conclusively and unconditionally released each other and their respective successors, assigns, transferees, officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as

62

such), from any and all claims, interests, obligations, rights, suits, damages, Causes of Action,

remedies, and liabilities whatsoever based on or related to, or in any manner arising from or

related to the Debtor, the Debtor's assets, the Debtor's liquidation, the Marriott Claim, the

Chapter 11 Case, the Maryland Action, *Wardman Hotel Owner, L.L.C. v. Marriott Hotel*

*Services, Inc.* [Adv. Proc. No. 21-51005], Marriott's operation of the hotel located at 2600

Woodley Road, NW in the Woodley Park neighborhood of Washington, D.C., the purchase, sale,

transfer of any security, asset, right, or interest of the Debtor, and the business and contractual

arrangements between Marriott, Pacific Life, PL Wardman Member, LLC and/or the Debtor

which relate to the foregoing, based on facts now in existence whether known or unknown, and

all such claims whether known or unknown, foreseen or unforeseen, asserted or unasserted,

accrued or unaccrued, matured or unmatured, determined or determinable, disputed or

undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in

law, equity, or otherwise, *provided however*, that the foregoing shall not impact or modify the

treatment of the Marriott Claim provided under the Plan.  Marriott, the Debtor, Pacific Life and

PL Wardman Member, LLC each hereby waives and releases any and all rights under Section

1542 of the California Civil Code with respect to the matters referenced in this paragraph, which

provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE
> CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING
> THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD
> HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH
> THE DEBTOR OR RELEASING PARTY.**

LEGAL02/40807839v5

**F.** <u>**Injunction**</u>

 **In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Equity Interests in the Debtor, the Liquidating Trust, or the Estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor, the Estate, the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the Estate, the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtor, the Estate, or the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest, including without limitation, any act taken in violation of Section VIII.E.2 against any of the Released Parties with respect to any matters released under this Plan in favor of such Released Parties.   Nothing contained in this Section shall prohibit the Holder of a timely filed Proof of Claim from litigating its right to seek to have**

64

**such Claim declared an Allowed Claim and paid in accordance with the distribution**

**provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the**

**Claimant of any of the obligations of the Debtor or the Liquidating Trust under this Plan.**

**G.      Post-Confirmation Liability of Liquidating Trustee**

The Liquidating Trustee, together with his or her consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the foregoing (collectively, the "Indemnified Parties") shall not be liable for any and all liabilities, losses, damages, claims, causes of action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the Holders of Claims or Equity Interests for any action or inaction taken in good faith in connection with the performance or discharge of their duties under this Plan, except the Indemnified Parties will be liable for actions or inactions that are grossly negligent, fraudulent, or which constitute willful misconduct (in each case, liability shall be subject to determination by final order of a court of competent jurisdiction).  However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, fraud or willful misconduct.  In addition, the Liquidating Trust and the Estate shall, to the fullest extent permitted by the laws of the State of Delaware, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust and the Estate or the

implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidating Trust and the Estate.  To the extent the Liquidating Trust indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidating Trust Expenses.  All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan.

**H.**    **Preservation of Rights of Action**

1.    <u>Vesting of Causes of Action.</u>

(a)    Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor holds or may hold against any Entity shall vest upon the Effective Date in the Liquidating Trust, except to the extent provided under Final DIP Order.

(b)    Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action the Debtor holds or may hold against any Entity, in accordance with the terms of the Liquidating Trust Agreement and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case.

(c)    Causes of Action and recoveries therefrom shall remain the sole property of the Liquidating Trust, for the ratable benefit of the Beneficiaries of the Liquidating Trust, and

66

holders of Claims shall have no direct right or interest in to any such Causes of Action or recovery.

2.      Preservation of All Causes of Action Not Expressly Settled or Released.

(a)      Unless a Cause of Action against a holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order, and the Final DIP Order), the Debtor and the Liquidating Trustee expressly reserve such retained Cause of Action for later adjudication by the Debtor or the Liquidating Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere, or of which the Debtor may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time, or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order (including the Confirmation Order).  In addition, the Debtor and Liquidating Trustee expressly reserve the right to pursue or adopt claims alleged in any lawsuit in which the Debtor is a defendant or an interested party against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

LEGAL02/40807839v5

(b)      Subject to the immediately preceding paragraph, any Entity to which the Debtor has incurred an obligation (whether on account of services, the purchase or sale of goods, or otherwise), or that has received services from the Debtor or a transfer of money or property of the Debtor, or that has received services from the Debtor or a transfer or money or property of the Debtor, or that has transacted business with the Debtor, or that has leased equipment or property from the Debtor, should assume and is hereby advised that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether (i) such Entity has filed a proof of claim against the Debtor in the Chapter 11 Case; (ii) the Debtor or Liquidating Trustee has objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtor or Liquidating Trustee has objected to any such Entity's scheduled Claim; (v) any such Entity's scheduled Claim has been identified by the Debtor or Liquidating Trustee as disputed, contingent, or unliquidated; or (vi) the Debtor has identified any potential claim or Cause of Action against such Entity herein or in the Disclosure Statement.

## I.    <u>No Discharge</u>

Nothing contained in this Plan shall be deemed to constitute a discharge of the Debtor under Bankruptcy Code section 1141(d)(3).

68

# IX.

## **RETENTION OF JURISDICTION**

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

1. To hear and determine any and all objections to the allowance of a Claim, proceedings to estimate a Claim for any purpose, actions to equitably subordinate a Claim, proceedings seeking approval of any necessary claims reconciliation protocols, or any controversy as to the classification of a Claim in a particular Class under the Plan;

2. To administer the Plan, the Liquidating Trust, the Trust Assets;

3. To estimate or liquidate any Disputed Claims;

4. To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date or otherwise relating to, arising from, or in connection with the Litigation; *provided, however*, that the Liquidating Trustee shall reserve the right to commence actions in all appropriate jurisdictions;

5. To hear and determine any and all motions and/or objections to fix, estimate, allow and/or disallow any Claims arising therefrom;

6. To hear and determine any and all applications by Professionals for an award of Professional Fees;

7. To enable the Liquidating Trustee to commence and prosecute any Causes of Action which may be brought after the Effective Date;

69

8.      To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document, or instrument contemplated by the Plan;

9.      To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

10.     To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

11.     To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code;

12.     To enter any orders as required by Rule 23 of the Federal Rules of Civil Procedure, to the extent made applicable to any adversary proceeding pursuant or contested matter pursuant to Bankruptcy Rules 7023 and 9014(c), as applicable; and

13.     To close the Chapter 11 Case when administration of the Liquidating Trust and the Chapter 11 Case have been completed.

## X.

## **MISCELLANEOUS**

A.      **Revocation of Plan**

The Debtor reserves the right to revoke and withdraw the Plan at any time on or before the Confirmation Date.  If the Debtor revokes or withdraws the Plan pursuant to this Section, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor.

## B.     Severability of Plan Provisions

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor and Pacific Life, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## C.     Exhibits

All exhibits attached to this Plan, the Plan Supplement, or the Disclosure Statement are, by this reference, hereby incorporated into the Plan.  The final version of all Exhibits to the Plan,

the Plan Supplement, and the Disclosure Statement will be substantially in the forms attached

hereto or thereto.  The Debtor reserves the right to make non-substantive changes and corrections

to such Exhibits in advance of the Confirmation Hearing.  If any Exhibits are changed or

corrected, the replacement Exhibits will be filed with the Bankruptcy Court prior to the

commencement of the Confirmation Hearing.

**D.**      **Notices**

All notices required or permitted to be made in accordance with the Plan shall be in

writing and shall be delivered personally or by nationally recognized overnight or next-day

courier service, first-class mail, electronic mail, or via facsimile with electronic confirmation of

receipt as follows:

> Pachulski Stang Ziehl & Jones LLP
> 919 North Market Street, 17th Floor
> P.O. Box 8705
> Wilmington, DE 19899-8705 (Courier 19801)
> Tel. 302-652-4100, Fax 302-652-4400
> Attn:  Laura Davis Jones, Esq.
> ljones@pszjlaw.com
>
>      and
>
> James D. Decker
> JDecker & Company
> 5996 Mitchell Road, #16
> Atlanta, GA 30328
> Tel.  404.229-8907
> jim@jdeckerco.com

**E.**      **Reservation of Rights**

Neither the filing of the Plan nor any statement or provision contained in the Plan or in

the Disclosure Statement, nor the taking by any party in interest of any action with respect to the

72

Plan, shall: (a) be or be deemed to be an admission against interest and (b) until the Effective

Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any

other party in interest, or (ii) in or to any of the assets of any other party in interest, and, until the

Effective Date, all such rights are specifically reserved.  In the event that the Plan is not

confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any

statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any

manner in any suit, action, proceeding, or controversy within or without the Chapter 11 Case

involving the Debtor, except with respect to Confirmation of the Plan.

**F.**     **Defects, Omissions and Amendments**

The Debtor may, with the approval of Pacific Life and the Bankruptcy Court and without

notice to all Holders of Claims or Equity Interests, insofar as it does not materially and adversely

affect Holders of Claims, correct any defect, omission, or inconsistency in the Plan in such

manner and to such extent as may be necessary or desirable to expedite the execution of the Plan.

The Plan may be altered or amended before or after Confirmation as provided in Section 1127 of

the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not

materially and adversely affect the interests of Holders of Claims, so long as the Plan, as

modified, complies with Sections 1122 and 1123 of the Bankruptcy Code and the Debtor has

complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered or amended

before or after the Confirmation Date but, prior to substantial Consummation, in a manner

which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of

Claims, so long as the Plan, as modified, complies with Bankruptcy Code Sections 1122 and

LEGAL02/40807839v5

1123, the Debtor has complied with Bankruptcy Code Section 1125 and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code Section 1129.

**G.    Filing of Additional Documents**

The Debtor shall file with the Bankruptcy Court such agreements, instruments, pleadings, orders, papers, or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**H.    Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entity.

**I.    Setoffs and Recoupments**

The Liquidating Trust may, but shall not be required to, set off against or recoup from the payments to be made pursuant to this Plan in respect of a Claim, any claim of any nature whatsoever that the Debtor, the Liquidating Trust, or the Estate, as applicable, may have against the Holder of such Claim, but neither the failure to do so or the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtor, the Liquidating Trust, or the Estate, against such Holder.

**J.    Section 1146(a) Exemption**

The Plan implements the distribution of the Sale Proceeds pursuant to the Sale Order. Pursuant to section 1146(a) of the Bankruptcy Code, any transfer of property under the Plan

LEGAL02/40807839v5

(including the transactions pursuant to the Sale Order) or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor; (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan (including the transactions pursuant to the Sale Order), shall not be subject to any document recording tax, stamp tax, conveyance free, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**K.**    **Securities Exemption**

To the extent the Liquidating Trust Interests are deemed or asserted to constitute

securities, the Liquidating Trust Interests and the issuance and distribution thereof shall be

exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal

securities laws requiring registration for offer or sale of a security or registration or licensing of

an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all

exemptions available for distributions of securities under a plan of reorganization in accordance

with all applicable law, including without limitation, Section 1145 of the Bankruptcy Code.

**L.**    **Implementation**

Upon Confirmation, the Debtor shall be authorized to take all steps and execute all

documents necessary to effectuate the provisions contained in the Plan.

**M.**    **Certain Actions**

1.    By reason of entry of the Confirmation Order, prior to, on, or after the

Effective Date (as appropriate), all matters provided for under the Plan that would

otherwise require approval of directors, officers, employees, managers or members of the

Debtor under the Plan, including, without limitation, (i) the distribution of Cash pursuant

to the Plan, (ii) the adoption, execute/on, delivery, and implementation of all contracts,

leases, instruments, releases, and other agreements or documents related to the Plan, and

(iii) the adoption, execution, and implementation of other matters provided for under the

Plan involving the company or organizational structure of the Debtor, shall be deemed to

have occurred and shall be in effect prior to, on or after the Effective Date (as

appropriate), pursuant to the applicable general corporation law of the state in which the Debtor is chartered, organized, or incorporated, without any requirement of further action by the directors and stockholders of the Debtor, irrespective of whether the Confirmation Order specifically authorizes any such action.

2.     Effective upon the Effective Date, the Debtor's formation documents shall each be deemed amended to prohibit the issuance by the Debtor of nonvoting securities to the extent required under Section 1123(a)(6) of the Bankruptcy Code.

3.     On or as soon as practicable following the Effective Date, the Liquidating Trustee shall be authorized to cancel, annul, and extinguish all Equity Interests.

## N.     **Substantial Consummation**

On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code Sections 1101 and 1127(b).

## O.     **Waiver of Fourteen-Day Stay**

The Debtor requests as part of the Confirmation Order a waiver from the Bankruptcy Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the 14-day stay of Bankruptcy Rule 6004(g).

Dated:  August 18, 2021                          Respectfully submitted,

                                           */s/ James D. Decker*
                                           WARDMAN HOTEL OWNER, L.L.C.
                                           By: James D. Decker, its Independent Manager

# EXHIBIT B

# (LIQUIDATION ANALYSIS)

| Assets | Chapter 11 Plan | Chapter 7 |
|---|---|---|
| Cash[2] | $152,250,000 | $152,250,000 |
| Other Assets[3] | Unknown | Unknown |
| Gross Liquidation Proceeds[4] | $150,630,000 | $150,630,000 |
| Less: Administrative Expense Claims | (241,000) | (241,000) |
| Chapter 7 Trustee Commissions | ($0) | (4,519,000)[5] |
| Professional Fees[6] | TBD | (500,000) |
| United States Trustee Fees[7] | ($35,000) | ($35,000) |
| Less: Priority Claims | $0 | $0 |
| **Net proceeds Available for Distribution to Creditors** | **$150,354,000** | **$145,335,000** |
| Class 3  Pacific Life Secured and DIP Claims | $125,758,000[8] | $145,351,000 |
| (recovery %) | 87% | Approx. 100% |
| Class 4  Marriott Unsecured Claim | $87,500,000[9] | $82,750,598 |
| (recovery %) | 20.69% | <1% |
| Class 5  General Unsecured Claims | $187,332.00 – $837,514.00 | $187,332.00 – $837,514.00 |
| (recovery %) | 60% to 100%[10] | <1% |

---

[1]  Nothing in this Liquidation Analysis is intended to be or constitutes a concession or admission by the Debtor. The actual amount of allowed Claims, wind down costs and other expenses in the Debtor's chapter 11 case or in a hypothetical chapter 7 case may materially differ from the amounts set forth in the Liquidation Analysis.   Neither the Debtor nor its professionals make any representations or warranties that the actual result of a liquidation of the Debtor's assets would or would not approximate the assumptions set forth herein.

[2]  Assumes Debtor receives cash proceeds of $152,250,000 pursuant to Sale Order.

[3]  Does not include potential recoveries by Liquidation Trust on account of Causes of Action or any residual asset sales.

[4]  Assumes reduction of approximately $1,620,000 to pay broker's fee arising from sale, and does not account for any tax implications arising from the sale of assets pursuant to the Sale Order.

[5]  Assume 3% commission payable to chapter 7 trustee with respect to distributions.

[6]  Post confirmation chapter 11 professional fees would be funded by Pacific Life and included in wind down budget in to pay for post confirmation chapter 11 expenses. Chapter 7 professional fees are estimated at $500,000.

[7]  Assumes maximum quarterly payment of $30,000 from Sale Order and additional quarterly amounts on account of subsequent disbursements.

[8]  Subject to payment of amounts required to fund the chapter 11 wind down budget.

[9]  Estimate includes Marriott's total asserted claim in the amount of $87,500,000 which is included in the Marriott Settlement Motion as part of global settlement providing for the Marriott Contribution Amount in the amount of $18,000,000 to be funded by Pacific Life and distributed to Marriott pursuant to the terms of the Plan.  Marriott has also asserted a secured claim in the amount of $4,749,402 against the FF&E Reserve and which claim was disputed and is being resolved pursuant to the Plan.

[10]  Assumes distribution of $500,000 to general unsecured Claims (exclusive of Marriott) on account of GUC Contribution Amount to be funded by Pacific Life and distributed pursuant to the terms of the Plan.

# Exhibit E

*Solicitation Version*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| WARDMAN HOTEL OWNER, L.L.C., [1] | ) | Case No. 21-10023 (JTD) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## DEBTOR'S PLAN OF LIQUIDATION
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
 dbertenthal@pszjlaw.com
 tcairns@pszjlaw.com

*Counsel to the Debtor and Debtor in Possession*

Dated: August 18, 2021

---

[1] The last four digits of the Debtor's U.S. tax identification number are 9717. 5996 Mitchell Road, #16, Atlanta, GA 30328.

# TABLE OF CONTENTS

**Page**

I. DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME AND GOVERNING LAW .................................................... 3

    A.    Rules of Interpretation, Computation of Time and Governing Law .............................. 3

    B.    Defined Terms ................................................................................................................. 4

II. UNCLASSIFIED ADMINISTRATIVE CLAIMS, PROFESSIONAL
FEES, AND PRIORITY TAX CLAIMS ................................................................... 26

    A.    Introduction ................................................................................................................... 26

    B.    Administrative Claims .................................................................................................. 26

    C.    Professional Fee Claims ............................................................................................... 27

    D.    Priority Tax Claims ...................................................................................................... 28

III. CLASSIFICATION AND TREATMENT OF CLASSIFIED
CLAIMS AND EQUITY INTERESTS ................................................................... 29

    A.    Summary ....................................................................................................................... 29

    B.    Classification and Treatment of Claims against the Debtor ......................................... 30

IV. ACCEPTANCE OR REJECTION OF THE PLAN ................................................ 35

    A.    Voting Classes .............................................................................................................. 35

    B.    Presumed Acceptance of Plan ...................................................................................... 35

    C.    Acceptance by Impaired Classes .................................................................................. 35

    D.    Presumed Rejection of Plan .......................................................................................... 36

    E.    Nonconsensual Confirmation ....................................................................................... 36

V. MEANS FOR IMPLEMENTATION OF THE PLAN ............................................ 36

    A.    Settlement of Claims and Causes of Action Between the Debtor and Marriott ........... 36

    B.    Dissolution of Debtor ................................................................................................... 37

    C.    Appointment of the Liquidating Trustee ...................................................................... 37

    D.    The Liquidating Trust ................................................................................................... 37

    E.    Rights and Powers of the Liquidating Trustee ............................................................. 39

    F.    Fees and Expenses of the Liquidating Trust ................................................................. 40

    G.    Transfer of Beneficial Interests in the Liquidating Trust ............................................. 40

    H.    Plan Contribution Amount ............................................................................................ 41

1

I.     Litigation of Debtor's Causes of Action ........................................................ 41

J.     Full and Final Satisfaction ........................................................................... 41

K.    Distribution Procedures ............................................................................... 42

L.     Resolution of Disputed Claims .................................................................... 44

M.   Reserve Provisions for Disputed Claims ..................................................... 46

N.    Rounding ..................................................................................................... 48

O.    No Cash Payments of Less Than $50 on Account of Allowed Claims ........ 48

P.     Delivery of Distributions and Unclaimed Property ..................................... 48

Q.    Withholding Taxes ...................................................................................... 50

R.     United States Trustee Fees ........................................................................... 51

S.     Books and Records ...................................................................................... 51

T.     No Modification of Terms of the Sale Order ............................................... 51

VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............. 51

A.    Rejection of Executory Contracts and Unexpired Leases ............................ 51

B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ................. 53

C.    Insurance Policies ....................................................................................... 53

D.    Excess Proceeds .......................................................................................... 54

VII. CONDITIONS PRECEDENT TO CONFIRMATION  OF THE PLAN AND TO THE
EFFECTIVE DATE ................................................................................................. 54

A.    Conditions to Confirmation of the Plan ...................................................... 54

B.    Effect of Failure of Conditions to Confirmation .......................................... 55

C.    Conditions to Effective Date ....................................................................... 55

D.    Effective Date ............................................................................................. 56

VIII. EFFECTS OF CONFIRMATION ....................................................................... 56

A.    Binding Effect of Plan ................................................................................ 56

B.    Vesting of Property of Debtor in the Liquidating Trust .............................. 57

C.    Property Free and Clear .............................................................................. 57

D.    Exculpation ................................................................................................ 58

E.    Releases ...................................................................................................... 59

F.     Injunction ................................................................................................... 64

G.    Post-Confirmation Liability of Liquidating Trustee .................................... 65

H.    Preservation of Rights of Action ................................................................. 66

2

I.       No Discharge .................................................................................................. 68

IX. RETENTION OF JURISDICTION ................................................................................ 69

X. MISCELLANEOUS ........................................................................................................ 70

A.       Revocation of Plan ........................................................................................ 70

B.       Severability of Plan Provisions ..................................................................... 71

C.       Exhibits .......................................................................................................... 71

D.       Notices ........................................................................................................... 72

E.       Reservation of Rights ..................................................................................... 72

F.       Defects, Omissions and Amendments ............................................................ 73

G.       Filing of Additional Documents .................................................................... 74

H.       Successors and Assigns .................................................................................. 74

I.       Setoffs and Recoupments ............................................................................... 74

J.       Section 1146(a) Exemption ............................................................................ 74

K.       Securities Exemption ..................................................................................... 76

L.       Implementation .............................................................................................. 76

M.       Certain Actions .............................................................................................. 76

N.       Substantial Consummation ............................................................................ 77

O.       Waiver of Fourteen-Day Stay ........................................................................ 77

3

**Preliminary Statement**

Pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), the above-captioned debtor and debtor in possession (the "Debtor") hereby proposes the following Plan.[2]  Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtor's history, business, results of operations, the post-petition marketing and sale of the Debtor's assets that will be consummated pursuant to the Plan, and a summary and analysis of the Plan.  All Creditors entitled to vote on the Plan should read the Disclosure Statement and the Plan carefully—and consult with their counsel and other applicable professionals—before voting to accept or reject the Plan.

The Plan is a plan of liquidation which, among other things, provides for a Liquidating Trustee to liquidate or otherwise dispose of the Estate's remaining assets, distribute the Plan Contribution Amount pursuant to the terms of the Plan.  The Sale proceeds to be derived from the Sale Order constitute the source of funding for, and payments under, the Plan.  Thus, the Plan is predicated and dependent on the funding of expenses and reserves from the Sale Proceeds to the extent required for the Plan to become effective and for the Liquidating Trustee to administer and implement the Plan for the benefit of the Debtor's economic constituents.  The Plan proposes to vest all of the assets of the Debtor into a single Liquidating Trust for administration and distribution in accordance with the Plan and the Liquidating Trust Agreement.

The Plan also effectuates a global settlement of the claims and litigation by and between the Debtor, Pacific Life, PL Wardman Member, LLC, and Marriott pursuant to the Marriott

---

[2]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in Article 1 of this Plan.

Settlement Motion.  The Marriott Settlement Motion is expected to be heard by the Bankruptcy Court contemporaneously with confirmation of the Plan.  Pursuant to the proposed settlement, Marriott would receive $18 million in distributions (as described below) in full and final satisfaction of (i) its filed proof of claim and (ii) any and all claims that it holds or may hold against the Debtor, Pacific Life and PL Wardman Member, LLC.  Under the settlement proposed by the Marriott Settlement Motion, the Debtor, Pacific Life and PL Wardman Member, LLC would also waive any and all of their claims against Marriott relating to, among others, the Chapter 11 Case, the Debtor and its assets, which settlement is subject to (i) approval of the Marriott Settlement Motion by the Bankruptcy Court and (ii) the occurrence of the Effective Date of this Plan, and Marriott will provide a mutual release to the Debtor, Pacific Life, and PL Wardman Member, LLC.

With the Plan, Creditors entitled to vote will receive a Ballot for voting on the Plan, a Disclosure Statement that provides information concerning the Debtor, and the Plan.  The Disclosure Statement includes a summary of the assets and liabilities of the Debtor, a summary of what Creditors will receive under the Plan, a summary of the procedures and voting requirements necessary for confirmation of the Plan, and a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of Creditors, and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed.[3]  If the Plan is not confirmed, the

---

[3]  Equity Interest Holders will receive nothing under the Plan, and therefore, the Class of Equity Interests is deemed to have rejected the Plan.  Accordingly, acceptances are not being solicited from the Holders of Equity Interests.

Bankruptcy Court may order the Chapter 11 Case dismissed or converted to a liquidating case

under chapter 7 of the Bankruptcy Code, or the Debtor or other parties in interest may propose a

different plan.

## I.

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION

## OF TIME AND GOVERNING LAW

**A.**     **Rules of Interpretation, Computation of Time and Governing Law**

1.      For purposes of the Plan: (a) whenever from the context it is appropriate,

each term, whether stated in the singular or the plural, shall include both the singular and the

plural, and each pronoun, whether stated in the masculine, feminine, or neuter gender, shall

include the masculine, feminine, and the neuter gender; (b) any reference in the Plan to a

contract, instrument, release, indenture, or other agreement or document being in a particular

form or on particular terms and conditions means that such document shall be substantially in

such form or substantially on such terms and conditions; (c) any reference in the Plan to an

existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may

have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all

references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and

Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereunder," and "hereto" and

similar terms refer to the Plan in its entirety rather than to a particular portion of the Plan;

(f) references to a part includes the whole, except where the context clearly requires otherwise;

(g) unless otherwise specified, "or" has the inclusive meaning represented by the phrase

3

"and/or"; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (j) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.       In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.       Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

## B.    <u>Defined Terms</u>

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

1.       "<u>Administrative Claim</u>" means an expense of administration of the Chapter 11 Case arising under Sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate; (b) the value of any goods received by the Debtor within 20 days before the Petition Date in which the goods were sold to the Debtor in

4

the ordinary course of the Debtor's business; (c) Professional Fee Claims; (d) all fees and charges assessed against the Estate under 28 U.S.C. § 1930; and (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court.

2.     "Administrative Claims Bar Date" means the last date by which an Entity must file a request for payment of an Administrative Claim.  For Administrative Claims arising on or prior to May 31, 2021, including Claims arising under Section 503(b)(9) of the Bankruptcy Code (excluding Professional Fee Claims), the Administrative Claims Bar Date was June 30, 2021 pursuant to the Bar Date Order.  For Administrative Claims arising on or after June 1, 2021 (excluding Professional Fee Claims and Claims arising under Section 503(b)(9) of the Bankruptcy Code), the Administrative Claims Bar Date shall be the date that is  sixty (60) after the Effective Date.

3.     "Allowed" means, with respect to any Claim, except as otherwise provided herein: (i) any Claim, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date(s) for filing proofs of Claim with respect to such Claim, or which has been or hereafter is scheduled by the Debtor on the Schedules as liquidated in amount and not disputed or contingent, and to which no party in interest has filed an objection thereto; (ii) any Administrative Claim, request for payment of which was filed on or before the applicable Administrative Claims Bar Date, which has been determined, in whole or in part, in favor of the Holder of such Administrative Claim by a Final Order of the Bankruptcy Court; or (iii) a Claim (including an Administrative Claim) that is allowed (a) pursuant to any contract, instrument, or other agreement entered into in connection with the Plan, (b) in a Final Order, (c) pursuant to the

5

terms of the Plan, or (d) for purposes of Distributions, by designation of the Liquidating Trustee with respect to Claims and Administrative Claims as to which the period within which to object has not yet expired.

4. "Allowed Claim" or "Allowed [   ] Claim" means a Claim that has been Allowed.

5. " Ballots" mean the ballots upon which the Holders of Impaired Claims shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

6. "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as may be amended) and applicable portions of titles 18 and 28 of the United States Code.

7. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Case.

8. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the General and Local Rules of the Bankruptcy Court.

9. "Bar Date" means, as applicable, the General Claims Bar Date, the applicable Administrative Claims Bar Date, or any other applicable deadline to file Claims referenced in the Plan.

10. "Bar Date Order" means the *Order (I) Setting Bar Dates For Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (I) Setting a Bar Date*

6

*for the Filing of Proofs of Claim by Governmental Units, (III) Setting a Bar Date for the Filing*

*of Requests for Allowance of Administrative Expense Claims, (IV) Establishing Amended*

*Schedules Bar Date and Rejection Damages Bar Date, (V) Approving the Form of and Manner*

*for Filing Proofs of Claim, (VI) Approving Notice of Bar Dates, and (VII) Granting Related*

*Relief* [Docket No. 208], which established the General Claims Bar Date, the deadline to file

Administrative Claims arising on or prior May 31, 2021, Administrative Claims arising pursuant

to Section 503(b)(9) of the Bankruptcy Code, and certain other deadlines and procedures.

11.    "<u>Beneficiaries</u>" means holders of Allowed Claims entitled to receive

Distributions from the Liquidating Trust under the Plan, whether or not such Claims were

Allowed on the Effective Date.

12.    "<u>Business Day</u>" means any day, other than a Saturday, Sunday or legal

holiday as defined in Bankruptcy Rule 9006(a).

13.    "<u>Cash</u>" means cash and cash equivalents, including, but not limited to,

bank deposits, wire transfers, checks, and readily marketable securities, instruments, and legal

tender of the United States of America or instrumentalities thereof.

14.    "<u>Causes of Action</u>" means all claims, actions, causes of action, choses in

action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties,

covenants, contracts, controversies, agreements, promises, variances, trespasses, damages,

judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims,

reimbursement claims, indemnity claims, counterclaims, and crossclaims, including, without

limitation, all claims and any avoidance, preference, recovery, subordination or other actions of

the Debtor (unless the context expressly states that such Causes of Action belong to the another

Entity) against Creditors, insiders, and/or any other Entities under the Bankruptcy Code, based in

law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect,

derivative, or otherwise and whether asserted or unasserted as of the Effective Date.  For

avoidance of doubt and without limitation, Causes of Action includes any and all of the Debtor's

claims, causes of action, rights, interests remedies or interests held by the Debtor arising under or

in connection with the allegations made in the following or in relation to: (i) *Wardman Tower*

*Residential Condominium Unit Owners Association v. JBG Smith Properties, et al*, pending in

the Superior Court of the District of Columbia under Case No. 2020 CA 004807 B; (ii) Civil

Action No. 483406-V commenced in the Circuit Court for Montgomery County, Maryland, and

subsequently removed to the Bankruptcy Court and remains pending as Adversary Proceeding

No. 21-50263; (iii) that certain *Hotel Management Agreement*, between the Debtor and Marriott;

and (iv) the Debtor's *Complaint Against Marriott Hotel Services, Inc. For (1) Avoidance and*

*Recovery of Preferential Transfer; (II) Turnover of FF&E Reserve Funds to Estate; (III)*

*Declaratory Judgment Regarding FF&E Reserve Funds; (IV) Breach of Contract; (V) Breach of*

*Covenant of Good Faith and Fair Dealing; (VI) Breach of Fiduciary Duty; and (VII)*

*Disallowance of Filed Claim* [Adv. Proc. No. 21- 51005 (JTD) Docket No 1] filed on July 23,

2021, *provided however*, that the Causes of Action by and between the Debtor, Pacific Life, PL

Wardman Member, LLC, and Marriott, including the Causes of Action set forth in (ii) through

(iv) above, would be settled and released pursuant to this Plan.  For the avoidance of doubt,

8

Causes of Action does not include claims, challenges or other matters barred or otherwise released in the Final DIP Order.

15.     "Chapter 11 Case" means the Chapter 11 case commenced when the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on the Petition Date and with the following case number:  21-10023 (JTD).

16.     "Claim" means a claim (as defined in Section 101(5) of the Bankruptcy Code) against the Debtor, including, but not limited to: (a) any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

17.     "Claimant" means the Holder of a Claim.

18.     "Claims Objection Deadline" means, with respect to all Claims other than Professional Fee Claims, (a) 180 days after the Effective Date, subject to extension as set forth in Section V.L. of the Plan.

19.     "Class" means a category of Holders of Claims or Equity Interests, as set forth in Article 3 of the Plan.

20.     "Collateral" means any property or interest in property of the Estate of the Debtor subject to a Lien, charge, or other encumbrance to secure the payment of the Pacific Life Secured Claim, to the extent granted under and pursuant to the Final DIP Order.

LEGAL02/40807839v5

21.     "Confirmation" means the entry of the Confirmation Order, subject to all conditions specified in Article 7 of the Plan having been (a) satisfied or (b) waived pursuant to Article 7.

22.     "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

23.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

24.     "Consummation" or "Consummate" means the occurrence of the Effective Date.

25.     "Creditor" means any Holder of a Claim against the Debtor as specified in Section 101(10) of the Bankruptcy Code.

26.     "Debt" means liability on a Claim.

27.     "Debtor" means Wardman Hotel Owner, L.L.C., a Delaware limited liability company.

28.     " Disclosure Statement" means the *Disclosure Statement with Respect to Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated August 18, 2021, as amended, supplemented, or modified from time to time, describing the Plan, which was prepared and distributed in accordance with the Bankruptcy Code and Bankruptcy Rules and other applicable law.

10

29.    "Disputed Claim" means, with respect to any Claim: (a) listed on the Schedules as either unliquidated, disputed, or contingent; (b) as to which the Debtor, the Liquidating Trustee, or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtor or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or (c) unless otherwise indicated in the Plan, a Claim as to which the period within which to object to such Claim has not yet expired and which is not Allowed.

30.    "Distributions" means the distributions of Cash to be made in accordance with the Plan.

31.    "Distribution Dates" means collectively the Initial Distribution Date, any Subsequent Distribution(s) Date, and the date of the Final Distribution.

32.    "Distribution Record Date" means the close of business on the Business Day immediately preceding the Effective Date.

33.    "Effective Date" means the date selected by the Debtor which is a Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect, and (b) all conditions specified in Article 7 of the Plan have been satisfied, unless waived by the Debtor.

34.    "Entity" means an entity as defined in Section 101(15) of the Bankruptcy Code.

11

35.    "Equity Interest(s)" means any membership interest or other equity security interest in the Debtor, including, but not limited to, any warrants, options, or contract rights to purchase or acquire such interests at any time.

36.    "Estate" means the estate of the Debtor in the Chapter 11 Case created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

37.    "Exculpated Parties" means, collectively the Debtor and its respective officers, directors, shareholders, members, managers, employees, agents, advisors, accountants, attorneys, and representatives and their respective property.

38.    "FF&E Reserve" means the Cash that constitutes property of the Debtor and its Estate and is currently held by Marriott under the "Furniture, Fixtures and Equipment Reserve" established under that certain *Second Amended and Restated Management Agreement*, dated as of July 1, 2005, in order to provide for working capital needs at the Debtor's property formerly operated by Marriott, that Marriott claims is subject to Marriott's rights of recoupment and/or setoff under applicable law, totaling not less than $4,750,000.00.

39.    "Final Decree" means the decree contemplated under section 350 of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Rule 5099-1 closing the Chapter 11 Case.

40.    "Final Distribution" means the last payment to Holders of Allowed Claims in accordance with the provisions of the Plan.

41.    "Final DIP Order" means the *Final  Order (I) Authorizing Debtor to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority*

12

*Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Secured Party, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief*, entered by the Court on February 9, 2021 [Docket No. 126].

42.     "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) that has not been reversed, stayed, modified, or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

43.     "<u>General Claims Bar Date</u>" means June 30, 2021, at 5:00 p.m. Eastern Time, which is the general deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims against the Debtor that arose prior to the Petition Date.

44.     "<u>General Unsecured Claim</u>" means any Claim against the Debtor or Estate that is not an Other Secured Claim, Pacific Life Secured Claim (except to the extent not satisfied in full), the Pacific Life DIP Loan Claim (except to the extent not satisfied in full), Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim or the Marriott Claim.

45.     "<u>Governmental Unit</u>" means the United States; State; Commonwealth, District, Territory, municipality, foreign state, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under Chapter 11), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

46. "GUC Contribution Amount" means $500,000 of the Sale Proceeds that Pacific Life agrees may be distributed to fund the GUC Contribution Amount (which amounts would otherwise be distributed on account of the Pacific Life Secured Claim or the Pacific Life DIP Loan Claim), to be deposited to the Liquidation Trust Asset Account on the Effective Date, or as soon as practicable thereafter, for Pro Rata distribution to Holders of Allowed General Unsecured Claims free and clear of any liens, claims or encumbrances of Pacific Life, provided however, that to the extent that all Allowed General Unsecured Claims are fully and indefeasibly paid pursuant to the treatment provided in Article III of the Plan, any remaining amounts of the GUC Contribution Amount shall be distributed to Pacific Life in accordance with the treatment provided in Article III of the Plan solely to the extent that the Pacific Life Secured Claim and/or the Pacific Life DIP Claim have not been fully satisfied pursuant to the Plan.  For avoidance of doubt, the GUC Contribution Amount is without prejudice of the rights of Holders of Allowed General Unsecured Claims to receive additional Pro Rata Distributions of the net proceeds of Liquidating Trust Assets, as provided under the Plan.

47. "Holder" means an Entity holding a Claim or Equity Interest.

48. "Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

49. "Initial Distribution Date" means the Effective Date, or as soon as practicable thereafter when the initial distribution shall be made to the Holders of Allowed Claims, as determined by the Liquidating Trustee in its reasonable discretion.

14

50.     "Insider" means an insider of the Debtor, as defined in Section 101(31) of the Bankruptcy Code.

51.     "Insurance Policies" means all insurance policies maintained by the Debtor.

52.     "Interim Fee Order" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 109], entered by the Bankruptcy Court on February 5, 2021.

53.     "Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind) to secure payment of a debt or performance of an obligation.

54.     "Liquidation Proceeds" means any Cash or other consideration paid to or realized by the Debtor or the Liquidating Trustee, as applicable, upon the sale, transfer, assignment, or other disposition of the Liquidating Trust Assets.

55.     "Liquidating Trust" means the grantor trust to be created upon the Effective Date for the benefit of the Beneficiaries.

56.     "Liquidating Trust Agreement" means the agreement, substantially in the form included in the Plan Supplement governing the Liquidating Trust, as it may be subsequently modified from time to time.

57.     "Liquidating Trust Assets" means the assets held in the Liquidating Trust comprised of (i) Cash, including the Plan Contribution Amount; (ii) all Causes of Action the Debtor holds or may hold against any Entity; (iii) all Claims and rights of the Debtor under any

15

Insurance Policies; and (iv) any and all other assets, interests, rights, claims and defenses of the

Debtor or Estate, including, without limitation, all rights under any order of the Bankruptcy

Court.  For avoidance of doubt, Liquidating Trust Assets includes (i) any and all tax refunds to

which the Debtor may be entitled; and (ii) the Debtor's rights, claims and causes of action in

*Wardman Tower Residential Condominium Unit Owners Association v. JBG Smith Properties, et*

*al*, pending in the Superior Court of the District of Columbia under Case No. 2020 CA 004807

B.

       58.    "<u>Liquidating Trust Assets Account</u>" means an interest-bearing bank

account or money-market account to be established and held in trust by the Liquidating Trustee

on or after the Effective Date for the purpose of holding the Liquidating Trust Assets to be

distributed pursuant to the Plan and any interest, dividends, or other income earned upon the

investment of the Liquidating Trust Assets.  The Liquidating Trust Assets Account will be

initially funded by the Debtor or Liquidating Trustee, as applicable, on or immediately after the

Effective Date with the Plan Contribution Amount.

       59.    "<u>Liquidating Trust Interests</u>" means the non-transferable interests in the

Liquidation Trust, distributions of which will be made to Holders of Allowed Other Secured

Claims, the Allowed Pacific Life Claim,  Allowed Priority Tax Claims, Allowed Priority Non-

Tax Claims, Allowed General Unsecured Claims, and the Allowed Marriott Claim, in

accordance with Article III and V hereof.

       60.    "<u>Liquidating Trustee</u>" means the Person appointed by the Debtor to act as

trustee of the Liquidating Trust in accordance with the terms of the Plan, the Confirmation

Order, and the Liquidating Trust Agreement, or such successor appointed as the trustee in accordance with the Liquidating Trust Agreement.  The initial Liquidating Trustee shall be James D. Decker.

61.    "Manager" means James D. Decker, in his capacity as the sole and independent manager to the Debtor.

62.    "Marriott" means Marriott Hotel Services, Inc. and any of its direct or indirect parents, subsidiaries, affiliates, successors, assigns, and their respective current and former officers, directors, principals, partners, members, management, employees, shareholders, trustees, agents, financial advisors, attorneys, accountants, professionals, advisors, and representatives.

63.    "Marriott Claim" means any and all Claims that have been or could have been asserted by Marriott against the Debtor and Pacific Life, including, without limitation, the Claims asserted under or in connection with (i) the Maryland Action' (ii) the *Hotel Management Agreement* between Debtor and Marriott, as set forth in Proof of Claim filed by Marriott on June 30, 2021, Docketed as Claim 42; and (iii) Marriott's alleged right to setoff and recoupment under applicable law with respect to the FF&E Reserve.

64.    "Marriott Contribution Amount" means Cash in the amount of $18,000,000, which amount is comprised of (i) the existing balance of the FF&E Reserve, plus (ii) Sale Proceeds that Pacific Life agrees may be distributed to Marriott (which amounts would otherwise be distributed in whole or in part on account of the Pacific Life Secured Claim or the Pacific Life DIP Loan Claim), solely to the extent Marriott supports the Marriott Settlement,

17

votes in favor of the Plan, and does not otherwise oppose the releases provided under the Plan, to be distributed to the Holder of the Marriott Claim free and clear of any liens, claims or encumbrances of Pacific Life in accordance with the terms of the Plan.  For the avoidance of doubt, except with respect to the inclusion of the existing balance of the FF&E Reserve, the Marriott Contribution Amount shall not be subject to reduction, setoff, withholding or recoupment in any way.

65.    " Marriott Settlement Motion" means that certain *Motion to Approve Compromise And Settlement of Claims and Causes of Action by and between the Debtor, Marriott Hotel Services, Inc, PL Wardman Member, LLC and Pacific Life Insurance Company,* filed in the Bankruptcy Court.

66.    "Marriott Settlement Order" means the order granting the Marriott Settlement Motion entered by the Bankruptcy Court.

67.    "Maryland Action" means Civil Action No. 483406-V in the Circuit Court for Montgomery County, Maryland, originally commenced by Marriott against the Debtor and Pacific Life on September 8, 2020 and removed to and pending in the Bankruptcy Court as Adversary Proceeding No. 21-50263 including the Debtor's counterclaim against Marriott filed therein, and Case No. 8:21-cv-1297 pending in the United States District Court for the District of Maryland between Marriott and Pacific Life.

68.    "Ordinary Course Professional Order" means the *Order (I) Authorizing the Debtor to Retain and Compensate Professionals Utilized in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 108].

18

69.　"Other Secured Claim" means any Secured Claim against the Debtor, other than the Pacific Life Claim or any tax claim asserted by a Governmental Unit that may constitute a Secured Claim under applicable non bankruptcy law.

70.　"Pacific Life" means Pacific Life Insurance Company and any of its direct or indirect parents, subsidiaries, affiliates, successors, and assigns and each of their current and former officers, directors, principals, partners, members, employees, shareholders, trustees, agents, financial advisors, attorneys, accountants, professionals, advisors, and representatives.

71.　"Pacific Life Secured Claim" means the pre-petition Secured Claim held by Pacific Life against the Debtor pursuant to the Final DIP Order.

72.　"Pacific Life DIP Loan Claim" means the Administrative Expense Claim and Secured Claim held by Pacific Life against the Debtor pursuant to the Final DIP Order.

73.　"Person" means any individual, corporation, limited liability company, general partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit, or other Entity.

74.　"Petition Date" means January 11, 2021, the date on which the Debtor filed a voluntary petition for relief commencing the Chapter 11 Case.

75.　"Plan" means this Plan of Liquidation, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules, including, without limitation, any exhibits and schedules hereto, either in its present form or as the same may be amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof.

19

76.    "Plan Contribution Amount" means the contribution made by Pacific Life to the Liquidating Trust from the Sale Proceeds in the amounts required to: (i) fund the GUC Contribution Amount, (ii) fund the Marriott Contribution Amount; (iii) pay (or reserve for payment) of any amounts, costs or expenses arising or coming due pursuant to the Sale Order or the Sale; (iv) fund the Professional Fee Reserve; (v) pay (or reserve for payment of) Administrative Claims; Non-Priority Tax Claims and Priority Tax Claims, (vi) initially fund the Liquidation Trust Assets Account in an amount to be mutually agreed by the Debtor, the Liquidating Trustee, and Pacific Life and (vii) make additional payments that may be required or contemplated pursuant to the Plan and fund the necessary reserves required under the Liquidating Trust and the Plan (including, without limitation the Disputed Claim Reserve and amounts payable to the United States Trustee pursuant to 28 U.S.C. § 1930) in the reasonable judgment and estimation of the Liquidating Trustee, provided however, that to the extent the Liquidating Trust holds any Plan Contribution Amount in excess of the amounts necessary to satisfy the payments and expenses provided herein and after the full administration of the Plan by the Liquidating Trustee, any such remaining Plan Contribution Amount shall be distributed to Pacific Life in accordance with the treatment provided in Article III of the Plan solely to the extent that the Pacific Life Secured Claim and/or the Pacific Life DIP Claim have not been fully satisfied pursuant to the Plan.

77.    "Plan Supplement" means the pleading or pleadings identified in the Plan or Disclosure Statement for filing with the Bankruptcy Court not later than seven (7) calendar days prior to the deadline established by the Bankruptcy Court for filing and serving objections

LEGAL02/40807839v5

to Confirmation of the Plan, which shall include certain exhibits and schedules to this Plan, as well as documents, agreements, and instruments evidencing and effectuating the Plan.

78.    "Priority Non-Tax Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

79.    "Priority Tax Claim" means a Claim that is entitled to priority under Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

80.    "Pro Rata" means the proportion that the Allowed Claim in a particular Class bears to the aggregate amount of (a) Allowed Claims in such Class as of the date of determination, plus (b) Disputed Claims in such Class as of the date of determination, in their aggregate face amounts or such other amount: (i) as calculated by the Liquidating Trustee on or before the date of any such Distribution; (ii) as determined by an Order of the Bankruptcy Court estimating such Disputed Claim; or (iii) as directed by a Final Order of the Bankruptcy Court.

81.    "Professional" means an Entity:  (a) employed pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

82.    "Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to Sections 330, 331, or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

83.    "Professional Fee Reserve" means a reserve fund established by the

Liquidating Trustee on or as soon as practicable after the Effective Date, to pay any accrued and

unpaid (a) Professional Fee Claims incurred by a Professional and which have not yet been

approved by the Bankruptcy Court; (b) fees or expenses incurred by an entity or person retained

under the Ordinary Court Professional Order; (c) Professional Fee Claims approved by the

Bankruptcy Court; and (d) fees and expenses of the Manager as described in Section II.C of the

Plan.  The amounts deposited into the Professional Fee Reserve shall be free and clear of all

liens, claims and encumbrances of any Persons or Entities except to the extent that any excess

amounts remain in the Professional Fee Reserve after payment of all Allowed Professional Fee

Claims, such excess amounts to be distributed in accordance with the Plan.

84.    "Proof of Claim" means a proof of claim filed pursuant to Section 501 of

the Bankruptcy Code or any order of the Bankruptcy Court, together with supporting documents.

85.    "Purchaser" shall mean the purchaser(s) of all or a portion of the Debtor's

assets pursuant to the Sale Order.

86.    "Rejection Bar Date" means the last date for any Entity whose claims

arise out of the Bankruptcy Court approved rejection of an executory contract or unexpired lease

to file a proof of claim for damages related to such rejection unless otherwise ordered by the

Court.  The Rejection Bar Date for Claims arising from the rejection of executory contracts and

unexpired leases rejected pursuant to the Plan shall be 30 days after the Effective Date of the

Plan, unless otherwise provided in the Confirmation Order.  For all other rejected executory

contracts and unexpired leases, the Rejection Bar Date shall be the date set forth in the order approving such rejection.

87.    "Released Parties" means, collectively, (a) the Debtor, (b) the Debtor's Manager, (c) Pacific Life, (d) PL Wardman Member, LLC, a wholly owned subsidiary of Pacific Life, and (e) Marriott, and (f) each of such Entities 'respective successors and assigns, and respective current and former shareholders, affiliates, subsidiaries, principals, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, and consultants.  For avoidance of doubt, Released Parties does not extend to any Entities or Persons with respect to the Debtor's claims or Causes of Action in the *Wardman Tower Residential Condominium Unit Owners Association v. JBG Smith Properties, et al* action currently pending in the Superior Court of the District of Columbia under Case No. 2020 CA 004807.[4]  As between the Debtor, Pacific Life and PL Wardman Member, LLC on the one hand, and Marriott, on the other hand, the release provision provided in Section VIII.E.3 controls.

88.    "Residue" shall means the net proceeds of Liquidating Trust Assets remaining, if any, after (i) the full and indefeasible payment of the Allowed Other Secured Claims, the Pacific Life Secured Claim, Allowed Administrative Claims (including the Pacific Life DIP Loan Claim), Allowed Priority Tax Claims, Allowed Priority-Non Tax Claims, Allowed General Unsecured Claims, inclusive of payment of applicable interest (where required) at the Federal Judgement Rate except with respect to the Pacific Life Secured Claim, Pacific Life

---

[4] For avoidance of doubt, the Debtor is not providing a release to the defendants in this lawsuit with respect to any of the Debtor's asserted rights, claims or causes of action against any of the parties in such lawsuit.

DIP Loan Claim; (ii) the full and indefeasible payment of the Marriott Contribution Amount to the Holder of the Marriott Claim in full and final satisfaction of such claim; and (iii) the establishment of appropriate reserves for any Disputed Claims and costs or expenses either incurred or expected to be incurred by the Liquidation Trust or Liquidating Trustee in connection with the Plan.

89.    "Sale" means the assets sold to the Purchaser and approved pursuant to the Sale Order

90.    "Sale Order" means the order entered on July 22, 2021, granting the

*Motion for Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of the Debtor's Assets Outside of the Ordinary Course of Business; (B) Authorizing the Sale of Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), 363(f), 363(m) and 1146; (C) Assuming and Assigning Certain Executory Contracts and Unexpired Leases; and (D) Granting Other Related Relief* [Docket No. 292].

91.    "Sale Proceeds" means the proceeds from the sale of the Debtor's assets to the Purchaser(s) pursuant to Sale Order after the payment of the Plan Contribution Amount to the Liquidating Trust.

92.    "Schedules" means the schedules of assets and liabilities as the Bankruptcy Court required the Debtor to file pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time, and the Debtor's statements of financial affairs filed with the

24

Bankruptcy Court, as the Bankruptcy Court required the Debtor to file pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

93.     "Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under Sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

94.     "Subsequent Distribution Date" means any date after the Initial Distribution Date upon which the Liquidating Trust makes a distribution to any Holders of Allowed Administrative, Secured, Priority, or Unsecured Claims.

95.     "Tax" means any tax, charge, fee, levy, impost, or other assessment by any federal, state, local, or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation, and withholding tax.  "Tax" shall include any interest or additions attributable to, imposed on, or with respect to such assessments.

96.     "Tax Claim" means all or that portion of an Allowed Claim held by a Governmental Unit for a Tax assessed or assessable against the Debtor.

97.     "Unimpaired Claim" means an unimpaired Claim within the meaning of Section 1124 of the Bankruptcy Code.

98.    "U. S. Trustee" means the Office of the United States Trustee for the District of Delaware.

99.    "Voting Instructions" means the instructions for voting on the Plan contained in Article 1 of the Disclosure Statement and in the Ballots.

100.    "Voting Record Date" means the date fixed by the Bankruptcy Court as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Plan.

## II.

## UNCLASSIFIED ADMINISTRATIVE CLAIMS,

## PROFESSIONAL FEES, AND PRIORITY TAX CLAIMS

### A.    Introduction

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code, as set forth below.

### B.    Administrative Claims

Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim, (other than a Professional Fee Claim), shall receive, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order Allowing such Claim; (b) in accordance with the

terms and conditions of agreements between the Holder of such Claim and the Debtor or the

Liquidating Trustee, as the case may be; (c) with respect to any Administrative Claims

representing obligations incurred in the ordinary course of the Debtor's business, upon such

regular and customary payment or performance terms as may exist in the ordinary course of the

Debtor's business or as otherwise provided in the Plan; or (d) with respect to statutory fees due

pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.

Notwithstanding any provision in the Plan regarding payment of Administrative Claims

to the contrary, all Administrative Claims (other than Professional Fee Claims and the Pacific

Life DIP Loan Claim which is Allowed) must be filed by either: (i) the Bar Date Order, solely

with respect to Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code,

or (ii) the applicable Administrative Claims Bar Date.  Holders of Administrative Claims that do

not file/have not filed such requests by the applicable deadlines provided for herein may be

subject to objection for untimeliness and may be prohibited by order of the Bankruptcy Court

from asserting such claims against the Debtor, the Estate, the Liquidating Trust, or their

successors or assigns, or their property.

## C.    **Professional Fee Claims**

Professionals requesting compensation or reimbursement of expenses pursuant to

Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code or required to file fee

applications by order of the Bankruptcy Court for services rendered prior to the Effective Date

must file and serve pursuant to the notice provisions of the Interim Fee Order, an application for

final allowance of compensation and reimbursement of expenses no later than sixty (60) days

27

after the Effective Date.[5]  All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court.  Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court.

On the Effective Date, or as soon as practicable thereafter, the Liquidating Trustee shall establish an appropriate Professional Fee Reserve based upon estimates of anticipated fees provided by Professionals for services rendered and expenses incurred prior to the Effective Date, including estimated fees for services rendered, and actual and necessary costs incurred, in connection with the filing, service and prosecution of any applications for allowance of Professional Fees pending on the Effective Date or filed and/or served after the Effective Date. The Liquidating Trustee shall supplement the Professional Fee Reserve if the amount originally established is insufficient to pay Allowed Professional Fee Claims.  Upon approval of the fee applications by the Bankruptcy Court for Professional Fee Claims, the Liquidating Trustee shall pay Professionals all of their respective accrued and Allowed fees and reimburse Allowed expenses arising prior to the Effective Date.

### D.    Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Tax Claim, the Liquidating Trust shall pay each holder of an Allowed

---

[5] For avoidance of doubt, any entities or persons employed or retained pursuant to the Ordinary Course Professional Order shall not be required to file applications for payment of fees and reimbursement of expenses on behalf of the Debtor.

LEGAL02/40807839v5

Priority Tax Claim the full unpaid amount of such Allowed Priority Tax Claim as follows: (a) Cash equal to the unpaid portion of the Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, (b) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable non-bankruptcy law as of the calendar month in which the Confirmation Date occurs in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, or (c) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the Debtor shall have agreed upon in writing.

**III.**

**CLASSIFICATION AND TREATMENT OF**

**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.**     **Summary**

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation, and Distribution (if any) pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been

29

paid or otherwise settled prior to the Effective Date.

**B.**    **Classification and Treatment of Claims against the Debtor**

The classification of Claims and Equity Interests against the Debtor pursuant to the Plan

is as follows:

| Class | Status | Voting Rights |
|-------|--------|---------------|
| Class 1 – Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 2 – Other Secured Claims | Unimpaired | Not Entitled to Vote |
| Class 3 – Pacific Life Secured Claim | Impaired | Entitled to Vote |
| Class 4 – Marriott Claim | Impaired | Entitled to Vote |
| Class 5 – General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 – Equity Interests | Impaired | Not Entitled to Vote |

1.    Class 1 – Priority Non-Tax Claims

a.    **Classification:**  Class 1 consists of Priority Non-Tax Claims.

b.    **Treatment:**  Each Holder of an Allowed Priority Non Tax Claim

shall receive, in full and final satisfaction of such Allowed Priority Non Tax Claim, (i)

Cash in the amount of such claim, as soon as practicable following the later of: (a) the

Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim;

or (ii) such other treatment as may be agreed by the Debtor and such holder.

c.    **Voting:**  Class 1 is not an Impaired Class and Holders of Priority

Non-Tax Claims are not entitled to vote on the Plan.

2.    Class 2 – Other Secured Claims

**a.**    **Classification:**  Class 2 consists of Other Secured Claims.  For purposes of distributions under the Plan, each Holder of Other Secured Claim in Class 2 is considered to be in its own separate subclass within Class 2 (*i.e.*, Class 2A, Class 2B, *etc*.), and each such subclass is deemed to be a separate Class for purposes of the Plan.

**b.**    **Treatment:**  Except to the extent previously paid in full, to the extent any Other Secured Claims exist, at the option of the Debtor or the Liquidating Trustee, as applicable, one of the following treatments shall be provided: (i) the Holder of such Other Secured Claim shall retain its Lien on its collateral until such collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such collateral, shall be paid to such Holder in full satisfaction, release, and discharge of such Allowed Other Secured Claim; (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Other Secured Claim, or as otherwise agreed between the Holder of such Other Secured Claim and the Debtor or the Liquidating Trustee, as applicable, the Holder of such Other Secured Claim will receive a Cash payment equal to the amount of its Other Allowed Other Secured Claim in full and final satisfaction, settlement, discharge and release of, and in exchange for such Other Secured Claim; or (iii) the collateral securing the Creditor's Other Secured Claim shall be abandoned to such Creditor, in full and final satisfaction and release of such Other Secured Claim.

**c.**    **Voting:**  Class 2 is not an Impaired Class, and Holders of Other Secured Claims are not entitled to vote on the Plan.

31

3.    Class 3 – Pacific Life Secured Claim

**a.    Classification:**  Class 3 consists of Pacific Life Secured Claim and the Pacific Life DIP Loan Claim.

**b.    Treatment:**  the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim are and shall be Allowed in the full amount of such claim as provided under the Final DIP Order.  To the extent not paid previously in whole or part in connection with a closing of the sale of Pacific Life's collateral, on or as soon as practicable after the Effective Date, the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim shall receive Cash in the full Allowed amount of such Claim, after the payment of the Plan Contribution Amount to the Liquidating Trust, in full and final satisfaction and release of such claim *provided however* that if the Liquidating Trustee does not have sufficient Cash to fully and indefeasibly pay the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim on the Effective Date, Pacific Life shall receive subsequent Distributions (including Distributions on account of any excess amounts of the Plan Contribution Amount), from the net proceeds of any Liquidating Trust Assets that constitute Collateral under the Final DIP Order, until the remainder of the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim is fully paid.  For avoidance of doubt, the Holder of the Pacific Life Secured Claim and the Pacific Life DIP Claim shall not receive any distributions from the GUC Contribution Amount on account of any of such holder's unsecured deficiency claims unless each Holder of an Allowed General Unsecured Claim is paid in full.

32

   **c.**  **Voting:** Class 3 is an Impaired Class and the Holder of the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim is entitled to vote to accept or reject the Plan.

   4.  <u>Class 4 – Marriott Claim</u>

   **a.**  **Classification:** Class 4 consists of the Marriott Claim.

   **b.**  Treatment:  Provided Marriott supports the Marriott Settlement, votes in favor of the Plan and does not oppose or otherwise seek to repudiate the releases provided under the Plan, on the Effective Date, the Holder of the Allowed Marriott Claim shall receive the Marriott Contribution Amount, in full and final satisfaction, settlement and release of, and in exchange for, such Marriott Claim.  The Marriott Claim shall be deemed an Allowed Claim and receive the treatment herein in full satisfaction of such claim subject to the entry of the Marriott Settlement Order and the occurrence of the Effective Date.  For the avoidance of doubt, with respect to the Released Parties, the Marriott Contribution Amount shall be the sole source of recovery and Distributions to the Holder of the Marriott Claim on account of such claim, provided, that in no event shall the payment of the Marriott Contribution Amount limit (i) Marriott's defenses in response to the claims, if any, of third parties to the extent such claims are not released pursuant to the Third Party Release, and (ii) Marriott's right to recover amounts owing to or recoverable by Marriott from third parties other than the Released Parties

   **c.**  **Voting:** Class 4 is an Impaired Class and the Holder of the Marriott Claim is entitled to vote to accept or reject the Plan.

33

5.      Class 5 – General Unsecured Claims

      **a.**      **Classification:**  Class 5 consists of all General Unsecured Claims.

      **b.**      **Treatment:**  Each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, settlement, and release of, and in exchange for such Allowed General Unsecured Claim: (i) Pro Rata Distribution of the GUC Contribution Amount; (ii) Pro Rata Distribution of the net Liquidation Trust Proceeds that do not constitute Collateral under the Final DIP Order; and (iii) solely in the event the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim are indefeasibly and fully paid, Pro Rata Distributions from the net proceeds derived from the remaining Liquidating Trust Assets.

      **c.**      **Voting:**  Class 5 is an Impaired Class and Holders of Claims in this Class are entitled to vote to accept or reject the Plan.

6.      Class 6 – Equity Interests

      **a.**      **Classification:**  Class 6 consists of Equity Interests.

      **b.**      **Treatment:**  As of the Effective Date, all Equity Interests of any kind shall be deemed void, cancelled, and of no further force and effect and the Holders thereof shall not receive or retain any property or interest in property under the Plan on account of such Equity Interests, *provided however* that Each holder of an Equity Interest shall receive such Holder's Pro Rata share of the Residue, if any, determined in accordance with its percentage ownership of Equity Interests in the Debtor.

34

        **c.**     **Voting:** Class 6 is deemed to have rejected the Plan and Holders of Equity Interests are not entitled to vote on the Plan.

## IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

**A.**     **Voting Classes**

Each Holder of an Allowed Claim in Classes are entitled to vote either to accept or to reject the Plan. Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.

**B.**     **Presumed Acceptance of Plan**

The Holders of Claims in Class 1 and Class 2 are unimpaired under the Plan and are therefore deemed to accept the Plan.

**C.**     **Acceptance by Impaired Classes**

Class 3, 4 and 5 shall have accepted the Plan if: (a) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.[6]

---

[6] In the event the Debtor seeks confirmation of the Plan under Section 1129(b) of the Bankruptcy Code, the Debtor will not seek to propose Class 3 (Pacific Life Secured Claim) as the impaired accepting class required to confirm the Plan provided under section 1129(a)(10) of the Bankruptcy Code.

LEGAL02/40807839v5

**D.**     **Presumed Rejection of Plan**

The Holders of Class 6 Equity Interests are not anticipated to receive any distributions under the Plan and are therefore deemed to reject the Plan and are not entitled to vote.

**E.**     **Nonconsensual Confirmation**

Because Class 6 is deemed to reject the Plan by operation of law, the Debtor will request the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.  Without limiting the foregoing, in the event that any Class of Claims entitled to vote on the Plan fails to accept the Plan as required by Section 1129(a) of the Bankruptcy Code, the Plan may be amended and, in any event, as applicable, the Debtor reserves the right to seek confirmation of the Plan over such rejection pursuant to Section 1129(b) of the Bankruptcy Code.

# V.

# MEANS FOR IMPLEMENTATION OF THE PLAN

**A.**     **Settlement of Claims and Causes of Action Between the Debtor and Marriott**

The entry of the Marriott Settlement Order and confirmation of this Plan shall constitute the Bankruptcy Court's approval of the compromise and settlement of claims, causes of action, and controversies by and between the Debtor, Pacific Life, PL Wardman Member, LLC, and Marriott, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtor, its Estate, and is fair, equitable, reasonable, and in the best interests of the Debtor and its Estate.

**B.**  **Dissolution of Debtor**

From and after the Effective Date, the Liquidating Trustee may dissolve the Debtor, without any further action required on the part of the Debtor or the Debtor's officers, directors, managers, members, equity holders, and/or any other parties; provided, however, the Liquidating Trustee in his or her discretion shall be authorized to take any and all actions necessary or desirable in relation to dissolution of the Debtor.

**C.**  **Appointment of the Liquidating Trustee**

The initial Liquidating Trustee is James Decker.  From and after the Effective Date, professionals may be retained by the Liquidating Trustee without further need for documentation or Bankruptcy Court approval.  All fees and expenses incurred by the professionals retained by the Liquidating Trustee following the Effective Date shall be paid by the Liquidating Trust from the Liquidating Trust Assets (after payment in full of all Allowed Administrative Claims) in accordance with the Liquidating Trust Agreement.

**D.**  **The Liquidating Trust**

1.    Formation of the Liquidating Trust

On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, *inter alia*, (a) administering the Liquidating Trust Assets including the distributions and payments contemplated by the Plan Contribution Amount, (b) prosecuting and/or resolving all Disputed Claims, (c) investigating and pursuing any Causes of Action the Debtor holds or may hold against any Entity, and (d) making all Distributions to the Beneficiaries provided for under the Plan. The Liquidating Trust is intended

37

to qualify as a liquidating trust pursuant to Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of the trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.  Accordingly, the Liquidating Trustee shall, in an expeditious but orderly manner, make distribution to Holders of Allowed Claims subject to the terms of this Plan, liquidate and convert to Cash the remaining Liquidating Trust Assets, and make timely Distributions to the Beneficiaries of the proceeds thereof, and not unduly prolong the duration of the Liquidating Trust.  Neither the Liquidating Trust nor the Liquidating Trustee shall be or shall be deemed a successor-in-interest of the Debtor for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.

2.    Funding of the Liquidating Trust

On the Effective Date, the Liquidating Trust Assets shall vest automatically in the Liquidating Trust.  The Plan shall be considered a motion pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for such relief.  The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries. The assets comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtor to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. The Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall

succeed to all of the Debtor's rights, title and interest in the Liquidating Trust Assets, and the Debtor will have no further interest in or with respect to the Liquidating Trust Assets.

Except to the extent definitive guidance from the IRS or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations or the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, as soon as possible after the Effective Date, the Liquidating Trustee shall make a good-faith valuation of the Liquidation Trust Assets.  The valuation shall be used consistently by all parties (including, without limitation, the Debtor, the Liquidating Trust, the Beneficiaries) for all federal income tax purposes.

E.    **Rights and Powers of the Liquidating Trustee**

The Liquidating Trustee shall be deemed the Estate's representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules to act on behalf of the Liquidating Trust.  Without limiting the foregoing, the Liquidating Trustee will have the right to, among other things, (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate the Liquidating Trust Assets; (3) investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtor holds or may hold

39

against any Entity; (4) make Distributions as contemplated hereby, (5) establish and administer any necessary reserves for Disputed Claims that may be required; (6) object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (7) assert or waive any attorney-client privilege on behalf of the Debtor and Estate with regard to acts or events during time periods prior to the Petition Date; and (8) employ and compensate professionals and other agents, including, without limitation, existing Professionals employed by the Debtor in accordance with the Liquidating Trust Agreement or the Plan, *provided*, *however*, that any such compensation shall be made only out of the Liquidating Trust Assets, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

**F.**     **Fees and Expenses of the Liquidating Trust**

Subject to payment in full of all Allowed Administrative Claims, and except as otherwise ordered by the Bankruptcy Court, expenses incurred by the Liquidating Trust on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court.

**G.**     **Transfer of Beneficial Interests in the Liquidating Trust**

Liquidating Trust Interests shall not be transferable except upon death of the interest holder or by operation of law. The Liquidating Trust shall not have any obligation to recognize any transfer of Claims or Equity Interests occurring after the Distribution Record Date.

LEGAL02/40807839v5

**H.**    **Plan Contribution Amount**

On or as soon as practicable following the Effective Date, the Liquidating Trust Assets

Account shall be opened by the Liquidating Trustee and funded with the Plan Contribution

Amount and which funds shall constitute Liquidating Trust Assets.  Thereafter, from time to

time, upon receipt of any Liquidation Proceeds or any Causes of Action recoveries, the

Liquidating Trustee shall deposit such funds into the Liquidating Trust Assets Account, and they

shall become part of the Liquidating Trust Assets.

**I.**    **Litigation of Debtor's Causes of Action**

Except as otherwise provided in this Plan, all Causes of Action are retained, vested in the

Liquidating Trust, and preserved pursuant to Section 1123(b) of the Bankruptcy Code.  From and

after the Effective Date, all Causes of Action will be prosecuted or settled by the Liquidating

Trustee.  Except as otherwise provided in this Plan, to the extent any Causes of Action are

already pending on the Effective Date, the Liquidating Trustee, as successor to the Debtor (in

any derivative capacity or as an intervening party), will continue the prosecution of such Causes

of Action and shall be substituted as plaintiff, defendant, or in any other capacity for the Debtor

pursuant to this Plan and the Confirmation Order on the Effective Date without need for any

further motion practice or notice in any case, action, or matter.

**J.**    **Full and Final Satisfaction**

Commencing upon the Effective Date, subject to the terms of this Plan and the

Liquidating Trust Agreement, the Liquidating Trustee shall be authorized and directed to

distribute the amounts required under the Plan to the Holders of Allowed Claims according to the

41

provisions of the Plan.  Upon the Effective Date, all Debts of the Debtor shall be deemed fixed

and adjusted pursuant to this Plan, and the Liquidating Trust shall have no liability on account of

any Claims or Equity Interests except as set forth in this Plan and in the Liquidating Trust

Agreement.  All payments and all distributions made by the Liquidating Trustee under the Plan

shall be in full and final satisfaction, settlement, and release of all Claims against the Liquidating

Trust; *provided, however*, that nothing contained in this Section V of the Plan, or in any other

provision of this Plan, shall be deemed to constitute or result in a discharge of the Debtor under

Bankruptcy Code Section 1141(d).

## K.      **Distribution Procedures**

1.      <u>Distribution Dates</u>.  The Liquidating Trustee shall make Distributions to Holders

of Claims as provided in Article III of the Plan.

2.      <u>Subsequent Distributions</u>.  Any Distribution not made on the Initial Distribution

Date or a Subsequent Distribution Date because the Claim relating to such Distribution had not

been Allowed on that Distribution Date shall be held by the Liquidating Trust for Distribution on

any Subsequent Distribution Date after such Claim is Allowed.  No interest shall accrue or be

paid on the unpaid amount of any Distribution.

3.      <u>Distribution Record Date</u>.  Except as otherwise provided in a Final Order of the

Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule

3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims

for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for

objecting to the transfer may not have expired by the Distribution Record Date.  The Liquidating

LEGAL02/40807839v5

Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date.  In making any Distribution with respect to any Claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to the Liquidating Trustee as of the Distribution Record Date.

4.      Manner of Cash Payments Under the Plan or Liquidating Trust Agreement.  Cash payments made pursuant to the Plan or Liquidating Trust Agreement shall be in United States dollars by checks drawn on a domestic bank selected by the Liquidating Trustee or by wire transfer from a domestic bank, at the option of the Liquidating Trustee.

5.      Time Bar to Cash Payments by Check.  Checks issued by the Liquidating Trustee on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Article shall be made directly to the Liquidating Trustee by the Holder of the Allowed Claim to which the check was originally issued.  Any Claim in respect of such voided check shall be made in writing on or before the later of six months from the Effective Date or 90 days after the date of issuance thereof.  After that date, all Claims in respect of voided checks shall be disallowed and forever barred and the proceeds of those checks shall revest in and become the property of the Liquidating Trust as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code.

43

**L.     Resolution of Disputed Claims**

1.     No Distribution Pending Allowance.  Notwithstanding any other provision of the Plan, the Liquidating Trustee shall not Distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed.  Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim.

2.     Resolution of Disputed Claims.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Liquidating Trustee shall have the right to make, file, prosecute, settle, withdraw, or resolve objections to Claims.  The costs of pursuing the objections to Claims shall be borne by the Liquidating Trust.  From and after the Confirmation Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent, the Liquidating Trustee elects to withdraw any such objection or the Liquidating Trustee and the Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Equity Interest without approval of the Bankruptcy Court.

3.     Objection Deadline.  All objections to Disputed Claims shall be filed and served upon the Claimant not later than the Claims Objection Deadline, as such may be extended by order of the Bankruptcy Court.  If and when the Liquidating Trustee ever determines that there is likely to be remaining Liquidation Proceeds realized by the Liquidating Trust after the payment (or reserve for payment) in full of all Liquidating Trust expenses, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Other

44

Secured Claims, the Allowed Pacific Life Claim, the Allowed Marriott Claim, and Allowed

General Unsecured Claims, with interest accrued from and after the Petition Date, the

Liquidating Trustee will file a notice to this effect with the Bankruptcy Court with such

additional excess proceeds to be distributed Pro Rata to Equity Security Holders as Residue.

4.      Estimation of Claims.  At any time, (a) prior to the Effective Date, the Debtor,

and (b) after the Effective Date, the Liquidating Trustee, may request that the Bankruptcy Court

estimate any contingent or unliquidated Claim to the extent permitted by Section 502(c) of the

Bankruptcy Code regardless of whether the Debtor or the Liquidating Trust has previously

objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the

Bankruptcy Court shall have jurisdiction to estimate any Claim at any time to any such objection.

If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount

shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim,

as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum

limitation on the Claim, the Debtor or the Liquidating Trust, as applicable, may elect to pursue

supplemental proceedings to object to the ultimate allowance of the Claim.  All of the

aforementioned Claims objection, estimation, and resolution procedures are cumulative and not

exclusive of one another.  Claims may be estimated and subsequently compromised, settled,

withdraw, or resolved by any mechanism of the Bankruptcy Court.

5.      Disallowance of Claims.

(a)      Except as otherwise agreed, any and all proofs of claim filed after the Bar

Date shall be deemed disallowed as of the Effective Date without any further notice or action,

order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any

Distributions on account of such Claims, unless on or before the Confirmation Date the

Bankruptcy Court has entered an order deeming such Claim to be timely filed.

(b)     Subject to and in accordance with this Plan, any Claims held by Entities

from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code

or Entities that are transferees of transfers avoidable under Section 522(f), 522(h), 544, 545, 547,

548, 549, or 724(a) of the Bankruptcy Code, provided that such Cause of Action is retained by

the Liquidating Trust, shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy

Code, and Holders of such Claims may not receive any Distributions on account of such Claims

until such time as such Causes of Action the Debtor holds or may hold against any Entity have

been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums

due, if any, to the Estate by that Entity have been turned over or paid to the Debtor or

Liquidating Trust.

6.     Adjustment Without Objection.  Any Claim that has been paid or satisfied, or any

Claim that has been amended or superseded, may be adjusted or expunged from the claims

register at the direction of the Debtor or the Liquidating Trustee, as applicable, without an

objection filed and without further notice to or action, order, or approval of the Bankruptcy

Court.

## M.     Reserve Provisions for Disputed Claims

1.     Establishment of Disputed Reserves.  On or prior to a Distribution Date, the

Liquidating Trustee shall reserve Cash required for Distribution on Disputed Claims as if such

46

Claims were Allowed as filed with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee (the "Disputed Claim Reserve").  On each Distribution Date after the Effective Date in which the Liquidating Trustee makes Distributions to Holders of Allowed Claims, the Liquidating Trustee shall retain on account of Disputed Claims an amount the Liquidating Trustee estimates would be necessary to fund the Pro Rata Share of such Distributions to Holders of Disputed Claims if such Claims were Allowed, with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee.

      2.      <u>Maintenance of Disputed Claim Reserves</u>.  The Liquidating Trust shall hold property in the Disputed Claim Reserve in trust for the benefit of the Holders of Disputed Claims that are ultimately determined to be Allowed.  Each Disputed Claim Reserve shall be closed (or deemed closed) by the Liquidating Trust when all Distributions and other dispositions of Cash of other property required to be made hereunder will have been made in accordance with the terms of the Plan.  Upon closure of a Disputed Claim Reserve, all Cash or other property held in that Disputed Claim Reserve shall revest in and become unrestricted property of the Liquidating Trust to be distributed in accordance with the Plan and the Liquidating Trust Agreement.

      3.      <u>Limitations on Funding Disputed Claim Reserves</u>.  Except as expressly set forth in the Plan, neither the Debtor nor the Liquidating Trustee shall have any duty to fund any Disputed Claim Reserve except from the Liquidating Trust Assets.

LEGAL02/40807839v5

**N.**     **Rounding**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual Distribution shall reflect a rounding of such fraction down to the nearest cent.

**O.**     **No Cash Payments of Less Than $50 on Account of Allowed Claims**

Notwithstanding anything herein to the contrary, except with respect to Administrative, Priority Tax, Secured and Priority Non-Tax Claims, if a Distribution to be made to a Holder of an Allowed Claim on the Initial Distribution Date or any Subsequent Distribution Date would be $50 or less in the aggregate, no such Distribution will be made to that Holder unless a request therefor is made in writing to the Liquidating Trustee.  If such request is made, such Cash shall be held for such Holder until the earlier of (i) the next time an interim Distribution is made to the Holders of Allowed Claims (unless the Distribution would still be less than $50, in which case this Section shall again apply), or (ii) subject to Section Q below, the date on which Final Distributions are made to the Holders of Allowed Claims.

**P.**     **Delivery of Distributions and Unclaimed Property**

1.     <u>Delivery of Distributions</u>.  Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims shall be made by the Liquidating Trustee at (a) the address of each Claimant as set forth in the Schedules, unless superseded by the address set forth on proof(s) of claim filed by such Claimant, or (b) the last known address of such Claimant if no proof of claim is filed or the Debtor or Liquidating Trustee has been notified in writing of a change of address.  If any Distribution is returned as undeliverable, the Liquidating Trustee may, in its discretion, make reasonable efforts to

48

determine the current address of the Holder of the Claim with respect to which the Distribution

was made as the Liquidating Trustee deems appropriate, but no Distribution to any such Holder

shall be made unless and until the Liquidating Trustee has determined the then-current address of

such Holder, at which time the Distribution to such Holder shall be made without interest.

Amounts in respect of any undeliverable Distributions shall be returned to, and held in trust by,

the Liquidating Trustee until the Distributions are claimed or are deemed to be unclaimed

property under Section 347(b) of the Bankruptcy Code, as set forth in Article V, Paragraph K of

the Plan.  The Liquidating Trustee shall have the discretion to determine how to make

Distributions in the most efficient and cost-effective manner possible; *provided, however*, that its

discretion may not be exercised in a manner inconsistent with any express requirements of the

Plan or Liquidating Trust Agreement.  On or about the time that the final Distribution is made,

the Liquidating Trustee may make a charitable donation with undistributed funds if, in the

reasonable judgment of the Liquidating Trustee, the cost of calculating and making the Final

Distribution of the remaining funds is excessive in relation to the benefits to the holders of

Claims that would otherwise be entitled to such Distributions, and such charitable donation is

provided to an entity not otherwise related to the Debtor or the Liquidating Trustee.

      2.    <u>Unclaimed Property</u>.  Except with respect to property not distributed because it is

being held in the Disputed Claim Reserve, Distributions that are not claimed by the later of the

expiration of six (6) months from the Effective Date or (90) days after the date of a Distribution

shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and

shall vest or revest in the Liquidating Trust, and the Claims with respect to which those

Distributions are made shall be automatically cancelled.  After the expiration of that period, the claim of any Entity to those Distributions shall be disallowed and forever barred.  Nothing contained in the Plan shall require the Liquidating Trust to attempt to locate any holder of an Allowed Claim.  All funds or other property that vest or revest in the Liquidating Trust pursuant to this Article shall be distributed by the Liquidating Trustee to the other holders of Allowed Claims or Equity Interests in accordance with the provisions of the Plan or the Liquidating Trust Agreement.

## Q.    __Withholding Taxes__

In connection with making Distributions under this Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Liquidating Trustee may withhold the entire Distribution to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any Governmental Unit. Any property so withheld will then be paid by the Liquidating Trustee to the appropriate authority.  If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any Governmental Unit within six months after the date of first notification to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such Holder's Distribution shall be treated in accordance with Article V, Paragraph Q of the Plan.

**R.**     **United States Trustee Fees**

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtor on or before the Effective Date. Thereafter, the Liquidating Trustee shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a Final Decree or an order converting or dismissing the Chapter 11 Case.

**S.**     **Books and Records**

Subject to the Sale Order, the Debtor shall transfer dominion and control over all of its books and records, in whatever form, manner or media, including, without limitation, the specific provision and presentation, to the Liquidating Trustee of all passcodes for security systems and computers, keys, keycards, and notice letters to landlords, warehousemen or other relevant parties.

**T.**     **No Modification of Terms of the Sale Order**

Nothing in the Plan or Confirmation Order shall be deemed to alter, modify or amend the terms and provisions of the Sale Order.

**VI.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.**     **Rejection of Executory Contracts and Unexpired Leases**

Except with respect to executory contracts or unexpired leases that: (i) were previously assumed, assumed and assigned, or rejected by order of the Bankruptcy Court (including, without limitation, the Sale Order), and (ii) are the subject of a pending motion to assume or reject, pursuant to Section 365 of the Bankruptcy Code, on the Effective Date, each executory

51

contract and unexpired lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code; *provided, however*, that nothing in this Section VI.A shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtor and the Estate, the Debtor's officers, directors and managers and/or the Liquidating Trust.  Nothing in this Article VI shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease.  For avoidance of doubt, the Confirmation Order shall constitute a rejection of (i) any collective bargaining agreements entered into by Marriott and/or that may be binding on the Debtor; and (ii) those certain Owner's Letters relating to such collective bargaining agreements(collectively, the "CBAs"), *provided however* that nothing in the Plan or the Confirmation Order shall impair or otherwise affect any rights or obligations of the Successful Bidder (as defined in the Sale Order) or the applicable unions with respect to the CBAs to the extent provided under paragraphs D and 25 of the Sale Order.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date.  The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases, and neither the Debtor nor the Liquidating Trust shall bear any liability for costs associated with respect to the forgoing.

**B.** **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be filed with the Bankruptcy Court within thirty (30) days after the earlier of the Effective Date or an order of the Bankruptcy Court approving such rejection. Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan that is not filed within such times will be subject to objection. All such Claims for which Proofs of Claim are timely and properly filed and ultimately Allowed will be treated as General Unsecured Claims subject to the provisions of Article III of the Plan.

**C.** **Insurance Policies**

Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations of the Insurance Policies. To the extent one or more of the Insurance Policies provide potential coverage related to one or more Causes of Action the Debtor holds or may hold against any Entity, the Debtor shall, to the extent permissible under each Insurance Policy, assign all of its rights thereunder with respect to such Causes of Action to the Liquidating Trust. All net proceeds (including, for the avoidance of doubt, net of any deductibles or retentions) of Insurance Policies received by the Liquidating Trust shall be treated as proceeds of such Causes of Action for all purposes under the Plan. The Debtor shall take no action to or otherwise impair the Insurance Policies. Nothing in this Plan shall diminish or impair the enforceability of the Insurance Policies and related agreements that may cover Claims and Causes of Action against the Debtor or any other Entity.

LEGAL02/40807839v5

**D.**    **Excess Proceeds**

To the extent the net proceeds of the Liquidation Trust Assets exceed the amount necessary to fully perform this Plan and the Liquidating Trust (including the payment of all expenses, costs and payments required thereunder) and make all of the distributions to the holders of Allowed Claims required under the Plan, such excess shall become part of the Residue.

## VII.

## CONDITIONS PRECEDENT TO CONFIRMATION

## OF THE PLAN AND TO THE EFFECTIVE DATE

**A.**    **Conditions to Confirmation of the Plan**

Confirmation of this Plan is conditioned upon the satisfaction of each of the following conditions precedent: (i) the Bankruptcy Court shall have approved the Disclosure Statement in form and substance acceptable to the Debtor, Marriott, and Pacific Life, in all reasonable respects, unless the Debtor, Marriott, and Pacific Life otherwise agree in writing to waive this condition precedent; (ii) unless the Debtor agrees in writing to waive this condition precedent, the Debtor shall have determined, that there will be sufficient Cash on the Effective Date to pay (or with respect to Disputed Claims to reserve for as required pursuant to the Plan) (A) Allowed Administrative Claims, Non-Tax Priority Claims and Priority Tax Claims in full (or in such amount as may be agreed by the applicable Claimant; and (B) and fund the reserves and other amounts required under the Plan and Liquidating Trust Agreement, including the funding of the Professional Fee Reserve and the Plan Contribution Amount; (iii) the Marriott Settlement Order

54

to be presented to the Bankruptcy Court at the Confirmation Hearing shall be acceptable to the Debtor, Marriott, and Pacific Life in form and substance, in all reasonable respects, unless the Debtor, Marriott, and Pacific Life agree in writing to waive this condition precedent; and (iv) the Confirmation Order to be presented to the Bankruptcy Court at the Confirmation Hearing shall be acceptable to the Debtor, Marriott and Pacific Life and in form and substance, in all reasonable respects, unless the Debtor, Marriott, and Pacific Life otherwise agree in writing to waive this condition precedent.

**B.**      **Effect of Failure of Conditions to Confirmation**

If any one or more of the conditions in Section VII.A is not met, the Debtor may withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

**C.**      **Conditions to Effective Date**

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent: (i) a Confirmation Order in form and substance acceptable to the Debtor, Marriott and Pacific Life, in all reasonable respects, shall have been entered by the Bankruptcy Court, unless the Debtor, Marriott, and Pacific Life otherwise agree in writing to waive this condition precedent; (ii) the Marriott Settlement Order in form and substance acceptable to the Debtor, Marriott, and Pacific Life, in all reasonable respects, shall have been entered by the Bankruptcy Court, unless the Debtor, Marriott, and Pacific Life otherwise agree in writing to waive this condition precedent; (iii) unless otherwise waived in writing by the Debtor, the Liquidating Trust shall have  been created pursuant to the terms of the Plan, the Liquidating Trustee shall have been appointed by order of the Bankruptcy Court (which may be the

Confirmation Order) and the Liquidating Trust Agreement shall have been executed by the Liquidating Trustee; (iv) unless otherwise waived in writing by the Debtor, the Sale shall have closed on or before the Effective Date; (v) unless otherwise waived in writing by the Debtor, the Plan Contribution Amount shall have been funded; and (vi) unless otherwise waived in writing by the Debtor, all other actions and documents determined by the Debtor to be necessary to implement the Plan shall have been effected and executed.

**D.** **Effective Date**

Provided the above-referenced conditions to the occurrence of the Effective Date are satisfied, this Plan shall become effective on the Effective Date. If any one or more of the conditions in Section VII.C is not met, the Debtor may withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

## VIII.

## EFFECTS OF CONFIRMATION

**A.** **Binding Effect of Plan**

The provisions of the confirmed Plan shall bind the Debtor, the Liquidating Trust, the Liquidating Trustee, any Entity acquiring property under the Plan, any Beneficiary, and any Creditor or Equity Interest Holder, whether or not such Creditor or Equity Interest Holder has filed a Proof of Claim or Equity Interest in the Chapter 11 Case, whether or not the Claim of such Creditor or the Equity Interest of such Equity Interest Holder is impaired under the Plan, and whether or not such Creditor or Equity Interest Holder has accepted or rejected the Plan. All Claims and Debts shall be fixed and adjusted pursuant to this Plan. This Plan shall also bind any

56

taxing authority, recorder of deeds, or similar official for any county, state, or Governmental

Unit or parish in which any instrument related to under this Plan or related to any transaction

contemplated under this Plan is to be recorded with respect to any taxes of the kind specified in

Bankruptcy Code Section 1146(a).

**B.**     **Vesting of Property of Debtor in the Liquidating Trust**

Upon the Effective Date, title to all property of the Estate of the Debtor in the Chapter 11

Case shall vest in the Liquidating Trust and shall be retained by the Liquidating Trust for the

purposes contemplated under this Plan pursuant to the Liquidating Trust Agreement.  Without

limiting the generality of the foregoing, all Causes of Action the Debtor holds or may hold

against any Entity, recoveries from any Causes of Action, rights to Liquidation Proceeds, and all

resulting Liquidating Trust Assets shall vest in the Liquidating Trust upon the Effective Date and

shall no longer constitute property of the Estate.

**C.**     **Property Free and Clear**

Except as otherwise provided in this Plan or the Confirmation Order, all property that

shall vest in the Liquidating Trust shall be free and clear of all Claims, Equity Interests, Liens,

interests, charges, or other encumbrances of Creditors or Interest Holders, other than as set forth

herein, the Final DIP Order, in the Liquidating Trust Agreement, and in relevant documents,

agreements, and instruments contained in the Plan Supplement.  Following the Effective Date,

the Liquidating Trustee may transfer and dispose of any such property free of any restrictions

imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the

LEGAL02/40807839v5

Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

## D.    <u>Exculpation</u>

**The Exculpated Parties will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken after the Petition Date in connection with or related to the Chapter 11 Case, the sale of the Debtor's assets (including, without limitation the sale of the assets pursuant to the Sale Order) or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan;** *provided, however*, **that this limitation will not affect or modify the obligations created under this Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction);** *provided* **that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under this Plan, and such reasonable reliance shall form an absolute defense to any such claim, Cause of Action, or liability.  Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of Section 1125(e) of the Bankruptcy Code.  Except as specifically set forth in Section VIII.E below, no provision of this Plan or the Disclosure Statement shall be deemed to act to or release any claims, Causes of Action, claims or rights, or liabilities that the Liquidating Trust or the Estate**

58

**may have against any Entity or person for any act, omission, or failure to act that occurred prior to the Petition Date, nor shall any provision of this Plan be deemed to act to release any Causes of Action and litigation claims.**

**E.    Releases**

**1.    Debtor Release.**

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtor and its estate shall release each Released Party, and each Released Party is deemed released by the Debtor and the estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor or its estate, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or the estate would have been legally entitled to assert in its own right, or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's liquidation, the Chapter 11 Case, the purchase, sale, transfer of any security, asset, right, or interest of the Debtor, the transactions made by or contemplation under the Sale Order, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the**

59

business or contractual arrangements between any Debtor and any Released Party, the treatment of Claims and Equity Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence; provided, that the foregoing Debtor Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan.  For avoidance of doubt, the foregoing Debtor Release does release any of the Debtor's claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities with respect to the *Wardman Tower Residential Condominium Unit Owners Association v. JBG Smith Properties, et al* action currently pending in the Superior Court of the District of Columbia under Case No. 2020 CA 004807.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtor and all Holders of Claims and Equity Interests; (d) fair, equitable, and

60

reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtor or its estate asserting any Claim or Cause of Action released pursuant to the Debtor Release.

2.    **Third Party Release.**

On, and as of, the Effective Date and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Released Parties shall be forever released (the "**Third Party Release**") from any and all claims, obligations, actions, suits, rights, debts, accounts, causes of action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, defenses, and liabilities throughout the world under any law or court ruling through the Effective Date (including all claims based on or arising out of factors or circumstances that existed as of or prior to the Effective Date, including claims based on negligence or strict liability, and further including any derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise) which the Debtor, its estate, Creditors, or other persons receiving or who are entitled to receive distributions under the Plan may have against any of them in any way related to this Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, and related to the Debtor (or its predecessors), its business and/or its assets; *provided however* that the foregoing releases are granted only by (a) Creditors who returned a Ballot and did not check the opt-out box

61

on the Ballot; and (b) Creditors who were sent a solicitation package, but either (i) did not vote; or (ii) did not return a Ballot with the opt-out box checked; *provided however* that the release provided in this section shall not apply to (A) any Creditor whose Claim is not Allowed either in whole or in part; or (B) any Creditor in category (b) above if the solicitation package was returned to the Debtor as undelivered and that such Creditor did not otherwise submit a Ballot; and provided further, however, that the release provided in this Section shall not extend to any claims by any Governmental Unit with respect to criminal liability under applicable law, willful misconduct or bad faith under applicable law, ultra vires acts under applicable law, or a Creditor's claims against Marriott solely based upon such Creditor's direct contractual rights, if any, against Marriott.  For avoidance of doubt, Pacific Life and Marriott shall be deemed to have granted the Third Party Release.

3.  **Global Limited Release of Claims between Marriott, the Debtor and Pacific Life**

Subject to and effective as of the occurrence of Effective Date, Marriott, on the one hand and the Debtor, PL Wardman Member, LLC, and Pacific Life, on the other hand, each of the forgoing, on behalf of themselves and their respective affiliates, successors, assigns, transferees, officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such), shall be deemed to have conclusively and unconditionally released each other and their respective successors, assigns, transferees, officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as

such), from any and all claims, interests, obligations, rights, suits, damages, Causes of Action,

remedies, and liabilities whatsoever based on or related to, or in any manner arising from or

related to the Debtor, the Debtor's assets, the Debtor's liquidation, the Marriott Claim, the

Chapter 11 Case, the Maryland Action, *Wardman Hotel Owner, L.L.C. v. Marriott Hotel*

*Services, Inc.* [Adv. Proc. No. 21-51005], Marriott's operation of the hotel located at 2600

Woodley Road, NW in the Woodley Park neighborhood of Washington, D.C., the purchase, sale,

transfer of any security, asset, right, or interest of the Debtor, and the business and contractual

arrangements between Marriott, Pacific Life, PL Wardman Member, LLC and/or the Debtor

which relate to the foregoing, based on facts now in existence whether known or unknown, and

all such claims whether known or unknown, foreseen or unforeseen, asserted or unasserted,

accrued or unaccrued, matured or unmatured, determined or determinable, disputed or

undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in

law, equity, or otherwise, *provided however*, that the foregoing shall not impact or modify the

treatment of the Marriott Claim provided under the Plan.  Marriott, the Debtor, Pacific Life and

PL Wardman Member, LLC each hereby waives and releases any and all rights under Section

1542 of the California Civil Code with respect to the matters referenced in this paragraph, which

provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE
> CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING
> THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD
> HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH
> THE DEBTOR OR RELEASING PARTY.**

LEGAL02/40807839v5

F.     <u>Injunction</u>

In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Equity Interests in the Debtor, the Liquidating Trust, or the Estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor, the Estate, the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the Estate, the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtor, the Estate, or the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest, including without limitation, any act taken in violation of Section VIII.E.2 against any of the Released Parties with respect to any matters released under this Plan in favor of such Released Parties.   Nothing contained in this Section shall prohibit the Holder of a timely filed Proof of Claim from litigating its right to seek to have

64

**such Claim declared an Allowed Claim and paid in accordance with the distribution**

**provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the**

**Claimant of any of the obligations of the Debtor or the Liquidating Trust under this Plan.**

**G.    Post-Confirmation Liability of Liquidating Trustee**

The Liquidating Trustee, together with his or her consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the foregoing (collectively, the "Indemnified Parties") shall not be liable for any and all liabilities, losses, damages, claims, causes of action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the Holders of Claims or Equity Interests for any action or inaction taken in good faith in connection with the performance or discharge of their duties under this Plan, except the Indemnified Parties will be liable for actions or inactions that are grossly negligent, fraudulent, or which constitute willful misconduct (in each case, liability shall be subject to determination by final order of a court of competent jurisdiction).  However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, fraud or willful misconduct.  In addition, the Liquidating Trust and the Estate shall, to the fullest extent permitted by the laws of the State of Delaware, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust and the Estate or the

implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidating Trust and the Estate.  To the extent the Liquidating Trust indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidating Trust Expenses.  All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan.

**H.    Preservation of Rights of Action**

1.    Vesting of Causes of Action.

(a)    Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor holds or may hold against any Entity shall vest upon the Effective Date in the Liquidating Trust, except to the extent provided under Final DIP Order.

(b)    Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action the Debtor holds or may hold against any Entity, in accordance with the terms of the Liquidating Trust Agreement and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case.

(c)    Causes of Action and recoveries therefrom shall remain the sole property of the Liquidating Trust, for the ratable benefit of the Beneficiaries of the Liquidating Trust, and

66

holders of Claims shall have no direct right or interest in to any such Causes of Action or recovery.

2.    <u>Preservation of All Causes of Action Not Expressly Settled or Released.</u>

(a)    Unless a Cause of Action against a holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order, and the Final DIP Order), the Debtor and the Liquidating Trustee expressly reserve such retained Cause of Action for later adjudication by the Debtor or the Liquidating Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere, or of which the Debtor may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time, or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order (including the Confirmation Order).  In addition, the Debtor and Liquidating Trustee expressly reserve the right to pursue or adopt claims alleged in any lawsuit in which the Debtor is a defendant or an interested party against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

LEGAL02/40807839v5

(b)      Subject to the immediately preceding paragraph, any Entity to which the Debtor has incurred an obligation (whether on account of services, the purchase or sale of goods, or otherwise), or that has received services from the Debtor or a transfer of money or property of the Debtor, or that has received services from the Debtor or a transfer or money or property of the Debtor, or that has transacted business with the Debtor, or that has leased equipment or property from the Debtor, should assume and is hereby advised that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether (i) such Entity has filed a proof of claim against the Debtor in the Chapter 11 Case; (ii) the Debtor or Liquidating Trustee has objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtor or Liquidating Trustee has objected to any such Entity's scheduled Claim; (v) any such Entity's scheduled Claim has been identified by the Debtor or Liquidating Trustee as disputed, contingent, or unliquidated; or (vi) the Debtor has identified any potential claim or Cause of Action against such Entity herein or in the Disclosure Statement.

## I.      <u>No Discharge</u>

Nothing contained in this Plan shall be deemed to constitute a discharge of the Debtor under Bankruptcy Code section 1141(d)(3).

# IX.

## **RETENTION OF JURISDICTION**

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

1.      To hear and determine any and all objections to the allowance of a Claim, proceedings to estimate a Claim for any purpose, actions to equitably subordinate a Claim, proceedings seeking approval of any necessary claims reconciliation protocols, or any controversy as to the classification of a Claim in a particular Class under the Plan;

2.      To administer the Plan, the Liquidating Trust, the Trust Assets;

3.      To estimate or liquidate any Disputed Claims;

4.      To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date or otherwise relating to, arising from, or in connection with the Litigation; *provided, however*, that the Liquidating Trustee shall reserve the right to commence actions in all appropriate jurisdictions;

5.      To hear and determine any and all motions and/or objections to fix, estimate, allow and/or disallow any Claims arising therefrom;

6.      To hear and determine any and all applications by Professionals for an award of Professional Fees;

7.      To enable the Liquidating Trustee to commence and prosecute any Causes of Action which may be brought after the Effective Date;

8.      To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document, or instrument contemplated by the Plan;

9.      To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

10.     To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

11.     To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code;

12.     To enter any orders as required by Rule 23 of the Federal Rules of Civil Procedure, to the extent made applicable to any adversary proceeding pursuant or contested matter pursuant to Bankruptcy Rules 7023 and 9014(c), as applicable; and

13.     To close the Chapter 11 Case when administration of the Liquidating Trust and the Chapter 11 Case have been completed.

## X.

## MISCELLANEOUS

### A.      Revocation of Plan

LEGAL02/40807839v5

The Debtor reserves the right to revoke and withdraw the Plan at any time on or before the Confirmation Date.  If the Debtor revokes or withdraws the Plan pursuant to this Section, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor.

**B.**     **Severability of Plan Provisions**

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor and Pacific Life, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**C.**     **Exhibits**

All exhibits attached to this Plan, the Plan Supplement, or the Disclosure Statement are, by this reference, hereby incorporated into the Plan.  The final version of all Exhibits to the Plan,

71

the Plan Supplement, and the Disclosure Statement will be substantially in the forms attached

hereto or thereto.  The Debtor reserves the right to make non-substantive changes and corrections

to such Exhibits in advance of the Confirmation Hearing.  If any Exhibits are changed or

corrected, the replacement Exhibits will be filed with the Bankruptcy Court prior to the

commencement of the Confirmation Hearing.

**D.**     **Notices**

All notices required or permitted to be made in accordance with the Plan shall be in

writing and shall be delivered personally or by nationally recognized overnight or next-day

courier service, first-class mail, electronic mail, or via facsimile with electronic confirmation of

receipt as follows:

> Pachulski Stang Ziehl & Jones LLP
> 919 North Market Street, 17th Floor
> P.O. Box 8705
> Wilmington, DE 19899-8705 (Courier 19801)
> Tel. 302-652-4100, Fax 302-652-4400
> Attn:  Laura Davis Jones, Esq.
> ljones@pszjlaw.com
>
> and
>
> James D. Decker
> JDecker & Company
> 5996 Mitchell Road, #16
> Atlanta, GA 30328
> Tel.  404.229-8907
> jim@jdeckerco.com

**E.**     **Reservation of Rights**

Neither the filing of the Plan nor any statement or provision contained in the Plan or in

the Disclosure Statement, nor the taking by any party in interest of any action with respect to the

Plan, shall: (a) be or be deemed to be an admission against interest and (b) until the Effective

Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any

other party in interest, or (ii) in or to any of the assets of any other party in interest, and, until the

Effective Date, all such rights are specifically reserved.  In the event that the Plan is not

confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any

statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any

manner in any suit, action, proceeding, or controversy within or without the Chapter 11 Case

involving the Debtor, except with respect to Confirmation of the Plan.

**F.**      **Defects, Omissions and Amendments**

The Debtor may, with the approval of Pacific Life and the Bankruptcy Court and without

notice to all Holders of Claims or Equity Interests, insofar as it does not materially and adversely

affect Holders of Claims, correct any defect, omission, or inconsistency in the Plan in such

manner and to such extent as may be necessary or desirable to expedite the execution of the Plan.

The Plan may be altered or amended before or after Confirmation as provided in Section 1127 of

the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not

materially and adversely affect the interests of Holders of Claims, so long as the Plan, as

modified, complies with Sections 1122 and 1123 of the Bankruptcy Code and the Debtor has

complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered or amended

before or after the Confirmation Date but, prior to substantial Consummation, in a manner

which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of

Claims, so long as the Plan, as modified, complies with Bankruptcy Code Sections 1122 and

1123, the Debtor has complied with Bankruptcy Code Section 1125 and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code Section 1129.

**G.    Filing of Additional Documents**

The Debtor shall file with the Bankruptcy Court such agreements, instruments, pleadings, orders, papers, or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**H.    Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entity.

**I.    Setoffs and Recoupments**

The Liquidating Trust may, but shall not be required to, set off against or recoup from the payments to be made pursuant to this Plan in respect of a Claim, any claim of any nature whatsoever that the Debtor, the Liquidating Trust, or the Estate, as applicable, may have against the Holder of such Claim, but neither the failure to do so or the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtor, the Liquidating Trust, or the Estate, against such Holder.

**J.    Section 1146(a) Exemption**

The Plan implements the distribution of the Sale Proceeds pursuant to the Sale Order. Pursuant to section 1146(a) of the Bankruptcy Code, any transfer of property under the Plan

(including the transactions pursuant to the Sale Order) or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor; (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan (including the transactions pursuant to the Sale Order), shall not be subject to any document recording tax, stamp tax, conveyance free, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**K.**    **Securities Exemption**

To the extent the Liquidating Trust Interests are deemed or asserted to constitute

securities, the Liquidating Trust Interests and the issuance and distribution thereof shall be

exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal

securities laws requiring registration for offer or sale of a security or registration or licensing of

an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all

exemptions available for distributions of securities under a plan of reorganization in accordance

with all applicable law, including without limitation, Section 1145 of the Bankruptcy Code.

**L.**    **Implementation**

Upon Confirmation, the Debtor shall be authorized to take all steps and execute all

documents necessary to effectuate the provisions contained in the Plan.

**M.**    **Certain Actions**

1.    By reason of entry of the Confirmation Order, prior to, on, or after the

Effective Date (as appropriate), all matters provided for under the Plan that would

otherwise require approval of directors, officers, employees, managers or members of the

Debtor under the Plan, including, without limitation, (i) the distribution of Cash pursuant

to the Plan, (ii) the adoption, execute/on, delivery, and implementation of all contracts,

leases, instruments, releases, and other agreements or documents related to the Plan, and

(iii) the adoption, execution, and implementation of other matters provided for under the

Plan involving the company or organizational structure of the Debtor, shall be deemed to

have occurred and shall be in effect prior to, on or after the Effective Date (as

appropriate), pursuant to the applicable general corporation law of the state in which the

Debtor is chartered, organized, or incorporated, without any requirement of further action

by the directors and stockholders of the Debtor, irrespective of whether the Confirmation

Order specifically authorizes any such action.

2.      Effective upon the Effective Date, the Debtor's formation documents shall

each be deemed amended to prohibit the issuance by the Debtor of nonvoting securities to

the extent required under Section 1123(a)(6) of the Bankruptcy Code.

3.      On or as soon as practicable following the Effective Date, the Liquidating

Trustee shall be authorized to cancel, annul, and extinguish all Equity Interests.

## N.      **Substantial Consummation**

On the Effective Date, the Plan shall be deemed substantially consummated under

Bankruptcy Code Sections 1101 and 1127(b).

## O.      **Waiver of Fourteen-Day Stay**

The Debtor requests as part of the Confirmation Order a waiver from the Bankruptcy

Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of

the 14-day stay of Bankruptcy Rule 6004(g).

Dated:  August 18, 2021                         Respectfully submitted,


  _/s/ James D. Decker_____
WARDMAN HOTEL OWNER, L.L.C.
By: James D. Decker, its Independent Manager

LEGAL02/40807839v5

# **Exhibit F**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| WARDMAN HOTEL OWNER, L.L.C.,[1] | ) | Case No. 21-10023 (JTD) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**BALLOT TO ACCEPT OR REJECT PLAN OF LIQUIDATION**

**CLASS 3 – PACIFIC LIFE SECURED CLAIM**

**THIS BALLOT IS TO BE USED BY OR ON BEHALF OF THE HOLDER OF THE CLASS 3 PACIFIC LIFE SECURED CLAIM.  PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY.  COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT IN THE ENCLOSED ENVELOPE PROMPTLY. IF THE VOTING AGENT HAS NOT RECEIVED THIS BALLOT BY 4:00 P.M., PREVAILING EASTERN TIME, ON SEPTEMBER 13, 2021 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTOR, IT WILL NOT BE COUNTED. FACSIMILE AND EMAIL BALLOTS WILL NOT BE ACCEPTED.**

This ballot (the "Ballot") is submitted to you to solicit your vote to accept or reject the *Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 311] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan") proposed by the above captioned debtor (the "Debtor").  The Plan is described in the related *Disclosure Statement with Respect to Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 312] (including all exhibits thereto and as amended, supplemented or otherwise modified from time to time, the "Disclosure Statement") approved on an interim basis by order of the United States Bankruptcy Court for the District of Delaware.  The Disclosure Statement provides information to assist you in deciding how to vote your Ballot.  You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the classification and treatment of your claim(s) under the Plan. Capitalized terms not defined herein shall have the meaning ascribed to such term in the Plan.

---

[1]  The last four digits of the Debtor's U.S. tax identification number are 9717.  The Debtor's mailing address is 5996 Mitchell Road, #16, Atlanta, GA 30328.

The Disclosure Statement and Plan provide information to assist you in deciding how to vote your ballot. A copy of the Disclosure Statement and Plan has been provided to you with this Ballot. You can obtain additional copies upon request to the Voting Agent, Stretto, by writing to Wardman Hotel Owner Ballot Processing Center, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602 or by phone at 855-462-7622. Copies of the Plan and Disclosure Statement will be available online at https://cases.stretto.com/wardmanhotel.. Copies of the Plan and Disclosure Statement are also on file with the Clerk of the Bankruptcy Court for the District of Delaware, and may be reviewed during the regular hours of the Bankruptcy Court or online through the Bankruptcy Court's internet website at http://www.deb.uscourts.gov.

The Plan can be confirmed by the Bankruptcy Court, and therefore made binding on you, if it is accepted by the holders of at least one-half in number and two-thirds in amount of the claims in each of the classes who vote on the Plan and/or if the Plan otherwise satisfies applicable legal requirements.

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OF IF YOU LOSE YOUR BALLOT, OF IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY PHONE AT 855-462-7622 OR BY EMAIL TO TeamWardmanHotel@stretto.com.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ITEM 1. IF NEITHER THE "ACCEPT" NOR "REJECT" LINE IS CHECKED OR BOTH THE "ACCEPT" AND "REJECT" LINE IS CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST. IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Class Vote**. The undersigned, the holder of a Class 3 (Pacific Life Secured Claim) against the Debtor hereby votes, in the amount set forth below, as follows (check one):

_____ Accepts the Plan          _____ Rejects the Plan

Amount of Claim $_____

**Item 2. Acknowledgements.** By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the

2

undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant and make the other elections set forth in this Ballot.  The undersigned understands that, if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, or indicates both an acceptance and rejection of the Plan this Ballot will not be counted.

_____  
Name of Creditor

_____  
Federal Tax I.D. No. (Optional)

_____  
Signature

_____  
Date Completed

_____  
If by Authorized Agent, Name and Title

_____  
Street Address

_____  
Telephone Number

3

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      On the lines provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.  Complete the Ballot by providing all the information requested and sign, date, and return the Ballot by mail, overnight delivery, or courier to the Voting Agent at the following address:

Wardman Hotel Owner Ballot Processing Center
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

**Alternatively, to submit your Ballot via the Voting Agent's online balloting portal, visit https://cases.stretto.com/wardman.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot Password:  _____**

Each E-Ballot Password is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot Password you receive, as applicable.  Creditors who cast a Ballot using the Voting Agent's online portal should NOT also submit a paper Ballot.

The Voting Agent's online balloting portal is the sole manner by which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

2.      **Ballots must be received by the Voting Agent by 4:00 p.m., prevailing Eastern Time, on September 13, 2021 (the "Voting Deadline").**  If a Ballot is received after the Voting Deadline, it may not be counted.

3.      Please sign and date your Ballot as required in Item 2.  Your signature is required in order for your Ballot to be counted.

4.      If your claim has not been previously allowed by order of the Bankruptcy Court, your claim will be deemed to be temporarily allowed, solely for purposes of voting on the Plan, unless there is an objection to your claim pending as of September 2, 2021.  The temporary allowance of your claim for voting purposes does not constitute an allowance of your claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtor, or any other party in interest, in any other context (e.g., the right to contest the amount or validity of any claim for purposes of allowance under the Plan).  If your claim is subject to an objection that was filed by September 2, 2021, in accordance with Bankruptcy Rule 3018, your Ballot will not be counted

4

unless the Court temporarily allows your claim for purposes of voting to accept or reject the Plan. In order for a claim subject to a timely-filed objection to be temporarily allowed for voting purposes only, you are required to file a motion with the Bankruptcy Court seeking such relief by no later than September 13, 2021.

5.      The following voting procedures apply to your Ballot:

     a.   Except to the extent the Debtor otherwise determines, or as permitted by the Court, Ballots received after the Voting Deadline will not be accepted or counted by the Voting Agent in connection with the confirmation of the Plan;

     b.   Claims shall not be split for purposes of voting; thus, each Creditor must vote the full amount of its Claim(s) within each class to either accept or reject the Plan.  If a creditor attempts to split such vote on its Ballot, such Ballot will not be counted for voting purposes;

     c.   Any executed Ballot that does not indicate an acceptance or rejection shall not be counted;

     d.   Any executed Ballot that indicates both an acceptance and rejection of the Plan shall not be counted;

     e.   Votes cast pursuant to a Ballot that is not signed or does not contain an original signature shall not be counted, unless the Court orders otherwise;

     f.   The method of delivery of Ballots to be sent to the Voting Agent is at the election and risk of each Holder of a Claim, but such delivery will be deemed made only when the original, executed Ballot is actually received by the Voting Agent or an E-Ballot is submitted via the online voting portal;

     g.   Delivery of the original executed Ballot to the Voting Agent or submission of an E-Ballot through the online voting portal on or before the Voting Deadline is required.  Delivery of a Ballot by facsimile, email, or any other electronic means (other than the online voting portal) will not be accepted unless otherwise ordered by the Court;

     h.   No Ballot sent to the Debtor, or the Debtor's financial or legal advisors, shall be accepted or counted;

     i.   The Debtor expressly reserves the right, subject to the approval of the Court, to amend at any time and from time to time the terms of the Plan (subject to compliance with Section 1127 of the Bankruptcy Code and the terms of the Plan regarding modification).  If the Debtor makes material changes in the terms of the Plan, the Debtor will disseminate additional solicitation materials and will extend the solicitation deadline, in each case to the extent directed by the Court;

j.  If multiple Ballots are received from or on behalf of an individual holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

k.  If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtor, must submit proper evidence, satisfactory to the Debtor, of such person's authority to so act in such capacity;

l.  The Debtor, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein, the Debtor may, in their discretion, reject any such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

m.  Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots will be determined by the Debtor, which determination shall be final and binding;

n.  If designation of a Claim is requested under § 1126(e), any vote to accept or reject the Plan cast with respect to such Claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise;

o.  Any Holder of a Claim that has delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

p.  Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted;

q.  Neither the Debtor nor any other person or entity will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

r.  No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting Ballots to accept the Plan;

s.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and/or to opt out of the release; and

6

t.   The Ballot does not constitute, and shall not be deemed to be, a proof of Claim or an assertion or admission of a Claim or Equity Interest.

6.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

7.      **PLEASE RETURN YOUR BALLOT PROMPTLY OR VOTE USING THE VOTING AGENT'S ONLINE PORTAL.  THE VOTING AGENT WILL NOT ACCEPT BALLOTS BY FACSIMILE OR EMAIL.**

# Exhibit G

_____

_____

_____

_____

Wardman Hotel Owner Ballot Processing Center
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

# **Exhibit H**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| WARDMAN HOTEL OWNER, L.L.C.,[1] | ) | Case No. 21-10023 (JTD) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**BALLOT TO ACCEPT OR REJECT PLAN OF LIQUIDATION**

**CLASS 4 – MARRIOTT CLAIM**

**THIS BALLOT IS TO BE USED BY OR ON BEHALF OF THE HOLDER OF THE CLASS 4 MARRIOTT CLAIM.  PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY.  COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT IN THE ENCLOSED ENVELOPE PROMPTLY.
IF THE VOTING AGENT HAS NOT RECEIVED THIS BALLOT BY 4:00 P.M., PREVAILING EASTERN TIME, ON SEPTEMBER 13, 2021 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTOR, IT WILL NOT BE COUNTED.  FACSIMILE AND EMAIL BALLOTS WILL NOT BE ACCEPTED.**

This ballot (the "Ballot") is submitted to you to solicit your vote to accept or reject the *Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 311] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan") proposed by the above captioned debtor (the "Debtor").  The Plan is described in the related *Disclosure Statement with Respect to Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 312] (including all exhibits thereto and as amended, supplemented or otherwise modified from time to time, the "Disclosure Statement") approved on an interim basis by order of the United States Bankruptcy Court for the District of Delaware.  The Disclosure Statement provides information to assist you in deciding how to vote your Ballot.  You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the classification and treatment of your claim(s) under the Plan. Capitalized terms not defined herein shall have the meaning ascribed to such term in the Plan.

---

[1]  The last four digits of the Debtor's U.S. tax identification number are 9717.  The Debtor's mailing address is 5996 Mitchell Road, #16, Atlanta, GA 30328.

The Disclosure Statement and Plan provide information to assist you in deciding how to vote your ballot.  A copy of the Disclosure Statement and Plan has been provided to you with this Ballot.  You can obtain additional copies upon request to the Voting Agent, Stretto, by writing to Wardman Hotel Owner Ballot Processing Center, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602 or by phone at 855-462-7622.  Copies of the Plan and Disclosure Statement will be available online at https://cases.stretto.com/wardmanhotel.. Copies of the Plan and Disclosure Statement are also on file with the Clerk of the Bankruptcy Court for the District of Delaware, and may be reviewed during the regular hours of the Bankruptcy Court or online through the Bankruptcy Court's internet website at http://www.deb.uscourts.gov.

The Plan can be confirmed by the Bankruptcy Court, and therefore made binding on you, if it is accepted by the holders of at least one-half in number and two-thirds in amount of the claims in each of the classes who vote on the Plan and/or if the Plan otherwise satisfies applicable legal requirements.

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OF IF YOU LOSE YOUR BALLOT, OF IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY PHONE AT 855-462-7622 OR BY EMAIL TO TeamWardmanHotel@stretto.com.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ITEM 1.  IF NEITHER THE "ACCEPT" NOR "REJECT" LINE IS CHECKED OR BOTH THE "ACCEPT" AND "REJECT" LINE IS CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST.  IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Class Vote**.  The undersigned, the holder of a Class 4 (Marriott Claim) against the Debtor hereby votes, in the amount set forth below, as follows (check one):

\_\_\_\_\_ Accepts the Plan        \_\_\_\_\_ Rejects the Plan

Amount of Claim $_____

**Item 2.  Acknowledgements.**  By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the

undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant and make the other elections set forth in this Ballot.  The undersigned understands that, if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, or indicates both an acceptance and rejection of the Plan this Ballot will not be counted.

_____

Name of Creditor

_____

Signature

_____

If by Authorized Agent, Name and Title

_____

Federal Tax I.D. No. (Optional)

_____

Date Completed

_____

Street Address

_____

Telephone Number

DOCS_DE:235839.3 92203/001

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      On the lines provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.  Complete the Ballot by providing all the information requested and sign, date, and return the Ballot by mail, overnight delivery, or courier to the Voting Agent at the following address:

Wardman Hotel Owner Ballot Processing Center
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

**Alternatively, to submit your Ballot via the Voting Agent's online balloting portal, visit https://cases.stretto.com/wardman.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot Password:  _____**

Each E-Ballot Password is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot Password you receive, as applicable.  Creditors who cast a Ballot using the Voting Agent's online portal should NOT also submit a paper Ballot.

The Voting Agent's online balloting portal is the sole manner by which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

2.      **Ballots must be received by the Voting Agent by 4:00 p.m., prevailing Eastern Time, on September 13, 2021 (the "Voting Deadline").**  If a Ballot is received after the Voting Deadline, it may not be counted.

3.      Please sign and date your Ballot as required in Item 2.  Your signature is required in order for your Ballot to be counted.

4.      If your claim has not been previously allowed by order of the Bankruptcy Court, your claim will be deemed to be temporarily allowed, solely for purposes of voting on the Plan, unless there is an objection to your claim pending as of September 2, 2021.  The temporary allowance of your claim for voting purposes does not constitute an allowance of your claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtor, or any other party in interest, in any other context (e.g., the right to contest the amount or validity of any claim for purposes of allowance under the Plan)  If your claim is subject to an objection that was filed by September 2, 2021, in accordance with Bankruptcy Rule 3018, your Ballot will not be counted

4

unless the Court temporarily allows your claim for purposes of voting to accept or reject the Plan. In order for a claim subject to a timely-filed objection to be temporarily allowed for voting purposes only, you are required to file a motion with the Bankruptcy Court seeking such relief by no later than September 13, 2021.

5.      The following voting procedures apply to your Ballot:

      a.   Except to the extent the Debtor otherwise determines, or as permitted by the Court, Ballots received after the Voting Deadline will not be accepted or counted by the Voting Agent in connection with the confirmation of the Plan;

      b.   Claims shall not be split for purposes of voting; thus, each Creditor must vote the full amount of its Claim(s) within each class to either accept or reject the Plan.  If a creditor attempts to split such vote on its Ballot, such Ballot will not be counted for voting purposes;

      c.   Any executed Ballot that does not indicate an acceptance or rejection shall not be counted;

      d.   Any executed Ballot that indicates both an acceptance and rejection of the Plan shall not be counted;

      e.   Votes cast pursuant to a Ballot that is not signed or does not contain an original signature shall not be counted, unless the Court orders otherwise;

      f.   The method of delivery of Ballots to be sent to the Voting Agent is at the election and risk of each Holder of a Claim, but such delivery will be deemed made only when the original, executed Ballot is actually received by the Voting Agent or an E-Ballot is submitted via the online voting portal;

      g.   Delivery of the original executed Ballot to the Voting Agent or submission of an E-Ballot through the online voting portal on or before the Voting Deadline is required.  Delivery of a Ballot by facsimile, email, or any other electronic means (other than the online voting portal) will not be accepted unless otherwise ordered by the Court;

      h.   No Ballot sent to the Debtor, or the Debtor's financial or legal advisors, shall be accepted or counted;

      i.   The Debtor expressly reserves the right, subject to the approval of the Court, to amend at any time and from time to time the terms of the Plan (subject to compliance with Section 1127 of the Bankruptcy Code and the terms of the Plan regarding modification).  If the Debtor makes material changes in the terms of the Plan, the Debtor will disseminate additional solicitation materials and will extend the solicitation deadline, in each case to the extent directed by the Court;

j.  If multiple Ballots are received from or on behalf of an individual holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

k.  If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtor, must submit proper evidence, satisfactory to the Debtor, of such person's authority to so act in such capacity;

l.  The Debtor, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein, the Debtor may, in their discretion, reject any such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

m.  Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots will be determined by the Debtor, which determination shall be final and binding;

n.  If designation of a Claim is requested under § 1126(e), any vote to accept or reject the Plan cast with respect to such Claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise;

o.  Any Holder of a Claim that has delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

p.  Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted;

q.  Neither the Debtor nor any other person or entity will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

r.  No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting Ballots to accept the Plan;

s.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and/or to opt out of the release; and

t.   The Ballot does not constitute, and shall not be deemed to be, a proof of Claim or an assertion or admission of a Claim or Equity Interest.

6.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

7.      **PLEASE RETURN YOUR BALLOT PROMPTLY OR VOTE USING THE VOTING AGENT'S ONLINE PORTAL.  THE VOTING AGENT WILL NOT ACCEPT BALLOTS BY FACSIMILE OR EMAIL.**

DOCS_DE:235839.3 92203/001

# Exhibit I

_____
_____
_____
_____

Wardman Hotel Owner Ballot Processing Center
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

# Exhibit J

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| WARDMAN HOTEL OWNER, L.L.C., [1] | ) | Case No. 21-10023 (JTD) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**BALLOT TO ACCEPT OR REJECT PLAN OF LIQUIDATION**

**CLASS 5 - GENERAL UNSECURED CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**THE PLAN PROVIDES RELEASE, INJUNCTION, AND LIMITATION OF LIABILITY PROVISIONS FOR THE DEBTOR AND CERTAIN THIRD PARTIES, WHICH MAY AFFECT YOUR RIGHTS. THE RELEASES ARE PROVIDED IN SECTION VIII.E OF THE PLAN AND COPIED BELOW.**

---

**THIS BALLOT IS TO BE USED BY OR ON BEHALF OF HOLDERS OF CLASS 5 UNSECURED CLAIMS. PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY. COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT IN THE ENCLOSED ENVELOPE PROMPTLY.
IF THE VOTING AGENT HAS NOT RECEIVED THIS BALLOT BY 4:00 P.M., PREVAILING EASTERN TIME, ON SEPTEMBER 13, 2021 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTOR, IT WILL NOT BE COUNTED. YOU MAY VOTE ELECTRONICALLY USING THE VOTING AGENT'S ONLINE PORTAL, BUT FACSIMILE AND EMAIL BALLOTS WILL NOT BE ACCEPTED.**

This ballot (the "Ballot") is submitted to you to solicit your vote to accept or reject the *Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 311] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan") proposed by the above captioned debtor (the "Debtor"). The Plan is described in the related *Disclosure Statement with Respect to Debtor's Plan of Liquidation Pursuant to Chapter 11 of the*

---

[1] The last four digits of the Debtor's U.S. tax identification number are 9717. The Debtor's mailing address is 5996 Mitchell Road, #16, Atlanta, GA 30328.

*Bankruptcy Code* [Docket No. 312] (including all exhibits thereto and as amended, supplemented or otherwise modified from time to time, the "Disclosure Statement") approved by order of the United States Bankruptcy Court for the District of Delaware.  The Disclosure Statement provides information to assist you in deciding how to vote your Ballot.  You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the classification and treatment of your claim(s) under the Plan.  Capitalized terms not defined herein shall have the meaning ascribed to such term in the Plan.

The Disclosure Statement and Plan provide information to assist you in deciding how to vote your ballot.  A copy of the Disclosure Statement and Plan has been provided to you with this Ballot.  You can obtain additional copies upon request to the Voting Agent, Stretto, by writing to Wardman Hotel Owner Ballot Processing Center, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602 or by phone at 855-462-7622.  Copies of the Plan and Disclosure Statement will be available online at https://cases.stretto.com/wardmanhotel.. Copies of the Plan and Disclosure Statement are also on file with the Clerk of the Bankruptcy Court for the District of Delaware, and may be reviewed during the regular hours of the Bankruptcy Court or online through the Bankruptcy Court's internet website at http://www.deb.uscourts.gov.

The Plan can be confirmed by the Bankruptcy Court, and therefore made binding on you, if it is accepted by the holders of at least one-half in number and two-thirds in amount of the claims in each class who vote on the Plan and/or if the Plan otherwise satisfies applicable legal requirements.

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OF IF YOU LOSE YOUR BALLOT, OF IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY PHONE AT 855-462-7622 OR BY EMAIL TO TeamWardmanHotel@stretto.com.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ITEM 1.  IF NEITHER THE "ACCEPT" NOR "REJECT" LINE IS CHECKED OR BOTH THE "ACCEPT" AND "REJECT" LINE IS CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST.  IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Class Vote**.  The undersigned, the holder of a Class 5 (General Unsecured Claims) against the Debtor hereby votes, in the amount set forth below, as follows (check one):

_____ Accepts the Plan        _____ Rejects the Plan

Amount of Claim $_____

2

**Item 2.  Third-Party Release.  Any holder of a Class 5 General Unsecured Claim receiving a recovery through the Plan shall be deemed to provide releases to certain third parties (the Released Parties as defined by the Plan).  The undersigned, the holder of a Class 5 General Unsecured Claim against the Debtor, hereby elects to opt out of the Third-Party Release set forth in Section VIII.E.2 of the Plan, and further described in the Voting Information and Instructions for Completing the Ballot, below (check if applicable):**

       **\_\_\_\_\_ Opts Out of the release provisions in Section VIII.E.2 of the Plan**

**Item 3.  Acknowledgements.**  By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant and make the other elections set forth in this Ballot.  The undersigned understands that, if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, or indicates both an acceptance and rejection of the Plan this Ballot will not be counted.

_____

Name of Creditor

_____

Signature

_____

If by Authorized Agent, Name and Title

_____

Federal Tax I.D. No. (Optional)

_____

Date Completed

_____

Street Address

_____

Telephone Number

3

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      On the lines provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.  Complete the Ballot by providing all the information requested and sign, date, and return the Ballot by mail, overnight delivery, or courier to the Voting Agent at the following address:

Wardman Hotel Owner Ballot Processing Center
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

**Alternatively, to submit your Ballot via the Voting Agent's online balloting portal, visit https://cases.stretto.com/wardman.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot Password:  _____**

Each E-Ballot Password is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot Password you receive, as applicable.  Creditors who cast a Ballot using the Voting Agent's online portal should NOT also submit a paper Ballot.

The Voting Agent's online balloting portal is the sole manner by which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

**Ballots must be received by the Voting Agent by 4:00 p.m., prevailing Eastern Time, on September 13, 2021 (the "Voting Deadline").**  If a Ballot is received after the Voting Deadline, it may not be counted.

2.      The Plan provides the following release, injunction, and limitation of liability provisions, which may affect your rights, and are copied below:

**Exculpation:  The Exculpated Parties will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken after the Petition Date in connection with or related to the Chapter 11 Case, the sale of the Debtor's assets (including, without**

4

limitation the sale of the assets pursuant to the Sale Order) or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; *provided, however*, that this limitation will not affect or modify the obligations created under this Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction); *provided* that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under this Plan, and such reasonable reliance shall form an absolute defense to any such claim, Cause of Action, or liability.  Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of Section 1125(e) of the Bankruptcy Code.  Except as specifically set forth in Section VIII.E below, no provision of this Plan or the Disclosure Statement shall be deemed to act to or release any claims, Causes of Action, claims or rights, or liabilities that the Liquidating Trust or the Estate may have against any Entity or person for any act, omission, or failure to act that occurred prior to the Petition Date, nor shall any provision of this Plan be deemed to act to release any Causes of Action and litigation claims.

**Injunction**:  In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Equity Interests in the Debtor, the Liquidating Trust, or the Estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor, the Estate, the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the Estate, the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtor, the Estate, or the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest, including without limitation, any act taken in violation of Section VIII.E.2 against any of the Released Parties with respect to any matters released under this Plan in favor of such Released Parties.  Nothing contained in this Section shall prohibit the Holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtor or the Liquidating Trust under this Plan.

**Debtor Release**:   Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtor and its estate shall release each Released Party, and each Released Party is deemed released by the Debtor and the estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor or its estate, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or the estate would have been legally entitled to assert in its own right, or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's liquidation, the Chapter 11 Case, the purchase, sale, transfer of any security, asset, right, or interest of the Debtor, the transactions made by or contemplation under the Sale Order, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the treatment of Claims and Equity Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence; provided, that the foregoing Debtor Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan.   For avoidance of doubt, the foregoing Debtor Release does release any of the Debtor's claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities with respect to the *Wardman Tower Residential Condominium Unit Owners Association v. JBG Smith Properties, et al* action currently pending in the Superior Court of the District of Columbia under Case No. 2020 CA 004807.   Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtor and all Holders of Claims and Equity Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtor or its estate asserting any Claim or Cause of Action released pursuant to the Debtor Release.

DOCS_DE:235839.3 92203/001

3.      In Item 2, you may elect to opt out of the following Third-Party Release set forth in Section VIII.E.2 of the Plan.

**Third Party Release:  On, and as of, the Effective Date and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Released Parties shall be forever released (the "<u>Third Party Release</u>") from any and all claims, obligations, actions, suits, rights, debts, accounts, causes of action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, defenses, and liabilities throughout the world under any law or court ruling through the Effective Date (including all claims based on or arising out of factors or circumstances that existed as of or prior to the Effective Date, including claims based on negligence or strict liability, and further including any derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise) which the Debtor, its estate, Creditors, or other persons receiving or who are entitled to receive distributions under the Plan may have against any of them in any way related to this Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, and related to the Debtor (or its predecessors), its business and/or its assets; *provided however* that the foregoing releases are granted only by (a) Creditors who returned a Ballot and did not check the opt-out box on the Ballot; and (b) Creditors who were sent a solicitation package, but either (i) did not vote; or (ii) did not return a Ballot with the opt-out box checked; *provided however* that the release provided in this section shall not apply to (A) any Creditor whose Claim is not Allowed either in whole or in part; or (B) any Creditor in category (b) above if the solicitation package was returned to the Debtor as undelivered and that such Creditor did not otherwise submit a Ballot; and provided further, however, that the release provided in this Section shall not extend to any claims by any Governmental Unit with respect to criminal liability under applicable law, willful misconduct or bad faith under applicable law, ultra vires acts under applicable law, or a Creditor's claims against Marriott solely based upon such Creditor's direct contractual rights, if any, against Marriott.  For avoidance of doubt, Pacific Life and Marriott shall be deemed to have granted the Third Party Release.**

3.      Please sign and date your Ballot as required in Item 3.  Your signature is required in order for your Ballot to be counted.

4.      If your claim has not been previously allowed by order of the Bankruptcy Court, your claim will be deemed to be temporarily allowed, solely for purposes of voting on the Plan, unless there is an objection to your claim pending as of September 2, 2021.  The temporary allowance of your claim for voting purposes does not constitute an allowance of your claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtor, or any other party in interest, in any other context (e.g., the right to contest the amount or validity of any claim for

purposes of allowance under the Plan).  If your claim is subject to an objection that was filed by September 2, 2021, in accordance with Bankruptcy Rule 3018, your Ballot will not be counted unless the Court temporarily allows your claim for purposes of voting to accept or reject the Plan. In order for a claim subject to a timely-filed objection to be temporarily allowed for voting purposes only, you are required to file a motion with the Bankruptcy Court seeking such relief by no later than September 13, 2021.  As noted above, your claim may still be subject to an objection, after voting, or after confirmation of the Plan, in accordance with the provisions of the Plan.

5.      The following voting procedures apply to your Ballot:

   a.   Except to the extent the Debtor otherwise determines, or as permitted by the Court, Ballots received after the Voting Deadline will not be accepted or counted by the Voting Agent in connection with the confirmation of the Plan;

   b.   Claims shall not be split for purposes of voting; thus, each Creditor must vote the full amount of its Claim(s) within each class to either accept or reject the Plan.  If a creditor attempts to split such vote on its Ballot, such Ballot will not be counted for voting purposes;

   c.   Any executed Ballot that does not indicate an acceptance or rejection shall not be counted;

   d.   Any executed Ballot that indicates both an acceptance and rejection of the Plan shall not be counted;

   e.   Votes cast pursuant to a Ballot that is not signed or does not contain an original signature shall not be counted, unless the Court orders otherwise;

   f.   The method of delivery of Ballots to be sent to the Voting Agent is at the election and risk of each Holder of a Claim, but such delivery will be deemed made only when the original, executed Ballot is actually received by the Voting Agent or an E-Ballot is submitted via the online voting portal;

   g.   Delivery of the original executed Ballot to the Voting Agent or submission of an E-Ballot through the online voting portal on or before the Voting Deadline is required.  Delivery of a Ballot by facsimile, email, or any other electronic means (other than the online voting portal) will not be accepted unless otherwise ordered by the Court;

   h.   No Ballot sent to the Debtor, or the Debtor's financial or legal advisors, shall be accepted or counted;

   i.   The Debtor expressly reserves the right, subject to the approval of the Court, to amend at any time and from time to time the terms of the Plan (subject to

8

compliance with Section 1127 of the Bankruptcy Code and the terms of the Plan regarding modification). If the Debtor makes material changes in the terms of the Plan, the Debtor will disseminate additional solicitation materials and will extend the solicitation deadline, in each case to the extent directed by the Court;

j. If multiple Ballots are received from or on behalf of an individual holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

k. If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtor, must submit proper evidence, satisfactory to the Debtor, of such person's authority to so act in such capacity;

l. The Debtor, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein, the Debtor may, in their discretion, reject any such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

m. Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots will be determined by the Debtor;

n. If designation of a Claim is requested under § 1126(e), any vote to accept or reject the Plan cast with respect to such Claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise;

o. Any Holder of a Claim that has delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

p. Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted;

q. Neither the Debtor nor any other person or entity will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

9

r.   No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting Ballots to accept the Plan;

s.   The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and/or to opt out of the release; and

t.   The Ballot does not constitute, and shall not be deemed to be, a proof of Claim or an assertion or admission of a Claim or Equity Interest.


6.   NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.


7.   **PLEASE RETURN YOUR BALLOT PROMPTLY OR VOTE USING THE VOTING AGENT'S ONLINE PORTAL.  THE VOTING AGENT WILL NOT ACCEPT BALLOTS BY FACSIMILE OR EMAIL.**

10

# **Exhibit K**

_____
_____
_____
_____

Wardman Hotel Owner Ballot Processing Center
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602