**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WARDMAN HOTEL OWNER, L.L.C., | ) | Case No. 21-10023 (JTD) |
| | ) | |
| Debtor. | ) | |
| | ) | **Re: Docket Nos. 321 & 339** |

**LIMITED OBJECTION OF ENSEO, LLC TO**
**(I) DEBTOR'S PLAN OF LIQUIDATION; (II) SETTLEMENT OF CLAIMS AND**
**CAUSES OF ACTION BY AND BETWEEN THE DEBTOR, MARRIOTT HOTEL**
**SERVICES, INC., PACIFIC LIFE INSURANCE COMPANY AND**
**PL WARDMAN MEMBER, LLC**

Enseo, LLC (f/k/a Enseo, Inc.) ("Enseo"), by and through undersigned counsel, hereby submits this limited objection (the "Objection") to the (i) *Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 339] (as modified or amended, the "Plan");[1] and (ii) *Debtor's Motion to Approve Compromise and Settlement of Claims and Causes of Action By and Between the Debtor, Marriott Hotel Services, Inc., Pacific Life Insurance Company and PL Wardman Member, LLC* [Docket No. 321] (the "Settlement Motion"), and respectfully states as follows:

## BACKGROUND

1.     Enseo and Wardman Hotel Owner, L.L.C. ("Wardman" or the "Debtor") entered into the Enseo Site Services Agreement ("Agreement")[2] effective as of November 8, 2016.[3]

---

[1] All capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Plan.

[2]  The Agreement contains confidential business terms and is confidential and proprietary by its terms.  *See* Agreement ¶ 16.  Therefore, the Agreement is not attached hereto.  However, the Agreement can be provided to the Court upon request, or the parties-in-interest subject to any necessary precautions.

[3]  For the avoidance of doubt, to the extent of any inconsistency between this Objection and the Agreement, the terms of the Agreement shall control.

Pursuant to the Agreement, Enseo provided the Enseo Entertainment Experience ("E3")® and other services to the Debtor in exchange for, among other things, a monthly recurring fee, non-recurring fees, taxes, and expenses. *See* Agreement ¶¶ 5-6. The Agreement has a five-year term, which was subject to extension. *Id.* ¶ 7. As of the Petition Date, the Agreement was not terminated and was to expire on its own terms on or about November 8, 2021 unless extended per the Agreement. *Id.*

2.      On or about April 2017, the parties entered into an amendment to the Agreement (the "Amendment") that, among other things, granted a limited license to the Participating Site (as that term is defined in the Amendment).

3.      Specifically, Enseo provided the Debtor with, among other things, the Enseo Entertainment Experience ("E3")® for its hotel rooms, which included a welcome channel, channel banners, an interactive program guide, and program guide data for the channels displayed on each TV. Enseo provided additional services as described in the Agreement and the Amendment, including but not limited to, a program interface and a digital channel lineup of HD and SD channels.

4.      Enseo also provided the Debtor with its Equipment (as defined in the Agreement) for which the Debtor could utilize Enseo's E3® and related services. *See* Agreement, Ex. A. Such Equipment included but is not limited to satellite receiving equipment, head-end, and set-back-boxes provided by Enseo. *Id.*

5.      On January 11, 2021, the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. No official committee of unsecured creditors was appointed in this chapter 11 case.

6.      Since the Petition Date, Enseo has continued to provide E3® services to the Debtor under the Agreement.  Accordingly, on June 30, 2021, Enseo filed an administrative claim [Docket No. 267].  Additionally, Enseo also filed a proof of claim related to prepetition amounts owed on account of the Agreement.  *See* Claim No. 38.[4]

7.      On August 18, 2021, the Debtor filed the Plan and the *Disclosure Statement With Respect to the Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 311] (as amended or modified, the "Disclosure Statement").

8.      On August 31, 2021, the Debtor filed the Settlement Motion.  In sum, the Settlement Motion provided for the dismissal of all lawsuits between the Debtor, Marriott Hotel Services, Inc. ("Marriott"), Pacific Life Insurance Company ("Pacific Life"), PL Wardman Member, LLC ("PL Wardman", and together with the Debtor, Marriott and Pacific Life, the "Settlement Parties") in exchange for a payment to Marriott in the amount of $18 million and the inclusion of Marriott, Pacific Life, and PL Wardman as Released Parties under the Plan.  The Settlement Motion also proposes a $500,000 pot be set aside for allowed general unsecured claims against the Debtor.  The Debtor estimates that there are approximately $187,332 to $832,514 "valid" unsecured claims against the Debtor, notwithstanding that more than $1.7 million in unsecured claims are asserted against the Debtor.  *See* Disclosure Statement Arts. I.F, II.B.3.

9.      However, significantly, the Settlement Motion does ***not*** resolve all disputes between the Settlement Parties.  Instead, the Settlement Motion provides that

> "[t]he Debtor asserts that pursuant to the terms of the HMA, all vendors and service providers for Hotel operations entered into contracts with Marriott and that, as a result, the Debtor has few (if any) direct obligations to satisfy the claims of Marriott's creditors.

---

[4]  Enseo's Equipment has been retrieved by Enseo, in coordination with the Debtor, but at great expense.  Enseo reserves all rights to amend its Claim and include such expenses, as well as any additional rejection damages that Enseo has incurred or may be entitled.

> ***Marriott disputes these assertions. Specifically, Marriott disputes Debtor's position that contracts with the Hotel as well as certain other group contracts are contracts with Marriott and creditors of the Hotel are allegedly creditors of Marriott.***"

Settlement Mot. ¶ 18 (emphasis added). Additionally, the terms of the Settlement Motion expressly provide that

> For the avoidance of doubt, with respect to the Released Parties, the Marriott Contribution Amount shall be the sole source of recovery and Distributions to the Holder of the Marriott Claim on account of such claim, provided, ***that in no event shall the payment of the Marriott Contribution Amount limit (i) Marriott's defenses in response to the claims, if any, of third parties to the extent such claims are not released pursuant to the Third Party Release***, and (ii) Marriott's right to recover amounts owing to or recoverable by Marriott from third parties other than the Released Parties.

*Id.* ¶ 23(a) (emphasis added). This language is repeated in the Plan and Disclosure Statement. *See* Plan Art. IV.B.4; Disclosure Statement Art. II.B.3; *Cf.* Plan Art. IX.E.2 (noting that the Third Party Release does not relate to "a Creditor's claims against Marriot solely based upon such Creditor's direct contractual rights, if any, against Marriott").

10. In support of the Settlement Motion, the Debtor asserts that the settlement is justified because, among other reasons, litigation would be complex and lengthy and involve adjudication of the factual and legal issues concerning the parties respective rights and obligations under the Hotel Management Agreement ("HMA"). Settlement Mot. ¶ 33. By not resolving this dispute among each other, the Settlement Parties have put the onus on each of the creditors to litigate these issues (among others) with the Debtor and/or Marriott with both the Debtor and Marriott exclaiming all liability for the debts owed while also being the recipient of Third Party Releases under the Plan.

11. On September 1, 2021, the Court held a hearing to consider conditional approval of the Disclosure Statement and schedule final approval of the Disclosure Statement and

confirmation of the Plan.    At that hearing, the Debtor conveyed to the Court that certain

modifications were made to the Disclosure Statement and Plan.    Those modifications, among

potentially others, consisted of permitting creditors to vote via electronic ballot and revising the

Third Party Release language to exclude from the Third Party Release those creditors whose claims

are not allowed in whole or in part irrespective of whether the creditor opted out of the Third Party

Release.

12.    The Court entered an Order conditionally approving the Disclosure Statement and

solicitation schedule, with solicitation to commence via email and overnight mail on September 2,

2021 [Docket No. 324].

13.    On September 2, 2021, the Debtor filed the *Debtor's First (Substantive) Omnibus*

*Objection to Disallow Certain Claims* [Docket No. 329] (the "Omnibus Objection").    By the

Omnibus Objection, the Debtor objects to certain "Hotel Operations Claims" on the basis that these

claims are liabilities solely of Marriott and not of the Debtor as well as "Reservation Claims" on

the basis that Marriott entered into the reservations independent of the Debtor's oversight.    Enseo's

Claim No. 38 is included in the Omnibus Objection as a "Hotel Operations Claim", which is set

for hearing on October 27, 2021.[5]

14.    On September 7, 2021, the Debtor filed the solicitation versions of both the

Disclosure Statement and Plan, without a redline of both as required by Local Rule 3016-1.

---

[5] It appears that sustaining the Omnibus Objection would lead to an inconsistency with the Debtor's own estimate of
"valid" unsecured claims per the Disclosure Statement.    By quick math, the amount of claims objected to in the
Omnibus Objection total approximately $1,558,003.71, consisting of $764,770.71 related to "Hotel Operations
Claims" and $793,233.00 related to "Reservation Claims."    Thus, if the Omnibus Objection is sustained, the total
amount of "valid" claims would be approximately $141,996.29, which is below the range provided for in the
Disclosure Statement.    *See* Disclosure Statement Arts. I.F, II.B.3.

15.     The revised Third Party Release provides that the Released Parties, which include the Debtor, Marriott, Pacific Life, PL Wardman, among many other entities, shall be forever released from any and all claims and liabilities "throughout the word under any law or court ruling through the Effective Date", except that the Third Party Release is only granted by

> (a) Creditors who returned a Ballot and did not check the opt-out box on the Ballot; and (b) Creditors who were sent a solicitation package, but either (i) did not vote; or (ii) did not return a Ballot with the opt-out box checked; *provided however* that the release provided in this section shall not apply to (A) any Creditor whose Claim is not Allowed either in whole or in part; or (B) any Creditor in category (b) above if the solicitation package was returned to the Debtor as undelivered and that such Creditor did not otherwise submit a Ballot; and provided further, however, that the release provided in this Section shall not extend to any claims by any Governmental Unit with respect to criminal liability under applicable law, willful misconduct or bad faith under applicable law, ultra vires acts under applicable law, or a Creditor's claims against Marriott solely based upon such Creditor's direct contractual rights, if any, against Marriott. For avoidance of doubt, Pacific Life and Marriott shall be deemed to have granted the Third Party Release.

Plan Art. IX.E.2.  However, the scenario that the Third Party Release provision does not account for is a creditor whose claim is ultimately allowed, but for which was objected to and therefore, not entitled to vote under the Plan or receive the solicitation package.

## LIMITED OBJECTION

### A. Enseo Opts Out of the Third-Party Release.

16.     Out of an abundance of caution, Enseo hereby opts out of any applicable Release under the Plan.  As noted above, if Enseo's claim is ultimately allowed against the Debtor, Enseo believes it would have nonetheless effectively granted the Third Party Release because Enseo's claim was objected to by the Debtor, Enseo did not receive the solicitation package, and therefore, Enseo did not have an opportunity to vote on the Plan and opt out.  Enseo does not believe that outcome was the parties' intent and files this Objection, in part, to clarify its position and close

any unintended loophole in the Plan's Third Party Release language. Thus, Enseo requests that any confirmation order entered or any modified plan clarify that Enseo is not providing any Third Party Releases.

**B. The Settlement Motion and Plan Disenfranchise the Debtor's Unsecured Creditors.**

17.    The Settlement Motion, working hand-in-hand with the proposed Plan, disenfranchises unsecured creditors of the Debtor's estate. ***First***, the key dispute between the Settlement Parties remains unresolved—whether the Debtor or Marriott is ultimately responsible for the goods and services provided to the Debtor. In Enseo's case, Enseo's Agreement is clearly with the Debtor and is signed on behalf of the Debtor, and therefore, is correctly asserted against the Debtor. In contrast, Enseo is not a party to the HMA and was not aware of its terms until the HMA was publicly filed in this chapter 11 case. Any issues related to the HMA is an issue that should have been resolved between the Debtor and Marriott in the Settlement Motion and is otherwise unrelated to Enseo's claim against the Debtor. It is therefore unfair to put the onus on individual creditors to fight for a recovery against two parties that have "settled" but continue to point their fingers at each other, including pointing to documents that the creditors were not parties to and were unaware of. Had an official committee of unsecured creditors been appointed in this case, the Settlement Motion would have likely been revised to avoid this result. This flaw in the Settlement Motion, for which is incorporated into the Plan, should be fixed prior to any approval of either.

18.    ***Second***, the Settlement Motion provides for an unsecured claims pool that may be woefully deficient if claimants similar to Enseo are correct that the Debtor is responsible for the goods and services provided to it under contracts entered into with it. Indeed, the Disclosure Statement's estimated 60% to 100% recovery could be illusory, and closer to a 30% recovery if

the $1.7 million in filed claims are allowed.  This point is significant because there is no official committee of unsecured creditors in this case and therefore, no fiduciary overseeing and vetting any settlement with the best interests of unsecured creditors in mind.  To make matters worse, the Settlement Agreement is an insider-deal that includes the Debtor, DIP lender in Pacific Life, the Debtor's equityholder in PL Wardman, and Marriott, with all of the Settlement Parties receiving the benefit of Third Party Releases.

19.      ***Third***, the Debtor filed the Omnibus Objection, objecting to various claims, including Enseo's claim, on the basis that its HMA with Marriott shields the Debtor from liability. The Omnibus Objection is set for hearing on October 27, 2021, more than one month after the confirmation hearing.  But the effect of the Omnibus Objection was that creditors who would otherwise be entitled to vote did not receive a solicitation package, could not vote on the Plan, and could not opt-out of the Third Party Release.  In Enseo's case, its counsel did not have a chance to review the revised Plan and Disclosure Statement until it was filed on the docket on September 7, 2021, and even then, a redline of the Plan and Disclosure Statement was not filed, as required by Local Rule.  While it is true any such creditor could have filed a 3018 motion by the September 13, 2021 deadline, that does not alleviate the late notice and truncated confirmation schedule. Additionally, by setting the Omnibus Objection for hearing one month after the hearing on the Settlement Motion and the Plan, the Debtor may have its confirmed Plan in hand and Settlement Agreement approved when creditors' claims are heard.  Given the nature of the Settlement Motion and the hole left therein, those issues should have been brought before the Court and resolved together.

20.      Enseo further reserves all rights to amend and/or supplement this Objection.

**WHEREFORE**, Enseo respectfully requests that (i) it be deemed to have opted out of the Third Party Releases; (ii) the Settlement Agreement incorporated into the Plan be revised consistent herewith; and (iii) for such other and further relief as the Court deems just and proper.

Dated: September 15, 2021
Wilmington, Delaware

Respectfully submitted,

*/s/ Aaron H. Stulman*
L. Katherine Good (No. 5101)
Aaron H. Stulman (No. 5807)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, DE 19801-6108
Telephone: 302.984.6000
Facsimile: 302.658.1192
Email: kgood@potteranderson.com
       astulman@potteranderson.com

*Counsel to Enseo, LLC (f/k/a Enseo, Inc.)*