## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| WARDMAN HOTEL OWNER, L.L.C., [1] | ) | Case No. 21-10023 (JTD) |
| | ) | |
| Debtor. | ) | |
| | ) | **Docket Ref. No. 339** |

### DECLARATION OF JAMES D. DECKER IN SUPPORT OF
### CONFIRMATION OF DEBTOR'S PLAN OF LIQUIDATION
### PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

I, James D. Decker, make this declaration pursuant to section 1746 of title 28 of the United States Code, and hereby state as follows:

1.  I am the sole and independent manager of the above captioned debtor and debtor in possession (the "Debtor" or the "Company"). I have served as the Debtor's independent manager since October 1, 2020. I am also the proposed post-confirmation Liquidating Trustee of the Debtor pursuant to the Plan. My current duties for the Debtor include general supervision of, and, with counsel, responsibility for, the Debtor's bankruptcy case and financial affairs. In my capacities with the Debtor, I have general knowledge of the books and records of the Debtor, and am familiar with the Debtor's financial and operational affairs.

2.  I submit this declaration (the "Declaration") in support of the confirmation of the *Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 339-

---

[1] The last four digits of the Debtor's U.S. tax identification number are 9717. The Debtor's mailing address is 5996 Mitchell Road, #16, Atlanta, GA 30328.

1] (the "Plan").[2]  Except as otherwise indicated, all statements in this Declaration are based upon

my personal knowledge, my review of the Debtor's books and records, relevant documents and

other information prepared or collected by the Debtor's consultants, contractors and/or advisors,

or my opinion based on my experience with the Debtor's operations and financial condition.  In

making my statements based on my review of the Debtor's books and records, relevant

documents and other information prepared or collected by the Debtor's consultants, contractors

and/or advisors.  I have relied upon these contractors, consultants and/or advisors accurately

recording, preparing or collecting any such documentation and other information.  If I were

called to testify as a witness in this matter, I could and would competently testify to each of the

facts set forth herein based upon my personal knowledge, review of documents, or opinion.  I am

authorized to submit this Declaration on behalf of the Debtor.

3.      I am familiar with the Plan, the Disclosure Statement, the Plan Supplement, the

requirements for confirmation of the Plan, and the means for the implementation of the Plan.  I

have also reviewed the Memorandum.  Except to the extent any factual assertions are attributed

in the Memorandum to another party, I adopt the factual assertions set forth in the Memorandum

as my own and such assertions are incorporated into this declaration by this reference.

4.      I believe that the Plan provides the best recoveries possible for holders of

Allowed Claims.

---

[2]  All capitalized terms not defined herein have the meaning ascribed to such term in (as applicable) the Plan or the *Debtor's Memorandum of Law in Support of Confirmation of Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "Memorandum") being filed concurrently herewith.

DOCS_SF:105996.7

5.      Section 1129(a)(1) - Compliance of the Plan with Applicable Provisions of the

Bankruptcy Code.  As reflected in the Plan, I am informed and, to the best of my knowledge,

believe that the Plan complies with all applicable provisions of the Bankruptcy Code.  Article II

of the Plan specifies all non-classified Claims and their proposed treatment.  The Plan designates

five Classes of Claims (other than Administrative Claims and Priority Tax Claims, which I

understand do not need to be classified).  Article II of the Plan identifies Class 1 (Priority Non-

Tax Claims), Class 2 (Other Secured Claims), Class 3 (Pacific Life Secured Claim), Class 4

(Marriott Claim), Class 5 (General Unsecured Claims) and Class 6 (Equity Interest).  I believe

that each Class of Claims contains only Claims that are substantially similar to the other Claims

or Interests within that Class.  The Plan also provides the same treatment for each Claim or

Interest within a particular Class.  The Plan provides adequate means for the Plan's

implementation, as set forth in Article V (Means for Implementation of the Plan), Article VI

(Treatment of Executory Contracts and Unexpired Leases), Article VII (Conditions Precedent to

Confirmation of the Plan and to the Effective Date), and Article VII (Effects of Confirmation),

among other provisions of the Plan.  I believe that the Debtor will have sufficient cash available

to make all payments that are required to be made on the Effective Date pursuant to the terms of

the Plan.

6.      With respect to the release, exculpation and injunction provisions set forth in

Article VIII.E, in my opinion and to the best of my knowledge,  based on consultation with

Debtor's counsel, these  provisions  of the Plan  are warranted,  necessary,  reasonable,  and

appropriate, and are supported by sufficient consent and consideration under the circumstances of the Plan and the chapter 11 case as a whole.

7.     <u>Debtor Release</u>.  Section VIII.E.I. provides for the release by the Debtor on behalf of the Released Parties of certain claims, causes of action and other matters set forth therein by the Debtor.  As to the Released Parties, I believe the Debtor release is a reasonable exercise of the Debtor's business judgment and appropriate based upon the Released Parties' substantial contributions to the Plan and the Debtor's chapter 11 case.  I believe that Debtor release is in the best interests of the Estate.  Pacific Life has agreed to contribute both the Marriott Contribution Amount and the GUC Contribution Amount from the Sale Proceeds in order to provide substantial distributions to creditors to which they otherwise would not be entitled.  In addition, Pacific Life has also agreed to fund the wind-down of the Debtor's chapter 11 case as part of the Plan Contribution Amount.  I am the Debtor's Manager and, in addition to my work performed during this case, I have agreed to serve as the Liquidating Trustee post-confirmation in order to implement the terms of the Plan and effectuate the wind down of the Debtor.  Marriott has agreed to settle its litigation with the Debtor and accept a one-time distribution of $18 million in full and final satisfaction of its claims against the Debtor, thereby eliminating the need for the Debtor to continue to engage in costly and protracted litigation.  I believe that the Plan provides for far greater distributions to the Debtor's creditors by virtue of the Plan Contribution Amount being contributed by Pacific Life from collateral that would otherwise have been distributed to Pacific Life on account of its claims.  I am informed and believe that no creditor has objected to

4

the proposed Debtor's release. Finally, the Debtor release is also limited in scope by the carve-out for willful misconduct, fraud or gross negligence.

8.     <u>Consensual Third Party Releases</u>. Section VIII.E.2 of the Plan provides for Third Party Releases by certain creditors entitled to vote on the Plan. The Third Party Releases are voluntary, limited in scope, and applicable only to creditors who were entitled to vote on the Plan and creditors whose claims are allowed in whole or in part. I understand the Third Party Releases are consensual and that any creditor who received a Solicitation Package had the option to check the "opt out" box on his or her ballot and not grant the Third Party Release at their election. I also believe that the benefits from the transactions contemplated by the Plan and confirmation of this Plan without undue delay, with the clear support of stakeholders, including Marriott and Pacific Life, outweighs any potential benefits of pursuing any potential claims and causes of action that the Debtor and Releasing Parties could assert against the Released Parties.

9.     Further, I believe that Marriott's inclusion as a Released Party receiving the benefit of the Third Party Releases is appropriate and justified based upon Marriott's substantial contributions to these cases highlighted by Marriott's (a) support for the Plan and the global settlement resolving disputes between the Debtor, Marriott, Pacific Life, and PL Wardman Member, LLC and (b) willingness to avoid costly and protracted litigation with the Debtor, thereby preserve value for the Estate. I understand that the benefit to Marriott from the Third Party Releases is narrowly tailored in that Creditor's claims against Marriott solely based upon the claimants' direct contractual rights, if any, against Marriott are carved out from the claims and causes of action included in the Third Party Releases. I also note that while Marriott has

5

made a "substantial" contribution to the case from an economic perspective, Marriott has

relinquished any right to assert an administrative claim under section 503(a)(3) and (4) against

the estate in the compromise and settlement which facilitated the establishment of a minimum

sum for the holders of Class 5 general unsecured claims.

       10.    <u>Release of Claims between the Debtor, Pacific Life, PL Wardman, LLC and</u>

<u>Marriott</u>.  Section VIII.E.3 provides for the release of claims by the Debtor, Pacific Life, and PL

Wardman, Member, on the one hand, and Marriott on the other hand, of any and all claims,

Causes of Action, related to the Debtor, the Debtor's assets, the Debtor's liquidation, the

Marriott Claim, the Debtor's chapter 11 case and other related pending litigation as set forth in

the Plan.  In consideration for the releases it is providing, Marriott will receive a one-time

distribution of $18 million under the Plan pursuant to the Marriott Contribution Amount.

Marriott is also releasing the Debtor, Pacific Life and PL Wardman Member, LLC from costly

and uncertain litigation, as described below and in the Marriott Settlement Motion.  This release

is voluntary as between the releasing parties, was extensively negotiated, and is in the best

interests of the Debtor and the estate.  As the Manager, I am familiar with the Debtor's litigation

with Marriott.  The ultimate outcome of the Debtor's litigation with Marriott is uncertain and

there is no guaranty that the Debtor would prevail on its defenses to Marriott's claims or the

Debtor's affirmative claims against Marriott.  The Debtor would likely incur significant litigation

costs and attorneys' fees in continuing to litigate with Marriott.  Finally, the Marriott

Contribution Amount is dependent on Marriott's settlement of claims with the Debtor, Pacific

Life and PL Wardman Member, LLC and is the basis for Pacific Life's agreement to fund the

Marriott Contribution Amount.  I believe that the settlement of claims between Marriott, the

Debtor, Pacific Life and PL Wardman, LLC contained in the Plan would relieve the Estate of the

continuing drain of resources resulting from such litigation and is in the best interests of the

Debtor and its creditors.  The settlement of the Debtor's and Pacific Life's claims and causes of

action against Marriott provides the underpinning for the Plan, which provides the greatest

available recovery for general unsecured claims by virtue of the $500,000 contribution made by

Pacific Life for distribution to such creditors and which may result in full payment of non-

Marriott general unsecured claims.

11.    Exculpation.  I understand that The Exculpation Provision (which has been

modified since the solicitation of the Plan to narrow the scope of the Exculpation Provision) is

limited to the Debtor and its respective officers, Manager, employees, and Court-approved

professionals, provided that none of the parties shall be entitled to exculpation unless and to the

extent they are found by a court of competent jurisdiction to be fiduciaries of the Estate. I have

overseen the Debtor and presided over the commencement and administration of this chapter 11

case, including, without limitation, the transactions that resulted in the Sale Motion, Sale Order,

and the Plan currently before the Court.  I believe that the Exculpation Provision is appropriate

under the circumstances of this chapter 11 case because they are fair and equitable and in the

best interest of the Debtor and are narrowly tailored to prohibit exculpation for acts constituting

willful misconduct, fraud or gross negligence.

12.    Injunction.  I understand the Injunction Provision set forth in Article XIII.F of the

Plan implements the Plan's release, and exculpation provisions, in part, by permanently

enjoining all entities from commencing or maintaining any action against the Debtor, the Estate,

the Liquidating Trust, Liquidating Trust Assets, and the Released Parties on account of or in

connection with or with respect to any such Claims or Equity Interests discharged, released,

exculpated, or settled under the Plan.  The Injunction Provision is thus a key provision of the

Plan because it provides a mechanism to enforce the terms of the Plan and to prevent third

parties from commencing litigation against the Liquidating Trust and the other protected parties

simply to collaterally attack the Plan in another forum.

13.     Section 1129(a)(2) - Compliance of Plan Proponents with Applicable Provisions

of the Bankruptcy Code.  To the best of my knowledge, as reflected in the Plan, the Debtor has

complied with all applicable provisions of the Bankruptcy Code.  I am informed and believe that

the solicitation of votes to accept or reject the Plan was (i) in compliance with applicable laws,

rules, and regulations governing the adequacy of disclosure in connection with such solicitation

and (ii) solicited to holders of Claims entitled to vote on the Plan, in accordance with the

Solicitation Procedures Order.

14.     Section 1129(a)(3) - Proposal of Plan in Good Faith.  To the best of my

knowledge, the Debtor proposed the Plan in good faith and is not by any means forbidden by law

and the Plan contains only provisions that are consistent with the Bankruptcy Code.  The Plan

achieves an effective, orderly liquidation of the Debtor's remaining assets, distribution of

available cash, and resolution of competing interests – a result that is in keeping with the

fundamental goals of the Bankruptcy Code.  As explained above, the Plan also provides for a

substantial distribution to unsecured creditors, with Marriott to receive $18 million under the

Marriott Contribution Amount and other unsecured creditors with allowed claims to share in the

$500,000 GUC Contribution Amount.  The Plan reflects the process through which the Debtor

conducted a sale approved by the Court, in contemplation of the confirmation of this Plan; the

results of such sale; the economic benefits for the estate, including creditors thereof, associated

with the benefits of not having to pay a transfer tax on the sale under section 1146(a) of the

Bankruptcy Code which, ultimately, facilitated a substantial recovery for holders of allowed

general unsecured claims if the Plan is confirmed; and the compromise and settlement with

Marriott reflected in the Plan and the Marriott Settlement Order, all are substantive evidence of

the good faith and legitimate purposes effectuated through the Plan.

15.     Section 1129(a)(4) - Bankruptcy Court Approval of Certain Payments as

Reasonable.  No payment for services or costs and expenses in connection with the chapter 11

case, or in connection with the Plan and incident to the chapter 11 case, has been or will be made

other than payments that have been authorized by an order of the Court.  The Court has

previously authorized the interim payment of the fees and expenses incurred by estate

professionals.  *See Order Establishing Procedures for Interim Compensation and*

*Reimbursement of Processionals* [Docket No. 109].  Pursuant to Section II.C of the Plan,

professionals shall file and serve applications for allowance of final compensation and

reimbursement of expenses no later than sixty days after the Effective Date.  Such applications

will be subject to review and approval by the Court.  Accordingly, the Plan complies with the

requirements of section 1129 (a)(4) of the Bankruptcy Code.

16.      Section 1129(a)(5) - Disclosure of Directors, Officers and Compensation and

Consistency with Interests of Creditors and Public Policy.  Under the Plan and as previously

disclosed in the Plan Supplement filed with the Court on September 2, 2021, I am the proposed

Liquidating Trustee.  My proposed compensation as Liquidating Trustee is disclosed in the Plan

Supplement.  In addition to such compensation, Pacific Life has agreed that I will receive a

separate payment in the amount of $250,000 from Pacific Life, made solely from its own funds,

as a bonus for my work during the Chapter 11 Case, provided Pacific Life receives certain

minimum distributions.

17.      Section 1129(a)(6) - Approval of Rate Changes.  The Plan does not provide for or

contemplate any rate change that would require the approval of any regulatory agency.

18.      Section 1129(a)(7) - Best Interests of Creditors and Equity Interest Holders.  With

respect to each impaired Class of Claims of the Debtor, I am informed and believe that each

holder of a Claim or Interest in such Class has accepted the Plan or will receive or retain under

the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is

not less than the amount such holder would receive or retain if the Debtor were liquidated on the

Effective Date under Chapter 7 of the Bankruptcy Code.  For the reasons discussed in Section

X.E of the Disclosure Statement and the Liquidation Analysis, the best interests of creditors test

is satisfied in this case.  As a result of the settlement with Marriott related litigation which serves

as the underpinning of the Plan, the Plan is expected to provide a greater recovery for Allowed

Claims than would a chapter 7 liquidation because of the funding by Pacific Life of the Marriott

Contribution Amount and the GUC Contribution Amount.  Additionally, as explained in the

10

Disclosure Statement, in a chapter 7 case, the value available for satisfaction of Claims in the Debtor would be reduced by the costs, fees and expenses of the liquidation under chapter 7, which would include disposition expenses, the sliding scale fees and compensation of a chapter 7 trustee, the fees of his or her counsel and other professionals, and certain other costs arising from conversion of the chapter 11 case to a case under chapter 7.  Under a Chapter 7 liquidation, the Chapter 7 estate would not receive the Marriott Contribution Amount or the GUC Contribution Amount.  A chapter 7 trustee would also not have the benefit of the resolution of claims and causes of action set forth in the Marriott Settlement Motion and the Plan, and would likely continue to litigate with Marriott in the absence of any settlement.

19.     Moreover, I believe the monetization of the Estate and distributions to creditors likely would suffer additional delays while the chapter 7 trustee and his/her professionals take time to get up to speed on the myriad relevant matters to complete the administration of the Estate and expected litigation with Marriott.  Finally, a chapter 7 liquidation could further delay payments being made to creditors with allowed claims in that, in addition to the reasons described above, I am informed that conversion of this Chapter 11 Case to chapter 7 will trigger a new bar date for filing claims against the Estate.  Not only could a chapter 7 liquidation delay distribution to creditors, but it is possible that additional claims that were not asserted in the chapter 11 case, or were late-filed, could be filed against the Estate and then be the subject of a new claims analysis by the Chapter 7 trustee duplicating the effort already undertaken by my counsel.

11

20.  Section 1129(a)(8) - Acceptance of the Plan by Each Impaired Class.  Because the Plan does not impair Classes 1 and 2, these Classes are deemed to have accepted the Plan and were not entitled to vote.  Class 3 (Pacific Life Secured Claim) and Class 4 (Marriott Claim) unanimously voted to accept the Plan.  Class 5 (General Unsecured Claims) voted in favor of the Plan, with 100% of total voting claim amount and 100% of all voting Class 5 members voting in favor of the Plan.  Class 6 (Equity Interests) was deemed to reject the Plan, but, as discussed further below, the Debtor seeks confirmation of the Plan under the cramdown provisions of section 1129(b).

21.  Section 1129(a)(9) - Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.  The Plan provides for the treatment of Administrative Claims and Priority Tax Claims in a manner that I understand to be required by the Bankruptcy Code.

22.  Section 1129(a)(10) - Acceptance by at Least One Impaired Class.  As required by section 1129(a)(10) of the Bankruptcy Code, at least one Class of Claims that is impaired under the Plan has accepted the Plan, excluding votes cast by insiders.  Specifically, Class 4 (Marriott Claim) and Class 5 (General Unsecured Claims) have accepted the Plan.

23.  Section 1129(a)(11) - Feasibility.  I believe that this requirement is satisfied by the Plan.  Post-confirmation, the completion of the Debtor's liquidation is proposed in the Plan and no further financial reorganization of the Debtor is contemplated.  The Debtor anticipates having sufficient funds available as of the Effective Date pursuant to the Plan Contribution Amount in order to pay all allowed claims and expenses that are required to be paid on the

Effective Date under the Plan (including Administrative Claims and Priority Tax Claims), and to fund the Liquidating Trust.

24.    <u>Section 1129(a)(12) - Payment of Bankruptcy Fees</u>.  The Plan provides at Section V.R for the payment of all statutory fees payable to the Office of the United States Trustee on or before the Effective Date.  I believe that the Debtor will have adequate means to pay all such fees from the Plan Contribution Amount.

25.    <u>Section 1129(a)(13) - Retiree Benefits</u>.  The Debtor does not currently provide any retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code.

26.    <u>Section 1129(a)(14) - Support Obligations</u>.  The Debtor is not required to pay any domestic support obligations.

27.    <u>Section 1129(a)(15) - Distribution of Property</u>.  The Debtor is not an individual.

28.    <u>Section 1129(a)(16) - Transfer of Property</u>.  I understand this provision applies with respect to nonprofit corporations and trusts, and that it is not applicable to the Debtor's case.

29.    <u>Section 1129(b)(1) - Cramdown</u>.  The Plan seeks confirmation pursuant to Section 1129(b) on the basis that the Plan is fair and equitable and does not discriminate unfairly as to holders of equity security interests in Class 6.  I am informed and believe that the Plan may be confirmed notwithstanding the rejection of the Plan by Class 6, because, as explained in the Memorandum, (i) the Plan does not unfairly discriminate against Class 6 as there is no other class of equity security interests treated under the Plan other than those in Class 6; and (ii) the Plan is fair and equitable as to Class 6.

DOCS_SF:105996.7

30.     <u>Section 1129(d) - Tax Avoidance</u>.  The principal purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933. The implementation of the Sale Order and distribution of the Sale Proceeds pursuant to the Plan is an integral part of the Plan.

31.     <u>Section 1146(a) - Exemption</u>.  The Plan seeks the protections authorized under Section 1146(a) of the Bankruptcy Code.  The Sale Proceeds to be derived from the Sale approved by the Sale Order constitute the source of funding for, and payments under, the Plan. The Plan implements the Sale Order by distributing the proceeds derived therefrom.

32.     For the foregoing reasons I submit that the Plan should be confirmed and request that the Court grant the relief requested.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  September 17, 2021

                                        _/s/ James D. Decker_____
                                        By:     James D. Decker
                                        Title:   Sole and Independent Manager

DOCS_SF:105996.7