## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WARDMAN HOTEL OWNER, L.L.C., [1] | ) | Case No.: 21-10023 (JTD) |
| | ) | |
| Debtor. | ) | Re: Docket Nos. 324 and 339 |
| | ) | |

### ORDER GRANTING FINAL APPROVAL OF
### DISCLOSURE STATEMENT AND CONFIRMING DEBTOR'S PLAN
### OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The above captioned debtor and debtor in possession (the "Debtor")[2] having:

a)   commenced, on January 11, 2021 (the "Petition Date"), the chapter 11 case of Wardman Hotel Owner, L.L.C., by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code;

b)   operated its business and managed its properties during this chapter 11 case as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c)   filed, on August 18, 2021, the *Debtor's Motion for Entry of an Order (I) Granting Interim Approval of the Disclosure Statement; (II) Scheduling a Plan Confirmation Hearing and Approving Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Form of Ballot; and (V) Granting Related Relief* [Docket No. 314];

d)   filed, on September 7, 2021 solicitation version of the *Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 339-1] (as modified, the "Plan"); the *Disclosure Statement with Respect to Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 339-2] (the "Disclosure Statement"); and the *Notice of (I) Conditional Approval of Disclosure Statement; (II) Hearing to Consider Confirmation of the Plan; (III) Deadline for Filing Objections to Confirmation of the Plan; (IV) Deadline for Voting on the Plan; and (V) Bar Date for Filing Administrative Claims Established By the Plan* [Docket No. 325] (the "Combined Hearing Notice"), which contained notice of the date and time set for the hearing to consider Confirmation of the Plan and final approval of the Disclosure Statement

---

[1] The last four digits of the Debtor's U.S. tax identification number are 9717.  The Debtor's mailing address is 5996 Mitchell Road, #16, Atlanta, GA 30328.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Plan.

(the "<u>Combined Hearing</u>") and the deadline for filing objections to Confirmation or final approval of Disclosure Statement;

e) filed on September 2, 2021, the *Notice of Non-Voting Status Due to Non-Impairment and (I) Conditional Approval of Disclosure Statement, (II) Hearing to Consider Confirmation of the Plan, (III) Deadline for Filing Objections to Confirmation of the Plan, and (IV) Bar Date for Filing Administrative Claims Established by the Plan* [Docket No. 327] (the "<u>Non-Voting Status Notice for Claims</u>") filed, on September 2, 2021 and the *Notice of Non-Voting Status Due to No Recovery and (I) Conditional Approval of Disclosure Statement, (II) Hearing to Consider Confirmation of the Plan, (III) Deadline for Filing Objections to Confirmation of the Plan, and (IV) Bar Date for Filing Administrative Claims Established by the Plan* [Docket No. 328] (the "<u>Non-Voting Status Notice for Equity Interests</u>"),  and together with the Non-Voting Status Notice for Claims, the "<u>Notices of Non-Voting Status</u>").

f) filed, on September 2, 2021, the *Affidavits of Service* of the Solicitation Package [Docket Nos. 332, 333, 334 & 336] (the "<u>Affidavits</u>");

g) filed, on September 2, 2021, the *Notice of Filing of Plan Supplement With Respect to the Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 330] (the "<u>Plan Supplement</u>"); and

h) filed, on September 17, 2021, the *Memorandum of Law in Support of Confirmation of the Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "<u>Confirmation Brief</u>"), the *Declaration and Certification of Stretto Regarding Tabulation of Votes in Connection With the Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "<u>Voting Declaration</u>"), and the *Declaration of James D. Decker in Support of the Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "<u>Decker Declaration</u>") and collectively with the Voting Declaration, the "<u>Declarations</u>").

The Court having:

a) entered, on September 1, 2021, the *Order (I) Conditionally Approving the Disclosure Statement; (II) Scheduling a Plan Confirmation Hearing and Approving Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Form of Ballots; and (V) Granting Related Relief* [Docket No. 324] (the "<u>Solicitation Procedures Order</u>");

b) reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Voting Declaration, and the Decker Declaration, the Combined Hearing Notice, the Affidavits, and all filed pleadings filed with respect to final approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements, and reservations of rights with respect thereto filed on the docket in this Chapter 11 Case or voiced at the Combined Hearing;

c)      held the Combined Hearing on September 20, 2021, at 1:00 p.m., prevailing Eastern Time;

d)      considered the statements and arguments made by counsel in respect of Confirmation of the Plan and the objections thereto; and

e)      considered all oral representations, affidavits, testimony, documents, filing, and other evidence regarding Confirmation of the Plan and the objections thereto.

NOW, THEREFORE, it appearing to the Court that notice of the Combined Hearing and the opportunity for any party in interest to object to the final approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation of the Plan and other evidence presented at the Combined Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, it hereby is DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**<u>Introduction</u>**

A.      <u>Findings and Conclusions</u>.  The determinations, findings, judgments, decrees, and orders set forth and incorporated in this order (this "<u>Order</u>" or "<u>Confirmation Order</u>") constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

B.      <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>.  The Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware, dated February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408

and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) and the

Court may enter a final order consistent with Article III of the United States Constitution.  The

Court has exclusive jurisdiction to determine whether the Plan complies with the applicable

provisions of the Bankruptcy Code and should be confirmed.

      C.      <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the Chapter 11

Case maintained by the Clerk of the Court, including, without limitation, all pleadings and other

documents filed and orders entered thereon.  The Court also takes judicial notice of all evidence

proffered or adduced and all arguments made at the hearings held before the Court during the

pendency of the Chapter 11 Case.

      D.      <u>Eligibility for Relief</u>.  The Debtor is a proper debtor under section 109 of the

Bankruptcy Code and the Debtor is a proper proponent of the Plan under section 1121(a) of the

Bankruptcy Code.

      E.      <u>Solicitation and Notice</u>.  As evidenced by the Affidavits, the Plan, Disclosure

Statement, Solicitation Procedures Order, notice of the Combined Hearing, and an appropriate

ballot (collectively, the "<u>Ballots</u>") for voting on the Plan with a return envelope or the applicable

Notices of Non-Voting Status (in substantially the forms approved pursuant to the Solicitation

Procedures Order) (collectively, the "<u>Solicitation Materials</u>") were transmitted and served in

compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the

Solicitation Procedures Order.  The solicitation of votes on the Plan complied with the

solicitation procedures in the Solicitation Procedures Order, was appropriate and satisfactory

based upon the circumstances of the Chapter 11 Case, and was in compliance with all applicable

provisions of the Bankruptcy Code and the Bankruptcy Rules.  As evidenced by the Affidavits,

all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to final approval of the Disclosure Statement and Confirmation) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  No other or further notice is required.

F.    <u>Disclosure Statement</u>.  The Disclosure Statement provides Holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125 of the Bankruptcy Code.  The Disclosure Statement also provides Holders of Claims and other entities with sufficient notice of the injunction, exculpation, and release provisions contained in Article VIII of the Plan, in satisfaction of the requirements of Bankruptcy Rule 3016(c).

G.    <u>Voting</u>.  All procedures used to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.  As evidenced by the Voting Declaration, Class 3, Class 4 and Class 5 each voted to accept the Plan.

H.    <u>Burden of Proof</u>.  The Debtor has met its burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence.

I.    <u>Notice of Plan Supplement Documents</u>.  The documents identified in the Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case and was in compliance with the provisions of the Plan, the Solicitation Procedures Order, the Bankruptcy Code, and the Bankruptcy Rules.  All information and documents included in the Plan Supplement and the amendments thereto are integral to, part of, and incorporated by reference into the Plan.  The Plan Supplement complies with the terms of the Plan, and the filing and notice of such

documents provided due, adequate, and sufficient notice in accordance with the Bankruptcy

Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is necessary or

shall be required.

J.      Modifications to the Plan.  Subsequent to September 2, 2021, the deadline to

distribute the Solicitation Packages in compliance with the Solicitation Procedures Order, the

Debtor made certain modifications to the Plan.  A revised final version of the Plan is attached

hereto as **Exhibit A**.  All modifications to the Plan since the entry of the Solicitation Procedures

Order are consistent with the provisions of the Bankruptcy Code, including sections 1122, 1123,

1125, and 1127 of the Bankruptcy Code, including any modifications disclosed on the record at

the Combined Hearing.  Except as provided for by law, contract, or previous order of the

Bankruptcy Court, none of the modifications to the Plan made since the commencement of

solicitation materially and adversely affects the treatment of any holder of a Claim or Interest

under the Plan.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code, none of the

modifications require additional disclosure under section 1125 of the Bankruptcy Code or re-

solicitation of votes under section 1126 of the Bankruptcy Code.  The filing of the Plan as

modified and the disclosure of the Plan modifications on the record at or before the Combined

Hearing constitute due, adequate, and sufficient notice of any and all of such modifications.  In

accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of

a Claim who voted to accept the Plan or who are conclusively presumed to have accepted the

Plan are deemed to have accepted the Plan as modified.  No holder of a Claim shall be permitted

to change its vote as a consequence of the Plan modifications, unless otherwise agreed to by the

holder of the Claim and Debtor.  All modifications to the Plan made after the solicitation of the

Plan are hereby approved, in accordance with section 1127 of the Bankruptcy Code and

Bankruptcy Rule 3019.  The Plan as modified shall constitute the Plan submitted for Confirmation.

K.     <u>Bankruptcy Rule 3016</u>.  The Plan is dated and identifies its proponent (i.e., the Debtor) in accordance with Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement on the docket of the Chapter 11 Case satisfied Bankruptcy Rule 3016(b).

**Compliance with Section 1129 of the Bankruptcy Code**

L.     <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The evidentiary record at the Combined Hearing, the Declarations, the contents of the Plan and the Disclosure Statement, the Affidavits, the Confirmation Brief, and the Court's judicial notice of the complete record of this Chapter 11 Case support the findings of fact and conclusions of law set forth herein.

M.     <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>.  Article III of the Plan designates Classes of Claims, other than Administrative Claims and Priority Tax Claims, which, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be designated.  As required by section 1122(a) of the Bankruptcy Code, each Class of Claims contains only Claims that are substantially similar to the other Claims within that Class.  Valid reasons exist for separately classifying the various Classes of Claims created under the Plan.  The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

N.     <u>Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3))</u>.  Article III of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired.  Article III of the Plan also specifies the treatment of each Impaired Class under the Plan, which are Classes 3, 4, 5 and 6.  The Plan, therefore, satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code.

O.    No Discrimination (11 U.S.C. § 1123(a)(4)).  Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.  The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

P.    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).  The Plan and the Liquidating Trust Agreement set forth in the Plan Supplement provide adequate and proper means for the Plan's implementation, including Article V (Means for Implementation of the Plan), Article VI (Treatment of Executory Contracts and Unexpired Leases), Article VII (Conditions Precedent to Confirmation of the Plan and to the Effective Date), and Article VIII (Effects of Confirmation), among other provisions of the Plan, set forth the means for its implementation.  The Plan, therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

Q.    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).  Article X.M.2 of the Plan provides that if and to the extent applicable, the Debtor shall comply with section 1123(a)(6) of the Bankruptcy Code.

R.    Directors and Officers (11 U.S.C. § 1123(a)(7)).  The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.  Article V of the Plan describes the powers of the Liquidating Trustee.  James D. Decker, the sole and independent manager of the Debtor, will be appointed as the Liquidating Trustee for the Liquidating Trust and the Plan Supplement discloses his identity and compensation.  Mr. Decker's engagement as Liquidating Trustee is consistent with the interests of Holders of Claims and with public policy.  The Debtor

submits that the foregoing provisions therefore satisfy section 1123(a)(7) of the Bankruptcy

Code.

   S. <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>.  Consistent with

section 1123(b)(2) of the Bankruptcy Code, Article VI of the Plan provides for the assumption or

rejection of all of the executory contracts or unexpired leases of the Debtor that have not already

been assumed or rejected in this Chapter 11 Case.

   T. <u>The Debtor's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.

The Debtor has complied with the applicable provisions of the Bankruptcy Code.  Specifically:

(a) the Debtor is a proper debtor under section 109 of the Bankruptcy Code; (b) the Debtor has

complied with all applicable provisions of the Bankruptcy Code, including section 1125, except

as otherwise provided or permitted by order of the Bankruptcy Court; and (c) the Debtor has

complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the

Solicitation Procedures Order in transmitting the Solicitation Materials and in tabulating the

votes with respect to the Plan.  In compliance with the Solicitation Procedures Order, on or

before September 2, 2021, the Debtor caused copies of the following materials to be transmitted

to the known Holders of Claims in Classes that were entitled to vote to accept or reject the Plan

(*i.e.*, Claims in Classes 3, 4 and 5) (collectively, the "<u>Voting Parties</u>"): (1) the Disclosure

Statement; (2) the Plan; (3) the Combined Hearing Notice; and (4) an appropriate form of ballot

and a pre-addressed postage prepaid return envelope.  In further compliance with the Solicitation

Procedures Order and as evidenced by the Affidavits, the Debtor caused copies of the Combined

Hearing Notice to be served on all other parties listed on the Debtor's creditor matrix.  In

addition, copies of the Solicitation Procedures Order, the Plan, the Disclosure Statement, and the

Combined Hearing Notice have been available free of charge, at

https://cases.stretto.com/wardmanhotel, and the foregoing was set forth in the Combined Hearing

Notice.  The Combined Hearing Notice provided due and proper notice of the Hearing and all

relevant dates, deadlines, procedures, and other information relating to the Plan and/or the

solicitation of votes thereon, including, without limitation, the Voting Deadline and the

Objection Deadline (as such terms are defined in the Combined Hearing Notice), the time, date,

and place of the Combined Hearing and the provisions in the Plan concerning certain of the third

party releases provided for in the Plan.  Based on the foregoing, all persons entitled to receive

notice of the Disclosure Statement, the Plan, the Combined Hearing Notice, and Notices of Non-

Voting Status have received proper, timely, and adequate notice in accordance with the

Solicitation Procedures Order, the applicable provisions of the Bankruptcy Code and the

Bankruptcy Rules, and have had an opportunity to appear and be heard with respect thereto.  As

such, the Debtor is in compliance with section 1128 of the Bankruptcy Code and Bankruptcy

Rules 2002(b) and 3017(d)–(f).  No other or further notice is required.

U.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Plan has been

proposed by the Debtor in good faith and in the belief that the proposed liquidation and

establishment of the Liquidating Trust will maximize value for the Debtor's creditors.  The Plan

accomplishes the goals promoted by section 1129(a)(3) of the Bankruptcy Code by enabling the

Liquidating Trustee to make distributions to creditors on a fair and equitable basis, in accordance

with the priorities established by the Bankruptcy Code.  The Plan has been proposed with the

legitimate purpose of maximizing the value of the Estate to achieve the best interests of the

Debtor's creditors.  In so finding, the Court has considered the totality of the circumstances in

this Chapter 11 Case , including the process through which the Debtor conducted a sale

previously approved by the Court, in contemplation of the Plan; the results of such sale; the

economic benefits for the Estate, including creditors thereof, associated with the benefits of not having to pay a transfer tax on the sale under section 1146(a) of the Bankruptcy Code which, ultimately, facilitated a substantial recovery for Holders of allowed general unsecured claims; and the compromise and settlement with Marriott reflected in the Plan and the Marriott Settlement Order.  The support for the Plan by Holders of Claims in Classes 3, 4 and 5 who voted to accept the Plan further demonstrates that the Plan was proposed in good faith.  Finally, as described in greater detail below, the Plan's indemnification, exculpation, release, and injunction provisions are warranted, necessary, and appropriate, and are supported by sufficient consent and consideration under the circumstances of the Chapter 11 Case as a whole and are consistent with sections 105, 1123(b)(6), and 1129 of the Bankruptcy Code and applicable law in this Circuit.

V.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).  No payment for services or costs and expenses in connection with this Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been or will be made by the Debtor other than payments that have been authorized by an order of the Court, including without limitation by the Confirmation of the Plan by this Order.  The Court has previously authorized the interim payment of the fees and expenses incurred by Professionals in connection with the Chapter 11 Case. *See Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 109].  Pursuant section II of the Plan, such Professionals' applications for allowance of final compensation and reimbursement of expenses must be filed and served **no later than sixty (60) days after the Effective Date.**  Such applications will be subject to review and approval by the Court.

W.     <u>Proper Disclosure of Officers (11 U.S.C. § 1129(a)(5))</u>.  The Debtor has complied with section 1129(a)(5) by providing such disclosures in the Plan Supplement.  The Plan, in conjunction with the Plan Supplement, satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

X.     <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval.  Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

Y.     <u>"Best Interest Test" 11 U.S.C. § 1129(a)(7)</u>.  Each holder of an Impaired Claim or Impaired Interest has either accepted the Plan or will receive or retain on account of such Claim or Interest, property of a value on the Effective Date of the Plan that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.  As set forth in Section X.F and Exhibit B of the Disclosure Statement, the Liquidation Analysis and the other evidence related thereto, as supplemented by any evidence proffered or adduced at or prior to the Combined Hearing, are persuasive and credible.  The Plan, therefore, satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

Z.     <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.  Classes 1 and 2 are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Classes 3, 4 and 5 are the Impaired Classes entitled to vote on the Plan.  Class 3, 4 and 5 have each voted to accept the Plan.  Class 6 is conclusively presumed to reject the Plan because no distribution is anticipated to the Holders of such equity security interests, in

accordance with section 1126(g) of the Bankruptcy Code.  The Plan, therefore, does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code because at least one Impaired Class has voted against the Plan.  Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

AA.    <u>Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9))</u>.  The treatment of Administrative Expenses and Priority Tax Claims as set forth in Article II of the Plan is in accordance with the requirements of section 1129(a)(9) of the Bankruptcy Code.  The Plan, therefore, satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

BB.    <u>Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10))</u>. As set forth in the Voting Declaration, Classes 4 and 5 are impaired classes of Claims under the Plan, and voted to accept the Plan.[3]  The Plan, therefore, satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

CC.    <u>Confirmation is not likely to be followed by need for further reorganization (11 U.S.C. § 1129(a)(11))</u>.  The Plan provides for, among other things, the liquidation of the Debtor's remaining assets and, accordingly, no reorganization of the Debtor is contemplated. Based on the evidence proffered or adduced at or prior to the Combined Hearing and in the Confirmation Brief and the Disclosure Statement, the Debtor will have sufficient funds available as of the Effective Date to pay all claims and expenses that are required to be paid on the Effective Date under the Plan (including Administrative Claims, Priority Tax Claims and Priority Non-Tax Claims), and to fund the Liquidating Trust to pay these claims as appropriate pursuant

---

[3] Class 3 (Pacific Life Secured Claim) is an impaired class of Claims and also voted to accept the Plan, but is not being counted purposes of satisfying the requirements of 11 U.S.C. § 1129 (a)(10).

to the Liquidating Trust Agreement.  Accordingly, the Plan is the feasible.  The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

DD.    <u>Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12))</u>.  Article V.R of the Plan provides for the payment of all fees payable by the Debtor under 28 U.S.C. § 1930(a).  The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

EE.    <u>Non-applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), (14), (15), and (16))</u>.  The Debtor does not owe any retiree benefits, domestic support obligations, are not individuals, and are not nonprofit corporations.  Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Case.

FF.    <u>"Cram Down" Requirements — Section 1129(b)</u>. The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.  Notwithstanding the fact that Class 6 (Equity Interests) is deemed to reject the Plan (the "<u>Rejecting Class</u>"), the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code given that Classes 3, 4 and 5 have each voted to accept the Plan.  *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.  *Second*, the Plan is fair and equitable with respect to the Rejecting Class.  The Plan has been proposed in good faith, is reasonable and meets the requirements that no Holder of any Claim that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim and no Holder of a Claim in a Class equal to such Classes is receiving more favorable treatment than the Rejecting Class.  Accordingly, the Plan is fair and equitable towards all Holders of Claims in the Rejecting Class.  *Third*, the Plan does not discriminate unfairly with respect to the Rejecting Class and there is no other class of equity security interests treated under the Plan.  The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the

Plan because the Plan does not discriminate unfairly, and is fair and equitable with respect to the Rejecting Class.

GG.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  The Plan (including previous versions thereof), supersedes any other plan filed in this case.  The Debtor seeks Confirmation of the Plan. No party other than the Debtor has proposed a plan.  The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

HH.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, 15 U.S.C. § 77e.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

II.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record in the Chapter 11 Case, the Debtor, and each of their officers, directors, shareholders, managers, employees, members, agents, advisors, accountants, attorneys, and representatives (as applicable) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, including, but not limited to, any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article VIII.D of the Plan.

JJ.    <u>Implementation</u>.  The various means for implementation of the Plan, as set forth in Article V and other provisions of the Plan (collectively, the "<u>Implementation Activities</u>"), have been designed and proposed in good faith.  The Implementation Activities are adequate and

will promote the maximization of the value of the ultimate recoveries under the Plan in a fair and

equitable manner in accordance with the priorities established by the Bankruptcy Code.  The

Implementation Activities are not intended to hinder, delay, or defraud any entity to which the

Debtor is indebted on the Effective Date.

KK.    <u>Debtor Release</u>.  The Debtor has satisfied the business judgment standard with

respect to the propriety of the Debtor Release.  Such releases are a necessary and integral

element of the Plan, and are fair, reasonable, and in the best interests of the Debtor, the Estate,

and Holders of Claims and Equity Interests.  Also, the Debtor Release provided in section

VIII.E.1. of the Plan is: (a) in exchange for the good and valuable consideration provided by the

Released Parties; (b) a good faith settlement and compromise of the Claims released by the

Debtor Release; (c) in the best interests of the Debtor and all Holders of Claims and Equity

Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity

for hearing; and (f) a bar to any of the Debtor or its Estate asserting any Claim or Cause of

Action released pursuant to the Debtor Release.

LL.    <u>Third Party Release</u>.  The Court finds and concludes that the Third Party Release

provided under section VIII.E.2 is appropriate under the circumstances.  The Third Party Release

is voluntary and the Ballots unambiguously and prominently provide a mechanism for any

creditor to opt-out of the Third Party Release.  The Third Party Release is not applicable either to

(a) creditors who were not entitled to vote on the Plan and who were not provided with

Solicitation Packages; or (b) to creditors whose claims are not allowed either in part or in whole.

The Plan provides that the Third Party Release does not extend to any claim by any

Governmental Unit with respect to criminal liability under applicable law, willful misconduct or

bad faith under applicable law, ultra vires acts under applicable law, or any Creditor's claims

against Marriott solely based upon such Creditor's direct contractual rights, if any, against Marriott.  Additionally, the Third Party Release provisions of the Plan were conspicuous, emphasized with boldface type and/or capital letters in the Plan, the Disclosure Statement, the Ballots, and the applicable notices. The Third Party Release is a necessary and integral element of the Plan as it is an important element of the compromise and settlement that facilitated the presentment of the Plan, and are fair, equitable, reasonable, and in the best interests of the Debtor, the Estate, and all Holders of Claims.

MM.    <u>Exculpation</u>.  The exculpation described in section VIII.D of the Plan is appropriate under applicable law because it was proposed in good faith and is appropriately limited in scope. The Plan's exculpation, including its carve-out for gross negligence, fraud or willful misconduct, is consistent with established practice in this jurisdiction and others.

NN.    <u>Injunction</u>. The injunction provision provided in section VIII.F of the Plan is necessary to implement, preserve, and enforce the Plan, the Debtor Release, the Third-Party Release, and the Plan's exculpation, and is narrowly tailored to achieve this purpose.

OO.    <u>Settlement of Claims and Causes of Action with Marriott</u>.  In addition to the findings of fact and conclusions of law set forth in the Marriott Settlement Order, the Court finds that the settlement of claims and causes of action set forth in the Marriott Settlement Motion resolves complex and burdensome litigation, relieves the estate of certain potential liabilities, and facilitates the efficient resolution of the Chapter 11 Case, including the presentment of this Plan, while maximizing value to unsecured creditors in this case.  The compromise and settlement of claims set forth in the Plan and the Marriott Settlement Motion was entered into in good faith, is fair, equitable, and reasonable under the circumstances of this Chapter 11 Case, and is in the best interests of the Debtor and its Estate.

PP.     _Preservation of Rights of Action_. Section VIII.H of the Plan appropriately provides that the Debtor will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action except for Causes of Action that have been expressly waived, settled, or otherwise released as provided under the Plan, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.  The provisions regarding the preservation of Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtor, the Estate, and Holders of Claims and Equity Interests.

QQ.     _Satisfaction of Confirmation Requirements_.  Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

RR.     _Exemption from Certain Taxes_.  The Sale Motion[4] disclosed that the Debtor sought a tax exemption under Bankruptcy Code section 1146(a) and that the proposed sale was in contemplation of a chapter 11 plan.  Sale Motion, ¶ 17.i.  Section 22 of the Sale Order provides that the "Sale of the Assets and the transactions contemplated thereby shall be exempt from any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment as a transfer of assets under a plan subject to the tax exemptions under section 1146(a) of the Bankruptcy Code."  The Sale Proceeds to be derived from the Sale Order constitutes the source of funding for, and payments under, the Plan by virtue of the Plan Contribution Amount.  The Plan is predicated and dependent on the funding of

---

[4] _See Motion for Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Debtor's Assets Outside the Ordinary Course of Business; (B) Authorizing the Sale of Assets Free and Clear of Liens, Claims, Rights and Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), 363(f), 363(m) and 1146; (C) Assuming and Assigning Certain Executory Contracts and Unexpired Leases; and (D) Granting Related Relief, filed on June 18, 2021_ [Docket No. 262]

expenses and reserves from the Sale Proceeds to the extent required for the Plan to become

effective and for the Liquidating Trustee to administer and implement the Plan for the benefit of

the Debtor's economic constituents.  The Plan implements the distribution of the Sale Proceeds

to be paid pursuant to the Sale Order.  The Court finds and concludes that sale of the Debtor's

assets sold pursuant to the Sale Order, including without limitation, to the sale of the Debtor's

real property located at 2660 Woodley Road, N.W., Washington, D.C. 20008, together with any

improvements appurtenant rights, and other agreements affecting such property that are the

subject of the Sale Order, are not subject to any stamp tax or other similar tax pursuant to section

1146 of the Bankruptcy Code.

BASED ON THE FOREGOING FINDINGS OF FACT, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

1.    <u>Confirmation</u>.  The Plan, as attached hereto as **Exhibit A**, is **APPROVED** in its

entirety and confirmed under section 1129 of the Bankruptcy Code.  The Plan is **CONFIRMED**

in its entirety pursuant to section 1129 of the Bankruptcy Code.  The terms of the Plan, the

Plan Supplement and each of the documents comprising the Plan Supplement, any amendments,

modifications, or supplements thereto, and all documents and agreements thereto are

incorporated by reference into and are an integral part of the Plan, and such terms and their

implementation are hereby approved and authorized.  The Debtor and/or the Liquidating Trust

(as applicable) are authorized to take all actions necessary or appropriate to enter into,

implement, and consummate the contracts, instruments, releases, and other agreements or

documents created in connection with the Plan.

2.    <u>Final Approval of Disclosure Statement</u>. The Disclosure Statement is hereby

**APPROVED**, on a final basis, pursuant to section 1125 of the Bankruptcy Code.

3.      <u>Objections</u>.  The Debtor received informal comments from the Office of the United States Trustee and objections from Enseo, LLC and Wardman Tower Residential Condominium Unit Owners Association.  To the extent that these informal comments have not been withdrawn or resolved prior to the entry of this Order, all informal comments or objections are overruled in all respects for the reasons set forth in the record of the Combined Hearing, which record is incorporated herein, and all withdrawn informal comments, if any, are deemed withdrawn with prejudice.

4.      <u>Omission of Reference to Particular Plan Provisions</u>.  The failure to specifically describe or include any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

5.      <u>Implementation</u>.  The Debtor, the Liquidating Trust, and the Liquidating Trustee are authorized to take all actions necessary, appropriate, or desirable to enter into, implement, and consummate the contracts, instruments, releases, leases, agreements, or other documents created or executed in connection with the Plan.  Without further order or authorization of this Court, the Debtor, the Liquidating Trust, the Liquidating Trustee, and their successors are authorized and empowered to make all modifications to all Plan documents that are consistent with the Plan.  Execution versions of the Plan and all related documents, where applicable, shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.

6.      <u>Classifications</u>.  The classification of Claims for purposes of distributions made under the Plan shall be governed solely by the terms of the Plan and the Solicitation Procedures Order.

7.      <u>Effective Date</u>.  The Effective Date of the Plan shall occur on the date determined by the Debtor when the conditions set forth in section VII of the Plan have been satisfied or, if applicable, waived in accordance with the Plan.

8.      <u>Modifications or Alterations to Plan</u>.  To the extent the Plan has been modified, supplemented, or altered subsequent to solicitation, such modifications, supplements, and alterations constitute clarifications or technical changes, and do not materially adversely affect or change the treatment of any Claims or Equity Interests.  Accordingly, pursuant to Bankruptcy Rule 3019, such modifications or alterations, if any, do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

9.      <u>Resolution of Claims</u>.  As discussed in detail in the Disclosure Statement and Plan, and as otherwise provided herein, in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise of all Claims and controversies resolved pursuant to the Plan.  Subject to Article V of the Plan, all distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

10.     <u>Post-Confirmation Governance</u>.  On and after the Effective Date, the Liquidating Trustee shall serve in such capacity through the earlier of the date the Liquidating Trust is dissolved in accordance with the Plan or the Liquidating Trust Agreement and the date the Liquidating Trustee resigns, is terminated or otherwise unable to serve; *provided, however*, that, any successor Liquidating Trustee shall serve in such capacity after the effective date of such person's appointment as the Liquidating Trustee.

11.    <u>Causes of Action</u>.  Unless any Causes of Action are expressly waived, relinquished, released, compromised, or settled in the Plan  or any final order entered by this Court (including, without limitation, this Order a "<u>Final Order</u>"), the Debtor and the Liquidating Trust expressly reserve all such Causes of Action for later adjudication.  The reservation shall include, without limitation, a reservation by the Debtor and the Liquidating Trust of any Causes of Action not specifically identified in the Plan or Disclosure Statement, or of which the Debtor may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise), or laches will apply to such Causes of Action upon or after the Confirmation of the Plan based on the Disclosure Statement, the Plan or this Order, except where such claims and/or defenses have been expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order.  Following the Effective Date, the Liquidating Trust may assert, compromise or dispose of the Causes of Action without further notice to Creditors or Interest Holders or authorization of the Bankruptcy Court, except as otherwise expressly provided herein or in the Liquidating Trust Agreement in relation to the Liquidating Trust.

12.    <u>Liquidating Trust and Liquidating Trustee.</u>  On the Effective Date, the Liquidating Trust shall be established and shall be authorized to implement and adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan or Liquidating Trust Agreement as necessary or desirable to consummate the Plan or to carry out the Liquidating Trust functions.  On and after the Effective Date, the Liquidating

Trustee shall carry out the Liquidating Trust functions on behalf of the Liquidating Trust as required by the Liquidating Trust Agreement.  The Liquidating Trustee, in his or her discretion, may execute and file documents and take all other actions as he/she deems appropriate relating to the dissolution of the Debtor under applicable state laws, and in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the subject Debtor as provided herein, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates.

13.    <u>Liquidating Trust</u>.  On the Effective Date, the Liquidating Trust shall become effective, in order to carry out the functions set forth in the Liquidating Trust Agreement.  The Liquidating Trust shall be administered and controlled by the Liquidating Trustee as set forth in the Liquidating Trust Agreement.

14.    <u>Sources of Consideration for Plan Distributions</u>.  The distributions to be made under the Plan shall be funded by the Plan Contribution Amount (which includes, among other things, the Marriott Contribution Amount and GUC Contribution Amount), together with any Cash or other assets as may be held or asserted to be held by the Debtor or the Liquidating Trust, as the case may be, pursuant to the terms of the Plan.

15.    <u>Effectuating Documents; Further Transactions</u>.  On and after the Effective Date, the Liquidating Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Liquidating Trust, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan and the Liquidating Trust Agreement.

16.    <u>Rejection of Executory Contracts and Unexpired Leases</u>.  On the Effective Date, except for any executory contracts or unexpired leases of the Debtor: (i) that previously were assumed or rejected by an order of the Bankruptcy Court, pursuant to Section 365 of the Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such contract or lease has been filed and served prior to Confirmation; or (iii) that constitute contracts of insurance in favor of, or that benefit, the Debtor or the Estate, each executory contract and unexpired lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code as of the Effective Date.  This Order shall constitute an order of the Bankruptcy Court approving such rejection, pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date.  For the avoidance of doubt, any insurance policy acquired for the benefit of the Debtor (or any representatives thereof or successors thereto) before or after the Petition Date shall remain in full force and effect after the Effective Date according to its terms.  For avoidance of doubt, the Confirmation Order shall constitute a rejection of (i) any collective bargaining agreements entered into by Marriott and/or that may be binding on the Debtor; and (ii) those certain Owner's Letters relating to such collective bargaining agreements (collectively, the "<u>CBAs</u>"), provided however that nothing in the Plan or the Confirmation Order shall impair or otherwise affect any rights or obligations of the Successful Bidder (as defined in the Sale Order) or the applicable unions with respect to the CBAs to the extent provided under paragraphs D and 25 of the Sale Order.

17.    <u>Claims Based on Rejection of Executory Contracts or Unexpired Leases</u>.  Proofs of Claim with respect to Claims arising from the rejection of executory contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court **within thirty (30) days after**

**the earlier of (a) the Effective Date or (b) an order of the Bankruptcy Court approving such rejection.** Any Claims arising from the rejection of an executory contract or unexpired lease not filed within such time shall not be treated as an Allowed Claim for purposes of Distribution without the need for any objection by the Liquidating Trust or further notice to, or action, order or approval of the Bankruptcy Court. Allowed Claims arising from the rejection of the Debtor's executory contracts or unexpired leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan, as applicable.

18.     <u>Reservation of Rights</u>.  Nothing contained in the Plan shall constitute an admission by the Debtor that any executory contract or unexpired lease is in fact an executory contract or unexpired lease or that the Liquidating Trust has any liability thereunder.

19.     <u>Distributions Under the Plan</u>.  On and after the Effective Date, the Distributions on account of Allowed Claims and the resolution and treatment of Disputed Claims pursuant to Article V of the Plan are authorized to occur and, without limitation on the other provisions of the Plan and this Order concerning the powers, duties, and authority of the Liquidating Trustee, the Liquidating Trustee shall be authorized to effectuate such Distributions, resolution, and treatment required by the Liquidating Trust Agreement.

20.     <u>Procedures for Resolving Contingent, Unliquidated, and Disputed Claims</u>.  The procedures and authority to file objections, settle, compromise, withdraw or litigate to judgment Claims, adjudicate or resolve Tax issues or liabilities, and estimate, adjudicate and resolve any contingent or unliquidated Disputed Claim, contained in Article V of the Plan shall be, and hereby are, approved in their entirety.

21.     <u>Injunction.</u>  The injunctions contained in section VIII.F of the plan is approved in all respects. **In implementation of the Plan, except as otherwise expressly provided in the**

Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Equity Interests in the Debtor, the Liquidating Trust, or the Estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor, the Estate, the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the Estate, the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtor, the Estate, or the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest, including without limitation, any act taken in violation of Section VIII.E.2. of the Plan against any of the Released Parties with respect to any matters released under the Plan in favor of such Released Parties.  Nothing contained in Section VIII.F. of the Plan shall prohibit the Holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtor or the Liquidating Trust under the Plan.

22.   <u>Releases by the Debtor</u>.  The releases contained in section VIII.E.1 are approved in all respects.  **Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtor and its estate shall release each Released Party, and each Released Party is deemed released by the Debtor and the estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor or its estate, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or the estate would have been legally entitled to assert in its own right, or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's liquidation, the Chapter 11 Case, the purchase, sale, transfer of any security, asset, right, or interest of the Debtor, the transactions made by or contemplation under the Sale Order, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the treatment of Claims and Equity Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, other than claims or liabilities arising out of or relating to any act or omission of a Released**

Party that constitutes fraud, willful misconduct, or gross negligence; provided, that the foregoing Debtor Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan.  For avoidance of doubt, the foregoing Debtor Release does release any of the Debtor's claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities with respect to the *Wardman Tower Residential Condominium Unit Owners Association v. JBG Smith Properties, et al* action currently pending in the Superior Court of the District of Columbia under Case No. 2020 CA 004807.  Entry of this Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan.

23.    **Releases by Holders of Claims.**  The third party release contained in section VIII.E.2 of the Plan are approved in all respects.  **On, and as of, the Effective Date and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Released Parties shall be forever released (the "Third Party Release") from any and all claims, obligations, actions, suits, rights, debts, accounts, causes of action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, defenses, and liabilities throughout the world under any law or court ruling through the Effective Date (including all claims based on or arising out of factors or circumstances that existed as of or prior to the Effective Date, including claims based on negligence or strict liability, and further including any derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise) which the Debtor, its estate, Creditors, or other persons receiving or who are**

entitled to receive distributions under the Plan may have against any of them in any way related to this Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, and related to the Debtor (or its predecessors), its business and/or its assets; *provided however* that the foregoing releases are granted only by (a) Creditors who returned a Ballot and did not check the opt-out box on the Ballot; and (b) Creditors who were sent a solicitation package, but either (i) did not vote; or (ii) did not return a Ballot with the opt-out box checked; *provided however* that the release provided in this paragraph shall not apply to (A) any Creditor whose Claim is not Allowed either in whole or in part; or (B) any Creditor in category (b) above if the solicitation package was returned to the Debtor as undelivered and that such Creditor did not otherwise submit a Ballot; and provided further, however, that the release provided in this paragraph shall not extend to any claims by any Governmental Unit with respect to criminal liability under applicable law, willful misconduct or bad faith under applicable law, ultra vires acts under applicable law, or a Creditor's claims against Marriott solely based upon such Creditor's direct contractual rights, if any, against Marriott, *provided further* that nothing in this section shall release any Released Party from acts that are judicially determined to constitute fraud, willful misconduct, or gross negligence.  For avoidance of doubt, Pacific Life and Marriott shall be deemed to have granted the Third Party Release.

24.    Global Limited Release of Claims Between Marriott, the Debtor, Pacific Life and PL Wardman Member, LLC.  The release provision in section VIII.E.3 of the Plan are approved in all respects.  Subject to and effective as of the occurrence of Effective Date, Marriott, on the

one hand and the Debtor, PL Wardman Member, LLC, and Pacific Life, on the other hand, each

of the forgoing, on behalf of themselves and their respective affiliates, successors, assigns,

transferees, officers and directors, agents, members, financial and other advisors, attorneys,

employees, partners, affiliates, and representatives (in each case in their capacity as such), shall

be deemed to have conclusively and unconditionally released each other and their respective

successors, assigns, transferees, officers and directors, agents, members, financial and other

advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their

capacity as such), from any and all claims, interests, obligations, rights, suits, damages, Causes

of Action, remedies, and liabilities whatsoever based on or related to, or in any manner arising

from or related to the Debtor, the Debtor's assets, the Debtor's liquidation, the Marriott Claim,

the Chapter 11 Case, the Maryland Action, *Wardman Hotel Owner, L.L.C. v. Marriott Hotel

Services, Inc.* [Adv. Proc. No. 21-51005], Marriott's operation of the hotel located at 2600

Woodley Road, NW in the Woodley Park neighborhood of Washington, D.C., the purchase, sale,

transfer of any security, asset, right, or interest of the Debtor, and the business and contractual

arrangements between Marriott, Pacific Life, PL Wardman Member, LLC and/or the Debtor

which relate to the foregoing, based on facts now in existence whether known or unknown, and

all such claims whether known or unknown, foreseen or unforeseen, asserted or unasserted,

accrued or unaccrued, matured or unmatured, determined or determinable, disputed or

undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in

law, equity, or otherwise, *provided however*, that the foregoing shall not impact or modify the

treatment of the Marriott Claim provided under the Plan.  Marriott, the Debtor, Pacific Life and

PL Wardman Member, LLC each hereby waives and releases any and all rights under Section

1542 of the California Civil Code with respect to the matters referenced in this paragraph, which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASING PARTY.**

25. <u>Exculpation</u>. The exculpation provisions contained in section VIII.D of the Plan are approved in all respects. **The Exculpated Parties will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken after the Petition Date through and including the Effective Date in connection with or related to the Chapter 11 Case, the sale of the Debtor's assets (including, without limitation the sale of the assets pursuant to the Sale Order) or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan;** *provided, however*, **that this limitation will not affect or modify the obligations created under the Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction). Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of Section 1125(e) of the Bankruptcy Code. Except as specifically set forth in Section VIII.E of the Plan, no provision of the Plan or the Disclosure Statement shall be deemed to act to or release any claims, Causes of Action, claims or rights, or liabilities that the Liquidating Trust or the Estate may have against any Entity or person for any act, omission, or failure to act that occurred prior to the Petition**

**Date, nor shall any provision of the Plan be deemed to act to release any Causes of Action and litigation claims.**

26.    <u>Section 1146(a) Exemption</u>.  To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from the Debtor or to any other Person) of property under the Plan or pursuant to: (1) the sale to the Successful Bidder pursuant to the terms of the Sale Order, including without limitation the sale of the Debtor's real property located at 2660 Woodley Road, N.W., Washington, D.C. 20008, together with any improvements appurtenant rights, and other agreements affecting such property, that are the subject of the Sale Order; (2) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever

appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall

forgo the collection of any such tax or governmental assessment, and shall accept for filing and

recordation any of the foregoing instruments or other documents without the payment of any

such tax or governmental assessment.

27.    <u>Release of Liens</u>.  Except as otherwise provided herein or in any contract,

instrument, release or other agreement or document created pursuant to the Plan, on the Effective

Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the

case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed

as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests

against any property of the Estate shall be fully released, and all of the right, title and interest of

any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall

revert to the Debtor and their successors and assigns.  For the avoidance of doubt, all mortgages,

deeds of trust, Liens, pledges or other security interests against any property of the Estate shall

be fully released on the Effective Date without any further action of any party, including, but not

limited to, further order of the Bankruptcy Court or filing updated schedules or statements

typically filed pursuant to the Uniform Commercial Code.

28.    <u>Second Administrative Expense Bar Date Provisions</u>.  Unless previously filed or

as otherwise governed by a bar date order or in another order of the Court, requests for payment

of Administrative Expenses arising on or after June 1, 2021, must be filed with the Court and

served on the parties identified in section II of the Plan **on or before 60 days after the Effective

Date** (the "<u>Second Administrative Claims Bar Date</u>").  Holders of Administrative Claims that are

required to file and serve a request for payment of such Administrative Claims and that do not

file and serve such a request by the Second Administrative Expense Bar Date shall be forever

barred from asserting such Administrative Claims against the Debtor, the Estate, the Liquidating

Trust, or their respective property.

29.     <u>Cancellation of Notes, Instruments, Certificates, and Other Documents</u>.  On the

Effective Date, except as otherwise provided herein or in the Plan, all notes, instruments,

certificates, and other instruments or documents, directly or indirectly, evidencing any Claim or

Interest shall be deemed cancelled and the obligations of the Debtor or the Liquidating Trust

shall be limited to those distributions proposed under the Plan, if any, with respect to such Claim

or Interest.

30.     <u>Professional Fee Claims</u>.  Any Professional or other Entity asserting a

Professional Fee Claim must file and serve on respective counsel for the Debtor, the Liquidating

Trustee, and the Liquidating Trust and such other Entities who are designated by the Bankruptcy

Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final

allowance of such Claim **no later than sixty (60) days after the Effective Date.**  All such

applications for final allowance of compensation and reimbursement of expenses will be subject

to the authorization and approval of the Bankruptcy Court.

31.     <u>Notices of Confirmation and Effective Date</u>.  The Debtor shall serve a combined

notice of entry of this Confirmation Order and notice of the Effective Date in accordance with

Bankruptcy Rules 2002 and 3020(c) on all creditors, equity holders and parties having requested

notice in this Chapter 11 Case.  Notwithstanding the above, no notice of Confirmation or

Effective Date or service of any kind shall be required to be mailed or made upon any party to

whom the Debtor mailed notice of the Combined Hearing, but received such notice returned

marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order

expired," or similar reason, unless the Debtor has been informed in writing by such Entity, or are

otherwise aware, of that Entity's new address.  The above-referenced notices are adequate under the particular circumstances of this chapter 11 case and no other or further notice is necessary.

32.    <u>Appointment of Liquidating Trustee</u>.  James D. Decker is hereby appointed to serve as the Liquidating Trustee on the terms set forth in this Confirmation Order, the Plan, the Plan Supplement, and the Liquidating Trust Agreement.

33.    <u>Authorization, Duties, and Powers of Distribution Trustee</u>.  The Liquidating Trustee is hereby authorized to take any and all actions necessary or appropriate in furtherance of, and to implement, effectuate and consummate the Plan, this Confirmation Order, and the Liquidating Trust, including, without limitation, all of the procedures and undertakings specified in the Plan and, further without limitation of the foregoing, all of the specified rights, duties, powers, options, and elections of the Liquidating Trustee set forth in the Liquidating Trust Agreement.

34.    <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order of the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and any of the proceedings related to the Chapter 11 Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.

35.    <u>Payment of Statutory Fees</u>.  On the Effective Date, and thereafter as may be required, the Liquidating Trust shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

36.     <u>Successors and Assigns</u>.  The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

37.     <u>Plan Supplement</u>.  The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtor at the Combined Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Debtor and the Liquidating Trust, are authorized and approved when they are finalized, executed, and delivered.  Without further order or authorization of this Court, the Debtor, the Liquidating Trust, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan.

38.     <u>Binding Effect of the Plan</u>.  The provisions of the confirmed Plan shall bind the Debtor, the Liquidating Trust, the Liquidating Trustee, any Entity acquiring property under the Plan, any Beneficiary, and any Creditor or Equity Interest Holder, whether or not such Creditor or Equity Interest Holder has filed a Proof of Claim or Equity Interest in the Chapter 11 Case, whether or not the Claim of such Creditor or the Equity Interest of such Equity Interest Holder is impaired under the Plan, and whether or not such Creditor or Equity Interest Holder has accepted or rejected the Plan.  All Claims and Debts shall be fixed and adjusted pursuant to the Plan.  The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under the Plan or related to any transaction contemplated under the Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code Section 1146(a).

39.    <u>Binding Effect of Prior Orders and Agreements</u>.  Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in the Chapter 11 Case, all documents and agreements executed by the Debtor as authorized and directed thereunder, and all motions or requests for relief by the Debtor pending before the Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Liquidating Trust and the Liquidating Trustee.

40.    <u>Governmental Approvals Not Required</u>.  Except as otherwise specifically provided herein, this Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

41.    <u>Effectiveness of All Actions</u>.  All actions authorized to be taken pursuant to the Plan shall be effective on, prior to or after the Effective Date pursuant to this Order, without further application to, or order of the Bankruptcy Court, or further action by the respective officers, directors, members, managers, or employees of the Debtor or the Liquidating Trust and with the effect that such actions had been taken by unanimous action of such officers, directors, members, managers, or employees.

42.    <u>Plan and Confirmation Order Mutually Dependent</u>.  This Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (c) nonseverable and mutually dependent.

43.    <u>Reversal</u>.  If any of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtor.  Notwithstanding any such reversal, modification, or vacatur of this Order, any such act or obligations incurred undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, all documents relating to the Plan, and any amendments or modifications to any of the foregoing.

44.    <u>No Stay</u>.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall not be stayed and shall be immediately effective and enforceable and deemed binding upon the Debtor, the Liquidating Trust, and any and all Holders of Claims, all entities that are parties to or subject to the settlements, compromises, releases, and injunctions described in the Plan or in this Order, all state or local governments and governmental officials subject to the provisions of section 1146(a) of the Bankruptcy Code, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor.

45.    <u>Confirmation Order Supersedes</u>.  This Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with this Order, *provided however*, that nothing herein or in the Plan shall be deemed to alter, modify, supersede, or amend the terms and provisions of the Sale Order.

46.    <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

47.    <u>Recording</u>.  The Debtor and the Liquidating Trust hereby are authorized to deliver a notice or short form of this Order, with the Plan attached, to any state or local recording officer, and such officer must accept for filing such documents or instruments without charging any stamp tax, recording tax, personal property transfer tax, mortgage, or other similar tax.  Such notice (a) shall have the effect of an order of this Court, (b) shall constitute sufficient notice of the entry of this Order to such filing and recording officers, and (c) shall be a reasonable instrument notwithstanding any contrary provision of non-bankruptcy law. The Bankruptcy Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

48.    <u>Plan and Confirmation Order Govern</u>.  Without intending to modify any prior order of this Court (or any agreement, instrument, or document addressed by any prior order), in the event of an inconsistency between the Plan, on the one hand, and any other agreement, instrument, or document intended to implement the provisions of the Plan, on the other, the provisions of the Plan shall govern (unless otherwise expressly provided for in such agreement, instrument, or document); *provided, further,* that, for the avoidance of doubt, in the event of any inconsistency between the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall govern.

49.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, and any other document related to any of the foregoing (including, without limitation, any provision that purports to be preemptory or supervening or grants a release), for avoidance of doubt, the Third Party Release in Section VIII.E.2 of the Plan is not, and shall not be deemed to be given by, the Wardman Tower Residential Condominium Unit Owners Association (the "<u>Residential Condominium Association</u>") or the Wardman Tower Master Unit Owners

Association (the "Master Condominium Association").  Furthermore, in particular, the

Residential Condominium Association and the Master Condominium Association do not release

any of the their claims (including the underlying representative claims asserted in their own

names on behalf of 2 or more unit owners on any matter that affects the condominium),

obligations, rights, suits, damages, causes of action, remedies, and liabilities in or with respect to

the Wardman Tower Residential Condominium Unit Owners Association v. JBG Smith

Properties, et al action currently pending in the Superior Court of the District of Columbia under

Case No. 2020 CA 004807 (the "Wardman Litigation"), and no such release of any party to the

Wardman Litigation is intended or created in the Plan or by this Confirmation Order.

50.    Final Order.  The stay of this Confirmation Order imposed by Bankruptcy

Rule 3020(e) is hereby waived in accordance with Bankruptcy Rule 3020(e).  This Confirmation

Order is a final order, and the period in which an appeal must be filed shall commence

immediately upon the entry hereof.

**Dated: September 20th, 2021**
**Wilmington, Delaware**

JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE