# EXHIBIT A

**Confirmed Plan**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| WARDMAN HOTEL OWNER, L.L.C., [1] | ) | Case No. 21-10023 (JTD) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S PLAN OF LIQUIDATION
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email: ljones@pszjlaw.com
　　　dbertenthal@pszjlaw.com
　　　tcairns@pszjlaw.com

*Counsel to the Debtor and Debtor in Possession*

Dated:  August 18, 2021

---

[1]  The last four digits of the Debtor's U.S. tax identification number are 9717. 5996 Mitchell Road, #16, Atlanta, GA 30328.

LEGAL02/40807839v5

## TABLE OF CONTENTS

**Page**

I. DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME AND GOVERNING LAW ............................................................ 3

    A.    Rules of Interpretation, Computation of Time and Governing Law ............................ 3

    B.    Defined Terms ................................................................................................................ 4

II. UNCLASSIFIED ADMINISTRATIVE CLAIMS, PROFESSIONAL
FEES, AND PRIORITY TAX CLAIMS .......................................................................... 27

    A.    Introduction .................................................................................................................. 27

    B.    Administrative Claims .................................................................................................. 27

    C.    Professional Fee Claims ............................................................................................... 28

    D.    Priority Tax Claims ...................................................................................................... 29

III. CLASSIFICATION AND TREATMENT OF CLASSIFIED
CLAIMS AND EQUITY INTERESTS .......................................................................... 30

    A.    Summary ....................................................................................................................... 30

    B.    Classification and Treatment of Claims against the Debtor ........................................ 30

IV. ACCEPTANCE OR REJECTION OF THE PLAN ...................................................... 35

    A.    Voting Classes .............................................................................................................. 35

    B.    Presumed Acceptance of Plan ...................................................................................... 36

    C.    Acceptance by Impaired Classes ................................................................................. 36

    D.    Presumed Rejection of Plan .......................................................................................... 36

    E.    Nonconsensual Confirmation ....................................................................................... 36

V. MEANS FOR IMPLEMENTATION OF THE PLAN ................................................... 37

    A.    Settlement of Claims and Causes of Action Between the Debtor and Marriott ........... 37

    B.    Dissolution of Debtor ................................................................................................... 37

    C.    Appointment of the Liquidating Trustee ..................................................................... 37

    D.    The Liquidating Trust .................................................................................................. 38

    E.    Rights and Powers of the Liquidating Trustee ............................................................ 40

    F.    Fees and Expenses of the Liquidating Trust ............................................................... 41

    G.    Transfer of Beneficial Interests in the Liquidating Trust ............................................ 41

    H.    Plan Contribution Amount ........................................................................................... 41

1

I.  Litigation of Debtor's Causes of Action ........................................................ 41

J.  Full and Final Satisfaction ............................................................................ 42

K.  Distribution Procedures ................................................................................. 42

L.  Resolution of Disputed Claims ...................................................................... 44

M.  Reserve Provisions for Disputed Claims ....................................................... 47

N.  Rounding ......................................................................................................... 48

O.  No Cash Payments of Less Than $50 on Account of Allowed Claims ........ 48

P.  Delivery of Distributions and Unclaimed Property ...................................... 49

Q.  Withholding Taxes .......................................................................................... 50

R.  United States Trustee Fees ............................................................................. 51

S.  Books and Records ......................................................................................... 51

T.  No Modification of Terms of the Sale Order ................................................. 52

VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............... 52

A.  Rejection of Executory Contracts and Unexpired Leases ............................. 52

B.  Claims Based on Rejection of Executory Contracts or Unexpired Leases ................. 53

C.  Insurance Policies .......................................................................................... 54

D.  Excess Proceeds ............................................................................................. 54

VII. CONDITIONS PRECEDENT TO CONFIRMATION  OF THE PLAN AND TO THE
EFFECTIVE DATE ................................................................................................ 55

A.  Conditions to Confirmation of the Plan ........................................................ 55

B.  Effect of Failure of Conditions to Confirmation ........................................... 56

C.  Conditions to Effective Date .......................................................................... 56

D.  Effective Date ................................................................................................. 57

VIII. EFFECTS OF CONFIRMATION ........................................................................... 57

A.  Binding Effect of Plan .................................................................................... 57

B.  Vesting of Property of Debtor in the Liquidating Trust ................................ 58

C.  Property Free and Clear ................................................................................. 58

D.  Exculpation ..................................................................................................... 58

E.  Releases .......................................................................................................... 59

F.  Injunction ....................................................................................................... 64

G.  Post-Confirmation Liability of Liquidating Trustee ..................................... 65

H.  Preservation of Rights of Action ................................................................... 67

2

I. No Discharge ....................................................................................................... 69

IX. RETENTION OF JURISDICTION ........................................................................ 69

X. MISCELLANEOUS ................................................................................................ 71

A. Revocation of Plan ...................................................................................... 71

B. Severability of Plan Provisions .................................................................. 71

C. Exhibits ........................................................................................................ 72

D. Notices ......................................................................................................... 72

E. Reservation of Rights .................................................................................. 73

F. Defects, Omissions and Amendments ........................................................ 74

G. Filing of Additional Documents ................................................................. 74

H. Successors and Assigns ............................................................................... 75

I. Setoffs and Recoupments ............................................................................ 75

J. Section 1146(a) Exemption ......................................................................... 75

K. Securities Exemption ................................................................................... 76

L. Implementation ............................................................................................ 77

M. Certain Actions ............................................................................................ 77

N. Substantial Consummation .......................................................................... 78

O. Waiver of Fourteen-Day Stay ..................................................................... 78

3

## **Preliminary Statement**

Pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), the above-captioned debtor and debtor in possession (the "Debtor") hereby proposes the following Plan.[2] Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtor's history, business, results of operations, the post-petition marketing and sale of the Debtor's assets that will be consummated pursuant to the Plan, and a summary and analysis of the Plan. All Creditors entitled to vote on the Plan should read the Disclosure Statement and the Plan carefully—and consult with their counsel and other applicable professionals—before voting to accept or reject the Plan.

The Plan is a plan of liquidation which, among other things, provides for a Liquidating Trustee to liquidate or otherwise dispose of the Estate's remaining assets, distribute the Plan Contribution Amount pursuant to the terms of the Plan. The Sale proceeds to be derived from the Sale Order constitute the source of funding for, and payments under, the Plan. Thus, the Plan is predicated and dependent on the funding of expenses and reserves from the Sale Proceeds to the extent required for the Plan to become effective and for the Liquidating Trustee to administer and implement the Plan for the benefit of the Debtor's economic constituents. The Plan proposes to vest all of the assets of the Debtor into a single Liquidating Trust for administration and distribution in accordance with the Plan and the Liquidating Trust Agreement.

The Plan also effectuates a global settlement of the claims and litigation by and between the Debtor, Pacific Life, PL Wardman Member, LLC, and Marriott pursuant to the Marriott

---

[2]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in Article 1 of this Plan.

Settlement Motion.  The Marriott Settlement Motion is expected to be heard by the Bankruptcy

Court contemporaneously with confirmation of the Plan.  Pursuant to the proposed settlement,

Marriott would receive $18 million in distributions (as described below) in full and final

satisfaction of (i) its filed proof of claim and (ii) any and all claims that it holds or may hold

against the Debtor, Pacific Life and PL Wardman Member, LLC.  Under the settlement proposed

by the Marriott Settlement Motion, the Debtor, Pacific Life and PL Wardman Member, LLC

would also waive any and all of their claims against Marriott relating to, among others, the

Chapter 11 Case, the Debtor and its assets, which settlement is subject to (i) approval of the

Marriott Settlement Motion by the Bankruptcy Court and (ii) the occurrence of the Effective

Date of this Plan, and Marriott will provide a mutual release to the Debtor, Pacific Life, and PL

Wardman Member, LLC.

With the Plan, Creditors entitled to vote will receive a Ballot for voting on the Plan, a

Disclosure Statement that provides information concerning the Debtor, and the Plan.  The

Disclosure Statement includes a summary of the assets and liabilities of the Debtor, a summary

of what Creditors will receive under the Plan, a summary of the procedures and voting

requirements necessary for confirmation of the Plan, and a discussion of certain alternatives to

the Plan in the event that the Plan is not confirmed.

As more fully described in the Disclosure Statement, the Plan must be approved by the

requisite number of Creditors, and the Bankruptcy Court must find that the Plan meets the

applicable legal standards before it can be confirmed.[3]  If the Plan is not confirmed, the

---

[3] Equity Interest Holders will receive nothing under the Plan, and therefore, the Class of Equity Interests is deemed to have rejected the Plan.  Accordingly, acceptances are not being solicited from the Holders of Equity Interests.

Bankruptcy Court may order the Chapter 11 Case dismissed or converted to a liquidating case

under chapter 7 of the Bankruptcy Code, or the Debtor or other parties in interest may propose a

different plan.

## I.

### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION

### OF TIME AND GOVERNING LAW

**A.**     **Rules of Interpretation, Computation of Time and Governing Law**

　　　　　1.     For purposes of the Plan: (a) whenever from the context it is appropriate,

each term, whether stated in the singular or the plural, shall include both the singular and the

plural, and each pronoun, whether stated in the masculine, feminine, or neuter gender, shall

include the masculine, feminine, and the neuter gender; (b) any reference in the Plan to a

contract, instrument, release, indenture, or other agreement or document being in a particular

form or on particular terms and conditions means that such document shall be substantially in

such form or substantially on such terms and conditions; (c) any reference in the Plan to an

existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may

have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all

references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and

Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereunder," and "hereto" and

similar terms refer to the Plan in its entirety rather than to a particular portion of the Plan;

(f) references to a part includes the whole, except where the context clearly requires otherwise;

(g) unless otherwise specified, "or" has the inclusive meaning represented by the phrase

3

"and/or"; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (j) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.      In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.      Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

**B.**      **Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

1.      "<u>Administrative Claim</u>" means an expense of administration of the Chapter 11 Case arising under Sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate; (b) the value of any goods received by the Debtor within 20 days before the Petition Date in which the goods were sold to the Debtor in

4

the ordinary course of the Debtor's business; (c) Professional Fee Claims; (d) all fees and charges assessed against the Estate under 28 U.S.C. § 1930; and (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court.

2.      "Administrative Claims Bar Date" means the last date by which an Entity must file a request for payment of an Administrative Claim.  For Administrative Claims arising on or prior to May 31, 2021, including Claims arising under Section 503(b)(9) of the Bankruptcy Code (excluding Professional Fee Claims), the Administrative Claims Bar Date was June 30, 2021 pursuant to the Bar Date Order.  For Administrative Claims arising on or after June 1, 2021 (excluding Professional Fee Claims and Claims arising under Section 503(b)(9) of the Bankruptcy Code), the Administrative Claims Bar Date shall be the date that is  sixty (60) after the Effective Date.

3.      "Allowed" means, with respect to any Claim, except as otherwise provided herein: (i) any Claim, proof of which was filed, or which has been or hereafter is scheduled by the Debtor on the Schedules as liquidated in amount and not disputed or contingent, and to which no party in interest has filed an objection thereto; (ii) any Administrative Claim, request for payment of which was filed on or before the applicable Administrative Claims Bar Date, which has been determined, in whole or in part, in favor of the Holder of such Administrative Claim by a Final Order of the Bankruptcy Court; or (iii) a Claim (including an Administrative Claim) that is allowed (a) pursuant to any contract, instrument, or other agreement entered into in connection with the Plan, (b) in a Final Order, (c) pursuant to the terms of the Plan, or (d) for purposes of Distributions, by designation of the Liquidating Trustee

LEGAL02/40807839v5

with respect to Claims and Administrative Claims as to which the period within which to object has not yet expired, *provided however*, that the Debtor and Liquidating Trustee reserve all rights to object to any untimely filed Proof of Claim on any and all available grounds.

4.    "Allowed Claim" or "Allowed [   ] Claim" means a Claim that has been Allowed.

5.    " Ballots" mean the ballots upon which the Holders of Impaired Claims shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

6.    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as may be amended) and applicable portions of titles 18 and 28 of the United States Code.

7.    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Case.

8.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the General and Local Rules of the Bankruptcy Court.

9.    "Bar Date" means, as applicable, the General Claims Bar Date, the applicable Administrative Claims Bar Date, or any other applicable deadline to file Claims referenced in the Plan.

10.    "Bar Date Order" means the *Order (I) Setting Bar Dates For Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (I) Setting a Bar Date*

6

*for the Filing of Proofs of Claim by Governmental Units, (III) Setting a Bar Date for the Filing*

*of Requests for Allowance of Administrative Expense Claims, (IV) Establishing Amended*

*Schedules Bar Date and Rejection Damages Bar Date, (V) Approving the Form of and Manner*

*for Filing Proofs of Claim, (VI) Approving Notice of Bar Dates, and (VII) Granting Related*

*Relief* [Docket No. 208], which established the General Claims Bar Date, the deadline to file

Administrative Claims arising on or prior May 31, 2021, Administrative Claims arising pursuant

to Section 503(b)(9) of the Bankruptcy Code, and certain other deadlines and procedures.

11.     "<u>Beneficiaries</u>" means holders of Allowed Claims entitled to receive

Distributions from the Liquidating Trust under the Plan, whether or not such Claims were

Allowed on the Effective Date.

12.     "<u>Business Day</u>" means any day, other than a Saturday, Sunday or legal

holiday as defined in Bankruptcy Rule 9006(a).

13.     "<u>Cash</u>" means cash and cash equivalents, including, but not limited to,

bank deposits, wire transfers, checks, and readily marketable securities, instruments, and legal

tender of the United States of America or instrumentalities thereof.

14.     "<u>Causes of Action</u>" means all claims, actions, causes of action, choses in

action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties,

covenants, contracts, controversies, agreements, promises, variances, trespasses, damages,

judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims,

reimbursement claims, indemnity claims, counterclaims, and crossclaims, including, without

limitation, all claims and any avoidance, preference, recovery, subordination or other actions of

the Debtor (unless the context expressly states that such Causes of Action belong to the another

Entity) against Creditors, insiders, and/or any other Entities under the Bankruptcy Code, based in

law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect,

derivative, or otherwise and whether asserted or unasserted as of the Effective Date.  For

avoidance of doubt and without limitation, Causes of Action includes any and all of the Debtor's

claims, causes of action, rights, interests remedies or interests held by the Debtor arising under or

in connection with the allegations made in the following or in relation to: (i) *Wardman Tower*

*Residential Condominium Unit Owners Association v. JBG Smith Properties, et al*, pending in

the Superior Court of the District of Columbia under Case No. 2020 CA 004807 B; (ii) Civil

Action No. 483406-V commenced in the Circuit Court for Montgomery County, Maryland, and

subsequently removed to the Bankruptcy Court and remains pending as Adversary Proceeding

No. 21-50263; (iii) that certain *Hotel Management Agreement*, between the Debtor and Marriott;

and (iv) the Debtor's *Complaint Against Marriott Hotel Services, Inc. For (1) Avoidance and*

*Recovery of Preferential Transfer; (II) Turnover of FF&E Reserve Funds to Estate; (III)*

*Declaratory Judgment Regarding FF&E Reserve Funds; (IV) Breach of Contract; (V) Breach of*

*Covenant of Good Faith and Fair Dealing; (VI) Breach of Fiduciary Duty; and (VII)*

*Disallowance of Filed Claim* [Adv. Proc. No. 21- 51005 (JTD) Docket No 1] filed on July 23,

2021, *provided however*, that the Causes of Action by and between the Debtor, Pacific Life, PL

Wardman Member, LLC, and Marriott, including the Causes of Action set forth in (ii) through

(iv) above, would be settled and released pursuant to this Plan.  For the avoidance of doubt,

Causes of Action does not include claims, challenges or other matters barred or otherwise released in the Final DIP Order.

15.    "Chapter 11 Case" means the Chapter 11 case commenced when the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on the Petition Date and with the following case number:  21-10023 (JTD).

16.    "Claim" means a claim (as defined in Section 101(5) of the Bankruptcy Code) against the Debtor, including, but not limited to: (a) any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

17.    "Claimant" means the Holder of a Claim.

18.    "Claims Objection Deadline" means, with respect to all Claims other than Professional Fee Claims, (a) 180 days after the Effective Date, subject to extension as set forth in Section V.L. of the Plan.

19.    "Class" means a category of Holders of Claims or Equity Interests, as set forth in Article 3 of the Plan.

20.    "Collateral" means any property or interest in property of the Estate of the Debtor subject to a Lien, charge, or other encumbrance to secure the payment of the Pacific Life Secured Claim, to the extent granted under and pursuant to the Final DIP Order.

9

21.     "<u>Confirmation</u>" means the entry of the Confirmation Order, subject to all conditions specified in Article 7 of the Plan having been (a) satisfied or (b) waived pursuant to Article 7.

22.     "<u>Confirmation Date</u>" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

23.     "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

24.     "<u>Consummation</u>" or "<u>Consummate</u>" means the occurrence of the Effective Date.

25.     "<u>Creditor</u>" means any Holder of a Claim against the Debtor as specified in Section 101(10) of the Bankruptcy Code.

26.     "<u>Debt</u>" means liability on a Claim.

27.     "<u>Debtor</u>" means Wardman Hotel Owner, L.L.C., a Delaware limited liability company.

28.     " <u>Disclosure Statement</u>" means the *Disclosure Statement with Respect to Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated August 18, 2021, as amended, supplemented, or modified from time to time, describing the Plan, which was prepared and distributed in accordance with the Bankruptcy Code and Bankruptcy Rules and other applicable law.

29.    "<u>Disputed Claim</u>" means, with respect to any Claim:  (a) any Claim filed after the applicable Bar Date or after any date otherwise ordered by the Bankruptcy Court with respect to the filing of Claims; (b) listed on the Schedules as either unliquidated, disputed, or contingent; (c) as to which the Debtor, the Liquidating Trustee, or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtor or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or (d) unless otherwise indicated in the Plan, a Claim as to which the period within which to object to such Claim has not yet expired and which is not Allowed.

30.    "<u>Distributions</u>" means the distributions of Cash to be made in accordance with the Plan.

31.    "<u>Distribution Dates</u>" means collectively the Initial Distribution Date, any Subsequent Distribution(s) Date, and the date of the Final Distribution.

32.    "<u>Distribution Record Date</u>" means the close of business on the Business Day immediately preceding the Effective Date.

33.    "<u>Effective Date</u>" means the date selected by the Debtor which is a Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect, and (b) all conditions specified in Article 7 of the Plan have been satisfied, unless waived by the Debtor.

34.     "Entity" means an entity as defined in Section 101(15) of the Bankruptcy Code.

35.     "Equity Interest(s)" means any membership interest or other equity security interest in the Debtor, including, but not limited to, any warrants, options, or contract rights to purchase or acquire such interests at any time.

36.     "Estate" means the estate of the Debtor in the Chapter 11 Case created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

37.     "Exculpated Parties" means, collectively the Debtor and its respective officers, Manager, employees, and Court-approved professionals, provided however that none of the parties shall be entitled to exculpation unless and to the extent they are found by a court of competent jurisdiction to be fiduciaries of the Estate.

38.     "FF&E Reserve" means the Cash that constitutes property of the Debtor and its Estate and is currently held by Marriott under the "Furniture, Fixtures and Equipment Reserve" established under that certain *Second Amended and Restated Management Agreement*, dated as of July 1, 2005, in order to provide for working capital needs at the Debtor's property formerly operated by Marriott, that Marriott claims is subject to Marriott's rights of recoupment and/or setoff under applicable law, totaling not less than $4,750,000.00.

39.     "Final Decree" means the decree contemplated under section 350 of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Rule 5099-1 closing the Chapter 11 Case.

12

40.    "Final Distribution" means the last payment to Holders of Allowed Claims in accordance with the provisions of the Plan.

41.    "Final DIP Order" means the *Final Order (I) Authorizing Debtor to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Secured Party, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief*, entered by the Court on February 9, 2021 [Docket No. 126].

42.    "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) that has not been reversed, stayed, modified, or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

43.    "General Claims Bar Date" means June 30, 2021, at 5:00 p.m. Eastern Time, which is the general deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims against the Debtor that arose prior to the Petition Date.

44.    "General Unsecured Claim" means any Claim against the Debtor or Estate that is not an Other Secured Claim, Pacific Life Secured Claim (except to the extent not satisfied in full), the Pacific Life DIP Loan Claim (except to the extent not satisfied in full), Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim or the Marriott Claim.

13

45.    "<u>Governmental Unit</u>" means the United States; State; Commonwealth, District, Territory, municipality, foreign state, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under Chapter 11), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

46.    "<u>GUC Contribution Amount</u>" means $500,000 of the Sale Proceeds that Pacific Life agrees may be distributed to fund the GUC Contribution Amount (which amounts would otherwise be distributed on account of the Pacific Life Secured Claim or the Pacific Life DIP Loan Claim), to be deposited to the Liquidation Trust Asset Account on the Effective Date, or as soon as practicable thereafter, for Pro Rata distribution to Holders of Allowed General Unsecured Claims free and clear of any liens, claims or encumbrances of Pacific Life, provided however, that to the extent that all Allowed General Unsecured Claims are fully and indefeasibly paid pursuant to the treatment provided in Article III of the Plan, any remaining amounts of the GUC Contribution Amount shall be distributed to Pacific Life in accordance with the treatment provided in Article III of the Plan solely to the extent that the Pacific Life Secured Claim and/or the Pacific Life DIP Claim have not been fully satisfied pursuant to the Plan.  For avoidance of doubt, the GUC Contribution Amount is without prejudice of the rights of Holders of Allowed General Unsecured Claims to receive additional Pro Rata Distributions of the net proceeds of Liquidating Trust Assets, as provided under the Plan.

47.    "<u>Holder</u>" means an Entity holding a Claim or Equity Interest.

14

48.      "Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

49.      "Initial Distribution Date" means the Effective Date, or as soon as practicable thereafter when the initial distribution shall be made to the Holders of Allowed Claims, as determined by the Liquidating Trustee in its reasonable discretion.

50.      "Insider" means an insider of the Debtor, as defined in Section 101(31) of the Bankruptcy Code.

51.      "Insurance Policies" means all insurance policies maintained by the Debtor.

52.      "Interim Fee Order" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 109], entered by the Bankruptcy Court on February 5, 2021.

53.      "Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind) to secure payment of a debt or performance of an obligation.

54.      "Liquidation Proceeds" means any Cash or other consideration paid to or realized by the Debtor or the Liquidating Trustee, as applicable, upon the sale, transfer, assignment, or other disposition of the Liquidating Trust Assets.

55.      "Liquidating Trust" means the grantor trust to be created upon the Effective Date for the benefit of the Beneficiaries.

56. "<u>Liquidating Trust Agreement</u>" means the agreement, substantially in the form included in the Plan Supplement governing the Liquidating Trust, as it may be subsequently modified from time to time.

57. "<u>Liquidating Trust Assets</u>" means the assets held in the Liquidating Trust comprised of (i) Cash, including the Plan Contribution Amount; (ii) all Causes of Action the Debtor holds or may hold against any Entity; (iii) all Claims and rights of the Debtor under any Insurance Policies; and (iv) any and all other assets, interests, rights, claims and defenses of the Debtor or Estate, including, without limitation, all rights under any order of the Bankruptcy Court. For avoidance of doubt, Liquidating Trust Assets includes (i) any and all tax refunds to which the Debtor may be entitled; and (ii) the Debtor's rights, claims and causes of action in *Wardman Tower Residential Condominium Unit Owners Association v. JBG Smith Properties, et al*, pending in the Superior Court of the District of Columbia under Case No. 2020 CA 004807 B.

58. "<u>Liquidating Trust Assets Account</u>" means an interest-bearing bank account or money-market account to be established and held in trust by the Liquidating Trustee on or after the Effective Date for the purpose of holding the Liquidating Trust Assets to be distributed pursuant to the Plan and any interest, dividends, or other income earned upon the investment of the Liquidating Trust Assets. The Liquidating Trust Assets Account will be initially funded by the Debtor or Liquidating Trustee, as applicable, on or immediately after the Effective Date with the Plan Contribution Amount.

16

59.     "Liquidating Trust Interests" means the non-transferable interests in the Liquidation Trust, distributions of which will be made to Holders of Allowed Other Secured Claims, the Allowed Pacific Life Claim,  Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims, and the Allowed Marriott Claim, in accordance with Article III and V hereof.

60.     "Liquidating Trustee" means the Person appointed by the Debtor to act as trustee of the Liquidating Trust in accordance with the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement, or such successor appointed as the trustee in accordance with the Liquidating Trust Agreement.  The initial Liquidating Trustee shall be James D. Decker.

61.     "Manager" means James D. Decker, in his capacity as the sole and independent manager to the Debtor.

62.     "Marriott" means Marriott Hotel Services, Inc. and any of its direct or indirect parents, subsidiaries, affiliates, successors, assigns, and their respective current and former officers, directors, principals, partners, members, management, employees, shareholders, trustees, agents, financial advisors, attorneys, accountants, professionals, advisors, and representatives.

63.     "Marriott Claim" means any and all Claims that have been or could have been asserted by Marriott against the Debtor and Pacific Life, including, without limitation, the Claims asserted under or in connection with (i) the Maryland Action' (ii) the *Hotel Management Agreement* between Debtor and Marriott, as set forth in Proof of Claim filed by Marriott on June

17

30, 2021, Docketed as Claim 42; and (iii) Marriott's alleged right to setoff and recoupment under applicable law with respect to the FF&E Reserve.

64.    "Marriott Contribution Amount" means Cash in the amount of $18,000,000, which amount is comprised of (i) the existing balance of the FF&E Reserve, plus (ii) Sale Proceeds that Pacific Life agrees may be distributed to Marriott (which amounts would otherwise be distributed in whole or in part on account of the Pacific Life Secured Claim or the Pacific Life DIP Loan Claim), solely to the extent Marriott supports the Marriott Settlement, votes in favor of the Plan, and does not otherwise oppose the releases provided under the Plan, to be distributed to the Holder of the Marriott Claim free and clear of any liens, claims or encumbrances of Pacific Life in accordance with the terms of the Plan.  For the avoidance of doubt, except with respect to the inclusion of the existing balance of the FF&E Reserve, the Marriott Contribution Amount shall not be subject to reduction, setoff, withholding or recoupment in any way.

65.    " Marriott Settlement Motion" means that certain *Motion to Approve Compromise And Settlement of Claims and Causes of Action by and between the Debtor, Marriott Hotel Services, Inc, PL Wardman Member, LLC and Pacific Life Insurance Company,* filed in the Bankruptcy Court.

66.    "Marriott Settlement Order" means the order granting the Marriott Settlement Motion entered by the Bankruptcy Court.

67.    "Maryland Action" means Civil Action No. 483406-V in the Circuit Court for Montgomery County, Maryland, originally commenced by Marriott against the Debtor and

18

Pacific Life on September 8, 2020 and removed to and pending in the Bankruptcy Court as

Adversary Proceeding No. 21-50263 including the Debtor's counterclaim against Marriott filed

therein, and Case No. 8:21-cv-1297 pending in the United States District Court for the District of

Maryland between Marriott and Pacific Life.

68.    "Ordinary Course Professional Order" means the *Order (I) Authorizing*

*the Debtor to Retain and Compensate Professionals Utilized in the Ordinary Course of Business*

*and (II) Granting Related Relief* [Docket No. 108].

69.    "Other Secured Claim" means any Secured Claim against the Debtor,

other than the Pacific Life Claim or any tax claim asserted by a Governmental Unit that may

constitute a Secured Claim under applicable non bankruptcy law.

70.    "Pacific Life" means Pacific Life Insurance Company and any of its direct

or indirect parents, subsidiaries, affiliates, successors, and assigns and each of their current and

former officers, directors, principals, partners, members, employees, shareholders, trustees,

agents, financial advisors, attorneys, accountants, professionals, advisors, and representatives.

For avoidance of doubt, the definition of Pacific Life does not include the Debtor.

71.    "Pacific Life Secured Claim" means the pre-petition Secured Claim held

by Pacific Life against the Debtor pursuant to the Final DIP Order.

72.    "Pacific Life DIP Loan Claim" means the Administrative Expense Claim

and Secured Claim held by Pacific Life against the Debtor pursuant to the Final DIP Order.

73.     "Person" means any individual, corporation, limited liability company, general partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit, or other Entity.

74.     "Petition Date" means January 11, 2021, the date on which the Debtor filed a voluntary petition for relief commencing the Chapter 11 Case.

75.     "Plan" means this Plan of Liquidation, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules, including, without limitation, any exhibits and schedules hereto, either in its present form or as the same may be amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof.

76.     "Plan Contribution Amount" means the contribution made by Pacific Life to the Liquidating Trust from the Sale Proceeds in the amounts required to: (i) fund the GUC Contribution Amount, (ii) fund the Marriott Contribution Amount; (iii) pay (or reserve for payment) of any amounts, costs or expenses arising or coming due pursuant to the Sale Order or the Sale; (iv) fund the Professional Fee Reserve; (v) pay (or reserve for payment of) Administrative Claims; Non-Priority Tax Claims and Priority Tax Claims, (vi) initially fund the Liquidation Trust Assets Account in an amount to be mutually agreed by the Debtor, the Liquidating Trustee, and Pacific Life and (vii) make additional payments that may be required or contemplated pursuant to the Plan and fund the necessary reserves required under the Liquidating Trust and the Plan (including, without limitation the Disputed Claim Reserve and amounts payable to the United States Trustee pursuant to 28 U.S.C. § 1930) in the reasonable

20

judgment and estimation of the Liquidating Trustee, provided however, that to the extent the

Liquidating Trust holds any Plan Contribution Amount in excess of the amounts necessary to

satisfy the payments and expenses provided herein and after the full administration of the Plan

by the Liquidating Trustee, any such remaining Plan Contribution Amount shall be distributed to

Pacific Life in accordance with the treatment provided in Article III of the Plan solely to the

extent that the Pacific Life Secured Claim and/or the Pacific Life DIP Claim have not been fully

satisfied pursuant to the Plan.

77.     "Plan Supplement" means the *Plan Supplement with Respect to the*

*Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 330],

filed on September 2, 2021.

78.     "Priority Non-Tax Claim" means any Claim, other than an Administrative

Claim or a Priority Tax Claim, to the extent entitled to priority under Section 507(a) of the

Bankruptcy Code.

79.     "Priority Tax Claim" means a Claim that is entitled to priority under

Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

80.     "Pro Rata" means the proportion that the Allowed Claim in a particular

Class bears to the aggregate amount of (a) Allowed Claims in such Class as of the date of

determination, plus (b) Disputed Claims in such Class as of the date of determination, in their

aggregate face amounts or such other amount: (i) as calculated by the Liquidating Trustee on or

before the date of any such Distribution; (ii) as determined by an Order of the Bankruptcy Court

estimating such Disputed Claim; or (iii) as directed by a Final Order of the Bankruptcy Court.

81.    "Professional" means an Entity:  (a) employed pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

82.    "Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to Sections 330, 331, or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

83.    "Professional Fee Reserve" means a reserve fund established by the Liquidating Trustee on or as soon as practicable after the Effective Date, to pay any accrued and unpaid (a) Professional Fee Claims incurred by a Professional and which have not yet been approved by the Bankruptcy Court; (b) fees or expenses incurred by an entity or person retained under the Ordinary Court Professional Order; (c) Professional Fee Claims approved by the Bankruptcy Court; and (d) fees and expenses of the Manager as described in Section II.C of the Plan.  The amounts deposited into the Professional Fee Reserve shall be free and clear of all liens, claims and encumbrances of any Persons or Entities except to the extent that any excess amounts remain in the Professional Fee Reserve after payment of all Allowed Professional Fee Claims, such excess amounts to be distributed in accordance with the Plan.

84.    "Proof of Claim" means a proof of claim filed pursuant to Section 501 of the Bankruptcy Code or any order of the Bankruptcy Court, together with supporting documents.

LEGAL02/40807839v5

85.     "Purchaser" shall mean the purchaser(s) of all or a portion of the Debtor's assets pursuant to the Sale Order.

86.     "Rejection Bar Date" means the last date for any Entity whose claims arise out of the Bankruptcy Court approved rejection of an executory contract or unexpired lease to file a proof of claim for damages related to such rejection unless otherwise ordered by the Court.  The Rejection Bar Date for Claims arising from the rejection of executory contracts and unexpired leases rejected pursuant to the Plan shall be 30 days after the Effective Date of the Plan, unless otherwise provided in the Confirmation Order.  For all other rejected executory contracts and unexpired leases, the Rejection Bar Date shall be the date set forth in the order approving such rejection.

87.     "Released Parties" means, collectively, (a) the Debtor, (b) the Debtor's Manager, (c) Pacific Life, (d) PL Wardman Member, LLC, a wholly owned subsidiary of Pacific Life, and (e) Marriott, and (f) each of such Entities 'respective successors and assigns, and respective current and former shareholders, affiliates, subsidiaries, principals, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, and consultants.  For avoidance of doubt, Released Parties does not extend to any Entities or Persons with respect to the Debtor's claims or Causes of Action in the *Wardman Tower Residential Condominium Unit Owners Association v. JBG Smith Properties, et al* action currently pending in the Superior Court of the District of Columbia under Case No. 2020 CA 004807.[4]  As between the Debtor, Pacific Life and PL

---

[4] For avoidance of doubt, the Debtor is not providing a release to the defendants in this lawsuit with respect to any of the Debtor's asserted rights, claims or causes of action against any of the parties in such lawsuit.

Wardman Member, LLC on the one hand, and Marriott, on the other hand, the release provision

provided in Section VIII.E.3 controls.

88.    "Residue" shall means the net proceeds of Liquidating Trust Assets

remaining, if any, after (i) the full and indefeasible payment of the Allowed Other Secured

Claims, the Pacific Life Secured Claim, Allowed Administrative Claims (including the Pacific

Life DIP Loan Claim), Allowed Priority Tax Claims, Allowed Priority-Non Tax Claims,

Allowed General Unsecured Claims, inclusive of payment of applicable interest (where required)

at the Federal Judgement Rate except with respect to the Pacific Life Secured Claim, Pacific Life

DIP Loan Claim; (ii) the full and indefeasible payment of the Marriott Contribution Amount to

the Holder of the Marriott Claim in full and final satisfaction of such claim; and (iii) the

establishment of appropriate reserves for any Disputed Claims and costs or expenses either

incurred or expected to be incurred by the Liquidation Trust or Liquidating Trustee in connection

with the Plan.

89.    "Sale" means the assets sold to the Purchaser and approved pursuant to the

Sale Order

90.    "Sale Order" means the order entered on July 22, 2021, granting the

*Motion for Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of the*

*Debtor's Assets Outside of the Ordinary Course of Business; (B) Authorizing the Sale of Assets*

*Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests Pursuant to*

*Bankruptcy Code Sections 105, 363(b), 363(f), 363(m) and 1146; (C) Assuming and Assigning*

24

*Certain Executory Contracts and Unexpired Leases; and (D) Granting Other Related Relief*

[Docket No. 292].

91.     "Sale Proceeds" means the proceeds from the sale of the Debtor's assets to the Purchaser(s) pursuant to Sale Order after the payment of the Plan Contribution Amount to the Liquidating Trust.

92.     "Schedules" means the schedules of assets and liabilities as the Bankruptcy Court required the Debtor to file pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time, and the Debtor's statements of financial affairs filed with the Bankruptcy Court, as the Bankruptcy Court required the Debtor to file pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

93.     "Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under Sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

94.     "Subsequent Distribution Date" means any date after the Initial Distribution Date upon which the Liquidating Trust makes a distribution to any Holders of Allowed Administrative, Secured, Priority, or Unsecured Claims.

25

95.    "Tax" means any tax, charge, fee, levy, impost, or other assessment by any federal, state, local, or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation, and withholding tax.  "Tax" shall include any interest or additions attributable to, imposed on, or with respect to such assessments.

96.    "Tax Claim" means all or that portion of an Allowed Claim held by a Governmental Unit for a Tax assessed or assessable against the Debtor.

97.    "Unimpaired Claim" means an unimpaired Claim within the meaning of Section 1124 of the Bankruptcy Code.

98.    "U. S. Trustee" means the Office of the United States Trustee for the District of Delaware.

99.    "Voting Instructions" means the instructions for voting on the Plan contained in Article 1 of the Disclosure Statement and in the Ballots.

100.    "Voting Record Date" means the date fixed by the Bankruptcy Court as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Plan.

## II.

## <u>UNCLASSIFIED ADMINISTRATIVE CLAIMS,</u>

## <u>PROFESSIONAL FEES, AND PRIORITY TAX CLAIMS</u>

**A.**   <u>**Introduction**</u>

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code, as set forth below.

**B.**   <u>**Administrative Claims**</u>

Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim, (other than a Professional Fee Claim), shall receive, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order Allowing such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtor or the Liquidating Trustee, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtor's business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtor's business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.

27

Notwithstanding any provision in the Plan regarding payment of Administrative Claims to the contrary, all Administrative Claims (other than Professional Fee Claims and the Pacific Life DIP Loan Claim which is Allowed) must be filed by either: (i) the Bar Date Order, solely with respect to Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code, or (ii) the applicable Administrative Claims Bar Date.  Holders of Administrative Claims that do not file/have not filed such requests by the applicable deadlines provided for herein may be subject to objection for untimeliness and may be prohibited by order of the Bankruptcy Court from asserting such claims against the Debtor, the Estate, the Liquidating Trust, or their successors or assigns, or their property.

**C.**      **Professional Fee Claims**

Professionals requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code or required to file fee applications by order of the Bankruptcy Court for services rendered prior to the Effective Date must file and serve pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date.[5]  All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court.  Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court.

---

[5] For avoidance of doubt, any entities or persons employed or retained pursuant to the Ordinary Course Professional Order shall not be required to file applications for payment of fees and reimbursement of expenses on behalf of the Debtor.

LEGAL02/40807839v5

On the Effective Date, or as soon as practicable thereafter, the Liquidating Trustee shall establish an appropriate Professional Fee Reserve based upon estimates of anticipated fees provided by Professionals for services rendered and expenses incurred prior to the Effective Date, including estimated fees for services rendered, and actual and necessary costs incurred, in connection with the filing, service and prosecution of any applications for allowance of Professional Fees pending on the Effective Date or filed and/or served after the Effective Date. The Liquidating Trustee shall supplement the Professional Fee Reserve if the amount originally established is insufficient to pay Allowed Professional Fee Claims.  Upon approval of the fee applications by the Bankruptcy Court for Professional Fee Claims, the Liquidating Trustee shall pay Professionals all of their respective accrued and Allowed fees and reimburse Allowed expenses arising prior to the Effective Date.

**D.**     **Priority Tax Claims**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction of each Allowed Priority Tax Claim, the Liquidating Trust shall pay each holder of an Allowed Priority Tax Claim the full unpaid amount of such Allowed Priority Tax Claim as follows: (a) Cash equal to the unpaid portion of the Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, (b) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable non-bankruptcy law as of the calendar month in which the Confirmation Date occurs in

accordance with section 1129(a)(9)(C) of the Bankruptcy Code, or (c) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the Debtor shall have agreed upon in writing.

**III.**

**CLASSIFICATION AND TREATMENT OF**

**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.     Summary**

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation, and Distribution (if any) pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

**B.     Classification and Treatment of Claims against the Debtor**

The classification of Claims and Equity Interests against the Debtor pursuant to the Plan is as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 – Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 2 – Other Secured Claims | Unimpaired | Not Entitled to Vote |
| Class 3 – Pacific Life Secured Claim | Impaired | Entitled to Vote |
| Class 4 – Marriott Claim | Impaired | Entitled to Vote |
| Class 5 – General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 – Equity Interests | Impaired | Not Entitled to Vote |

1.      <u>Class 1 – Priority Non-Tax Claims</u>

**a.      Classification:** Class 1 consists of Priority Non-Tax Claims.

**b.      Treatment:** Each Holder of an Allowed Priority Non Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Non Tax Claim, (i) Cash in the amount of such claim, as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed by the Debtor and such holder.

**c.      Voting:** Class 1 is not an Impaired Class and Holders of Priority Non-Tax Claims are not entitled to vote on the Plan.

2.      <u>Class 2 – Other Secured Claims</u>

**a.      Classification:** Class 2 consists of Other Secured Claims. For purposes of distributions under the Plan, each Holder of Other Secured Claim in Class 2 is considered to be in its own separate subclass within Class 2 (*i.e.*, Class 2A, Class 2B, *etc.*), and each such subclass is deemed to be a separate Class for purposes of the Plan.

**b.      Treatment:** Except to the extent previously paid in full, to the extent any Other Secured Claims exist, at the option of the Debtor or the Liquidating

31

Trustee, as applicable, one of the following treatments shall be provided: (i) the Holder of such Other Secured Claim shall retain its Lien on its collateral until such collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such collateral, shall be paid to such Holder in full satisfaction of such Allowed Other Secured Claim; (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Other Secured Claim, or as otherwise agreed between the Holder of such Other Secured Claim and the Debtor or the Liquidating Trustee, as applicable, the Holder of such Other Secured Claim will receive a Cash payment equal to the amount of its Other Allowed Other Secured Claim in full and final satisfaction, and in exchange for such Other Secured Claim; or (iii) the collateral securing the Creditor's Other Secured Claim shall be abandoned to such Creditor, in full and final satisfaction of such Other Secured Claim.

  **c.**  **Voting:**  Class 2 is not an Impaired Class, and Holders of Other Secured Claims are not entitled to vote on the Plan.

  3.  <u>Class 3 – Pacific Life Secured Claim</u>

  **a.**  **Classification:**  Class 3 consists of Pacific Life Secured Claim and the Pacific Life DIP Loan Claim.

  **b.**  **Treatment:**  the Pacific Life Secured Claim and the Pacific Life DIP Loan Claim are and shall be Allowed in the full amount of such claim as provided under the Final DIP Order.  To the extent not paid previously in whole or part in connection with a closing of the sale of Pacific Life's collateral, on or as soon as

practicable after the Effective Date, the Pacific Life Secured Claim and the Pacific Life

DIP Loan Claim shall receive Cash in the full Allowed amount of such Claim, after the

payment of the Plan Contribution Amount to the Liquidating Trust, in full and final

satisfaction of such claim *provided however* that if the Liquidating Trustee does not have

sufficient Cash to fully and indefeasibly pay the Pacific Life Secured Claim and the

Pacific Life DIP Loan Claim on the Effective Date, Pacific Life shall receive subsequent

Distributions (including Distributions on account of any excess amounts of the Plan

Contribution Amount), from the net proceeds of any Liquidating Trust Assets that

constitute Collateral under the Final DIP Order, until the remainder of the Pacific Life

Secured Claim and the Pacific Life DIP Loan Claim is fully paid.  For avoidance of

doubt, the Holder of the Pacific Life Secured Claim and the Pacific Life DIP Claim shall

not receive any distributions from the GUC Contribution Amount on account of any of

such holder's unsecured deficiency claims unless each Holder of an Allowed General

Unsecured Claim is paid in full.

   **c.**  **Voting:**  Class 3 is an Impaired Class and the Holder of the Pacific

Life Secured Claim and the Pacific Life DIP Loan Claim is entitled to vote to accept or

reject the Plan.

   4.  <u>Class 4 – Marriott Claim</u>

   **a.**  **Classification:**  Class 4 consists of the Marriott Claim.

   **b.**  Treatment:  Provided Marriott supports the Marriott Settlement,

votes in favor of the Plan and does not oppose or otherwise seek to repudiate the releases

LEGAL02/40807839v5

provided under the Plan, on the Effective Date, the Holder of the Allowed Marriott Claim

shall receive the Marriott Contribution Amount, in full and final satisfaction, and in

exchange for, such Marriott Claim.  The Marriott Claim shall be deemed an Allowed

Claim and receive the treatment herein in full satisfaction of such claim subject to the

entry of the Marriott Settlement Order and the occurrence of the Effective Date.  For the

avoidance of doubt, with respect to the Released Parties, the Marriott Contribution

Amount shall be the sole source of recovery and Distributions to the Holder of the

Marriott Claim on account of such claim, provided, that in no event shall the payment of

the Marriott Contribution Amount limit (i) Marriott's defenses in response to the claims,

if any, of third parties to the extent such claims are not released pursuant to the Third

Party Release, and (ii) Marriott's right to recover amounts owing to or recoverable by

Marriott from third parties other than the Released Parties

        **c.**      **Voting:**  Class 4 is an Impaired Class and the Holder of the

Marriott Claim is entitled to vote to accept or reject the Plan.

     5.     <u>Class 5 – General Unsecured Claims</u>

        **a.**      **Classification:**  Class 5 consists of all General Unsecured Claims.

        **b.**      **Treatment:**  Each Holder of an Allowed General Unsecured

Claim shall receive, in full and final satisfaction, and in exchange for such Allowed

General Unsecured Claim: (i) Pro Rata Distribution of the GUC Contribution Amount;

(ii) Pro Rata Distribution of the net Liquidation Trust Proceeds that do not constitute

Collateral under the Final DIP Order; and (iii) solely in the event the Pacific Life Secured

34

Claim and the Pacific Life DIP Loan Claim are indefeasibly and fully paid, Pro Rata

Distributions from the net proceeds derived from the remaining Liquidating Trust Assets.

   **c.**  **Voting:** Class 5 is an Impaired Class and Holders of Claims in

this Class are entitled to vote to accept or reject the Plan.

   6.  <u>Class 6 – Equity Interests</u>

   **a.**  **Classification:** Class 6 consists of Equity Interests.

   **b.**  **Treatment:** As of the Effective Date, all Equity Interests of any

kind shall be deemed void, cancelled, and of no further force and effect and the Holders

thereof shall not receive or retain any property or interest in property under the Plan on

account of such Equity Interests, *provided however* that Each holder of an Equity Interest

shall receive such Holder's Pro Rata share of the Residue, if any, determined in

accordance with its percentage ownership of Equity Interests in the Debtor.

   **c.**  **Voting:** Class 6 is deemed to have rejected the Plan and Holders

of Equity Interests are not entitled to vote on the Plan.

**IV.**

**<u>ACCEPTANCE OR REJECTION OF THE PLAN</u>**

**A.**  **<u>Voting Classes</u>**

Each Holder of an Allowed Claim in Classes are entitled to vote either to accept or to

reject the Plan.  Only those votes cast by Holders of Allowed Claims shall be counted in

determining whether acceptances have been received sufficient in number and amount to obtain

Confirmation.

35

**B.**      **Presumed Acceptance of Plan**

The Holders of Claims in Class 1 and Class 2 are unimpaired under the Plan and are

therefore deemed to accept the Plan.

**C.**      **Acceptance by Impaired Classes**

Class 3, 4 and 5 shall have accepted the Plan if: (a) the Holders (other than any Holder

designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the

Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the Holders

(other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than

one-half in number of the Allowed Claims actually voting in such Class have voted to accept the

Plan.[6]

**D.**      **Presumed Rejection of Plan**

The Holders of Class 6 Equity Interests are not anticipated to receive any distributions

under the Plan and are therefore deemed to reject the Plan and are not entitled to vote.

**E.**      **Nonconsensual Confirmation**

Because Class 6 is deemed to reject the Plan by operation of law, the Debtor will request

the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy

Code.  Without limiting the foregoing, in the event that any Class of Claims entitled to vote on

the Plan fails to accept the Plan as required by Section 1129(a) of the Bankruptcy Code, the Plan

may be amended and, in any event, as applicable, the Debtor reserves the right to seek

---

[6] In the event the Debtor seeks confirmation of the Plan under Section 1129(b) of the Bankruptcy Code, the Debtor
will not seek to propose Class 3 (Pacific Life Secured Claim) as the impaired accepting class required to confirm the
Plan provided under section 1129(a)(10) of the Bankruptcy Code.

LEGAL02/40807839v5

confirmation of the Plan over such rejection pursuant to Section 1129(b) of the Bankruptcy Code.

## V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    Settlement of Claims and Causes of Action Between the Debtor and Marriott

The entry of the Marriott Settlement Order and confirmation of this Plan shall constitute the Bankruptcy Court's approval of the compromise and settlement of claims, causes of action, and controversies by and between the Debtor, Pacific Life, PL Wardman Member, LLC, and Marriott, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtor, its Estate, and is fair, equitable, reasonable, and in the best interests of the Debtor and its Estate.

### B.    Dissolution of Debtor

From and after the Effective Date, the Liquidating Trustee may dissolve the Debtor, without any further action required on the part of the Debtor or the Debtor's officers, directors, managers, members, equity holders, and/or any other parties; provided, however, the Liquidating Trustee in his or her discretion shall be authorized to take any and all actions necessary or desirable in relation to dissolution of the Debtor.

### C.    Appointment of the Liquidating Trustee

The initial Liquidating Trustee is James Decker.  From and after the Effective Date, professionals may be retained by the Liquidating Trustee without further need for documentation or Bankruptcy Court approval.  All fees and expenses incurred by the professionals retained by

37

the Liquidating Trustee following the Effective Date shall be paid by the Liquidating Trust from

the Liquidating Trust Assets (after payment in full of all Allowed Administrative Claims) in

accordance with the Liquidating Trust Agreement.

**D.** **The Liquidating Trust**

      1.    Formation of the Liquidating Trust

On the Effective Date, the Liquidating Trust shall be established pursuant to the

Liquidating Trust Agreement for the purpose of, *inter alia*, (a) administering the Liquidating

Trust Assets including the distributions and payments contemplated by the Plan Contribution

Amount, (b) prosecuting and/or resolving all Disputed Claims, (c) investigating and pursuing any

Causes of Action the Debtor holds or may hold against any Entity, and (d) making all

Distributions to the Beneficiaries provided for under the Plan. The Liquidating Trust is intended

to qualify as a liquidating trust pursuant to Treas. Reg. § 301.7701-4(d), with no objective to

continue or engage in the conduct of the trade or business, except to the extent reasonably

necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.  Accordingly,

the Liquidating Trustee shall, in an expeditious but orderly manner, make distribution to Holders

of Allowed Claims subject to the terms of this Plan, liquidate and convert to Cash the remaining

Liquidating Trust Assets, and make timely Distributions to the Beneficiaries of the proceeds

thereof, and not unduly prolong the duration of the Liquidating Trust.  Neither the Liquidating

Trust nor the Liquidating Trustee shall be or shall be deemed a successor-in-interest of the

Debtor for any purpose other than as specifically set forth herein or in the Liquidating Trust

Agreement.

2.      Funding of the Liquidating Trust

On the Effective Date, the Liquidating Trust Assets shall vest automatically in the

Liquidating Trust.  The Plan shall be considered a motion pursuant to Sections 105, 363 and 365

of the Bankruptcy Code for such relief.  The transfer of the Liquidating Trust Assets to the

Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries. The assets

comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by

the Debtor to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and

then by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the

Liquidating Trust. The Beneficiaries shall be treated as the grantors and owners of the

Liquidating Trust. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall

succeed to all of the Debtor's rights, title and interest in the Liquidating Trust Assets, and the

Debtor will have no further interest in or with respect to the Liquidating Trust Assets.

Except to the extent definitive guidance from the IRS or a court of competent jurisdiction

(including the issuance of applicable Treasury Regulations or the receipt by the Liquidating

Trustee of a private letter ruling if the Liquidating Trustee so requests one) indicates that such

valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust

for purposes of the Internal Revenue Code and applicable Treasury Regulations, as soon as

possible after the Effective Date, the Liquidating Trustee shall make a good-faith valuation of the

Liquidation Trust Assets.  The valuation shall be used consistently by all parties (including,

without limitation, the Debtor, the Liquidating Trust, the Beneficiaries) for all federal income tax

purposes.

LEGAL02/40807839v5

**E.**     **Rights and Powers of the Liquidating Trustee**

The Liquidating Trustee shall be deemed the Estate's representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules to act on behalf of the Liquidating Trust.  Without limiting the foregoing, the Liquidating Trustee will have the right to, among other things, (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate the Liquidating Trust Assets; (3) investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtor holds or may hold against any Entity; (4) make Distributions as contemplated hereby, (5) establish and administer any necessary reserves for Disputed Claims that may be required; (6) object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (7) assert or waive any attorney-client privilege on behalf of the Debtor and Estate with regard to acts or events during time periods prior to the Petition Date; and (8) employ and compensate professionals and other agents, including, without limitation, existing Professionals employed by the Debtor in accordance with the Liquidating Trust Agreement or the Plan, *provided*, *however*, that any such compensation shall be made only out of the Liquidating Trust Assets, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

40

**F.      Fees and Expenses of the Liquidating Trust**

Subject to payment in full of all Allowed Administrative Claims, and except as otherwise ordered by the Bankruptcy Court, expenses incurred by the Liquidating Trust on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court.

**G.      Transfer of Beneficial Interests in the Liquidating Trust**

Liquidating Trust Interests shall not be transferable except upon death of the interest holder or by operation of law. The Liquidating Trust shall not have any obligation to recognize any transfer of Claims or Equity Interests occurring after the Distribution Record Date.

**H.      Plan Contribution Amount**

On or as soon as practicable following the Effective Date, the Liquidating Trust Assets Account shall be opened by the Liquidating Trustee and funded with the Plan Contribution Amount and which funds shall constitute Liquidating Trust Assets.  Thereafter, from time to time, upon receipt of any Liquidation Proceeds or any Causes of Action recoveries, the Liquidating Trustee shall deposit such funds into the Liquidating Trust Assets Account, and they shall become part of the Liquidating Trust Assets.

**I.      Litigation of Debtor's Causes of Action**

Except as otherwise provided in this Plan, all Causes of Action are retained, vested in the Liquidating Trust, and preserved pursuant to Section 1123(b) of the Bankruptcy Code.  From and after the Effective Date, all Causes of Action will be prosecuted or settled by the Liquidating Trustee.  Except as otherwise provided in this Plan, to the extent any Causes of Action are

41

already pending on the Effective Date, the Liquidating Trustee, as successor to the Debtor (in any derivative capacity or as an intervening party), will continue the prosecution of such Causes of Action and shall be substituted as plaintiff, defendant, or in any other capacity for the Debtor pursuant to this Plan and the Confirmation Order on the Effective Date without need for any further motion practice or notice in any case, action, or matter.

**J.    Full and Final Satisfaction**

Commencing upon the Effective Date, subject to the terms of this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized and directed to distribute the amounts required under the Plan to the Holders of Allowed Claims according to the provisions of the Plan. Upon the Effective Date, all Debts of the Debtor shall be deemed fixed and adjusted pursuant to this Plan, and the Liquidating Trust shall have no liability on account of any Claims or Equity Interests except as set forth in this Plan and in the Liquidating Trust Agreement. All payments and all distributions made by the Liquidating Trustee under the Plan shall be in full and final satisfaction of all Claims against the Liquidating Trust; *provided, however*, that nothing contained in this Section V of the Plan, or in any other provision of this Plan, shall be deemed to constitute or result in a discharge of the Debtor under Bankruptcy Code Section 1141(d).

**K.    Distribution Procedures**

1.    Distribution Dates. The Liquidating Trustee shall make Distributions to Holders of Claims as provided in Article III of the Plan.

42

2.      <u>Subsequent Distributions</u>.  Any Distribution not made on the Initial Distribution Date or a Subsequent Distribution Date because the Claim relating to such Distribution had not been Allowed on that Distribution Date shall be held by the Liquidating Trust for Distribution on any Subsequent Distribution Date after such Claim is Allowed.  No interest shall accrue or be paid on the unpaid amount of any Distribution.

3.      <u>Distribution Record Date</u>.  Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date.  The Liquidating Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date.  In making any Distribution with respect to any Claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to the Liquidating Trustee as of the Distribution Record Date.

4.      <u>Manner of Cash Payments Under the Plan or Liquidating Trust Agreement</u>.  Cash payments made pursuant to the Plan or Liquidating Trust Agreement shall be in United States dollars by checks drawn on a domestic bank selected by the Liquidating Trustee or by wire transfer from a domestic bank, at the option of the Liquidating Trustee.

LEGAL02/40807839v5

5.      Time Bar to Cash Payments by Check.  Checks issued by the Liquidating Trustee on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Article shall be made directly to the Liquidating Trustee by the Holder of the Allowed Claim to which the check was originally issued.  Any Claim in respect of such voided check shall be made in writing on or before the later of six months from the Effective Date or 30 days after the date on which such check is voided.  After that date, all Claims in respect of voided checks shall be disallowed and forever barred and the proceeds of those checks shall revest in and become the property of the Liquidating Trust as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code.

**L.      Resolution of Disputed Claims**

1.      No Distribution Pending Allowance.  Notwithstanding any other provision of the Plan, the Liquidating Trustee shall not Distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed.  Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim.

2.      Resolution of Disputed Claims.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Liquidating Trustee shall have the right to make, file, prosecute, settle, withdraw, or resolve objections to Claims.  The costs of pursuing the objections to Claims shall be borne by the Liquidating Trust.  From and after the Confirmation Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent,

44

the Liquidating Trustee elects to withdraw any such objection or the Liquidating Trustee and the

Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event

they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Equity

Interest without approval of the Bankruptcy Court.

3.    Objection Deadline.  All objections to Disputed Claims shall be filed and served

upon the Claimant not later than the Claims Objection Deadline, as such may be extended by

order of the Bankruptcy Court.  If and when the Liquidating Trustee ever determines that there is

likely to be remaining Liquidation Proceeds realized by the Liquidating Trust after the payment

(or reserve for payment) in full of all Liquidating Trust expenses, Allowed Administrative

Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Other

Secured Claims, the Allowed Pacific Life Claim, the Allowed Marriott Claim, and Allowed

General Unsecured Claims, with interest accrued from and after the Petition Date, the

Liquidating Trustee will file a notice to this effect with the Bankruptcy Court with such

additional excess proceeds to be distributed Pro Rata to Equity Security Holders as Residue.

4.    Estimation of Claims.  At any time, (a) prior to the Effective Date, the Debtor,

and (b) after the Effective Date, the Liquidating Trustee, may request that the Bankruptcy Court

estimate any contingent or unliquidated Claim to the extent permitted by Section 502(c) of the

Bankruptcy Code regardless of whether the Debtor or the Liquidating Trust has previously

objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the

Bankruptcy Court shall have jurisdiction to estimate any Claim at any time to any such objection.

If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount

LEGAL02/40807839v5

shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Debtor or the Liquidating Trust, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdraw, or resolved by any mechanism of the Bankruptcy Court.

5.    <u>Disallowance of Claims</u>.

(a)    Except as otherwise agreed, any and all proofs of claim filed after the Bar Date are Disputed, and Holders of such Claims will not receive any Distributions thereon unless and until such Claim is Allowed.

(b)    Subject to and in accordance with this Plan, any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or Entities that are transferees of transfers avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, provided that such Cause of Action is retained by the Liquidating Trust, shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action the Debtor holds or may hold against any Entity have been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estate by that Entity have been turned over or paid to the Debtor or Liquidating Trust.

46

6.      Adjustment Without Objection.  Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged from the claims register at the direction of the Debtor or the Liquidating Trustee, as applicable, without an objection filed and without further notice to or action, order, or approval of the Bankruptcy Court.

**M.      Reserve Provisions for Disputed Claims**

1.      Establishment of Disputed Reserves.  On or prior to a Distribution Date, the Liquidating Trustee shall reserve Cash required for Distribution on Disputed Claims as if such Claims were Allowed as filed with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee (the "Disputed Claim Reserve").  On each Distribution Date after the Effective Date in which the Liquidating Trustee makes Distributions to Holders of Allowed Claims, the Liquidating Trustee shall retain on account of Disputed Claims an amount the Liquidating Trustee estimates would be necessary to fund the Pro Rata Share of such Distributions to Holders of Disputed Claims if such Claims were Allowed, with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee.

2.      Maintenance of Disputed Claim Reserves.  The Liquidating Trust shall hold property in the Disputed Claim Reserve in trust for the benefit of the Holders of Disputed Claims that are ultimately determined to be Allowed.  Each Disputed Claim Reserve shall be closed (or deemed closed) by the Liquidating Trust when all Distributions and other dispositions of Cash of other property required to be made hereunder will have been made in accordance with the terms

47

of the Plan.  Upon closure of a Disputed Claim Reserve, all Cash or other property held in that

Disputed Claim Reserve shall revest in and become unrestricted property of the Liquidating

Trust to be distributed in accordance with the Plan and the Liquidating Trust Agreement.

       3.     <u>Limitations on Funding Disputed Claim Reserves</u>.  Except as expressly set forth

in the Plan, neither the Debtor nor the Liquidating Trustee shall have any duty to fund any

Disputed Claim Reserve except from the Liquidating Trust Assets.

**N.**    **<u>Rounding</u>**

       Whenever any payment of a fraction of a cent would otherwise be called for, the actual

Distribution shall reflect a rounding of such fraction down to the nearest cent.

**O.**    **<u>No Cash Payments of Less Than $50 on Account of Allowed Claims</u>**

       Notwithstanding anything herein to the contrary, except with respect to Administrative,

Priority Tax, Secured and Priority Non-Tax Claims, if a Distribution to be made to a Holder of

an Allowed Claim on the Initial Distribution Date or any Subsequent Distribution Date would be

$50 or less in the aggregate, no such Distribution will be made to that Holder unless a request

therefor is made in writing to the Liquidating Trustee.  If such request is made, such Cash shall

be held for such Holder until the earlier of (i) the next time an interim Distribution is made to the

Holders of Allowed Claims (unless the Distribution would still be less than $50, in which case

this Section shall again apply), or (ii) subject to Section Q below, the date on which Final

Distributions are made to the Holders of Allowed Claims.

LEGAL02/40807839v5

**P.**     **Delivery of Distributions and Unclaimed Property**

    1.     <u>Delivery of Distributions</u>. Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims shall be made by the Liquidating Trustee at (a) the address of each Claimant as set forth in the Schedules, unless superseded by the address set forth on proof(s) of claim filed by such Claimant, or (b) the last known address of such Claimant if no proof of claim is filed or the Debtor or Liquidating Trustee has been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Liquidating Trustee may, in its discretion, make reasonable efforts to determine the current address of the Holder of the Claim with respect to which the Distribution was made as the Liquidating Trustee deems appropriate, but no Distribution to any such Holder shall be made unless and until the Liquidating Trustee has determined the then-current address of such Holder, at which time the Distribution to such Holder shall be made without interest. Amounts in respect of any undeliverable Distributions shall be returned to, and held in trust by, the Liquidating Trustee until the Distributions are claimed or are deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code, as set forth in Article V, Paragraph K of the Plan. The Liquidating Trustee shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided, however*, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or Liquidating Trust Agreement. On or about the time that the final Distribution is made, the Liquidating Trustee may make a charitable donation with undistributed funds if, in the reasonable judgment of the Liquidating Trustee, the cost of calculating and making the Final

49

Distribution of the remaining funds is excessive in relation to the benefits to the holders of

Claims that would otherwise be entitled to such Distributions, and such charitable donation is

provided to an entity not otherwise related to the Debtor or the Liquidating Trustee.

        2.      <u>Unclaimed Property</u>.  Except with respect to property not distributed because it is

being held in the Disputed Claim Reserve, Distributions that are not claimed by the later of the

expiration of six (6) months from the Effective Date or thirty (30) days after the date on which a

check is voided pursuant to Section V.K.5 of the Plan, shall be deemed to be unclaimed property

under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Liquidating Trust,

and the Claims with respect to which those Distributions are made shall be automatically

cancelled.  After the expiration of that period, the claim of any Entity to those Distributions shall

be disallowed and forever barred.  Nothing contained in the Plan shall require the Liquidating

Trust to attempt to locate any holder of an Allowed Claim.  All funds or other property that vest

or revest in the Liquidating Trust pursuant to this Article shall be distributed by the Liquidating

Trustee to the other holders of Allowed Claims or Equity Interests in accordance with the

provisions of the Plan or the Liquidating Trust Agreement.

**Q.**      **<u>Withholding Taxes</u>**

        In connection with making Distributions under this Plan, to the extent applicable, the

Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed

on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to

such withholding and reporting requirements.  The Liquidating Trustee may withhold the entire

Distribution to any Holder of an Allowed Claim until such time as such Holder provides the

LEGAL02/40807839v5

necessary information to comply with any withholding requirements of any Governmental Unit.

Any property so withheld will then be paid by the Liquidating Trustee to the appropriate

authority. If the Holder of an Allowed Claim fails to provide the information necessary to

comply with any withholding requirements of any Governmental Unit within six months after

the date of first notification to the Holder of the need for such information or for the Cash

necessary to comply with any applicable withholding requirements, then such Holder's

Distribution shall be treated in accordance with Article V, Paragraph Q of the Plan.

## R.   United States Trustee Fees

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be

paid by the Debtor on or before the Effective Date. Thereafter, the Liquidating Trustee shall pay

any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry

of a Final Decree or an order converting or dismissing the Chapter 11 Case.

## S.   Books and Records

Subject to the Sale Order, the Debtor shall transfer dominion and control over all of its

books and records, in whatever form, manner or media, including, without limitation, the specific

provision and presentation, to the Liquidating Trustee of all passcodes for security systems and

computers, keys, keycards, and notice letters to landlords, warehousemen or other relevant

parties.

LEGAL02/40807839v5

**T.**    **No Modification of Terms of the Sale Order**

Nothing in the Plan or Confirmation Order shall be deemed to alter, modify or amend the terms and provisions of the Sale Order, *provided however* that, for avoidance of doubt, the Plan shall control and govern any Distributions to Holders of Claims as provided herein.

## VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**    **Rejection of Executory Contracts and Unexpired Leases**

Except with respect to executory contracts or unexpired leases that: (i) were previously assumed, assumed and assigned, or rejected by order of the Bankruptcy Court (including, without limitation, the Sale Order), and (ii) are the subject of a pending motion to assume or reject, pursuant to Section 365 of the Bankruptcy Code, on the Effective Date, each executory contract and unexpired lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code; *provided, however*, that nothing in this Section VI.A shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtor and the Estate, the Debtor's officers, directors and managers and/or the Liquidating Trust.  Nothing in this Article VI shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease.  For avoidance of doubt, the Confirmation Order shall constitute a rejection of (i) any collective bargaining agreements entered into by Marriott and/or that may be binding on the Debtor; and (ii) those certain Owner's Letters relating to such collective bargaining agreements(collectively, the "CBAs"), *provided*

52

*however* that nothing in the Plan or the Confirmation Order shall impair or otherwise affect any rights or obligations of the Successful Bidder (as defined in the Sale Order) or the applicable unions with respect to the CBAs to the extent provided under paragraphs D and 25 of the Sale Order.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date.  The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases, and neither the Debtor nor the Liquidating Trust shall bear any liability for costs associated with respect to the forgoing.   For avoidance of doubt, any counterparty to a an executory contract or unexpired lease rejected pursuant to this Plan may file a claim for damages pursuant to section VI.B of this Plan, *provided however*, that the Debtor and Liquidating Trustee reserve all rights to object to any such claims on any and all available grounds.

**B.**      **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be filed with the Bankruptcy Court within thirty (30) days after the earlier of the Effective Date or an order of the Bankruptcy Court approving such rejection.  Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan that is not filed within such times will be subject to objection.  All such Claims for which Proofs of Claim are

LEGAL02/40807839v5

timely and properly filed and ultimately Allowed will be treated as General Unsecured Claims subject to the provisions of Article III of the Plan.

## C.    **Insurance Policies**

Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations of the Insurance Policies. To the extent one or more of the Insurance Policies provide potential coverage related to one or more Causes of Action the Debtor holds or may hold against any Entity, the Debtor shall, to the extent permissible under each Insurance Policy, assign all of its rights thereunder with respect to such Causes of Action to the Liquidating Trust. All net proceeds (including, for the avoidance of doubt, net of any deductibles or retentions) of Insurance Policies received by the Liquidating Trust shall be treated as proceeds of such Causes of Action for all purposes under the Plan. The Debtor shall take no action to or otherwise impair the Insurance Policies. Nothing in this Plan shall diminish or impair the enforceability of the Insurance Policies and related agreements that may cover Claims and Causes of Action against the Debtor or any other Entity.

## D.    **Excess Proceeds**

To the extent the net proceeds of the Liquidation Trust Assets exceed the amount necessary to fully perform this Plan and the Liquidating Trust (including the payment of all expenses, costs and payments required thereunder) and make all of the distributions to the holders of Allowed Claims required under the Plan, such excess shall become part of the Residue.

LEGAL02/40807839v5

# VII.

## CONDITIONS PRECEDENT TO CONFIRMATION

## OF THE PLAN AND TO THE EFFECTIVE DATE

**A.**    **Conditions to Confirmation of the Plan**

Confirmation of this Plan is conditioned upon the satisfaction of each of the following conditions precedent: (i) the Bankruptcy Court shall have approved the Disclosure Statement in form and substance acceptable to the Debtor, Marriott, and Pacific Life, in all reasonable respects, unless the Debtor, Marriott, and Pacific Life otherwise agree in writing to waive this condition precedent; (ii) unless the Debtor agrees in writing to waive this condition precedent, the Debtor shall have determined, that there will be sufficient Cash on the Effective Date to pay (or with respect to Disputed Claims to reserve for as required pursuant to the Plan) (A) Allowed Administrative Claims, Non-Tax Priority Claims and Priority Tax Claims in full (or in such amount as may be agreed by the applicable Claimant; and (B) and fund the reserves and other amounts required under the Plan and Liquidating Trust Agreement, including the funding of the Professional Fee Reserve and the Plan Contribution Amount; (iii) the Marriott Settlement Order to be presented to the Bankruptcy Court at the Confirmation Hearing shall be acceptable to the Debtor, Marriott, and Pacific Life in form and substance, in all reasonable respects, unless the Debtor, Marriott, and Pacific Life agree in writing to waive this condition precedent; and (iv) the Confirmation Order to be presented to the Bankruptcy Court at the Confirmation Hearing shall be acceptable to the Debtor, Marriott and Pacific Life and in form and substance, in all

reasonable respects, unless the Debtor, Marriott, and Pacific Life otherwise agree in writing to waive this condition precedent.

**B.**    **Effect of Failure of Conditions to Confirmation**

If any one or more of the conditions in Section VII.A is not met, the Debtor may withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

**C.**    **Conditions to Effective Date**

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent: (i) a Confirmation Order in form and substance acceptable to the Debtor, Marriott and Pacific Life, in all reasonable respects, shall have been entered by the Bankruptcy Court, unless the Debtor, Marriott, and Pacific Life otherwise agree in writing to waive this condition precedent; (ii) the Marriott Settlement Order in form and substance acceptable to the Debtor, Marriott, and Pacific Life, in all reasonable respects, shall have been entered by the Bankruptcy Court, unless the Debtor, Marriott, and Pacific Life otherwise agree in writing to waive this condition precedent; (iii) unless otherwise waived in writing by the Debtor, the Liquidating Trust shall have  been created pursuant to the terms of the Plan, the Liquidating Trustee shall have been appointed by order of the Bankruptcy Court (which may be the Confirmation Order) and the Liquidating Trust Agreement shall have  been executed by the Liquidating Trustee; (iv) unless otherwise waived in writing by the Debtor, the Sale shall have closed on or before the Effective Date; (v) unless otherwise waived in writing by the Debtor, the Plan Contribution Amount shall have been funded; and (vi) unless otherwise waived in writing

by the Debtor, all other actions and documents determined by the Debtor to be necessary to implement the Plan shall have been effected and executed.

**D.**     **Effective Date**

Provided the above-referenced conditions to the occurrence of the Effective Date are satisfied, this Plan shall become effective on the Effective Date.  If any one or more of the conditions in Section VII.C is not met, the Debtor may withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

## VIII.

## EFFECTS OF CONFIRMATION

**A.**     **Binding Effect of Plan**

The provisions of the confirmed Plan shall bind the Debtor, the Liquidating Trust, the Liquidating Trustee, any Entity acquiring property under the Plan, any Beneficiary, and any Creditor or Equity Interest Holder, whether or not such Creditor or Equity Interest Holder has filed a Proof of Claim or Equity Interest in the Chapter 11 Case, whether or not the Claim of such Creditor or the Equity Interest of such Equity Interest Holder is impaired under the Plan, and whether or not such Creditor or Equity Interest Holder has accepted or rejected the Plan.  All Claims and Debts shall be fixed and adjusted pursuant to this Plan.  This Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under this Plan or related to any transaction contemplated under this Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code Section 1146(a).

**B.**    **Vesting of Property of Debtor in the Liquidating Trust**

Upon the Effective Date, title to all property of the Estate of the Debtor in the Chapter 11 Case shall vest in the Liquidating Trust and shall be retained by the Liquidating Trust for the purposes contemplated under this Plan pursuant to the Liquidating Trust Agreement.  Without limiting the generality of the foregoing, all Causes of Action the Debtor holds or may hold against any Entity, recoveries from any Causes of Action, rights to Liquidation Proceeds, and all resulting Liquidating Trust Assets shall vest in the Liquidating Trust upon the Effective Date and shall no longer constitute property of the Estate.

**C.**    **Property Free and Clear**

Except as otherwise provided in this Plan or the Confirmation Order, all property that shall vest in the Liquidating Trust shall be free and clear of all Claims, Equity Interests, Liens, interests, charges, or other encumbrances of Creditors or Interest Holders, other than as set forth herein, the Final DIP Order, in the Liquidating Trust Agreement, and in relevant documents, agreements, and instruments contained in the Plan Supplement.  Following the Effective Date, the Liquidating Trustee may transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

**D.**    **Exculpation**

**The Exculpated Parties will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken after the Petition Date through and**

LEGAL02/40807839v5

including the Effective Date in connection with or related to the Chapter 11 Case, the sale of the Debtor's assets (including, without limitation the sale of the assets pursuant to the Sale Order) or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; *provided, however*, that this limitation will not affect or modify the obligations created under this Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction).  Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of Section 1125(e) of the Bankruptcy Code.  Except as specifically set forth in Section VIII.E below, no provision of this Plan or the Disclosure Statement shall be deemed to act to or release any claims, Causes of Action, claims or rights, or liabilities that the Liquidating Trust or the Estate may have against any Entity or person for any act, omission, or failure to act that occurred prior to the Petition Date, nor shall any provision of this Plan be deemed to act to release any Causes of Action and litigation claims.

E.    <u>Releases</u>

1.    <u>Debtor Release</u>.

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after and

**subject to the occurrence of the Effective Date, the Debtor and its estate shall release each Released Party, and each Released Party is deemed released by the Debtor and the estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor or its estate, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or the estate would have been legally entitled to assert in its own right, or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's liquidation, the Chapter 11 Case, the purchase, sale, transfer of any security, asset, right, or interest of the Debtor, the transactions made by or contemplation under the Sale Order, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the treatment of Claims and Equity Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence; provided, that the foregoing Debtor Release shall**

LEGAL02/40807839v5

not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan.  For avoidance of doubt, the foregoing Debtor Release does release any of the Debtor's claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities with respect to the *Wardman Tower Residential Condominium Unit Owners Association v. JBG Smith Properties, et al* action currently pending in the Superior Court of the District of Columbia under Case No. 2020 CA 004807.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtor and all Holders of Claims and Equity Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtor or its estate asserting any Claim or Cause of Action released pursuant to the Debtor Release.

2.    <u>Third Party Release</u>.

On, and as of, the Effective Date and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Released Parties shall be forever released (the "<u>Third Party Release</u>") from any and all claims, obligations, actions, suits,

rights, debts, accounts, causes of action, remedies, avoidance actions, agreements, promises,

damages, judgments, demands, defenses, and liabilities throughout the world under any

law or court ruling through the Effective Date (including all claims based on or arising out

of factors or circumstances that existed as of or prior to the Effective Date, including claims

based on negligence or strict liability, and further including any derivative claims asserted

on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or

hereinafter arising, in law, equity, or otherwise) which the Debtor, its estate, Creditors, or

other persons receiving or who are entitled to receive distributions under the Plan may

have against any of them in any way related to this Chapter 11 Case, the negotiation,

formulation, or preparation of the Plan or related agreements, instruments, or other

documents, any other act or omission, transaction, agreement, event, or other occurrence

taking place on and before the Petition Date, and related to the Debtor (or its

predecessors), its business and/or its assets; *provided however* that the foregoing releases

are granted only by (a) Creditors who returned a Ballot and did not check the opt-out box

on the Ballot; and (b) Creditors who were sent a solicitation package, but either (i) did not

vote; or (ii) did not return a Ballot with the opt-out box checked; *provided however* that the

release provided in this section shall not apply to (A) any Creditor whose Claim is not

Allowed either in whole or in part; or (B) any Creditor in category (b) above if the

solicitation package was returned to the Debtor as undelivered and that such Creditor did

not otherwise submit a Ballot; and provided further, however, that the release provided in

this Section shall not extend to any claims by any Governmental Unit with respect to

62

**criminal liability under applicable law, willful misconduct or bad faith under applicable law, ultra vires acts under applicable law, or a Creditor's claims against Marriott solely based upon such Creditor's direct contractual rights, if any, against Marriott, provided further that nothing in this section shall release any Released Party from acts that are judicially determined to constitute fraud, willful misconduct, or gross negligence. For avoidance of doubt, Pacific Life and Marriott shall be deemed to have granted the Third Party Release.**

  3.  **<u>Global Limited Release of Claims between Marriott, the Debtor and Pacific Life</u>**

  Subject to and effective as of the occurrence of Effective Date, Marriott, on the one hand and the Debtor, PL Wardman Member, LLC, and Pacific Life, on the other hand, each of the forgoing, on behalf of themselves and their respective affiliates, successors, assigns, transferees, officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such), shall be deemed to have conclusively and unconditionally released each other and their respective successors, assigns, transferees, officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such), from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever based on or related to, or in any manner arising from or related to the Debtor, the Debtor's assets, the Debtor's liquidation, the Marriott Claim, the Chapter 11 Case, the Maryland Action, *Wardman Hotel Owner, L.L.C. v. Marriott Hotel Services, Inc.* [Adv. Proc. No. 21-51005], Marriott's operation of the hotel located at 2600

63

Woodley Road, NW in the Woodley Park neighborhood of Washington, D.C., the purchase, sale, transfer of any security, asset, right, or interest of the Debtor, and the business and contractual arrangements between Marriott, Pacific Life, PL Wardman Member, LLC and/or the Debtor which relate to the foregoing, based on facts now in existence whether known or unknown, and all such claims whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, *provided however*, that the foregoing shall not impact or modify the treatment of the Marriott Claim provided under the Plan.  Marriott, the Debtor, Pacific Life and PL Wardman Member, LLC each hereby waives and releases any and all rights under Section 1542 of the California Civil Code with respect to the matters referenced in this paragraph, which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASING PARTY.**

**F.**      **<u>Injunction</u>**

**In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Equity Interests in the Debtor, the Liquidating Trust, or the Estate that arose prior to the Effective Date are permanently**

**enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor, the Estate, the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the Estate, the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtor, the Estate, or the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest, including without limitation, any act taken in violation of Section VIII.E.2 against any of the Released Parties with respect to any matters released under this Plan in favor of such Released Parties.   Nothing contained in this Section shall prohibit the Holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtor or the Liquidating Trust under this Plan.**

**G.      Post-Confirmation Liability of Liquidating Trustee**

The Liquidating Trustee, together with his or her consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the

65

foregoing (collectively, the "Indemnified Parties") shall not be liable for any and all liabilities, losses, damages, claims, causes of action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the Holders of Claims or Equity Interests for any action or inaction taken in good faith in connection with the performance or discharge of their duties under this Plan, except the Indemnified Parties will be liable for actions or inactions that are grossly negligent, fraudulent, or which constitute willful misconduct (in each case, liability shall be subject to determination by final order of a court of competent jurisdiction). However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, fraud or willful misconduct. In addition, the Liquidating Trust and the Estate shall, to the fullest extent permitted by the laws of the State of Delaware, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust and the Estate or the implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidating Trust and the Estate. To the extent the Liquidating Trust indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring and participating in the defense of such claims giving rise to

66

the right of indemnification shall be paid as Liquidating Trust Expenses.  All rights of the

Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan.

**H.**     **Preservation of Rights of Action**

      1.     <u>Vesting of Causes of Action.</u>

      (a)     Except as otherwise provided in the Plan or Confirmation Order, in

accordance with Section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the

Debtor holds or may hold against any Entity shall vest upon the Effective Date in the Liquidating

Trust, except to the extent provided under Final DIP Order.

      (b)     Except as otherwise provided in the Plan or Confirmation Order, after the

Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute,

abandon, settle, or compromise any Causes of Action the Debtor holds or may hold against any

Entity, in accordance with the terms of the Liquidating Trust Agreement and without further

order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an

adversary proceeding filed in the Chapter 11 Case.

      (c)     Causes of Action and recoveries therefrom shall remain the sole property

of the Liquidating Trust, for the ratable benefit of the Beneficiaries of the Liquidating Trust, and

holders of Claims shall have no direct right or interest in to any such Causes of Action or

recovery.

      2.     <u>Preservation of All Causes of Action Not Expressly Settled or Released.</u>

      (a)     Unless a Cause of Action against a holder of a Claim or other Entity is

expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order

(including the Confirmation Order, and the Final DIP Order), the Debtor and the Liquidating

Trustee expressly reserve such retained Cause of Action for later adjudication by the Debtor or

the Liquidating Trustee (including, without limitation, Causes of Action not specifically

identified or described in the Plan Supplement or elsewhere, or of which the Debtor may be

presently unaware, or which may arise or exist by reason of additional facts or circumstances

unknown to the Debtor at this time, or facts or circumstances that may change or be different

from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including,

without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim

preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such

Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on

the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have

been released or otherwise resolved by a Final Order (including the Confirmation Order).  In

addition, the Debtor and Liquidating Trustee expressly reserve the right to pursue or adopt

claims alleged in any lawsuit in which the Debtor is a defendant or an interested party against

any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

(b)     Subject to the immediately preceding paragraph, any Entity to which the

Debtor has incurred an obligation (whether on account of services, the purchase or sale of goods,

or otherwise), or that has received services from the Debtor or a transfer of money or property of

the Debtor, or that has received services from the Debtor or a transfer or money or property of

the Debtor, or that has transacted business with the Debtor, or that has leased equipment or

property from the Debtor, should assume and is hereby advised that any such obligation, transfer,

or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and

may be the subject of an action after the Effective Date, regardless of whether (i) such Entity has

filed a proof of claim against the Debtor in the Chapter 11 Case; (ii) the Debtor or Liquidating

Trustee has objected to any such Entity's proof of claim; (iii) any such Entity's Claim was

included in the Schedules; (iv) the Debtor or Liquidating Trustee has objected to any such

Entity's scheduled Claim; (v) any such Entity's scheduled Claim has been identified by the

Debtor or Liquidating Trustee as disputed, contingent, or unliquidated; or (vi) the Debtor has

identified any potential claim or Cause of Action against such Entity herein or in the Disclosure

Statement.

## I.      **No Discharge**

Nothing contained in this Plan shall be deemed to constitute a discharge of the Debtor

under Bankruptcy Code section 1141(d)(3).

## IX.

## **RETENTION OF JURISDICTION**

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction

as is legally permissible, including, but not limited to, for the following purposes:

1.      To hear and determine any and all objections to the allowance of a Claim,

proceedings to estimate a Claim for any purpose, actions to equitably subordinate a Claim,

proceedings seeking approval of any necessary claims reconciliation protocols, or any

controversy as to the classification of a Claim in a particular Class under the Plan;

2.      To administer the Plan, the Liquidating Trust, the Trust Assets;

3.      To estimate or liquidate any Disputed Claims;

4.      To hear and determine any and all adversary proceedings, contested

matters or applications pending on the Effective Date or otherwise relating to, arising from, or in

connection with the Litigation; *provided, however*, that the Liquidating Trustee shall reserve the

right to commence actions in all appropriate jurisdictions;

5.      To hear and determine any and all motions and/or objections to fix,

estimate, allow and/or disallow any Claims arising therefrom;

6.      To hear and determine any and all applications by Professionals for an

award of Professional Fees;

7.      To enable the Liquidating Trustee to commence and prosecute any Causes

of Action which may be brought after the Effective Date;

8.      To interpret and/or enforce the provisions of the Plan and the injunction

provided for in the Plan and to determine any and all disputes arising under or regarding

interpretation of the Plan or any agreement, document, or instrument contemplated by the Plan;

9.      To enter and implement such orders as may be appropriate in the event

Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

10.     To modify any provision of the Plan to the extent permitted by the

Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in

the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of

the Plan;

11.     To enter such orders as may be necessary or appropriate in furtherance of

Confirmation and the successful implementation of the Plan and to determine such other matters

as may be provided for in the Confirmation Order or as may be authorized under the provisions

of the Bankruptcy Code;

12.     To enter any orders as required by Rule 23 of the Federal Rules of Civil

Procedure, to the extent made applicable to any adversary proceeding pursuant or contested

matter pursuant to Bankruptcy Rules 7023 and 9014(c), as applicable; and

13.     To close the Chapter 11 Case when administration of the Liquidating

Trust and the Chapter 11 Case have been completed.

## X.

## MISCELLANEOUS

### A.     Revocation of Plan

The Debtor reserves the right to revoke and withdraw the Plan at any time on or before

the Confirmation Date.  If the Debtor revokes or withdraws the Plan pursuant to this Section, or

if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void

and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of

any Claims by or against the Debtor or any other entity or to prejudice in any manner the rights

of the Debtor or any Entity in any further proceedings involving the Debtor.

### B.     Severability of Plan Provisions

In the event that, prior to the Confirmation Date, any term or provision of this Plan is

held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall,

LEGAL02/40807839v5

with the consent of the Debtor and Pacific Life, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## C.    <u>Exhibits</u>

All exhibits attached to this Plan, the Plan Supplement, or the Disclosure Statement are, by this reference, hereby incorporated into the Plan.  The final version of all Exhibits to the Plan, the Plan Supplement, and the Disclosure Statement will be substantially in the forms attached hereto or thereto.  The Debtor reserves the right to make non-substantive changes and corrections to such Exhibits in advance of the Confirmation Hearing.  If any Exhibits are changed or corrected, the replacement Exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing.

## D.    <u>Notices</u>

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day

courier service, first-class mail, electronic mail, or via facsimile with electronic confirmation of

receipt as follows:

> Pachulski Stang Ziehl & Jones LLP
> 919 North Market Street, 17th Floor
> P.O. Box 8705
> Wilmington, DE 19899-8705 (Courier 19801)
> Tel. 302-652-4100, Fax 302-652-4400
> Attn:  Laura Davis Jones, Esq.
> ljones@pszjlaw.com

>     and

> James D. Decker
> JDecker & Company
> 5996 Mitchell Road, #16
> Atlanta, GA 30328
> Tel.  404.229-8907
> jim@jdeckerco.com

**E.**     **Reservation of Rights**

Neither the filing of the Plan nor any statement or provision contained in the Plan or in

the Disclosure Statement, nor the taking by any party in interest of any action with respect to the

Plan, shall: (a) be or be deemed to be an admission against interest and (b) until the Effective

Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any

other party in interest, or (ii) in or to any of the assets of any other party in interest, and, until the

Effective Date, all such rights are specifically reserved.  In the event that the Plan is not

confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any

statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any

manner in any suit, action, proceeding, or controversy within or without the Chapter 11 Case

involving the Debtor, except with respect to Confirmation of the Plan.

73

## F.    Defects, Omissions and Amendments

The Debtor may, with the approval of Pacific Life and the Bankruptcy Court and without notice to all Holders of Claims or Equity Interests, insofar as it does not materially and adversely affect Holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan. The Plan may be altered or amended before or after Confirmation as provided in Section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Holders of Claims, so long as the Plan, as modified, complies with Sections 1122 and 1123 of the Bankruptcy Code and the Debtor has complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered or amended before or after the Confirmation Date but, prior to substantial Consummation, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, so long as the Plan, as modified, complies with Bankruptcy Code Sections 1122 and 1123, the Debtor has complied with Bankruptcy Code Section 1125 and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code Section 1129.

## G.    Filing of Additional Documents

The Debtor shall file with the Bankruptcy Court such agreements, instruments, pleadings, orders, papers, or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

LEGAL02/40807839v5

**H.**    **Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entity.

**I.**    **Setoffs and Recoupments**

The Liquidating Trust may, but shall not be required to, set off against or recoup from the payments to be made pursuant to this Plan in respect of a Claim, any claim of any nature whatsoever that the Debtor, the Liquidating Trust, or the Estate, as applicable, may have against the Holder of such Claim, but neither the failure to do so or the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtor, the Liquidating Trust, or the Estate, against such Holder.

**J.**    **Section 1146(a) Exemption**

The Plan implements the distribution of the Sale Proceeds pursuant to the Sale Order. Pursuant to section 1146(a) of the Bankruptcy Code, any transfer of property under the Plan (including the transactions pursuant to the Sale Order) or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor; (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other

75

instrument of transfer executed in connection with any transaction arising out of, contemplated

by, or in any way related to the Plan (including the transactions pursuant to the Sale Order), shall

not be subject to any document recording tax, stamp tax, conveyance free, intangibles or similar

tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code

filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental

assessment, and upon entry of the Confirmation Order, the appropriate state or local

governmental officials or agents shall forego the collection of any such tax or governmental

assessment and accept for filing and recordation any of the foregoing instruments or other

documents without the payment of any such tax, recordation fee, or governmental assessment.

All filing or recording officers (or any other Person with authority over any of the foregoing),

wherever located and by whomever appointed, shall comply with the requirements of section

1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental

assessment, and shall accept for filing and recordation any of the foregoing instruments or other

documents without the payment of any such tax or governmental assessment.

## K.    **Securities Exemption**

To the extent the Liquidating Trust Interests are deemed or asserted to constitute

securities, the Liquidating Trust Interests and the issuance and distribution thereof shall be

exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal

securities laws requiring registration for offer or sale of a security or registration or licensing of

an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all

exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation, Section 1145 of the Bankruptcy Code.

**L.**     **Implementation**

Upon Confirmation, the Debtor shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

**M.**     **Certain Actions**

1.     By reason of entry of the Confirmation Order, prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of directors, officers, employees, managers or members of the Debtor under the Plan, including, without limitation, (i) the distribution of Cash pursuant to the Plan, (ii) the adoption, execute/on, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation law of the state in which the Debtor is chartered, organized, or incorporated, without any requirement of further action by the directors and stockholders of the Debtor, irrespective of whether the Confirmation Order specifically authorizes any such action.

LEGAL02/40807839v5

2.      Effective upon the Effective Date, the Debtor's formation documents shall each be deemed amended to prohibit the issuance by the Debtor of nonvoting securities to the extent required under Section 1123(a)(6) of the Bankruptcy Code.

3.      On or as soon as practicable following the Effective Date, the Liquidating Trustee shall be authorized to cancel, annul, and extinguish all Equity Interests.

**N.      Substantial Consummation**

On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code Sections 1101 and 1127(b).

**O.      Waiver of Fourteen-Day Stay**

The Debtor requests as part of the Confirmation Order a waiver from the Bankruptcy Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the 14-day stay of Bankruptcy Rule 6004(g).

Dated:  August 18, 2021                              Respectfully submitted,


                                                    */s/ James D. Decker*
                                                    WARDMAN HOTEL OWNER, L.L.C.
                                                    By: James D. Decker, its Independent Manager

LEGAL02/40807839v5