IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WARDMAN HOTEL OWNER, L.L.C., [1],<br><br>                    Debtors. | Chapter 11<br><br>Case No. 21-10023 (JTD) |
| WARDMAN HOTEL OWNER, L.L.C.,<br><br>                    Plaintiff,<br><br>    v.<br><br>DISTRICT OF COLUMBIA,<br><br>                    Defendant. | Adv. Proc. No. 23-\_\_\_\_\_ (JTD) |

**COMPLAINT FOR DECLARATORY RELIEF**
**PURSUANT TO 11 U.S.C. §§ 505, 541, AND 1141 AND 28 U.S.C. § 2201**

Wardman Hotel Owner, L.L.C. (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), as and for its *Complaint for Declaratory Relief Pursuant to 11 U.S.C. §§ 505, 541, and 1141 and 28 U.S.C. § 2201* (the "Complaint") against the District of Columbia (the "Defendant"), by and through its undersigned counsel of record, alleges as follows:

**Summary of Action**

1. On September 30, 2020, the Debtor filed a petition (the "Petition") in the Superior Court of the District of Columbia, Tax Division (the "Tax Court") commencing the proceeding

---

[1] The last four digits of Debtor's U.S. tax identification number are 9717. Debtor's mailing address is 5996 Mitchell Road, #16, Atlanta, GA 30328.

identified as Tax Docket 2020 CVT 000511 (the "<u>2020 Tax Court Proceeding</u>") seeking recovery of more than $1 million in 2020 real property taxes paid (the "<u>2020 Refund Claim</u>") with respect to the Debtors' property located at 2660 Woodley Road NW, Washington, DC 20008 (the "<u>Property</u>").  The Debtors later filed a petition in the Tax Court (the "<u>2021 Tax Court Proceeding</u>") with respect to 2021taxes paid with respect to the Property (the "<u>2021 Refund Claim</u>").

2. On January 11, 2021 (the "<u>Petition Date</u>") the Debtor filed its petition under Chapter 11, Title 11, United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") commencing its bankruptcy case (the "<u>Chapter 11 Case</u>").

3. The District of Columbia (the "<u>District</u>") opposed the relief sought in the Petition, and, after various pleadings and hearings, the Tax Court Proceeding regarding the 2020 Refund Claim was set for trial to commence on February 27, 2023.

4. After the deadline for the filing of motions for summary judgment, the District filed a motion for leave (the "<u>Motion for Leave</u>") to file a dispositive motion on the grounds of judicial estoppel, arguing, in sum, that the Debtors were judicially estopped from pursing the 2020 Refund Claim because that claim was not listed in the Debtor's schedules of assets and liabilities (the "<u>Schedules</u>").

5. The District's motion also references the fact that the 2021 Refund Claim was not disclosed in the Schedules, suggesting that the District may seek comparable relief with respect to the 2021 Refund Claim.

6.  Thereafter, the Tax Court, without ruling upon the judicial estoppel issue, entered an order staying the Tax Court Proceeding "pending resolution of the Petitioner's bankruptcy proceeding."

7.  A determination that the Debtor is judicially estopped from pursuing the 2020 Refund Claim or the 2021 Refund Claim would deprive the Debtor's estate, its creditors, and its equity holders of substantial assets that, under the Plan (as defined below) can only accrue for the benefit of those creditors and equity holders.

8.  By the Complaint, the Debtor seeks a determination (a) that the 2020 Refund Claim is property of the Debtor's estate, (b) that the 2021 Refund Claim is Property of the Debtor's estate, (c) that the Debtor is not judicially estopped from pursuing the 2020 Refund Claim, and (d) that the Debtor is not judicially estopped from pursuing the 2021 Refund Claim.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

10. Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtor affirms its consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

11. The statutory and legal predicates for the relief requested in this Complaint are sections 105, 505, 541 and 1141 of the Bankruptcy Code and 28 U.S.C. § 2201.

## THE PARTIES

12. Plaintiff is a corporation organized and existing under the laws of the State of Delaware and is the Debtor in the Chapter 11 Case.

13. Defendant, the District, is a municipal corporation with the power to sue and to be sued.

**STATEMENT OF FACTS**

**A.    General Background**

14. The Debtor's primary asset was the Property, a prime location adjacent to the Woodley Park station of the Washington Metro.

15. The Property was previously operated as Washington Marriott Wardman Park, a convention hotel (the "Hotel").

16. The Hotel contained 195,000 square feet of total event space and 95,000 square feet of exhibit space, and its 1,152-room count was the third largest hotel by room count in Greater Washington.

17. The Debtor permanently closed the Hotel prior to the Petition Date and marketed the Property to potentially interested parties.

18. On September 30, 2020, after exhausting administrative remedies, the Debtor filed the Petition asserting the 2020 Refund Claim.

19. On January 11, 2021, the Debtor commenced the Chapter 11 Case.

20. On February 10, 2021, the Debtor filed the Schedules [Docket No. 134] and its Statements of Financial Affairs [Docket No. 135] (the "Statements").

21. The Schedules did not disclose the 2020 Refund Claim as an asset of the Debtor, and the Statements did not list the 2020 Refund Claim as a pending litigation matter.

22. The Schedules did list the District as holding a contingent, unliquidated priority claim against the Debtor for "Property Tax."

23. The *Global Notes and Statement of Limitations, Methodology, and Disclaimers Regarding Debtor's Schedule of Assets and Liabilities and Statement of Financial Affairs* (the "Global Notes"), filed with the Schedules and Statements, contain broad reservations with respect to the completeness of the Schedules and Statements and the right to amend the Schedules and Statements.

24. On September 20, 2021, the Court entered the *Order Granting Final Approval of Disclosure Statement and Confirming Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 358] (the "Confirmation Order"), which confirmed the *Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan"), attached as Exhibit A to the Confirmation Order.

25. The Plan and the Confirmation Order contain broad reservations with respect to retention of all causes of action not expressly waived.

26. The Plan created the a liquidating trust (the "Liquidating Trust") and appointed the liquidating trustee (the "Liquidating Trustee") to administer the assets of the Debtor and effectuate distributions to creditors.

27. The Effective Date of the Plan occurred on October 28, 2021 [Docket No. 385].

28. The District received all relevant notices sent to all creditors in the Chapter 11 Case, including notices related to the deadline to file claims [Docket No. 212], and the Plan [Docket No. 332], and of the Confirmation Order and Effective Date [Docket No. 385].

29. The District filed no proof of claim in the Chapter 11 Case.

30. As of the date of this Complaint, the Liquidating Trustee has completed distributions to creditors with allowed secured, administrative, priority, and unsecured claims

and anticipates that remaining assets will afford a recovery to the holders of Class 6 Equity Interests under the Plan.

31.  On February 10, 2023, the Debtor filed amendments (the "Amendments") to its Schedules and Statements, which amendments (a) add the 2020 Refund Claim to Schedule A/B and (b) add the action in connection with the Petition to question 7 of the Statements.

32.  The Amendments afford affected parties a further twenty-one days to file a proof of claim.

33.  No further claim was filed by the District in connection with the Amendments.

**B.    The 2020 Refund Claim and the 2021 Refund Claim**

34.  The 2020 Refund Claim was filed, as described above, on September 30, 2020, commencing the 2020 Tax Court Proceeding, and seeks a reduction in the valuation of and assessment on the Property and a refund of more than $1,000,000.00.

35.  The 2020 Refund Claim was ready for trial at the time that the District filed its Motion for Leave.

36.  Further disposition on the 2020 Refund Claim has been stayed by the Tax Court pending further developments in the Chapter 11 Case.

37.  The 2021 Tax Court Proceeding was filed on September 27, 2021, after the Petition Date, and is identified as Tax Docket 2021 CVT 000434.

38.  The 2021 Refund Claim seeks a reduction in the valuation of and assessment on the Property and a refund of more than $700,000.00.

39.  The 2021 Tax Court Proceeding has not been stayed.

40.  A pre-trial conference in the 2021 Tax Court Proceeding is presently scheduled for November 30, 2023.

41. Through its Motion for Leave, the appended *Respondent's Motion for Summary Judgment Based on Judicial Estoppel and Incorporated Memorandum of Law*, and *Respondent's Reply in Support of Its Motion for Leave to File Dispositive Motion Based on Judicial Estoppel*, the District has argued that the Debtor's estate should be deprived of the benefit of the 2020 Refund Claim and the 2021 Refund Claim based upon the failure to list those claims in the Schedules and Statements.

## FIRST CLAIM FOR RELIEF

**Declaratory Judgment that the 2020 Refund Claim is Property of the Debtor's Estate**

42. The Debtor repeats and realleges the allegations above as if fully set forth herein.

43. Pursuant to 11 U.S.C. § 541, "[t]he commencement of a case under section 301 . . . of this title creates an estate.  Such estate is comprised of all the following property . . . (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case. . . . [and] (7) [a]ny interest in property that the estate acquires after commencement of the case." 11 U.S.C. § 541(a)(1) & (7).

44. Moreover,  11 U.S.C. § 1141 provides as follows:

(a) . . . the provisions of a confirmed plan bind the debtor, . . . and any creditor . . . whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor has accepted the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all the property of the estate in the debtor.

45. Property of the estate is not limited to property disclosed in the Debtor's Schedules or Statements.

46. Pursuant to Rule 1009(a) of the Bankruptcy Rules, "[a] . . . schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed."

47. Consequently, insofar as the Chapter 11 Case has not been closed, the Debtor had and has an absolute right to amend the Statements and Schedules.

48. The Global Notes include, *inter alia*, the following:

a. The Statement and Schedules were prepared based on information provided by the Debtor's former management. This information was used by the Debtor's independent director, along with assistance from former management and the Debtor's other professionals, to prepare the Schedules and Statement. Global Notes p.1.

b. The Debtor reserves all rights to amend or supplement the Schedules and Statement from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and Statement as to amount, liability, classification, identity of Debtor, or to otherwise subsequently designate any claim as 'disputed,' 'contingent,' or 'unliquidated.' Furthermore, nothing contained in the Schedules, Statement, or Notes shall constitute a waiver of any of the Debtor's rights or an admission with respect to its chapter 11 case, including any issues involving objections to claims, equitable subordination, defenses, characterization or recharacterization of contracts and leases, assumption or rejection of contracts and leases under the provisions of chapter 3 of the Bankruptcy Code, causes of action arising under the provisions of chapter 5 of the Bankruptcy Code, or any other relevant applicable laws to recover assets or avoid transfers. Global Notes p.1-2.

c. Although the Debtor has exercised its reasonable efforts to ensure the accuracy of the Schedules and Statement, they nevertheless may contain errors and omissions. The Debtor hereby reserves all of its rights to dispute the validity, status, and enforceability

any contracts, agreements, and leases identified in the Schedules and Statement, and to amend and supplement the Schedules and Statement as necessary. Global Notes p.4.

d.      Despite exercising its commercially reasonable efforts to identify all known assets, the Debtor may not have listed all of its causes of action or potential causes of action against third parties as assets in its Schedules. Global Notes p.5.

e.      The Debtor has used reasonable efforts to report all legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the Debtor was involved in any capacity within one year before the Petition Date. The Debtor reserves its rights to assert that the Debtor is an appropriate party to such actions or proceedings. Global Notes p.7.

49.     In addition, the Plan, the Confirmation Order, and the associated Liquidating Trust Agreement, included with the Plan Supplement [Docket No. 330] contain broad provisions reserving all causes of action to the estate, without limiting them to those identified in the Schedules and Statements:

a.      Unless a Cause of Action against a holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order, and the Final DIP Order), the Debtor and the Liquidating Trustee expressly reserve such retained Cause of Action for later adjudication by the Debtor or the Liquidating Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere, or of which the Debtor may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time, or facts or circumstances that may change or be different from those the Debtor now believes to

exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order (including the Confirmation Order). Plan VIII.H.2.(a)

b.      Section VIII.H of the Plan appropriately provides that the Debtor will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action except for Causes of Action that have been expressly waived, settled, or otherwise released as provided under the Plan, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. The provisions regarding the preservation of Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtor, the Estate, and Holders of Claims and Equity Interests. Confirmation Order ¶ PP

c.      Unless any Causes of Action are expressly waived, relinquished, released, compromised, or settled in the Plan or any final order entered by this Court (including, without limitation, this Order a "Final Order"), the Debtor and the Liquidating Trust expressly reserve all such Causes of Action for later adjudication. The reservation shall include, without limitation, a reservation by the Debtor and the Liquidating Trust of any Causes of Action not specifically identified in the Plan or Disclosure Statement, or of which the Debtor may presently be unaware, or which may arise or exist by reason of

additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise), or laches will apply to such Causes of Action upon or after the Confirmation of the Plan based on the Disclosure Statement, the Plan or this Order, except where such claims and/or defenses have been expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order. Confirmation Order ¶ 11.

d.  The Liquidating Trustee may "commence and/or pursue any and all actions involving Liquidating Trust Assets that could arise or be asserted at any time, unless otherwise waived or relinquished in the Plan." Liquidating Trust Agreement Section 4.1.2.

50.  The 2020 Refund Claim was not waived or released by the Plan.

51.  Moreover, the Debtor has properly filed the Amendments, which now disclose the 2020 Refund Claim.

52.  Consequently, the Debtor is entitled to declaratory judgment that the 2020 Refund Claim was and remains property of the Debtor's estate notwithstanding the fact that it was not disclosed in the Schedules and Statements as originally filed.

### SECOND CLAIM FOR RELIEF

**Declaratory Judgment that the 2021 Refund Claim is Property of the Debtor's Estate**

53.  The Debtor repeats and realleges the allegations above as if fully set forth herein.

54.  Pursuant to 11 U.S.C. § 541, "[t]he commencement of a case under section 301 . . . of this title creates an estate. Such estate is comprised of all the following property . . . (1)

. . . all legal or equitable interests of the debtor in property as of the commencement of the case. . . . [and] (7) [a]ny interest in property that the estate acquires after commencement of the case." 11 U.S.C. § 541(a)(1) & (7).

55. Moreover, 11 U.S.C. § 1141 provides as follows:

(a) . . . the provisions of a confirmed plan bind the debtor, . . . and any creditor . . . whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor has accepted the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all the property of the estate in the debtor.

56. Property of the estate is not limited to property disclosed in the Debtor's Schedules or Statements, and, as above, includes "[a]ny interest in property that the estate acquires after commencement of the case." 11 U.S.C. § 541(a)(7).

57. The Schedules and Statements reflect the Debtor's assets as of the Petition Date.

58. The Debtor was not required to list the 2021 Refund Claim, which arose after the Petition Date, in the Schedules and Statements.

59. In addition, the Plan, the Confirmation Order, and the associated Liquidating Trust Agreement, included with the Plan Supplement [Docket No. 330] contain broad provisions reserving all causes of action to the estate, without limiting them to those identified in the Schedules and Statements or arising prior to the Petition Date:

a. Unless a Cause of Action against a holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order, and the Final DIP Order), the Debtor and the Liquidating Trustee expressly reserve such retained Cause of Action for later adjudication by the Debtor or the Liquidating Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or

elsewhere, or of which the Debtor may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time, or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order (including the Confirmation Order). Plan VIII.H.2.(a)

b.      Section VIII.H of the Plan appropriately provides that the Debtor will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action except for Causes of Action that have been expressly waived, settled, or otherwise released as provided under the Plan, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. The provisions regarding the preservation of Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtor, the Estate, and Holders of Claims and Equity Interests. Confirmation Order ¶ PP

c.      Unless any Causes of Action are expressly waived, relinquished, released, compromised, or settled in the Plan or any final order entered by this Court (including, without limitation, this Order a "Final Order"), the Debtor and the Liquidating Trust expressly reserve all such Causes of Action for later adjudication. The reservation shall

include, without limitation, a reservation by the Debtor and the Liquidating Trust of any Causes of Action not specifically identified in the Plan or Disclosure Statement, or of which the Debtor may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise), or laches will apply to such Causes of Action upon or after the Confirmation of the Plan based on the Disclosure Statement, the Plan or this Order, except where such claims and/or defenses have been expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order. Confirmation Order ¶ 11.

d.    The Liquidating Trustee may "commence and/or pursue any and all actions involving Liquidating Trust Assets that could arise or be asserted at any time, unless otherwise waived or relinquished in the Plan." Liquidating Trust Agreement Section 4.1.2.

60.    The 2021 Refund Claim was not waived or released by the Plan.

61.    Consequently, the Debtor is entitled to declaratory judgment that the 2021 Refund Claim was and remains property of the Debtor's estate notwithstanding the fact that it was not disclosed in the Schedules and Statements as originally filed.

### THIRD CLAIM FOR RELIEF

**Declaratory Judgment that the Debtor is Not Judicially Estopped
from Pursuing the 2020 Refund Claim**

62.    The Debtor repeats and realleges the allegations above as if fully set forth herein.

63. Judicial estoppel may be appropriate when a party successfully assumes one position and then later seeks to assume a contrary position.

64. Specifically, the Supreme Court has found that judicial estoppel may be warranted where the following elements are present:

> (1) that a party's later position must be clearly inconsistent with its earlier position in litigation;
>
> (2) that the party had succeeded in persuading a court to accept the earlier position "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and
>
> (3) whether the party taking the inconsistent position was seeking to derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

65. The Debtor never assumed a contrary position with respect to the 2020 Refund Claim in the Schedules and Statements because the Global Notes expressly contemplate the potential incompleteness of the Schedules and Statements.

66. Filing of the Amendments cures any infirmity in failing to identify the 2020 Refund Claim in the Schedules and Statements.

67. The Debtor never assumed a contrary position with respect to the 2020 Refund Claim in the Schedules and Statements because the Plan, the Confirmation Order, and the Liquidating Trust Agreement all contemplate the retention of all causes of action, without limitation.

68. Failure to disclose the 2020 Refund Claim on the Schedules and Statements was an inadvertent mistake by the Debtor.

69. The Debtor never intentionally sought to conceal the 2020 Refund Claim.

70. Pursuant to the Plan, which liquidates the Debtor's assets, the proceeds of the 2020 Refund Claim, if any, would only ever benefit the Debtor's creditors and equity holders.

71. Consequently, the Debtor had no motivation to conceal an asset that could not, under any circumstance, have benefitted itself.

72. The Debtor derived no unfair advantage from its failure to disclose the 2020 Refund Claim in its Schedules and Statements as originally filed.

73. The Debtor's failure to identify the 2020 Refund Claim in its Schedules and Statements is not clearly inconsistent with its ongoing attempts to pursue that claim because it reserved the right to amend the Schedules and Statements and actively continued to pursue that claim.

74. The Debtor never persuaded this Court, or any other court, to accept a contrary position with respect to the 2020 Refund Claim because the Schedules and Statements never purported to be without error.

75. The Debtor never persuaded this Court, or any other court, to accept a contrary position with respect to the 2020 Refund Claim because the Plan, the Confirmation Order, and the Liquidating Trust Agreement broadly reserved all causes of action.

76. Determining that the Debtor is judicially estopped from pursuing the 2020 Refund Claim would inappropriately penalize the Debtor's creditors and equity holders.

77. Consequently, the Debtor is entitled to declaratory judgment that the Debtor is not judicially estopped from pursuing the 2020 Refund Claim.

## FOURTH CLAIM FOR RELIEF

**Declaratory Judgment that the Debtor is Not Judicially Estopped
from Pursuing the 2021 Refund Claim**

78. The Debtor repeats and realleges the allegations above as if fully set forth herein.

79. The Debtor never assumed a contrary position with respect to the 2021 Refund Claim in the Schedules and Statements because the 2021 Refund Claim, which arose after the Petition Date, was not required to be and is not required to be disclosed in the Schedules and Statements.

80. In addition, the Debtor never assumed a contrary position with respect to the 2021 Refund Claim in the Schedules and Statements because the Plan, the Confirmation Order, and the Liquidating Trust Agreement all contemplate the retention of all causes of action, without limitation.

81. The Debtor never intentionally sought to conceal the 2021 Refund Claim.

82. Pursuant to the Plan, which liquidates the Debtor's assets, the proceeds of the 2021 Refund Claim, if any, would only ever benefit the Debtor's creditors and equity holders.

83. Consequently, the Debtor had no motivation to conceal an asset that could not, under any circumstance, have benefitted itself and derived no unfair advantage from its failure to disclose the 2021 Refund Claim in its Schedules and Statements as originally filed, even if it had been required to do so.

84. The Debtor's failure to identify the 2021 Refund Claim in its Schedules and Statements is not clearly inconsistent with its ongoing attempts to pursue that claim because the Debtor was not required identify a claim that arose after the Petition Date in any event.

85. The Debtor never persuaded this Court, or any other court, to accept a contrary position with respect to the 2021 Refund Claim because the Schedules and Statements were never supposed to include a cause of action that was filed after the Petition Date.

86. The Debtor never persuaded this Court, or any other court, to accept a contrary position with respect to the 2021 Refund Claim because the Plan, the Confirmation Order, and

the Liquidating Trust Agreement broadly reserved all causes of action without purporting to list them all.

87. Determining that the Debtor is judicially estopped from pursuing the 2021 Refund Claim would inappropriately penalize the Debtor's creditors and equity holders.

88. Consequently, the Debtor is entitled to declaratory judgment that the Debtor is not judicially estopped from pursuing the 2021 Refund Claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment as follows:

1. On the First and Second Claims for relief, determining that the 2020 Refund Claim and the 2021 Refund Claim are property of the Debtor's estate;

2. On the Third and Fourth Claims for relief, determining that the Debtor is not judicially estopped from pursuing the 2020 Refund Claim or the 2021 Refund Claim; and

3. Granting such other and further relief as the Court deems just and proper.

Dated: August 2, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:  ljones@pszjlaw.com
           dbertenthal@pszjlaw.com
           tcairns@pszjlaw.com

*Counsel to the Debtor and Debtor in Possession*